Juan P. Morillo (*pro hac vice* pending)
Gabriel F. Soledad
Daniel Pulecio-Boek
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
Email: juanmorillo@quinnemanuel.com
Email: gabrielsoledad@quinnemanuel.com
Email: danielpulecioboek@quinnemanuel.com

Eric Winston (*pro hac vice* pending)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: ericwinston@quinnemanuel.com

Scott C. Shelley
Samantha Gillespie (*pro hac vice* pending)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: scottshelley@quinnemanuel.com
Email: samanthagillespie@quinnemanuel.com

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| INTEGRADORA DE SERVICIOS PETROLEROS ORO NEGRO, S.A.P.I. DE C.V. | Case No. 18-_____ |
| Debtor in a Foreign Proceeding. | |
| In re: | Chapter 15 |
| PERFORADORA ORO NEGRO, S. DE R.L. DE C.V. | Case No. 18-_____ |
| Debtor in a Foreign Proceeding. | |

## DECLARATION OF ALONSO DEL VAL-ECHEVERRIA

I, Alonso Del Val-Echeverria, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.      I, Alonso Del Val-Echeverria, in my capacity as foreign representative ("Foreign Representative") of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora Oro Negro") and Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora Oro Negro," and together with Integradora Oro Negro, the "Debtors"), hereby submit this declaration ("Declaration") in support of (a) my verified petitions (respectively, the "Integradora Verified Petition" and the "Perforadora Verified Petition," and together, the "Verified Petitions"), for entries of orders (i) recognizing the *Concurso Mercantil* (as defined in this Declaration) as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"); (ii) confirming relief pursuant to section 1520; (iii) granting interim relief pursuant to Bankruptcy Code sections 1519 and 1521; and (iv) granting further relief pursuant to Bankruptcy Code sections 105(a), 1507(a), 1509(b)(2)-(3), 1521(a), and 1525(a); and (b) the motion for entry of orders granting (i) provisional relief pursuant to Bankruptcy Code sections 1519(a) and 362(a) and additional relief pursuant to Bankruptcy Code section 1521; and (ii) leave to conduct discovery prior to recognition pursuant to Bankruptcy Code section 105(a) and 1521(a)(4) and Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") (the "Provisional Relief Motion").  This Declaration refers to Chapter 15 of the Bankruptcy Code (11 U.S.C. §§ 1501-1532) as "Chapter 15" and to the proceedings resulting from the Verified Petitions as the "Chapter 15 Proceedings."

2.      I am a resident of México, and I am Integradora Oro Negro's and Perforadora Oro Negro's Chief Legal Counsel.

## Appointment as Foreign Representative

3.      Integradora Oro Negro appointed and authorized me to act as its Foreign Representative on April 4, 2018.  Specifically, Integradora Oro Negro's Board of Directors appointed and authorized me to act on behalf of Integradora Oro Negro in any legal proceeding outside of México, including the Chapter 15 Proceedings.  Additionally, Integradora Oro Negro granted me a power of attorney appointing and authorizing me to act on behalf of Integradora Oro Negro in any legal proceeding outside of México, including the Chapter 15 Proceeding.  Exhibit 3.1 to this Declaration is the minutes of Integradora Oro Negro's April 4, 2018 Board of Directors' meeting appointing and authorizing me to act as Foreign Representative and granting me power of attorney to act as Foreign Representative.[1]

4.      Perforadora Oro Negro appointed and authorized me to act as its Foreign Representative on April 5, 2018.  Specifically, Perforadora Oro Negro appointed and authorized me to act on behalf of Perforadora Oro Negro in any legal proceeding outside of México, including the Chapter 15 Proceedings.  Additionally, Perforadora Oro Negro granted me a power of attorney appointing and authorizing me to act on behalf of Perforadora Oro Negro in any legal proceeding outside of México, including the Chapter 15 Proceedings.  Exhibit 3.2 to this Declaration is Perforadora Oro Negro's April 2018 decision appointing and authorizing me to act as Foreign Representative and granting me power of attorney to act as Foreign Representative in Spanish, with an English translation.

5.      The matters set forth in this Declaration that are statements of fact within my personal knowledge are true.  Matters stated in this Declaration that are statements of fact not within my

---

[1]    The minutes of the board meeting are attached without their corresponding lengthy annexes.

personal knowledge are derived from documents, publicly available information and/or other sources given to me and are true to the best of my knowledge, information and belief.

### Overview of the Debtors and Their Status

6.      Perforadora Oro Negro is a Mexican offshore drilling company that is the subject of a voluntary insolvency proceeding in México, known as a *concurso mercantil*.  Perforadora Oro Negro commenced its *concurso mercantil* proceeding on September 11, 2017.  Perforadora Oro Negro's *concurso mercantil* proceeding is identified with the number 345/2017 and was assigned to the Second District Court for Civil Matters of México City (*Juzgado Segundo de Distrito en Materia Civil en la Ciudad de México*) (the "*Concurso* Court").  Exhibit 1 to this Declaration is Perforadora Oro Negro's request to initiate a *concurso mercantil* proceeding in Spanish, with an English translation.

7.      Integradora Oro Negro is a Mexican holding company that is the subject of a *concurso mercantil* proceeding.  Integradora Oro Negro commenced its *concurso mercantil* on September 29, 2017 before the *Concurso* Court.  Integradora Oro Negro's *concurso mercantil* proceeding was originally identified with the number 395/2017.  Exhibit 2 to this Declaration is Integradora Oro Negro's request to initiate a *concurso mercantil* proceeding in Spanish, with an English translation.  In the same request of Integradora Oro Negro to initiate a *concurso mercantil* proceeding, several of its subsidiaries also filed for *concurso mercantil*.  The *Concurso* Court has decided to hold in abeyance their request on the ground that some of Integradora Oro Negro's creditors dispute who is entitled to act on behalf of some of Integradora Oro Negro's subsidiaries.

8.      Upon commencing its *concurso mercantil* proceeding, Integradora Oro Negro requested that the *Concurso* Court add the Integradora Oro Negro proceeding to the pending Perforadora Oro Negro proceeding and thus, that the *Concurso* Court decide them simultaneously.

