PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS    NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

WRITER'S DIRECT DIAL NUMBER

(212) 212-3213

WRITER'S DIRECT FACSIMILE

(212) 492-0213

WRITER'S DIRECT E-MAIL ADDRESS

asynnott@paulweiss.com

UNIT 5201 FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT BEIJING 100020 CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

September 4, 2018

By ECF

Hon. Shelley C. Chapman
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

*In re Perforadora Oro Negro, et al.*, Case No. 18-11094 (SCC) (Jointly Administered)

Dear Judge Chapman:

We write on behalf of Alterna Capital Partners, LLC ("Alterna"), Contrarian Capital Management, LLC ("Contrarian"),[1] and AMA Capital Partners, LLC ("AMA" and, together with Alterna and Contrarian, the "Interested Parties") in response to the August 30, 2018 letter from the foreign representative of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. and Perforadora Oro Negro, S. de R.L. de C.V. (the "Foreign Representative"), requesting certain discovery-related relief. (Dkt. 90.)

*First*, the Interested Parties are collecting and reviewing potentially responsive communications from custodians' mobile devices and central repositories of information, such as shared drives, workspaces, and folders and, where appropriate, will produce such discovery. The Interested Parties told the Foreign Representative this on August 14, 2018 during a telephonic meet-and-confer, which the Foreign Representative confirmed in an email dated August 15, 2018. (*See* Ex. A at 3 (email from D. Pulecio-Boek dated August 15, 2018, at 1:26 p.m.).)

---

[1]    Contrarian agreed to accept service of the Foreign Representative's Rule 2004 subpoena and produce documents despite not being named in the Foreign Representative's request for Rule 2004 discovery.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelley C. Chapman                                                                                          2

    *Second*, as to service on entities other than the Interested Parties, Alterna and Contrarian are the only members of the Ad-Hoc Group[2] that have appeared in this action. As to the other members of the Ad-Hoc Group, the Interested Parties disclosed to the Foreign Representative the countries of incorporation and cities where those entities have their principal places of business on August 3, 2018. (Ex. A at 13 (email from C. Johnson to D. Pulecio-Boek dated August 3, 2018, at 5:59 p.m.).) None of these is in the United States. The Court made it clear both during the hearing held on June 27, 2018 and in the July 11, 2018 Order (the "Discretionary Relief Order") that the discretionary relief was "only granted as to persons over whom [the Court] ha[s] jurisdiction." (June 27 Hearing Tr. at 211:2-3; *accord* Dkt. 85 at 6.) The Interested Parties respectfully submit that the Foreign Representative's inability to serve other members of the Ad-Hoc Group reflects the entities' lack of presence in the United States.[3]

    The Foreign Representative attempted to serve Ship Finance International, Ltd. ("SFIL"), a Bermuda-based company with a principal place of business in Hamilton, Bermuda, by serving the CEO and managing director of AMA, Paul Leand, Jr. At the time, Mr. Leand was a director of SFIL, and the subpoena was directed to SFIL "c/o Paul Leand."[4] The Foreign Representative sent a process server Mr. Leand's residence, where his wife and children were at home but he was not. The process server's refusal to leave prompted Mrs. Leand to call the police. The process server showed up at Mr. Leand's office the following day and left a subpoena with an office assistant. But, contrary to the Foreign Representative's assertion, this was without Mr. Leand's instruction or consent.

    New York law, pursuant to CPLR § 311(a)(1), allows process to be served on a foreign corporation by service on, among others, a director of the company, but it requires *personal* service. It does not allow substituted service by, for example, delivering service to a different person at the director's dwelling place or place of business. *Lakeside Concrete Corp.* v. *Pine Hollow Bldg. Corp.*, 104 A.D.2d 551, 551-52 (2d Dep't 1984), *aff'd* 65 N.Y.2d 865 (1985). The Foreign Representative knew that personal service had not been accomplished when the subpoena was left at Mr. Leand's office and did not make further attempts to serve SFIL through Mr. Leand. Its failure to follow the requirements for service on a foreign corporation under New York law does not amount to evasion of service by Mr. Leand.

---

[2]    The Interested Parties incorporate by reference the definition of "Ad-Hoc Group" in the Foreign Representative's August 30 letter.

[3]    The only case the Foreign Representative cites for the proposition that a court may order service to be made upon a defendant's attorney did so only after finding the defendant was subject to specific personal jurisdiction. *See Forum Fin. Grp. Liab. Co.* v. *President, Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 91-92 (D. Me. 2001).