The *Concurso* Court granted this request on October 31, 2017.  As a result, both the Integradora Oro Negro and Perforadora Oro Negro *concurso* proceedings are identified with the number 345/2017. This Declaration refers to the joint *concurso mercantil* proceeding of Perforadora Oro Negro and Integradora Oro Negro as the "*Concurso Mercantil*."  The *Concurso Mercantil* is the foreign main proceeding for purposes of the Verified Petitions.

9.      Integradora Oro Negro directly and indirectly (*i.e.*, through another subsidiary) owns 100% of Perforadora Oro Negro.

10.      Integradora Oro Negro's and Perforadora Oro Negro's registered office, principal place of business and headquarters are located at Javier Barros Sierra 540, Office 103, Park Plaza Torre 1, Santa Fe Colony, Álvaro Obregón Delegation, México City, 01210.  Integradora Oro Negro's and Perforadora Oro Negro's cash management and accounting functions are located there. Furthermore, their senior management, including, but not limited to, the chief executive officer, chief financial officer, and the chief legal officer, work in and from this location.

11.      Integradora Oro Negro is a Mexican holding company that, through its subsidiaries in México and Singapore (collectively, the "Subsidiaries"), owns and leases five state-of-the-art offshore drilling platforms, commonly known as "jack-up rigs" (the "Jack-Up Rigs").  The Jack-Up Rigs are used for drilling to find and extract oil and gas from the ocean floor.

12.      Integradora Oro Negro and its Subsidiaries have no business activities or sources of revenue other than from owning and leasing the Jack-Up Rigs.

13.      It costs Perforadora Oro Negro approximately $6 million a month to maintain the five idle Jack-Up Rigs.  In approximately two months, Integradora Oro Negro and its Subsidiaries will no longer have sufficient cash to maintain their operations, including the Jack-Up Rigs.

14.     At the time of commencement of the *Concurso Mercantil*, Integradora Oro Negro and its Subsidiaries employed approximately 400 employees, including approximately 40 United States nationals.  Due to their dire financial situation resulting from facts set forth in this Declaration, in March 2018, Integradora Oro Negro and its Subsidiaries were forced to terminate approximately 250 employees, over half of their entire workforce.  Currently, only approximately 150 employees remain employed by Integradora Oro Negro and its Subsidiaries.  Most of the remaining employees are residents of México and all work in México.

15.     In addition to the Jack-Up Rigs, Integradora Oro Negro and its Subsidiaries own certain property located in the United States.  Specifically, (a) Perforadora Oro Negro holds rights under five agreements with affiliated Singapore entities (as defined below, the "Bareboat Charters"), which are governed by New York law; (b) Integradora Oro Negro has deposited over $500,000 in a New York retainer account of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), counsel to Integradora Oro Negro and Perforadora Oro Negro; (c) Perforadora Oro Negro has deposited over $500,000 in a New York retainer account of Quinn Emanuel; and (d) Integradora Oro Negro and Perforadora Oro Negro hold potential claims arising under United States law against certain creditors, including those based in the United States or that conduct substantial business in the United States, such as being publicly traded on United States stock exchanges.  In addition, a wholly owned subsidiary of Integradora Oro Negro owns a deposit account with approximately $150,000, which is located in the United States.

16.     Integradora Oro Negro acquired the Jack-Up Rigs from 2012 to 2015.  The Jack-Up Rigs are named *Decus*, *Fortius*, *Impetus*, *Laurus* and *Primus*.  The Jack-Up Rigs are superior to rigs of Perforadora Oro Negro's competitors in México, including because they are more stable, can

house larger crews, have larger and more efficient drills, and have longer legs (permitting deeper water drilling).

17.     Appendix A to the Verified Petitions is a chart depicting the ownership structure of Integradora Oro Negro, its Subsidiaries and the Jack-Up Rigs.  As depicted in Appendix A, each of the Jack-Up Rigs is owned by a different Singaporean single-purpose vehicle (the "Singapore Rig Entities").  The Singapore Rig Entities are named (a) Oro Negro Decus Pte. Ltd.; (b) Oro Negro Fortius Pte. Ltd.; (c) Oro Negro Impetus Pte. Ltd. ("Oro Negro Impetus"); (d) Oro Negro Laurus Pte. Ltd.; and (e) Oro Negro Primus Pte. Ltd.

18.     The equity of each Singapore Rig Entity is wholly owned by Oro Negro Drilling Pte. Ltd. ("Oro Negro Drilling"), a Singaporean holding company.  Integradora Oro Negro owns 100% of Oro Negro Drilling.  Accordingly, Integradora Oro Negro indirectly owns all the Jack-Up Rigs.

19.     The Jack-Up Rigs are estimated to be worth at least a billion dollars.  The value of each Jack-Up Rig is estimated to be between approximately $120 million and $160 million, without an associated lease. With leases in place, the Jack-Up Rigs are far more valuable.  Here, the value of each Jack-Up Rig, accounting for the value of Perforadora Oro Negro's contracts with Pemex (as defined below, the "Pemex Contracts"), is estimated to be between approximately $280 million and $320 million.  Accordingly, their combined value ranges from  approximately $1.4 billion to $1.6 billion.

20.     Integradora Oro Negro's funding comes from a combination of equity investments and bond issuances.  As to equity, between 2012 and 2015, Integradora Oro Negro raised $590 million in equity investments.  Integradora Oro Negro is currently owned by a combination of Mexican pension funds, Mexican individuals and United States and European individual and institutional investors—specifically, Mexican pension funds own approximately 45%; a group of

United States individual and institutional investors owns approximately 43%; and a group of

Mexican individuals and European individual and institutional investors owns approximately 12%.