[4]    A copy of the Foreign Representative's subpoena to SFIL is attached as Exhibit B. Exhibit B is materially identical to the subpoenas directed to the Interested Parties.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelley C. Chapman                                                                                              3

*Third*, as to discovery materials in the possession of Nordic Trustee and other so-called "agents" of the Ad-Hoc Group, the Foreign Representative's claim that the Interested Parties are obligated to produce such discovery materials from such "agents" is not supported by the Discretionary Relief Order or Federal Rule of Civil Procedure 45. It is, rather, an attempt to expand the relief granted in the Discretionary Relief Order, which was limited to the entities it listed in Exhibit 1. (Dkt. 85 at 5 & Ex. 1.)

The Foreign Representative was fully aware of Nordic Trustee's role in the events it seeks to investigate when it filed its discretionary relief motion yet did not request authority to take discovery from Nordic Trustee. (*See generally* Dkt. 16.) The Interested Parties respectfully submit that this would be the proper way to seek Rule 2004 discovery from Nordic Trustee so that Nordic Trustee can respond to the request on its own behalf.

The Interested Parties intend to comply in good faith with their obligations to produce discovery materials that are in their possession, custody, or control. Contrary to the Foreign Representative's assertions, however, documents in the possession of Nordic Trustee and unidentified "agents" of the Ad-Hoc Group are not under the "control" of Alterna or Contrarian, two members of the Ad-Hoc Group, and are certainly not under the "control" of AMA, the Ad-Hoc Group's financial advisor. As the indenture trustee, Nordic Trustee is not an "agent" under the control of the bondholders. (*See* Rosenberg Decl. Ex. 2 (Dkt. 37) at 227-28 (Bond Agreement dated November 9, 2016, Clause 17.1 (describing "[t]he role and authority of the Bond Trustee")).) In the interest of cooperation, the Interested Parties asked Nordic Trustee whether it would be willing voluntarily to produce discovery materials, but Nordic Trustee declined.

Over the course of multiple meet-and-confers, the Foreign Representative has refused to provide any authority for the proposition that the target of a Rule 45 subpoena is obligated to produce discovery materials in the possession of its alleged "agents." (*See* Ex. A at 6 (email from D. Pulecio-Boek to C. Johnson dated August 10, 2018, at 6:38 a.m.).)[5] Nonetheless, demonstrating the breadth of the Foreign

---

[5] The authority cited in the Foreign Representative's letter does not support the sweeping, conclusory proposition that "[t]he Ad-Hoc Group controls their agents' documents and thus each member is obligated to produce them." (Dkt. 90 at 2 n.4.) *Chevron Corp.* v. *Donzinger* is a 79-page, fact-intensive opinion that concluded the defendants controlled their Ecuadorian lawyers and non-lawyer "agents." 96 F.R.D. 168 (S.D.N.Y. 2013). Those entities actively participated in the Ecuadorian litigation at the center of the plaintiff's fraud allegations. *Id.* at 196-98. The Ecuadorian legal team was controlled by one of the defendants and the Ecuadorian "agents" selectively produced discovery in the U.S. litigation that was favorable to the defendants, while withholding discovery that was not. *Id.* at 196-98, 213-20. None of those factors is present here. *Donzinger* does not even begin to address how or why an individual

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelley C. Chapman                                                                                                4

Representative's request, on August 15, 2018, the Foreign Representative asked Paul, Weiss to "provide a complete list of all of [our] clients' agents related to Oro Negro from March 2017 to April 2018" and "instruct all of the listed agents to produce documents." (*Id.* at 3 (email from D. Pulecio-Boek to C. Johnson dated August 15, 2018, at 1:26 p.m.).)

*Fourth*, as to the production of discovery materials other than communications, the Interested Parties believe the Discretionary Relief Order was clear that the discovery topics were limited to "communications." (*See* Dkt. 85 at 5.) This is consistent with the Foreign Representative's description of the discovery requested during the June 27 hearing. (*See* June 27 Hearing Tr. at 128:19-129:20.) In accordance with the definition of "communication" in Civil Rule 26.3(c)(1) of the Local District Rules, made applicable by Local Bankruptcy Rule 2004-1, the Interested Parties have construed "communication" to include documents and files saved in central repositories of information that are accessed and viewed by multiple individuals. We told the Foreign Representative this during the August 14 meet-and-confer.

Respectfully,

Aidan Synnott

cc:    Scott C. Shelley, Esq.
       Gabriel F. Soledad, Esq.
       Eric D. Winston, Esq.

---

member of the Ad-Hoc Group or its financial advisor would be deemed to "control" documents in the possession of an "agent" to the Ad-Hoc Group as a whole.