21.    As to bond issuances, in 2014, Integradora Oro Negro raised $900 million through the

following two bond issuances in Norway:  (a) on January 24, 2014, Oro Negro Drilling issued $725

million in bonds (the "January 2014 Bond Issuance"); and (b) on December 4, 2014, Oro Negro

Impetus issued $175 million in bonds (the "December 2014 Bond Issuance").  In 2016, Integradora

Oro Negro and its bondholders merged the January 2014 Bond Issuance and the December 2014

Bond Issuance (i.e., both issuances now have the same interest payments and maturity date).  This

Declaration refers to the bonds under the January 2014 Bond Issuance and the December 2014 Bond

Issuance, collectively, as the "Bonds" and to the holders of the Bonds as the "Bondholders."  The

Bonds' trustee is Nordic Trustee ASA ("Nordic Trustee"), a Norwegian financial services firm.

Exhibit 4 to this Declaration is a copy of the bond agreement which governs the terms of the Bonds,

between Oro Negro Drilling and Nordic Trustee, as last amended on November 9, 2016 (the "Bond

Agreement").

22.    The Bonds are listed on the Luxembourg Stock Exchange ("LuxSE") and trade on the

European multilateral trading facility of the LuxSE ("Euro MTF"), the electronic platform where

securities listed on the LuxSE trade.

23.    The Bonds are secured including by (a) a share charge from Integradora Oro Negro to

Nordic Trustee over Integradora Oro Negro's shares in Oro Negro Drilling, which includes

Integradora Oro Negro's authorization to Nordic Trustee to replace Oro Negro Drilling's directors

(the "Oro Negro Drilling Share Charge"); (b) share charges from Oro Negro Drilling to Nordic

Trustee over Oro Negro Drilling's shares in the Singapore Rig Entities, which include Oro Negro

Drilling's authorization to Nordic Trustee to replace each of the Singapore Rig Entities' directors

(the "Singapore Rig Entities' Share Charges"); and (c) mortgages on the Jack-Up Rigs.  Exhibits 5.1 to 5.6 to this Declaration are the Oro Negro Drilling Share Charge and the Singapore Rig Entities' Share Charges.

24.     The Bond Agreement also provides for the establishment of a Mexican trust (in Spanish, *fideicomiso*) that receives rent payments by Pemex to Perforadora Oro Negro for leasing the Jack-Up Rigs (the "Mexican Trust").  Pursuant to its "waterfall" structure, the Mexican Trust must distribute to Perforadora Oro Negro the funds that Perforadora Oro Negro needs to pay ordinary business expenses, including operating the Jack-Up Rigs, taxes and salaries.[2]  The Mexican Trust's "waterfall" also allows for possible payments to the Bondholders (through Nordic Trustee) after funding Perforadora Oro Negro's operations.

25.     The Mexican Trust's administrator (*i.e.*, the entity responsible for managing the trust funds, including paying the beneficiaries) is Deutsche Bank México, S.A., Institución de Banca Múltiple ("Deutsche México").  Based on publicly available information, Deutsche México's 99% owner is Deutsche Bank Americas Holding, Corp. ("Deutsche U.S."), a Delaware-incorporated and New York-based subsidiary of Deutsche Bank AG ("Deutsche Bank").  On information and belief, Deutsche Bank employees based in New York control and direct Deutsche México's operations.

26.     Integradora Oro Negro also provided to Nordic Trustee, for the benefit of the Bondholders, a limited guarantee to pay up to $175 million of any amount outstanding under the Bonds (the "Guarantee").

27.     Under the Bond Agreement, it is an event of default if Integradora Oro Negro, or any of its Subsidiaries, including Perforadora Oro Negro, initiates restructuring, insolvency or

---

[2]     The agreement that governs the Mexican Trust (the "Mexican Trust Agreement"), including its amendments and annexes, is in Spanish and is lengthy (in total, it exceeds 3,000 pages).  This Declaration does not append it.

bankruptcy proceedings. In such circumstances, Nordic Trustee may declare the event of default and demand immediate payment of the entire principal and accrued interest.

28.     In 2017, Integradora Oro Negro learned of the existence of a group that alleges to own over 50% of these Bonds (it calls itself the "Ad-Hoc Group"). The Ad-Hoc Group is comprised of United States and international investment funds. The members of the Ad-Hoc Group are (a) Alterna Capital Partners, LLC ("Alterna"), a Connecticut-based investment fund; (b) Asia Research & Capital Management, Ltd. ("ARCM"), a Hong Kong-based investment fund; (c) CQS, LLP ("CQS"), a U.K.-based investment fund; (d) Maritime Finance Company, Ltd. ("MFC"), a Florida-based investment fund; and (e) Ship Finance International Ltd. ("SFIL"), a Bermuda-based investment fund publicly traded on the New York Stock Exchange ("NYSE"). Paul, Weiss, Rifkind, Wharton & Garrison, LLP ("Paul Weiss"), a New York-based law firm, is the Ad-Hoc Group's legal advisor.

29.     Based on publicly available information, SFIL's largest shareholder is an entity controlled by John Fredriksen ("Mr. Fredriksen"), a European billionaire in the shipping industry, and his family. Mr. Fredriksen and his family are also the largest shareholders of Seadrill, Ltd. ("Seadrill"), a large shipping company publicly traded on the NYSE, whose affiliate, SeaMex Limited ("Seamex"), a Bermuda-based company, competes with Perforadora Oro Negro by leasing five jack-up rigs to Pemex (the "Seamex Contracts"). Based on publicly available information, Seamex is a joint venture between Seadrill and Fintech Advisory, Inc. ("Fintech"), a New York-based investment fund owned by Mexican national David Martínez-Guzmán ("Mr. Martínez"). Cleary Gottlieb Steen & Hamilton, LLP ("Cleary"), a New York-based law firm which is Pemex's United States counsel in connection with Integradora Oro Negro and its Subsidiaries, is also Seamex's United States counsel.

30.     Via information requests to Pemex, Integradora Oro Negro and Perforadora Oro Negro have reviewed copies of what Pemex purports are all of its lease agreements of jack-up rigs (and their amendments).  Upon review of these lease agreements, it is evident that the Seamex Contracts contain significantly more favorable terms for Seamex than any other of Pemex's lease agreements, because, among other reasons, (a) the daily rates are higher; (b) except in cases of breach, it is difficult for Pemex to terminate them; (c) their duration is generally longer; and (d) they have almost no penalties for deficient operation and maintenance of the rigs.  Given the favorable terms of the Seamex Contracts, Seadrill itself has stated that it is "confident that [the Seamex Contracts] are absolutely secure."  Exhibit 6 to this Declaration is the transcript of a February 2015 telephone conference among Seadrill and its investors during which Seadrill made this assertion.

31.     The Ad-Hoc Group's financial advisor in connection with the Bonds is AMA Capital Partners, LLC ("AMA"), a New York-based financial advisory services firm.  Based on publicly available information, Paul Leand, Jr., AMA's Managing Director and Chief Executive Officer ("CEO"), is a member of the Boards of Directors of SFIL, a member of the Ad-Hoc Group, and Seadrill, Perforadora Oro Negro's competitor.  Exhibit 7 to this Declaration is a chart depicting the Ad-Hoc Group, their United States-based advisors and their relationship with Pemex.

### The Pemex Contracts

32.     Perforadora Oro Negro leases the Jack-Up Rigs from the Singapore Rig Entities, pursuant to five lease agreements (the "Bareboat Charters").  Exhibits 8.1 to 8.5 to this Declaration are the Bareboat Charters.  The five Bareboat Charters are governed by United States maritime law and subject to the jurisdiction of New York courts.

33.     In turn, Perforadora Oro Negro entered into five lease agreements with two subsidiaries of Petróleos Mexicanos ("Pemex"), México's state-owned oil company, for Pemex to

use the five Jack-Up Rigs to drill for and extract oil and gas in the Gulf of Mexico (the "Pemex Contracts"). The Pemex Contracts range from approximately three to five years and require Pemex to make daily rent payments to Perforadora Oro Negro.[3]

34.     México owns all of the oil and gas in the country and Pemex is the largest company in México as well as one of the ten largest oil and gas companies worldwide. Despite recent reforms attempting to create a market in which private companies can compete with Pemex to explore for and extract oil and gas, Pemex continues being by far the primary and largest oil and gas company in México, including being the primary—and, until about one year ago, the only— company in México exploring for and extracting oil and gas offshore. As such, it is the most important, if not the only, client of all oil and gas services companies in México, including of companies that own and lease offshore drilling platforms. Indeed, it is the only company in México to which Perforadora Oro Negro could, in practice, lease the Jack-Up Rigs.

35.     From April 2013 to January 2014, Perforadora Oro Negro entered into contracts with Pemex Exploración y Producción ("PEP"), a subsidiary of Pemex, to lease to PEP the *Primus*, *Laurus*, *Fortius*, and *Decus* Jack-Up Rigs. After an organizational reform within Pemex in mid-2015, PEP assigned these contracts to Pemex Perforación y Servicios ("PPS"), another subsidiary of Pemex. In December 2015, Perforadora Oro Negro entered into a fifth contract with PPS to lease the *Impetus* Jack-Up Rig.

---

[3]     The Pemex Contracts, including their amendments and annexes, are in Spanish and are lengthy (in total, they exceed 1,000 pages). This Declaration does not append them.

36.    The original terms of the Pemex Contracts are as follows:

a.    *Primus*:  On April 23, 2013, PEP and Perforadora Oro Negro entered into lease no. 421003823 pursuant to which PEP would lease *Primus* for 1,030 days (approximately two years and nine months) at a daily rate of approximately $160,000 (the "Primus Contract");

b.    *Laurus*:  On April 23, 2013, PEP and Perforadora Oro Negro entered into lease no. 421003824 pursuant to which PEP would lease *Laurus* for 1,233 days (approximately three years and four months) at a daily rate of approximately $160,000 (the "Laurus Contract");

c.    *Fortius*:  On January 13, 2014, PEP and Perforadora Oro Negro entered into lease no. 421004800 pursuant to which PEP would lease *Fortius* for 1,442 days (approximately four years) at a daily rate of approximately $160,000 (the "Fortius Contract");

d.    *Decus*:  On January 27, 2014, PEP and Perforadora Oro Negro entered into lease no. 421004806 pursuant to which PEP would lease *Decus* for 1,342 days (approximately three years and seven months) at a daily rate of approximately $160,000 (the "Decus Contract"); and

e.    *Impetus*:  On December 18, 2015, PPS and Perforadora Oro Negro entered into lease no. 641005817 pursuant to which PPS would lease *Impetus* for 1,819 days (approximately five years) at a daily rate of approximately $130,000 (the "Impetus Contract").

37.     Under the original terms of the Pemex Contracts, Perforadora Oro Negro's annual revenues from leasing the Jack-Up Rigs were approximately $280 million (resulting in an EBITDA of approximately $190 million).

38.     In 2015 and 2016, citing supposed budget cuts caused by the decline of the price of oil, Pemex forced the temporary alteration of the terms of the Pemex Contracts to the severe detriment of Integradora Oro Negro and Perforadora Oro Negro.

39.     Specifically, in 2015, Pemex amended the terms of the Primus, Laurus, Fortius and Decus Contracts (the "2015 Amendments").  First, on June 26, 2015, Pemex reduced the daily rate under the Primus, Laurus, Fortius and Decus Contracts from approximately $160,000 to $130,000 (the "June 2015 Amendments").  The rate reduction was to apply from June 1, 2015 through May 31, 2016, at which time the rate would return to the originally contracted rate of approximately $160,000.  Pemex induced Integradora Oro Negro and Perforadora Oro Negro to accept the rate reductions by representing that they were temporary and Pemex would return to the original terms in June 2016.  Second, between October 26 and 29, 2015, Pemex extended the Primus, Laurus, Fortius and Decus Contracts by one year (the "October 2015 Amendments").

40.     Pemex failed to keep its commitments.  In 2016, Pemex made additional amendments to the Pemex Contracts (the "2016 Amendments").  Again, Pemex induced Integradora Oro Negro and Perforadora Oro Negro to accept the amendments by claiming that it would return to the original terms the following year but ultimately did not do so.  Specifically, on November 14, 2016, Pemex (a) reduced the daily rate under the Fortius, Decus and Impetus Contracts from approximately $160,000 or $130,000, as applicable, to $116,300 (the rate reduction was to apply from June 2016 to May 2017, when it would return to approximately $160,000 (for the Fortius and Decus Contracts) and $130,000 (for the Impetus Contract)); (b) suspended the Laurus and Primus Contracts until May

and November 2017, respectively, and extended each by one year; (c) extended by two years the Fortius and Decus Contracts; and (d) conditionally extended (*i.e.*, subject to Pemex's needs) the Impetus Contract by one year.

41.    As a result of the 2015 Amendments and the 2016 Amendments, Perforadora Oro Negro's revenue was reduced by more than 50%.

42.    Again, failing to keep its commitments, in March 2017, Pemex informed Integradora Oro Negro and Perforadora Oro Negro that the Pemex Contracts would not return to their original terms.  Specifically, Pemex proposed to (a) continue paying a reduced daily rate of $116,300 under the Fortius, Decus and Impetus Contracts until December 2017 and then adjust the daily rate every six months; (b) extend the suspension of the Laurus Contract until November 2017 and, upon reinstatement of the contract, pay a daily rate of $116,300, subject to adjustment every six months; and (c) extend the suspension of the Primus Contract until November 2018 and, upon reinstatement of the contract, pay a daily rate of $116,300, subject to adjustment every six months (the "2017 Proposed Pemex Amendments").

43.    The 2017 Proposed Pemex Amendments, as compared to the initial terms of the Pemex Contracts, cut Integradora Oro Negro's and Perforadora Oro Negro's revenues by approximately 70%.  Thus, the 2017 Proposed Pemex Amendments were highly detrimental to Integradora Oro Negro and Perforadora Oro Negro because they would indefinitely place the companies in financial distress.

44.    To force Integradora Oro Negro and Perforadora Oro Negro to yield to the 2017 Proposed Pemex Amendments, Pemex threatened to unilaterally terminate all the Pemex Contracts if Perforadora Oro Negro did not accept the 2017 Proposed Pemex Amendments.  Pemex also refused

to approve and pay Perforadora Oro Negro's invoices, suffocating Integradora Oro Negro's and Perforadora Oro Negro's finances.

45.    Integradora Oro Negro and Perforadora Oro Negro knew that Pemex had no legitimate reason to unilaterally terminate the Pemex Contracts and that any such terminations would be unlawful and unenforceable.  However, Integradora Oro Negro and Perforadora Oro Negro ultimately had to accept the 2017 Proposed Pemex Amendments because the termination of the Pemex Contracts would be catastrophic to them.  If Pemex terminated the Pemex Contracts, Integradora Oro Negro and its Subsidiaries would default on the Bonds and would not be able to pay their employees.  Put differently, if Pemex unilaterally terminated the Pemex Contracts, Integradora Oro Negro and Perforadora Oro Negro knew that they would have to either commence a *concurso mercantil* or sue in México, and likely would wait years to recover anything from Pemex.

46.    Ultimately, driven by avoiding lengthy and costly litigation against Pemex in the event that Pemex unlawfully terminated the Pemex Contracts, and facing a liquidity crisis due to Pemex's refusal to pay Perforadora Oro Negro, in August 2017, Perforadora Oro Negro accepted the 2017 Proposed Pemex Amendments.  Despite Perforadora Oro Negro's acceptance, Pemex failed to execute the 2017 Proposed Pemex Amendments.

47.    By September 2017, given Pemex's conduct, Integradora Oro Negro and Perforadora Oro Negro feared that Pemex was preparing to unilaterally terminate the Pemex Contracts.  To protect their shareholders, creditors and employees, and with the intention to remain a going concern, in September 2017, Integradora Oro Negro and its Subsidiaries, including Perforadora Oro Negro, filed for *concurso mercantil* in México.

48.    On September 21, 2017, Integradora Oro Negro issued a press release announcing that Perforadora Oro Negro had filed for *concurso mercantil*.  On October 3, 2017, 11 days after

-16-

Integradora Oro Negro's announcement of Perforadora Oro Negro's *concurso mercantil*, Pemex informed Perforadora Oro Negro that it was unilaterally terminating the Pemex Contracts. Exhibits 13.1 to 13.5 to this Declaration are Pemex's letters to Perforadora Oro Negro purporting to terminate the Pemex Contracts (collectively, the "Termination Letters") in Spanish, and their English translations.

49.     As to the Primus, Laurus, Fortius and Decus Contracts, Pemex asserted in the Termination Letters that it was terminating them because Pemex (a) had entered into lease agreements with other vendors of jack-up rigs for a daily rate of $116,300; and (b) Perforadora Oro Negro had purportedly failed to accept leasing the Jack-Up Rigs to Pemex for that rate. Contrary to Pemex's assertion, Perforadora Oro Negro had already accepted that rate when it accepted the onerous 2017 Proposed Pemex Amendments. In any event, the Pemex Contracts do not contain any provision allowing Pemex to unilaterally terminate them on the ground that it obtained better rates from Perforadora Oro Negro's competitors.

50.     As to the Impetus Contract, Pemex asserted in the Termination Letter that it was terminating it because Perforadora Oro Negro had filed for *concurso mercantil*.

51.     Importantly, under the Pemex Contracts, even in the event of Pemex's unilateral termination, Pemex has to pay to Perforadora Oro Negro the remainder of all the daily rates through the duration of the Contracts. Here, the total amount due to Perforadora Oro Negro under the Pemex Contracts from the purported date of termination through maturity of the Pemex Contracts is approximately $815 million. Pemex has failed to make this payment to Perforadora Oro Negro. On October 26, 2017, Perforadora Oro Negro sued Pemex in a Mexican federal court demanding payment of damages for purportedly terminating the Decus, Fortius, Laurus and Primus Contracts. The case is pending. On November 7, 2017, Perforadora Oro Negro sued Pemex before the

*Concurso* Court (in an ancillary proceeding within the *Concurso Mercantil*) demanding payment of damages for purportedly terminating the Impetus Contract. The case is pending.

52.      Importantly, because Pemex and Perforadora Oro Negro never entered into the 2017 Proposed Pemex Amendments, the terms of the 2015 Amendments and the 2016 Amendments have ended and the Pemex Contracts have returned to their original terms, including to their original daily rates and duration.

### Failed Bond Negotiations

53.      Had Pemex and Perforadora Oro Negro formally adopted the 2017 Proposed Pemex Amendments, Integradora Oro Negro and its Subsidiaries would have been left with exactly enough cash to continue paying interest on the Bonds, but not to repay the Bonds' principal much less to invest or grow. Therefore, as Perforadora Oro Negro was accepting the 2017 Proposed Pemex Amendments, even though Oro Negro Drilling was not yet in default under the Bonds, but believing that Pemex would honor the amendments it had imposed, Integradora Oro Negro and its Subsidiaries sought to renegotiate the Bonds with the Bondholders, making a proposal in early August 2017. Specifically, Integradora Oro Negro proposed to the Bondholders that it would repay the Bonds by (a) issuing to them new bonds and equity in Integradora Oro Negro; (b) making a cash payment of $30 million; and (c) turning over to the Bondholders the *Primus* Jack-Up Rig.

54.      The Ad-Hoc Group rejected Integradora Oro Negro's efforts to amend the Bonds. Instead, the Ad-Hoc Group demanded that Integradora Oro Negro and its Subsidiaries relinquish all available cash to the Ad-Hoc Group as partial payment of the Bonds.

55.      Integradora Oro Negro and Perforadora Oro Negro suspect, and intend to investigate, including through the Chapter 15 Proceedings, that during the first half of 2017, while Integradora Oro Negro and Perforadora Oro Negro were negotiating with Pemex in respect of the 2017 Proposed

Pemex Amendments, Pemex apparently promised the Ad-Hoc Group that if Pemex terminated the Pemex Contracts, causing the Bondholders to foreclose on the Jack-Up Rigs, Pemex would then award lease agreements to the Bondholders.  On information and belief, certain of the negotiations took place within the United States.

### *Concurso Mercantil*

56.     As set forth above, in September 2017, Integradora Oro Negro and certain of its Subsidiaries commenced the *Concurso Mercantil* in México.  Perforadora Oro Negro filed for *concurso mercantil* on September 11, 2017.  Integradora Oro Negro, Oro Negro Drilling and the Singapore Rig Entities filed for *concurso mercantil* on September 29, 2017.

57.     In Perforadora Oro Negro's request to initiate a *concurso mercantil* proceeding, Perforadora Oro Negro requested that the *Concurso* Court issue injunctions to maintain its *status quo*, including expressly prohibiting (a) Pemex from terminating the Pemex Contracts or ceasing to pay Perforadora Oro Negro the daily rates under the Pemex Contracts; (b) the Bondholders from foreclosing on the Jack-Up Rigs; and (c) Deutsche México from disbursing any trust funds other than to Perforadora Oro Negro to operate its business.

58.     In Integradora Oro Negro's request to initiate a *concurso mercantil* proceeding, Integradora Oro Negro requested that the *Concurso* Court issue similar injunctions.

59.     On October 5, 2017, the *Concurso* Court granted Perforadora Oro Negro's request to initiate a *concurso mercantil* proceeding (the "October 5 Order").  Exhibit 9 to this Declaration is the October 5 Order in Spanish, with an English translation.  In the October 5 Order, the *Concurso* Court issued numerous injunctions, including enjoining:

> a.    Perforadora Oro Negro from paying any debts due prior to October 5, 2017 or otherwise transferring or selling any of its assets;

b.    Pemex from terminating the Pemex Contracts and from ceasing to pay Perforadora Oro Negro under the Pemex Contracts;

c.    Nordic Trustee from taking any action to terminate the Bareboat Charters; and

d.    Deutsche México from disbursing any funds in the Mexican Trust.

60.    On October 11, 2017, after Perforadora Oro Negro informed the *Concurso* Court that Pemex had attempted to unilaterally terminate the Pemex Contracts and that Nordic Trustee, through the Singapore Rig Entities, had attempted to unilaterally terminate the Bareboat Charters, the *Concurso* Court issued an order confirming that (a) Pemex was enjoined from terminating the Pemex Contracts, including taking any steps to further its purported unilateral termination (*e.g.*, ceasing to pay Perforadora Oro Negro); and (b) Nordic Trustee was enjoined from taking any action to terminate the Bareboat Charters, including acting in furtherance of the Singapore Rig Entities' purported terminations of the Bareboat Charters (the "October 11 Order").  Exhibit 10 to this Declaration is the October 11 Order in Spanish, with an English translation.

61.    On December 29, 2017, the *Concurso* Court issued an order resolving a motion for reconsideration filed by Pemex, clarifying the scope of the October 5 and 11 Orders (the "December 29 Order").  Exhibit 11 to this Declaration is the December 29 Order in Spanish, with an English translation.  In the December 29 Order, the *Concurso* Court expressly stated that the Termination Letters "are not valid" (*i.e.*, that they are null, void and unenforceable) and that the Pemex Contracts are valid and enforceable.  Furthermore, in the December 29 Order, the *Concurso* Court made clear that its injunctions apply retroactively to maintain the *status quo* prior to filing.

62.    On October 31, 2017, the *Concurso* Court granted Integradora Oro Negro's request to initiate a *concurso mercantil* proceeding (the "October 31 Order").  Exhibit 12 to this Declaration is the October 31 Order in Spanish, with an English translation.

63.     In the October 31 Order, the *Concurso* Court issued numerous injunctions, including enjoining Nordic Trustee from (a) exercising the Oro Negro Drilling Share Charge; and (b) asserting any claims against Integradora Oro Negro under the Guarantee.

64.     In the October 31 Order, the *Concurso* Court ruled that it would hold in abeyance Oro Negro Drilling's and the Singapore Rig Entities' request to initiate a *concurso mercantil* proceeding on the ground that, prior to deciding their request, the *Concurso* Court must determine who is entitled to represent them.  The dispute regarding who may represent the Singapore Rig Entities arises from the Bondholders' attempted exercise of rights under the Oro Negro Drilling Share Charge and the purported control they allege to exert over Oro Negro Drilling and, through it, over the Singapore Rig Entities.[4]  The *Concurso* Court has neither set a briefing schedule nor informed the parties when it will decide who may represent Oro Negro Drilling and the Singapore Rig Entities.

65.     The *Concurso Mercantil* is the only foreign proceeding currently pending with respect to Integradora Oro Negro and Perforadora Oro Negro.

### Bondholder Action

66.     Based solely on Integradora Oro Negro's September 21, 2017 announcement that Perforadora Oro Negro had filed for *concurso mercantil*, on September 25, Nordic Trustee declared an event of default (the "Declaration of Default").  Nordic Trustee has not demanded repayment of the entire principal and, as such, only interest payments and partial principal repayments from October 2017 to date are due (totaling approximately $100 million).

67.     Based on Nordic Trustee's Declaration of Default, (a) on or around September 25 2017, Nordic Trustee purported to exercise the Oro Negro Drilling Share Charge by replacing Oro

---

[4]     On October 17, 2017, the Bondholders moved the *Concurso* Court to rule that the attorney who, on September 29, filed for *concurso* on behalf of Oro Negro Drilling and the Singapore Rig Entities, was not authorized by these entities to act on their behalf in the *Concurso Mercantil*.  This motion is pending.

Negro Drilling's directors; and (b) on or around October 3, 2017, Nordic Trustee purported to exercise the Oro Negro Drilling Share Charge by taking over Integradora Oro Negro's shares in Oro Negro Drilling.   Additionally, pursuant to the Bond Agreement, Oro Negro Drilling and the Singapore Rig Entities held bank accounts primarily for (a) servicing the Bonds; (b) servicing inter-company loans among Integradora Oro Negro and its Subsidiaries; and (c) paying certain maintenance costs of the Jack-Up Rigs.  In around October 2017, these accounts held approximately $8 million (the "Singapore Entities' Accounts").  The balance in the Singapore Entities' Accounts is currently approximately $2.4 million.  The Bondholders or Nordic Trustee have not informed Integradora Oro Negro or Perforadora Oro Negro who used the funds and to what end.

68.     On October 5, 2017, the Singapore Rig Entities, under the purported control of the Bondholders, purported to terminate the Bareboat Charters with Perforadora Oro Negro and demanded that Perforadora Oro Negro return to them the Jack-Up Rigs (together, the "Bareboat Charter Terminations").   Exhibits 14.1 to 14.5 to this Declaration are the Bareboat Charter Terminations.

69.     On March 15, 2018, the Singapore Rig Entities sued Perforadora Oro Negro in the United States District Court for the Southern District of New York seeking that Perforadora Oro Negro return the Jack-Up Rigs to them (the "New York Litigation").[5]  A primary reason for filing the Verified Petitions is to stay the New York Litigation.

70.     On January 26, 2018, Oro Negro Drilling and the Singapore Rig Entities sued Integradora Oro Negro and two of its managers, including myself, in Singapore, seeking a declaration that Integradora Oro Negro and its managers could not act on behalf of Oro Negro Drilling and the Singapore Rig Entities in the *Concurso Mercantil*, as well as damages resulting

---

[5]    A true and correct copy of the complaint is attached as Appendix B to the Verified Petitions.

from Oro Negro Drilling's and the Singapore Rig Entities' filing for *concurso* on September 29, 2017. Additionally, Oro Negro Drilling and the Singapore Rig Entities sought, *ex parte*, an injunction enjoining Integradora Oro Negro and its managers, including myself, from acting on behalf of Oro Negro Drilling and the Singapore Rig Entities in the *Concurso Mercantil*, which a Singapore court granted on January 30, 2018. The Bondholders concealed from the Singapore court that their actions in furtherance of the Oro Negro Drilling Share Charge, including by purporting to exert control over and act on behalf of Oro Negro Drilling and the Singapore Rig Entities, violate the *Concurso* Court's injunctions. It is clear that the October 31 Order (which enjoined Nordic Trustee from exercising the Oro Negro Drilling Share Charge) applies retroactively, including because the *Concurso* Court determined in its December 29 Order that its orders apply retroactively. Thus, Nordic Trustee's purported exercise of the Oro Negro Drilling Share Charge is void and unenforceable. Integradora Oro Negro and its managers, including myself, will file a motion in Singapore to set aside the injunction.

71. Although the Bondholders purport to own and control Oro Negro Drilling and the Singapore Rig Entities, they have neither paid nor taken any action to pay the Mexican taxes these entities are accruing. From October 2017 to date, without objection from the Bondholders, Integradora Oro Negro continues filing for and paying Oro Negro Drilling's and the Singapore Rig Entities' taxes.

72. On October 27, 2017, Integradora Oro Negro, Perforadora Oro Negro, Oro Negro Drilling and the Singapore Rig Entities moved the *Concurso* Court to rule that Nordic Trustee's Declaration of Default was unenforceable as a matter of Mexican law. On March 16, 2018, the *Concurso* Court ruled that it would abstain from considering that motion on the ground that it would have to apply Norwegian law to resolve it, which it could not do because México does not have any

international treaty with Norway allowing Mexican courts to apply Norwegian law.  The movants
are challenging that decision.

### Deutsche México

73.     Contrary to the *Concurso* Court's injunctions, in December 2017, Deutsche México
disbursed $23 million to Nordic Trustee which, on information and belief, was then distributed to the
Bondholders, including Bondholders in the United States.  Additionally, on five separate occasions,
on February 7, February 28, March 27, April 2 and April 6, 2018, the *Concurso* Court has ordered
Deutsche México to disburse to Perforadora Oro Negro funds for Perforadora Oro Negro to pay its
ordinary business expenses such as taxes, salaries and maintenance of the Jack-Up Rigs.

74.     Notably, on February 28, March 27, April 2 and April 6, to compel Deutsche
México's compliance, the *Concurso* Court sanctioned Deutsche México's CEO to pay a fine if
Deutsche México failed to disburse to Perforadora Oro Negro the funds to pay for its ordinary
business expenses within three days of each of these orders.  Even under these extraordinary
measures, Deutsche México has still failed to comply with the *Concurso* Court's orders and
continues refusing to disburse any funds to Perforadora Oro Negro, placing it on the verge of
collapse.

### Status of the *Concurso Mercantil* and the Injunctions

75.     The *Concurso* Court appointed a *visitador* for Perforadora Oro Negro on October 20,
2017, and appointed the same *visitador* for Integradora Oro Negro on November 24, 2017.  A
*visitador* is a financial expert appointed by insolvency courts to determine whether the company or
person filing for *concurso* is insolvent.

76.     In November and December 2017, the *visitador* provided reports to the *Concurso*
Court concluding that Perforadora Oro Negro and Integradora Oro Negro were insolvent.  As such,

the *Concurso* Court must now determine whether to declare Integradora Oro Negro and Perforadora Oro Negro in *concurso*.

77.     Via collateral appeals, Pemex and an attorney purporting to act on behalf of the Singapore Rig Entities have managed to stay some of the *Concurso* Court's injunctions.

78.     In late January 2018, Pemex filed an *amparo* (a type of collateral appeal on the ground that a court order violates constitutional rights) against the December 29 Order.  On February 21, 2018, the *amparo* judge stayed the December 29 Order as to Pemex pending a final decision on the *amparo* on the ground that, although the October 5 Order's and the October 11 Order's injunctions are lawful and appropriate under Mexican insolvency law, maintaining them as to Pemex threatened Pemex's financial survival (*i.e.*, that Pemex, the largest company in México and one of the largest oil companies in the world, would be unable to continue operating if it had to lease the Jack-Up Rigs from Perforadora Oro Negro).  Integradora Oro Negro and Perforadora Oro Negro appealed the stay and the appeal is pending.  On April 18, 2018, during a hearing before the appellate tribunal, the tribunal anticipated that it would uphold the stay.  However, the tribunal has not yet ruled.

79.     In late 2017, an attorney purporting to act on behalf of the Singapore Rig Entities filed five *amparos*—one for each Singapore Rig Entity—against the October 5 Order and the October 11 Order.  In February 2018, the *amparo* judge responsible for the five *amparos* stayed the October 5 Order and the October 11 Order as to the Singapore Rig Entities' Bareboat Charter Terminations pending a final decision on their *amparos* on the ground that maintaining the injunctions as to the Bareboat Charter Terminations impaired the Singapore Rig Entities' finances.  Integradora Oro Negro and Perforadora Oro Negro appealed the stay and the appeal is pending.

80.     The other injunctions, including as to the Bondholders, Deutsche México and Nordic Trustee, are in effect.

## Chapter 15 Proceedings

81.     One of the purposes in commencing the Chapter 15 Proceedings is to obtain documentary and testimonial discovery from Integradora Oro Negro and its Subsidiaries' only client, and their principal creditors, debtors and competitor—specifically, from their (a) only client and primary debtor (*i.e.*, Pemex); (b) most important creditors (*i.e.*, the Ad-Hoc Group, including its United States-based members, Alterna and MFC, and members with substantial business in the United States such as SFIL, which is listed on the NYSE) and their United States-based financial advisor (*i.e.*, AMA); (c) debtor (*i.e.*, Deutsche México) and its United States-based controlling parent (*i.e.*, Deutsche U.S.); and (d) primary competitor (*i.e.*, Seamex).

82.     Specifically, the Verified Petitions and the Provisional Relief Motion seek discovery into the following nine concrete topics concerning Integradora Oro Negro and its Subsidiaries' assets, operations and liabilities—specifically, (a) the Pemex Contracts, including the 2017 Proposed Pemex Amendments, the Termination Letters and any valuations of the Pemex Contracts; (b) Oro Negro's Bonds, including Nordic Trustee's Declaration of Default and any valuations of the Bonds; (c) Oro Negro Drilling and the Singapore Rig Entities, including their Share Charges; (d) the Bareboat Charters, including the Bareboat Charter Terminations and any valuations of the Bareboat Charters; (e) the Jack-Up Rigs, including any valuations of them; (f) the Mexican Trust, including any payments by Deutsche México to the Bondholders, the Ad-Hoc Group or Nordic Trustee; (g) the Singapore Entities' Accounts, including any payments from these accounts to the Bondholders, the Ad-Hoc Group or Nordic Trustee; (h) any proceedings related to or involving Integradora Oro Negro, Perforadora Oro Negro, and their assets and liabilities; and (i) the Seamex Contracts.

83.    Additionally, I am investigating potential causes of action, including in the United States or under United States law, by Integradora Oro Negro and Perforadora Oro Negro against the Bondholders (including the Ad-Hoc Group), Deutsche Bank (including Deutsche México and Deutsche U.S.) and Pemex relating to or arising from their (a) violations of orders issued by the *Concurso* Court; and (b) efforts (concerted or not) to harm Integradora Oro Negro and its Subsidiaries, including Perforadora Oro Negro, by (i) taking over the Jack-Up Rigs; (ii) terminating the Pemex Contracts; and (iii) misappropriating funds in the Mexican Trust or in the Singapore Entities' Accounts.

### Status of Integradora Oro Negro and Perforadora Oro Negro

84.    Currently, Integradora Oro Negro and its Subsidiaries, including Perforadora Oro Negro, have no revenue.  Given the cash it spends every month in maintaining the idle Jack-Up Rigs, Integradora Oro Negro and its Subsidiaries will not have any more available cash in approximately two months.

WHEREFORE, I respectfully request that this Court enter an Order substantially in the form of the proposed Order attached as Appendix C to the Verified Petitions, grant the Provisional Relief Motion, as well as afford any other relief as may be just and proper.

Dated: 04/20/2018          Signature: _____

                                              Alonso del Val-Echeverria