# EXHIBIT A

# In Re:

*PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.*

*18-11094-scc*

---

*March 20, 2019*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us.*



**Min-U-Script® with Word Index**

1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  PERFORADORA ORO NEGRO, S. DE R.L. DE      Main Case No.

8  C.V.,                                     18-11094-scc

9        Debtor.

10

11  - - - - - - - - - - - - - - - - - - - -x

12

13                United States Bankruptcy Court

14                One Bowling Green

15                New York, New York

16

17                March 20, 2019

18                2:20 PM

19

20

21

22  B E F O R E:

23  HON. SHELLEY C. CHAPMAN

24  U.S. BANKRUPTCY JUDGE

25

2

1

2    Doc #172 Motion of Seadrill Limited to Quash 30(b)(6) Subpoena

3    filed by Eloy A. Peral on behalf of Seadrill Limited

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Michael Drake

21    eScribers, LLC

22    352 Seventh Avenue, Suite #604

23    New York, NY 10001

24    (973)406-2250

25    operations@escribers.net

3

```
 1
 2   A P P E A R A N C E S:
 3   QUINN EMANUEL URQUHART & SULLIVAN, LLP
 4        Attorneys for Debtor
 5        51 Madison Avenue
 6        22nd Floor
 7        New York, NY 10010
 8
 9   BY:   GABRIEL F. SOLEDAD, ESQ.
10         SARA C. CLARK, ESQ.
11         DANIEL PULECIO-BOEK, ESQ.
12
13
14   WALK AUSLANDER LLP
15        Attorneys for SeaMex Limited, Seadrill Limited, Fintech
16        Advisory Inc.
17        1515 Broadway
18        43rd Floor
19        New York, NY 10036
20
21   BY:   JAY S. AUSLANDER, ESQ.
22         ELOY A. PERAL, ESQ.
23         NATALIE SHKOLNIK, ESQ.
24
25
```

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

4

1                    P R O C E E D I N G S

2              THE COURT:  Are you Ms. Shkolnik?

3              MS. SHKOLNIK:  Yes.  How are you?

4              THE COURT:  Nice to meet you.

5              MS. SHKOLNIK:  Nice to meet you in person.

6              MR. SOLEDAD:  Good afternoon, Your Honor.

7              MR. PERAL:  Good afternoon, Your Honor.  Eloy Peral.

8              MR. SOLEDAD:  Good afternoon, Your Honor.

9              THE COURT:  Do you want to give -- I know who you are,

10  but why don't you tell Matt who you are, okay?

11             MR. SOLEDAD:  Sure.

12             MR. PULECIO-BOEK:  Daniel Puelcio on behalf of the

13  foreign representative, from Quinn Emanuel.

14             MR. SOLEDAD:  Gabriel Soledad on behalf of the foreign

15  representative.

16             MS. CLARK:  Sara Clark on behalf of the foreign

17  representative.

18             THE COURT:  Okay.  Ms. Shkolnik, I'll be only hearing

19  from you today?

20             MS. SHKOLNIK:  Yes, Your Honor.

21             THE COURT:  Okay.  Very good.  All right.

22             So have a seat.  Have a seat.

23             So I have read the papers quite carefully.  And I've

24  read the cases that you supplied.  Thank you very much for

25  supplying them in such a user-friendly format.

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
Pg 7 of 75
**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

5

1        So I'm prepared to hear argument to the extent that

2  there's something not in the papers.  I have some questions

3  that I'd like to ask.  But if you have some prepared remarks

4  that you'd like to make, I'm happy to hear them.

5        MS. SHKOLNIK:  Sure, Your Honor.  I think maybe if you

6  have specific questions --

7        THE COURT:  Yeah.  I kind of found that the parties

8  were a bit of ships passing in the night on the issue and that

9  in my mind, it follows kind of a very clear waterfall or

10  decision tree type of analysis and that the parties -- both

11  sides kind of engaged in this back-and-forth that neither side

12  had cited a case supports -- supported what they want.

13        So the first principles are -- both Rule 45 and Rule

14  30(b)(6) apply.  They both do.  And your arguments seem to be

15  that the foreign representative is trying to violate Rule 45

16  because Mr. Leand is a foreign director.  Right?  And the other

17  two directors are new directors and don't have knowledge and

18  that somehow the current employees with knowledge because

19  they're all outside the 100-mile limitation, that somehow the

20  foreign representative was, in fact, aggregating that

21  hundred-mile limitation.  And I don't think that's what they're

22  doing.  And the cases that you cite, I don't really see how

23  they support your position.

24        So maybe one question is, not to turn this into a

25  quiz, but which case do you think supports your position most

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

6

1    clearly?  Because to be honest, I can't find one.

2            MS. SHKOLNIK:  Sure, Your Honor.  And if I could just

3    address what you said earlier --

4            THE COURT:  Sure.

5            MS. SHKOLNIK:  -- because I would frame the issue a

6    little bit differently.

7            THE COURT:  Uh-huh.

8            MS. SHKOLNIK:  We're here because we believe the law

9    supports that our motion to quash the subpoena should be

10   granted.  And the reason is there are a number of cases, and I

11   can go through some of them, that set out the exact fact

12   pattern that we have here.

13           THE COURT:  Okay.  That's what -- I'm looking for the

14   exact fact pattern.

15           MS. SHKOLNIK:  Right.

16           THE COURT:  So what do you think is the exact fact

17   pattern?

18           MS. SHKOLNIK:  So let me just kind of --

19           THE COURT:  Yes.

20           MS. SHKOLNIK:  -- go through our view and tell you

21   what the facts are and then what the cases are that apply.  So

22   in our case, we -- within the hundred miles of the courthouse,

23   there is no one that has knowledge concerning the underlying

24   deposition.

25           THE COURT:  Well, there is. There's Mr. Leand.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**7**

1         MS. SHKOLNIK:  Well --

2         THE COURT:  He's just -- he's a former director.

3         MS. SHKOLNIK:  Right.  And they haven't cited a case

4  and we haven't found one that stands for the proposition that

5  that's a viable defense to Rule 45.

6         THE COURT:  Well, but there is where immediately --

7  kind of veering off the road here.  Here's what the -- the

8  30(b)(6), -- Rule 45 says what it says, hundred miles.

9         MS. SHKOLNIK:  Right.

10         THE COURT:  Otherwise, you can't compel.

11         MS. SHKOLNIK:  Right.

12         THE COURT:  Okay.  Okay.  So we have that.  Then we

13  have 30(b)(6) which says that a corporation must designated.

14  And you can designate among different groups of people, current

15  or you can designate somebody else.  So the foreign

16  representative -- so Mr. Leand is eligible to be designated.

17  He's a former director with knowledge.  You've just chosen not

18  to do that.  And the law requires that he consent.

19         MS. SHKOLNIK:  Well, a couple points on Mr. Leand.

20  First of all, we don't represent him.  Second of all, the

21  foreign representative has not made an allegation that we

22  control him.  The --

23         THE COURT:  You're misunderstanding the law.  That's

24  fine that you don't represent him.  But, nonetheless, he's your

25  former employee.  I'm not suggesting that you can compel him.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

8

1    He is eligible.  He is one of a category of persons who can be

2    designated under Rule 30(b)(6).  And there are numerous cases

3    that say that.

4              MS. SHKOLNIK:  But Rule 45 applies and limits Rule

5    30(b)(6).

6              THE COURT:  Stay with me here.

7              MS. SHKOLNIK:  Okay.

8              THE COURT:  We're not talking about Rule 45.  Mr.

9    Leand is within a hundred miles.

10             MS. SHKOLNIK:  Yes.

11             THE COURT:  As you point out, he has been already

12   separately served with a subpoena.

13             MS. SHKOLNIK:  Yes.

14             THE COURT:  So if Seadrill were to call Mr. Leand and

15   say, hello, Mr. Leand, you're our former director, you have

16   knowledge of the subject matter of this Rule 30(b)(6) subpoena,

17   would you be willing to be our designee and he says yes, we're

18   done.  You have not represented that you have even asked him.

19   He cannot be compelled.  You cannot compel him.  And I cannot

20   compel him to be Seadrill's 30(b)(6) designee.  Whether or

21   not -- he's got a subpoena.  And if he's going to try to not

22   comply with that, I guess his counsel will tell me that.

23   That's not for today.

24             All that I'm talking about right now is there's

25   nothing in the case law that precludes Seadrill from going to

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

9

1    its former director who has knowledge and he is within the 100

2    miles and asking him would you be willing to serve as our

3    designee.  And if he says no, end of story with respect to Mr.

4    Leand as the corporate representative of Seadrill.

5            MS. SHKOLNIK:  And there's nothing --

6            THE COURT:  Do you disagree with what I just said?

7            MS. SHKOLNIK:  I disagree.  I'll tell you why, Your

8    Honor, because there's not -- I would frame it differently.

9    There's nothing in the case law that gives us an affirmative

10   duty to contact a former employee and say you, former employee,

11   please be our corporative representative.

12           THE COURT:  There's nothing that requires you to.

13           MS. SHKOLNIK:  And we decline to do so because --

14           THE COURT:  Well, you -- but the fact that you decline

15   to do so, that's on you.  You cannot say we decline to do so

16   and we're done.  The law is clear that the rule says and the

17   case say that personal knowledge is not required.  And the

18   cases say and have imposed duties on corporations or subpoenaed

19   parties to go out and find former employees or representatives.

20   If you decline to do so, that is your right.  Make no mistake

21   about it.  That is your right.  But that doesn't relieve you of

22   your obligation to designate someone who is within the 100

23   miles unless you convince me that there's another reason to not

24   require that.

25           MS. SHKOLNIK:  Well, 30(b)(6) specifically says that

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

10

1  we get to designate who we feel would be the most appropriate

2  person.  So --

3        THE COURT:  Well, let's see --

4        MS. SHKOLNIK:  To --

5        THE COURT:  Let's see what is actually says.

6        MS. SHKOLNIK:  Sure.  And there's cases that we cite

7  that talk about the fact that we get to choose --

8        THE COURT:  But the fact that you --

9        MS. SHKOLNIK:  -- the designation.

10        THE COURT:  The fact that you say Mr. Leand would be

11  the most appropriate person but we're not going to designate

12  him, and therefore, the most appropriate person is, therefore,

13  not required to serve, we win, that doesn't work.  That's what

14  you're saying, is that all things being equal, the most

15  appropriate person is either Mr. Leand or one of your employees

16  in Norway or somewhere else.

17        MS. SHKOLNIK:  But, Your Honor, that's not what we're

18  saying at all.  You're putting an affirmative obligation on us

19  to go ahead and contact a former employee.  And there's nothing

20  in the case law that says we need to do that.  And more --

21        THE COURT:  No, no.

22        MS. SHKOLNIK:  But --

23        THE COURT:  Ms. Shkolnik, you're -- listen to me very

24  carefully.  I am not saying that you are required to.  I am

25  saying that the cases make clear that a former employee falls

18-11094-scc   Doc 180-1   Filed 03/28/19   Entered 03/28/19 12:27:30   Exhibit A
Pg 13 of 75
**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

11

1  into the category of, quote, designate other person who consent

2  to testify on its behalf.  A former director falls into that

3  category that you may designate.  If you don't want to

4  designate him, I can't force you to.

5        MS. SHKOLNIK:  But I disagree with that, Your Honor.

6  I don't -- I haven't seen one case that says that a third party

7  has to go ahead and designate a former employee --

8        THE COURT:  Well, you're not listening to me, Ms.

9  Shkolnik.  I just said there is no case that says that a

10  30(b)(6) subpoenaed party has to go and designate a former

11  employee.  I merely said that the cases recognize that a former

12  director or employee qualifies as, quote, an other person who

13  consents to testify on its behalf.  That's all.

14        In other words, if you were to say to Preforadora

15  here's Mr. Leand, he consents to testify on our behalf, they

16  would have to accept that.

17        MS. SHKOLNIK:  But they haven't even alleged that we

18  have the ability to do that --

19        THE COURT:  Okay.

20        MS. SHKOLNIK:  -- or that they've asked his counsel --

21        THE COURT:  Let me try it one more time, okay?  Let me

22  try it one more time.  The case law is clear that Mr. Leand, if

23  asked and consents, would be an appropriate 30(b)(6) designee.

24  Nothing in the case law requires you to ask Mr. Leand.  I will

25  not order you to ask Mr. Leand.  The selection of a 30(b)(6)

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**12**

1   deponent is -- the duty to select is on, in this case,

2   Seadrill.  You're telling me we decline to even ask Mr. Leand.

3   Okay.  I can't force you to ask him.  I'm merely pointing out

4   that it is an option available to you.  You're not going to do

5   that.  So therefore, we don't know whether he would consent or

6   not.  You're just not going to do it, and I am not going to

7   order you to do it.

8           So we can put Mr. Leand aside except for we can't

9   ignore the fact that he's literally in the neighborhood of the

10  issuing court.  And just as a matter of geography, he is.

11          MS. SHKOLNIK:  Correct, Your Honor.

12          THE COURT:  Okay.  So do we -- are we now on the same

13  page?

14          MS. SHKOLNIK:  We are on the same page.

15          THE COURT:  Okay, great.

16          MS. SHKOLNIK:  And in recognizing -- and I think we

17  pointed this out in the papers, that they actually already

18  subpoenaed Mr. Leand personally --

19          THE COURT:  Yes.

20          MS. SHKOLNIK:  -- and on behalf of AMA.

21          THE COURT:  Right.  But they want -- what they want

22  is -- and I haven't heard anything about whether he's

23  complying.  But they want Mr. -- they are -- they want a

24  Seadrill 30(b)(6) witness, right?

25          MS. SHKOLNIK:  Right.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

13

1    THE COURT:  So the fact that they're going to get Mr.

2    Leand doesn't preclude or undermine or lessen their argument

3    for having a Seadrill 30(b)(6) witness because Mr. Leand is not

4    going to be it unless he consents.

5         MS. SHKOLNIK:  Correct.

6         THE COURT:  Right?

7         MS. SHKOLNIK:  Right.  But what --

8         THE COURT:  Okay.

9         MS. SHKOLNIK:  -- does lessen their 30(b)(6) argument

10   is Rule 45 which limits the people that can be designated or

11   can be forced to go ahead and appear.

12        THE COURT:  Yes.  And they're not asking for anybody

13   outside of the 100 miles.  They're saying that your two current

14   directors are within the hundred miles and that their argument

15   is that Rule 30(b)(6) requires that one of them be educated

16   because all of the case law makes clear that personal knowledge

17   is not a requirement for a 30(b)(6) deponent.  You have

18   successor cases.  You have people-move-on cases.  You have

19   time-goes-by cases when there's nobody around within the 100

20   miles who has knowledge.

21        The fact that there are people outside of the 100

22   miles that have knowledge, that doesn't mean that forcing

23   someone to be educated or causing someone to be educated who is

24   within the hundred miles -- that's not violating the 100-

25   mile --

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

14

1          MS. SHKOLNIK:  There's no case law to support that

2    proposition.

3          THE COURT:  What about Wultz 2?

4          MS. SHKOLNIK:  Wultz 2 is an outlier.  So which --

5          THE COURT:  You know, you say that, but I don't

6    understand your characterization of Wultz 2.  Okay.  Okay?

7          MS. SHKOLNIK:  Let me explain, Your Honor.  There are

8    this number of cases that stand for the proposition that, given

9    the fact pattern that we have here --

10          THE COURT:  Show me one.

11          MS. SHKOLNIK:  Sure.  Estate of Klieman v. Palestinian

12    Authority is one, District of Columbia, in 2013.  There, the

13    nonparty went ahead and they moved --

14          THE COURT:  Hold on.  Let me --

15          MS. SHKOLNIK:  Sure.

16          THE COURT:  Let me get that case.

17          Okay.  So that's one of the BBC cases.

18          MS. SHKOLNIK:  Right.

19          THE COURT:  Okay.  And all they had -- the only had

20    news bureau people in Washington, right?

21          MS. SHKOLNIK:  Right.  They had --

22          THE COURT:  Okay.

23          MS. SHKOLNIK:  They had people in Washington, D.C.

24    And they had people in London.  The people in London were the

25    ones that had the knowledge concerning a specific documentary

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

15

1  that was done on Yasser Arafat.  And they wanted the people in

2  London to testify as to that document --

3           THE COURT:  Okay.

4           MS. SHKOLNIK:  -- to authenticate it.

5           THE COURT:  All right.  What other cases?

6           MS. SHKOLNIK:  The other case is PriceWaterhouse v.

7  First American Corp.

8           THE COURT:  Yeah, but that -- okay.  So let's look at

9  PriceWaterhouse.

10          MS. SHKOLNIK:  Sure.

11          THE COURT:  Because in PriceWaterhouse, Judge Sweet

12 specifically says that it is important to bear in mind that if

13 PriceWaterhouse U.K. could designate a partner employee capable

14 of responding to the subpoena, the instant result would likely

15 be different.

16          MS. SHKOLNIK:  Right.  But there we're talking

17 about -- it was a nonparty to a British accounting firm that

18 actually had a subsidiary located in New York.

19          THE COURT:  It doesn't matter whether there's a

20 subsidiary located.

21          MS. SHKOLNIK:  No.  They had people that were located

22 in New York as --

23          THE COURT:  You have a person located in New York.

24 You have a director.

25          MS. SHKOLNIK:  Exactly.  And in the same case, there

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

16

1   was the same fact pattern in PriceWaterhouse.  And they quashed

2   the subpoena because they said --

3          THE COURT:  No, they -- you're not -- but it says that

4   it is important to bear in mind if PWUK could designate a

5   partner, employee capable of responding to the subpoena, the

6   result would be different.

7          MS. SHKOLNIK:  And it also says what we cite.  I'm

8   just trying to -- which part -- where are you, Your Honor?

9          THE COURT:  I'm at the very end of the opinion.

10          MS. SHKOLNIK:  Right.  It says -- exactly, Your Honor.

11   It says it is important to bear in mind that if PWUK could

12   designate a partner or employee capable of responding to the

13   subpoena who meets the territorial prescriptions of Rule 45 --

14          THE COURT:  Right.

15          MS. SHKOLNIK:  -- the result would be different.  They

16   had people who met the territorial prescription of Rule 45.

17   They just had no knowledge of -- that's just one sentence

18   taking it out of context.

19          If you look -- if you read the entire decision --

20          THE COURT:  No.  But you have to read footnote 8.  It

21   says in the statement above, submission by the parties

22   precludes this possibility, footnote 8.  If there does exist a

23   PWUK employee or partner in New York with within a hundred

24   miles who PWUK should designate to testify and who has not

25   already been deposed, the subpoena may be renewed.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

17

1          This case was all about confusion, massive confusion

2     over whether or not the entity or the person within the hundred

3     miles was PWUK or the actual person.  There's nothing in this

4     case that indicates that there was an actual person.

5          MS. SHKOLNIK:  PWUS was located here in New York, Your

6     Honor.

7          THE COURT:  A person.  A human, an actual person.

8          MS. SHKOLNIK:  PWUS employs people.  PWUS is located

9     in New York, exact same fact pattern.  PWUK was the one that

10    had the knowledge.  It's the same company, Your Honor.

11         It says here in August of 1997, FAC, that's the third

12    party --

13         THE COURT:  Okay.

14         MS. SHKOLNIK:  -- served a new subpoena --

15         THE COURT:  Okay.  I see what you're saying.  Okay.

16    But now, so, tell me about your view about Wultz.

17         MS. SHKOLNIK:  Wultz 2 you mean, right?

18         THE COURT:  Wultz 2.

19         MS. SHKOLNIK:  Because Wultz 1 goes in our favor.

20         THE COURT:  Well, not exactly, but it's not worth

21    talking about.  Wultz 2.

22         MS. SHKOLNIK:  Sure.  So Wultz 2 basically does not

23    quash a subpoena.  And there it doesn't even identify the cases

24    that it relies on.

25         THE COURT:  What do you mean by that?

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

18

1          MS. SHKOLNIK:  Meaning it just puts out a decision

2    without any sort of precedent for its decision.

3          THE COURT:  There's no cases cited?

4          MS. SHKOLNIK:  No.

5          THE COURT:  Did you actually read the case?

6          MS. SHKOLNIK:  Yes.  I read it many times because it's

7    the only outlier.

8          THE COURT:  You didn't read all the citations?

9          MS. SHKOLNIK:  There's no case that it cites that

10   explains its decision nor is there a case that it cites --

11         THE COURT:  I just don't understand -- I'm just not

12   following what you're saying.

13         MS. SHKOLNIK:  Okay.

14         THE COURT:  The discussion begins at star 99.  And

15   there's all these cases that Judge Scheindlin cites to.

16         MS. SHKOLNIK:  Star 99.

17         THE COURT:  I just don't understand what you mean that

18   there's no case citations.

19         MS. SHKOLNIK:  I'm trying to find star 99, Your Honor.

20   One second.  Can you give me the --

21         THE COURT:  I don't -- page 8.  And, I mean, in the

22   printout you gave me, it's page 8.  It says despite -- and --

23         MS. SHKOLNIK:  Right.  Despite its --

24         THE COURT:  Despite its nonparty status, Hapoalim has

25   an affirmative duty to prepare the designee to the extent

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**19**

1    matters are reasonably available, whether from documents, past

2    employees, or other sources.  That's exactly what we have here.

3    We have documents.  We have a past director.  And we have other

4    sources.  And there's a citation.

5            MS. SHKOLNIK:  That case does not stand for the

6    proposition that --

7            THE COURT:  Well, you can't tell me that there's no

8    citations when there are citations.

9            MS. SHKOLNIK:  Maybe I wasn't clear, Your Honor.

10    There's no citation here -- there's no case law that it relies

11    on to support its position that a motion to quash should not be

12    granted under similar facts.  There's not a single case.  It

13    doesn't -- it does not distinguish -- for example, it doesn't

14    distinguish the entire line of cases --

15            THE COURT:  It doesn't have to.  She did not have to

16    because the way that Judge Scheindlin analyzes this is not

17    complicated by all of the extraneous factors.  There is

18    somebody within the 100 miles and then there are people in

19    Israel who are available to educate that person.  And you can

20    do it by phone or you can do it by video or you can do it by

21    email or you can do it by documents.  Done.  It's just --

22            MS. SHKOLNIK:  The issue there, Your Honor, it

23    specifically says -- she specifically says that she is not --

24    this does not overrule the Wultz 1 decision where in Wultz 1 --

25            THE COURT:  She didn't need to.  You don't -- a judge

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
Pg 22 of 75
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.

20

1   is not going to go -- she's not going to go out of her way to

2   overrule the other decision.  This subpoena came before her.

3   It was narrowed.

4           MS. SHKOLNIK:  Significantly narrowed.

5           THE COURT:  Okay.  But if you want to talk about

6   narrowing, if that's what it's about, I'll talk to you about

7   narrowing.  But you're talking about everything but narrowing.

8   You're telling me I should follow decisions from other

9   jurisdictions when I have a decision that is completely and

10  thoroughly point from down the street and that you've just said

11  is an outlier and said doesn't have any authorities.  And yet

12  there is a bunch of cases cited.

13          MS. SHKOLNIK:  Your Honor, there are a number of

14  decisions from this court, including PriceWaterhouse v. First

15  American, including Sokolow v. Palestine Liberation, that

16  follow our fact pattern and that quash the subpoena.  And

17  there's no obligation in those cases where they say just

18  because there is some person within the hundred miles of the

19  courthouse, that someone -- if they don't have knowledge,

20  there's no obligation that someone else has to go ahead and

21  give them that knowledge.

22          THE COURT:  There is no case that causes the

23  1,000-mile limit to be applied in such a way as to relieve a

24  party of its obligation under Rule 30(b)(6).  It makes no sense

25  to do that.  If there is a person within a hundred miles, then

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

21

1   that person is within a hundred miles.  The fact that you need

2   to educate them, that just is what it is.  They're not asking

3   me to require that you produce -- that you bring someone from

4   Europe here.  They're not asking that I force you to let them

5   go to Europe and take a deposition pursuant to a subpoena

6   issued by this Court.  I suppose they would have to do letters

7   rogatory or something of that sort which is costly and time

8   consuming.  A foreign representative doesn't have resources.

9        But the one thing that you haven't said -- you've

10   completely ignored the notion that there's a duty to educate

11   unless it imposes an undue burden.  You haven't told me

12   anything about an undue burden.

13        MS. SHKOLNIK:  Of course -- we've said that -- we've

14   argued that in the papers.

15        THE COURT:  No.  But saying something and convincingly

16   arguing it are two different things.

17        MS. SHKOLNIK:  Sure.

18        THE COURT:  You've got Mr. Leand and you've got the

19   documents produced by bondholders in this case that show

20   Seadrill's involvement in the conduct alleged during the --

21   during relevant time period.

22        MS. SHKOLNIK:  I disagree with that, Your Honor.  I

23   don't think --

24        THE COURT:  You disagree with that, that we don't have

25   those documents?

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

22

1        MS. SHKOLNIK:  I disagree with that.  But I don't want

2    to --

3        THE COURT:  Ms. Shkolnik, you disagree with what?

4        MS. SHKOLNIK:  With your conclusion of what those

5    documents show.  But I don't want -- I think that's --

6        THE COURT:  The documents do not show that Mr. Leand

7    was in correspondence with the bondholders and was actively

8    engaged in formulating a game plan on what to do when the

9    bondholders took over the rigs?

10       MS. SHKOLNIK:  I think, Your Honor, that that question

11   is a red herring that has nothing to do with the issues in

12   front of the Court today which is on --

13       THE COURT:  I'm asking you a simple question.  Do

14   you --

15       MS. SHKOLNIK:  I haven't analyzed those documents.

16       THE COURT:  Have you looked at them?

17       MS. SHKOLNIK:  Of course I have.

18       THE COURT:  Okay.  So there is a connection -- there

19   is a basis for this -- for Seadrill -- for Preforadora's topics

20   in its subpoena.  There's a --

21       MS. SHKOLNIK:  I don't agree with that in the sense

22   that I feel the topics are very broad.  I also think it would

23   be an extreme burden to go ahead and try to educate --

24       THE COURT:  Why is it an extreme burden here --

25       MS. SHKOLNIK:  Sure.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

1      THE COURT:  -- and not categorically?  In other words,

2    here -- let me tell you what an extreme burden is.

3      MS. SHKOLNIK:  Sure.

4      THE COURT:  I preside over Lehman Brothers, okay, in

5    my spare time.  That's what I do.  It would be an extreme

6    burden to find someone who was with Lehman at the time of the

7    filing, right, or in 2006 and to find people to educate someone

8    on a topic from thirteen years ago.  Okay?  It would be an

9    extreme burden if there were a successor company and there were

10   literally no one around who had anything to say about the

11   topics that people were interested in.

12      Mr. Leand is literally in the neighborhood.  And the

13   documents already exist.  So when the Rule talks about -- and

14   the case law talks about there being no requirement of personal

15   knowledge, that exactly contemplates a situation that somebody

16   with knowledge would educate somebody who doesn't have

17   knowledge.  Mr. Leand has knowledge.  Mr. Leand can get on the

18   phone or on a video conference with the current director and

19   impart his knowledge.  And, therefore, that person then becomes

20   a designee who can speak for the corporation.  That's what the

21   rule is.

22      MS. SHKOLNIK:  Let's talk about, Your Honor, about the

23   two individuals that are here for --

24      THE COURT:  We can stipulate they know nothing about

25   it.  I'm not going to argue with you on that.  I take you at

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

24

1  your word; you made submissions; they came in after the fact.

2  But there's nothing in the case law that says that a person

3  with no knowledge -- that you win if all you can show is that

4  the proposed designee has no knowledge.  The cases say, I'll

5  read --

6        MS. SHKOLNIK:  Actually, Your Honor, we were just

7  talking about burdens, so I want to respond to your question,

8  because you said that I didn't convince you why it would be

9  burdensome.

10        THE COURT:  Okay.  Go ahead.

11        MS. SHKOLNIK:  And I think we're talking in course

12  purposes too, because Mr. Leand is not someone that Seadrill

13  employs at this time.  So as far as I'm concerned, he's out of

14  the picture.

15        When we talk about the two nonexecutive directors who

16  are here within a hundred miles, what Your Honor is suggesting

17  that it would be an easy task for someone from -- it would have

18  to be someone from London or Norway to educate --

19        THE COURT:  Yes.

20        MS. SHKOLNIK:  -- one of these individuals on, for

21  example, the rigs, how they operate, on the debtors --

22        THE COURT:  No, no --

23        MS. SHKOLNIK:  -- on the agreement -- it's like

24  educating me on how these rigs operate.  That would probably

25  take weeks.  I don't know anything about how rigs operate.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

25

1   They're asking for specific information about that.  That would

2   take a long time to do.  And there's nothing in the case law,

3   Your Honor, that gives an affirmative duty for us to do that,

4   is what I'm saying with the --

5           THE COURT:  I don't know -- I don't know what your

6   basis is for saying that.  The rule says that --

7           MS. SHKOLNIK:  My basis for saying that is all the

8   cases --

9           THE COURT:  -- there is no -- there is -- the case

10  law -- the cases are clear that say that personal knowledge is

11  not a requirement; it contemplates an education process.

12          MS. SHKOLNIK:  And there's not a single case with the

13  exception of Walt's Two (ph.) where there's an education

14  process.  And they had -- the foreign representative had eleven

15  days to find another case that supports Walt's Two --

16          THE COURT:  Okay.  Why don't you take --

17          MS. SHKOLNIK:  -- and they did not do --

18          THE COURT:  -- why don't you take a seat --

19          MS. SHKOLNIK:  -- so.

20          THE COURT:  -- and why don't I answer.  So you're

21  saying, under the rule --

22          MS. SHKOLNIK:  Yes.

23          THE COURT:  -- Rule 30(b)(6) does not require the

24  education of a corporate designee?  Either there's somebody who

25  knows stuff or game over.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

26

1          MS. SHKOLNIK:  I'm saying Rule 30(6)(b) read together

2    with Rule 45(c), that provides the territorial limitations, has

3    been interpreted by one case after another, after another, with

4    the exception of Walt's Two, that specifically says there is no

5    duty to go ahead and provide knowledge to individuals who are

6    within the hundred miles of the courthouse, simply because

7    they're within the hundred miles.  The only case, and it's an

8    outlier, because it's the only case that we found, and it's a

9    case that we found and distinguished in our papers that says

10   that.  And the foreign representative has not --

11         THE COURT:  How did you distinguish it?

12         MS. SHKOLNIK:  We distinguished it a number of ways,

13   Your Honor.  First of all, it doesn't rely -- it doesn't go

14   ahead and distinguish any of the cases that came before.

15         THE COURT:  Why would it?  Why would it?  Why --

16         MS. SHKOLNIK:  Because its decision is completely

17   contrary to everything that came before.  So one would expect

18   that the Court --

19         THE COURT:  Let me tell you something about

20   jurisdiction, okay.  I'm not required to sit here and

21   distinguish cases from North Carolina and North Dakota and

22   California and Washington D.C.

23         MS. SHKOLNIK:  I agree, Your Honor.  But --

24         THE COURT:  Okay.  Just --

25         MS. SHKOLNIK:   -- these were Southern District of New

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
Pg 29 of 75
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.

27

1  York cases.

2            THE COURT:  Have a seat.

3            Okay.  Mr. Pulecio-Boek, am I hearing from you?

4            MR. PULECIO-BOEK:  Yes.

5            THE COURT:  Could you help me out here, because Ms.

6  Shkolnik seems very, very clear that the process of educating a

7  30(b)(6) deponent in a Rule 45 framework is crazy, nowhere

8  supporting the cases.  Would you help me out?

9            MR. PULECIO-BOEK:  Yes, Your Honor.  We cite a number

10  of cases in our brief.  I can just refer quickly to five of

11  those here.

12            THE COURT:  Sure.

13            MR. PULECIO-BOEK:  Cody (ph.), Springs (ph.), Erins

14  (ph.), Murphy (ph.), and the Burton (ph.).  We think those five

15  cases are -- they are helpful to the extent that they have some

16  rulings that are applicable to this case.

17            So one, they explicitly have language saying that the

18  personal knowledge is of no consequence when preparing any

19  witness for a 30(b)(6) deposition.

20            THE COURT:  Right, but are those Rule 45 cases?

21            MR. PULECIO-BOEK:  They did not specifically cite the

22  Rule 45.  They're general 30(b)(6) cases.

23            THE COURT:  Right.  I think that's -- I think that's

24  the point.  I mean, I think when I strip all this away, is

25  that -- the argument that's being made is that, in the general

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

28

1   context of Rule 30(b)(6), there's a duty to educate.  But when

2   you layer over the hundred-mile geographical limitation, that

3   somehow -- if the only people with knowledge are outside the

4   one hundred miles, then the duty to educate falls away.  I'm

5   just trying to --

6           MR. PULECIO-BOEK:  Well, in that regard, Walt's Two is

7   very helpful because Walt's Two lays out three rules for

8   determining whether it is burdensome or not to prepare someone

9   that has no personal knowledge and is within the hundred-mile

10  radius:  one, the scope of the deposition topics; second,

11  whether the deposition is relevant; and then third, the period

12  of time.

13          These are here first, Your Honor, approved the topics

14  of the deposition when we served a group -- requested

15  authorization to serve the notice.  And as you've seen, their

16  narrative tailored.  And it's basically three topics, as we

17  summarized it in our brief:  one, the debtors; second, the

18  contracts and the assets of the debtors, meaning the rigs; and

19  three, efforts by Pemex to amend or terminate those contracts.

20          THE COURT:  Okay.  So you're not asking -- you're not

21  asking Seadrill's 30(b)(6) designee to explain to you how the

22  rigs work?

23          MR. PULECIO-BOEK:  Correct.

24          THE COURT:  To pick up on Ms. Shkolnik's example,

25  right?

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

29

1          MR. PULECIO-BOEK:  That's right, Your Honor.  It's

2   narrowly tailored to the topics in the (indiscernible).  And if

3   I may add just another few other points on burden.  One, they

4   produce so far about 945 documents.  We don't think -- they

5   haven't told us that they're going to be producing much more

6   than that, so the universe of documents --

7          THE COURT:  Well, then, what happened to the dispute

8   over the search terms?

9          MR. PULECIO-BOEK:  For now, we've reached -- for now,

10  we've reached the agreement on search terms and custodians.

11  The productions are ongoing.  The representative -- they will

12  finish producing in about two or three weeks.  But for now,

13  they've produced 945 documents, so now, we have a universe of

14  documents in which the designee would have to be deposed.

15  Second, it's a thirteen-month period of time.  Three, it -- all

16  the documents are in English.  There wouldn't be any issues

17  regarding translations.  Forth, either Mr. Leand or the two

18  directors would not need to travel because he can just get on

19  the phone, review the documents that are here --

20          THE COURT:  Well, their position is that -- forget

21  about Mr. Leand.  He's not going to participate in this at all.

22  So that seems to be part of the argument going to burden, is

23  that you folks keep pointing to Mr. Leand, and you know, he

24  doesn't -- he's got nothing to do with this.

25          MR. PULECIO-BOEK:  Absolutely, Your Honor.  We cite

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

30

1   five cases that go specifically to the point of designating a

2   foreign -- designating former representatives and believes --

3           THE COURT:  Yeah, but as I run through with Ms.

4   Shkolnik in some detail, they can designate, but he would have

5   to consent.

6           MR. PULECIO-BOEK:  That's correct.

7           THE COURT:  I can't force him.  So that's where, I

8   think, you know, there's a little wishful thinking on your

9   part.

10           MR. PULECIO-BOEK:  Absolutely, Your Honor.  Just a

11   couple of points in that regard.  One, we've already served the

12   deposition notice on AMA.  Mr. Leand will be deposed on those

13   topics and will be familiar with those topics, obviously, and

14   so there would be absolutely no burden for him to do so here as

15   well and be the --

16           THE COURT:  But I can't force him to do -- I can't

17   force them to ask, and I can't force him to do it.  Right?

18           MR. PULECIO-BOEK:  We are a hundred percent aware.

19   And that is why it is their prerogative.  If they do not want

20   to designate him --

21           THE COURT:  Right.

22           MR. PULECIO-BOEK:  -- then they would have to

23   designate whoever is here --

24           THE COURT:  Right.

25           MR. PULECIO-BOEK:  -- to the extent that it is not

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

31

1  unduly burdensome to educate those two other individuals that

2  are here within the one-hundred-mile radius.  So just to follow

3  up on the points regarding burden.  Where the documents are

4  located; they are located here, because they're in possession

5  of counsel, who are review -- reviewing them, producing those

6  documents.  The documents are in English.  Limited number of

7  documents.  They cover a very limited period of time.

8      And just a final point in that regard, it is -- they

9  were presented to this Court from the beginning that they were

10  involving him in the facts of the foreign representative is

11  investigating is minimal, if not simply incidental.  And so to

12  the extent that that is accurate, then there will be absolutely

13  no burden in educating the witness --

14      THE COURT:  Yeah, and that's kind of the -- that's

15  kind of the interesting part of this, is that there definitely

16  has been a sense that they have nothing to do with this, which

17  would suggest there's not that much to talk about, so.

18      MR. PULECIO-BOEK:  That is correct, Your Honor.  So we

19  just wanted to have those points on burdens.  Specific data

20  points on what steps they would have to take to educate the

21  witness.  If I may add just one final point; that is, they are

22  producing documents from seven custodians.  Four of those seven

23  custodians are the individuals that they've identified as

24  having relevant knowledge and that are located in Norway and in

25  London.  And so those four individuals continue being employees

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
Pg 34 of 75
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.

32

1    of the company, meaning that to educate the two directors here,

2    they would not have to go to former employees.

3              THE COURT:  Right.

4              MR. PULECIO-BOEK:  They can just rely on the employees

5    that are currently with the company --

6              THE COURT:  Right.

7              MR. PULECIO-BOEK:  -- at the time.

8              THE COURT:  Right.  So Ms. Shkolnik, what about that?

9    Why doesn't that take care of the problem?

10             MS. SHKOLNIK:  Which is?  I'm not --

11             THE COURT:  You have current employees who can prepare

12   the current directors.

13             MS. SHKOLNIK:  Because it would be a burden to those

14   current employees to prepare directors that have no knowledge

15   about the topics at all.  If I could --

16             THE COURT:  But you -- but see that's the part that

17   I -- you're using that as a mantra without putting any meat on

18   the bones.

19             MS. SHKOLNIK:  Okay.

20             THE COURT:  Okay?  The cases say that it's not enough

21   just to say a person has no knowledge.  The rule requires that

22   you educate and make the person into a knowledgeable witness.

23   That's what it requires.  So if you have knowledgeable

24   witnesses, which in the correspondence that Mr. Boek attaches

25   to his -- Mr. Pulecio, attaches to his declaration shows that,

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

33

```
 1    in fact, at one point you discussed various individuals from
 2    abroad.  They can get on the phone with your directors and just
 3    walk them through the documents.  That's all that we're talking
 4    about here.  It's not burdensome.  Some of the cases talked --
 5    find that it's not burdensome for there to be a five-year time
 6    period.  You're making it definitional.  You're saying that, as
 7    long as I have to take -- educate someone who at this moment
 8    has no knowledge, that's an undue burden.  That's not what the
 9    cases say.
10            MS. SHKOLNIK:  The cases, Your Honor, say what you
11    said earlier, which is, when you look at Rule 45 in conjunction
12    with Rule 30(b)(6), the one-hundred-territorial limit applies.
13            THE COURT:  Yes.
14            MS. SHKOLNIK:  The cases that apply Rule 30(b)(6) and
15    Rule 45 with the exception of Walt's all say that you do not
16    have to give knowledge to that person who does not have
17    knowledge.  And just because that person happens to be within a
18    hundred miles of the court, does not mean that you need to ask
19    the third party that's located outside the hundred miles to go
20    ahead and provide that knowledge to the person within the
21    hundred miles.
22            THE COURT:  Okay.  Well, you're -- you're tell --
23            MS. SHKOLNIK:  And -- it -- it --
24            THE COURT:  So you're telling me that, as between a
25    decision of the Southern District of New York and decisions
```

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

34

1    outside the Southern District of New York, I should ignore the

2    decision of the Southern District of New York that is literally

3    on all fours with the facts here, meaning a foreign entity with

4    no business in New York with -- well, with a branch in New

5    York, that was required to, as you put it from square one,

6    educate someone who didn't have knowledge.  I mean, that's what

7    you --

8            MS. SHKOLNIK:  Sure.  Okay.

9            THE COURT:  That's what Judge Scheindlin held.

10           MS. SHKOLNIK:  But --

11           THE COURT:  You're faulting the -- how robust her

12    analysis was.  But it stands as a decision of the Southern

13    District of New York, right?

14           MS. SHKOLNIK:  Correct, Your Honor.  But there are a

15    number of decisions that go to exact opposite --

16           THE COURT:  Okay.

17           MS. SHKOLNIK:  -- that are also Southern District of

18    New York decisions.  But let me talk about Walt's Two

19    because --

20           THE COURT:  Well, hold on -- he's still at the

21    lectern.  I merely wanted to ask you a question.  So if you

22    would, just hold your fire.

23           MS. SHKOLNIK:  Okay.

24           THE COURT:  Or hold you --

25           MS. SHKOLNIK:  Sure.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

35

1          THE COURT:  -- okay?

2          MS. SHKOLNIK:  Sure.

3          THE COURT:  Okay.  Keep going.

4          MR. PULECIO-BOEK:  Thank you, Your Honor.

5          THE COURT:  Or you know, this is -- I don't mean to be

6    being hard on you or causing you to be frustrated.  I just

7    really have this profound sense of, we're really like ships

8    passing in the night here on this, connecting dots that I don't

9    think there's a basis for connecting.  But -- go ahead.

10          MR. PULECIO-BOEK:  Yup.  Just a final point on burden

11   and it is a case that we find helpful and we cited in our

12   papers for the proposition that a company could educate a

13   former director/employee, which is Taylor -- United States v.

14   Taylor.  There, the case says of course it's burdensome.  There

15   is a burden associated with having to prepare someone to

16   testify on behalf of a corporation.  That that burden is -- the

17   decision says it is part of the onus of doing business as a

18   corporation.

19          THE COURT:  I mean, the -- it's your -- in your

20   opposition brief, I mean, starting at eleven, and I think Ms.

21   Shkolnik will probably tell me that none of these are Rule 45

22   cases.  But they're all -- all about the concept that it's not

23   unduly burdensome to educate a witness without prior knowledge

24   of the relevant facts.  That the -- I mean, the cases are

25   legion on that point, and I simply do not understand why the

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

36

1    one-hundred-mile limitation of a Rule 45 subpoena completely

2    abrogates that whole concept of burden.  It's apples and

3    oranges.  The burden -- you have a person who's within the

4    hundred miles.  We put that over there.  Over here we have a

5    person within the hundred miles who needs to be educated.

6    Well, how do we analyze whether that's a burden?  We analyze

7    whether that's a burden by looking at the cases that analyze,

8    under Rule 30(b)(6), the burden of educating a witness without

9    knowledge.  It's got nothing to do with one hundred miles or

10   not.  I just am just having a hard time understanding why the

11   two can't, you know, those two programs can't run

12   simultaneously.  So -- okay.

13          MR. PULECIO-BOEK:  That's it, Your Honor.  We didn't

14   have any additional remarks --

15          THE COURT:  Okay.

16          MR. PULECIO-BOEK:  -- unless Your Honor has any

17   questions about our papers.

18          THE COURT:  No, I don't.  Thank you.  All right.  Ms.

19   Shkolnik, are there any additional points you'd like to make?

20          MS. SHKOLNIK:  There are, Your Honor.

21          THE COURT:  Okay.

22          MS. SHKOLNIK:  Thank you.  With respect to the cases

23   that the former representative cites -- they cite a dozen

24   cases -- not one case, not one talks about Rule 45.

25          THE COURT:  Okay.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

1        MS. SHKOLNIK:  With respect to the documents, we've

2    produced a total of 6,688 pages.  To me, that's a lot when

3    you're talking about trying to educate someone here who's a

4    nonexecutive director -- they're not even an employee -- about

5    things and topics that they don't anything about.

6        THE COURT:  You know, being a director --

7        MS. SHKOLNIK:  I took a look at their --

8        THE COURT:  -- you know, with great power comes great

9    responsibility.  The quote is by the man.  Okay.  When you sign

10   on as a director of a major corporate entity, you know what,

11   there are responsibilities.  So it is what it is, and there are

12   no -- I'm sure they're quite bright individuals, and there is

13   nothing about -- if you put to one side the Rule 45 and you

14   analyze the burden, purely under Rule 30(b)(6), which I think

15   is appropriate -- and I sound like a broken record -- the rule

16   specifically contemplates an education process in circumstances

17   according to the cases, much more broad than what we have here

18   in order to bring a 30(b)(6) deponent up to speed.  You're

19   talking about thirteen months on six narrow topics.  Any --

20   just, let's look at some of them.

21       MS. SHKOLNIK:  Um-hum.

22       THE COURT:  Any efforts by any person, including but

23   not limited to the ad hoc group of bondholders, SeaMex or

24   Seadrill, to take over the jackup rigs or the Oro Negro

25   contracts.  According to your version of the world, right, you

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

38

1  had nothing to do with this.  So the answer to that is going to

2  be nothing.  If your version of the facts is -- holds up, then

3  that's going to be a pretty short part of the deposition.

4  Okay?

5          MS. SHKOLNIK:  Your Honor, Oro Negro is a direct

6  competitor as of now of SeaMex.  So, obviously, there's going

7  to be correspondence that relates to these topics that --

8          THE COURT:  To take over the jackup rigs?

9          MS. SHKOLNIK:  I don't know.

10         THE COURT:  Okay.  If there's correspondence related

11 to taking over the jackup rigs, then that's fair game.  That's

12 just not -- they're not looking to examine one of your

13 directors generally on, hey, what's your 2019 business plan.

14 That's not what they're doing.  This is a narrowly drawn set of

15 topics.

16         Listen, number four, selling, leasing, or chartering,

17 directly or indirectly, the jackup rigs to any person other

18 than Integradora or Preforadora.  It's not asking generally

19 what are Seadrill's practices in regarding to operating jackup

20 rigs generally.  This is very, very specific.

21         MS. SHKOLNIK:  Your Honor, you know just as well as I

22 do that when you go to a deposition, it's never limited.

23 Depositions take a day after another day.

24         Let me give you a parallel because my colleague

25 brought up the -- you asked him about the terms.  And he said

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

39

1    for now, we have agreement on the terms.  The reason we have

2    agreement on the terms and the reason it's taken so long for us

3    to actually get through this discovery is because, after we had

4    the conference with Your Honor, we went ahead and we basically

5    agreed.  They modified their terms, and we agreed to all of

6    their terms with the exception of one.  Well, guess what?  It

7    brought in the discovery so much with so many nonresponsive

8    documents that it's already created a huge burden on our

9    clients.

10          THE COURT:  We're way off the topic of these -- we're

11   way off the topic.

12          MS. SHKOLNIK:  We're not, Your Honor.  I'll tell you

13   why.  Because the documents and the deposition cover the exact

14   same topics.  And my client has already spent a ton of money

15   going ahead and reviewing -- preparing --

16          THE COURT:  Your client could have saved money by

17   complying with the subpoena instead of going through this,

18   okay?  If the documents have been produced and the documents

19   that you produced are responsive -- which it would seem would

20   be the case, right, because you have --

21          MS. SHKOLNIK:  Sure.

22          THE COURT:  Right.  So then you've produced responsive

23   documents.  And it is fair for the foreign representative to be

24   able to question the corporation about the documents that it

25   produced.  The topics are completely coextensive.  So to the

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

40

1   extent that you're in the deposition and Quinn Emanuel begins

2   to go wide -- ranging wide afield, you can stop the deposition

3   and you can call me.  I will stand by and back you up a hundred

4   percent if they begin to ask questions that appear focused on

5   uncovering generally Seadrill's business for the purpose of

6   simply finding things about it.  That's just -- that's not what

7   this is about.

8           MS. SHKOLNIK:  I disagree, Your Honor, that it would

9   be fair for them to be able to do this.  What would be fair is

10   to protect my client from the continuous undue burden that it's

11   already sustained, the months of work that it's had to devote

12   on this discovery, all the money it's had to spend on us.

13           THE COURT:  Let me go back --

14           MS. SHKOLNIK:  And --

15           THE COURT:  -- where we were before.  I ordered the

16   discovery.  I'm not rearguing the entitlement to discovery.

17   You have a different view than I do.  And, frankly, my view

18   prevails because I ordered -- I gave the foreign representative

19   the relief that he requested in order to pursue this discovery.

20   So I'm not going to hear reargument on that.

21           The burdens have been multiplied by the way their

22   discovery requests have been responded to.  It is very clear

23   that Seadrill doesn't want any part of this.  But the documents

24   that have been produced so far shows a connection between the

25   activities of Seadrill and the timeframe that the foreign

18-11094-scc   Doc 180-1   Filed 03/28/19   Entered 03/28/19 12:27:30   Exhibit A
Pg 43 of 75
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.

41

1    representative is interested and the affairs of the foreign

2    debtor.  And that's fair game.

3         Here, like in any other Chapter 15, this is not an

4    open-ended so-called fishing expedition.  It is pretty narrowly

5    drawn.  And, in fact, the -- in the grand scheme of things,

6    when you're talking about issues of this magnitude, the number

7    of documents or the number of pages that you refer to is just

8    not that many. It's not a million-document case.  It's just

9    not.  A lot of those pages are actually probably duplicate.

10        MS. SHKOLNIK:  Your Honor --

11        THE COURT:  So why don't you wrap up?  Because I want

12   to render -- I want to give you a decision today.  And I'm

13   going to need a little while just to fine-tune what I have to

14   say.

15        MS. SHKOLNIK:  Sure.  So, Your Honor, the reason I

16   raised all of the examination topics is I also wanted to tie

17   that into Wultz 2 which is, like I said, the only case where a

18   subpoena was quashed under the same fact pattern that we have

19   here.  And I want to talk about the facts in Wultz 2 and what

20   was permitted.

21        In that case, we had -- it was an antiterrorism case.

22   The Bank of China was the defendant.  The plaintiff alleged

23   that the Bank of China was aware of this terrorist and went

24   ahead and enabled the terrorist to send wire transfers.

25        THE COURT:  Yes.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**42**

1    MS. SHKOLNIK:  And as a result of that, there as an

2    attack in Tel Aviv.  The Bank of China's defense was, hold on,

3    we didn't know about this.  And you know how we didn't know

4    about this?  Let's go ahead and subpoena the Israeli bank and

5    find out whether the Israeli bank allowed wire transfers to go

6    to this terrorist too.  And if the Israeli bank, in fact, did

7    allow the money to -- the wire transfers to go, then we, of

8    course, would not have had more knowledge than the Israeli bank

9    about what was going on as far as terrorism.

10    So the judge, at the end of the day when they narrowed

11    the topics, basically narrowed it to the question of whether or

12    not the Bank of -- whether or not the Israeli bank was aware of

13    this terrorist.  If they were aware or if they weren't aware,

14    the judge found that this would be an important issue of fact

15    for the jury.

16    THE COURT:  Okay.

17    MS. SHKOLNIK:  That's not the case that we have here.

18    We're not talking about a narrow question.

19    THE COURT:  Sure, we are.  We're talking about a

20    narrow question.  Here's the narrow question.  The narrow

21    question is, what was Seadrill's involvement in efforts by the

22    bondholders to take -- to obtain control of the jackup rigs and

23    what did they do acting in concert with the bondholders and/or

24    Pemex or any other entity in order to effectuate that?  The

25    foreign representative believes that it may have a cause of

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

43

1  action against one or more parties arising out of that fact

2  pattern.  I don't know what the facts are, but I know what I've

3  seen in the documents.

4         Therefore, exactly to the picture that you just

5  painted for me, that's exactly what the foreign representative

6  is doing here.  They're zeroing in on a very discrete set of

7  alleged conducts and actions that occurred within a very narrow

8  period of time in 2017, prior to the filing of the concurso

9  proceeding.  And they are seeking to examine Seadrill about its

10  involvement in that.  It's just like finding out about whether

11  or not there was a wire transfer.  It's just like that.

12         MS. SHKOLNIK:  It's not because that's one question.

13  If they want to give us one question --

14         THE COURT:  No.  They're not -- we're not going to do

15  that.  Okay.

16         I'm going to take a break.  If you could please come

17  back -- hang around or come back in fifteen minutes.  I'm going

18  to read you a decision.  Thank you.

19      (Recess from 3:14 p.m., until 3:33 p.m.)

20         THE COURT:  Okay, thank you for waiting.  There's

21  always a choice after a hearing like this.  I could send you

22  away without an answer and take some time to prepare something

23  perfect and fit for publication, or I can read you a bench

24  decision, which is less than perfect but very detailed and will

25  explain my reasoning.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

44

1          So I'm going to read you a bench decision, the

2    transcript of which will serve as the ruling, which you can

3    attach to an order.  And in the event that there becomes a need

4    for a more formal decision with perfect citations, I can do

5    that.  But this is going to take a little while because it's

6    ten pages long, so bear with me while I read.

7          So this is a bench decision on the motion to quash,

8    pending before the Court.  Background is as follows.

9          On November 13th, 2018, the Court entered an order, a

10   discovery order, at docket number 156, denying in part and

11   granting in part the foreign representative's motion, the

12   discovery motion at docket number 111, for leave to obtain

13   discovery against Seadrill Limited, Fintech Advisory, and

14   SeaMex Limited.  The Court denied without prejudice the

15   discovery motion with respect to SeaMex and authorized

16   discovery against Seadrill and Fintech, subject to, quote,

17   preservation of all rights, objections, and defenses, unquote,

18   and as otherwise set forth in the discovery order.

19         On November 14th, 2018, the foreign representative

20   served a subpoena on Seadrill, pursuant to which the foreign

21   representative seeks, among other things, a deposition pursuant

22   to Federal Rule of Civil Procedure 30(b)(6) of Seadrill in New

23   York City on April 3rd, 2019.

24         Parties have engaged in meet-and-confers and in a

25   telephonic conference with Court, but have been unable to reach

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

45

1   a resolution with respect to Seadrill's request that the

2   foreign representative withdraw the subpoena.

3         Foreign representative summarizes the three categories

4   of information he seeks in the deposition of Seadrill's

5   30(b)(6) witness, as follows:  one, the debtors; two, the jack-

6   up rigs and the Oro Negro contracts, including efforts by

7   Seadrill or the bondholders to, A, take over the jack-up rigs

8   or to replace Perforadora in the Oro Negro contracts; B, sell

9   or lease the jack-up rigs; and C, redeploy or repurpose the

10  jack-up rigs; and three, any interest or benefit in Pemex's

11  amendments and ultimately purported terminations of the Oro

12  Negro contracts.

13        The foreign representative submits that the scope of

14  the examination is narrow, as is the time period covered, a

15  mere thirteen months from March 2017 to April 2018.  He points

16  out that Seadrill has neither argued that the scope of the

17  topics is too broad or that the period is too long.

18        Finally, according to the foreign representative,

19  document production received from Seadrill and Fintech thus far

20  have revealed what it believes to be the presence of a

21  conspiracy between and amongst SeaMex, Seadrill, Fintech, and

22  the bondholders, prior to the commencement of the debtor's

23  concurso mercantil, with respect to management and eventual

24  purchase of the jack-up rigs, once Pemex terminated the Oro

25  Negro contracts.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

46

1         And the subpoena as issued by the foreign

2   representative is directly relevant to and in furtherance of

3   his exploration of this alleged conspiracy.

4         Parties' positions.  Seadrill argues that the subpoena

5   fails to comply with the territorial limits set forth in

6   Federal Rule of Civil Procedure 45 because no Seadrill

7   representative with any knowledge of the deposition topics or

8   of the events at issue resides, is employed, or regularly

9   conducts business in person within one-hundred miles of New

10  York City.

11        While two members of the Seadrill board of directors,

12  Mr. Vogel and Mr. Davis, do reside within one-hundred miles of

13  New York City, Seadrill submits such individuals cannot be Rule

14  36 -- 30(b)(6) witnesses because neither has personal knowledge

15  concerning the examination topics set forth in the subpoena,

16  and each was appointed to the board of Seadrill in July 2018,

17  well after the events at issue.

18        Seadrill submits that educating either of these

19  individuals is not required by applicable law and that it would

20  impose an undue burden on Seadrill to do so.  Seadrill

21  acknowledges that its former director, Mr. Paul Leand, is

22  located within the Rule 45 geographical limitation, but it has

23  declined to attempt to designate Mr. Leand as its Rule 30(b)(6)

24  corporate representative.  For all of these reasons, Seadrill

25  argues that the subpoena should be quashed.

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**47**

1          The foreign representative accurately points out that

2     Mr. Leand would require virtually no preparation in order to

3     testify as Seadrill's corporate representative for purposes of

4     the Rule 30(b)(6) deposition.  The foreign representative

5     argues that if Seadrill elects not to designate Mr. Leand as

6     its 30(b)(6) witness, it should not be able to look past Mr.

7     Leand and attempt to claim undue burden in preparing for the

8     deposition of one of its two directors who resides within one-

9     hundred miles of New York City.

10          The foreign representative submits that preparation of

11     one of its outside directors to testify on its behalf would not

12     impose an undue burden on Seadrill because the scope and the

13     time frame of the topics listed in the subpoena are narrowly

14     drawn.

15          Applicable law.  Federal Rule of Civil Procedure

16     30(b)(6) provides in relevant part that a party subpoenaed for

17     a deposition testimony, quote, in its notice or subpoena, a

18     party may name as the deponent a public or private corporation

19     or other entity and must describe with reasonable particularity

20     the matters for examination.  The named organization must then

21     designate one or more officers, directors, or managing agents,

22     or designate other persons who consent to testify on its

23     behalf, and it may set out the matters on which each person

24     designated will testify.

25          A subpoena must advise a nonparty organization of its

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

48

1  duty to make this designation.  The persons designated must

2  testify about information known or reasonably available to the

3  organization.  Thus, one court has noted, Rule 30(b)(6) imposes

4  burdens on both the discovering party and the designating

5  party.

6  The party seeking discovery through a Rule 30(b)(6)

7  deposition is required to describe, quote, with

8  particularity -- with reasonable particularity the matters on

9  which examination is requested.  Once served with a deposition

10  notice under Rule 30(b)(6), the responding party is required to

11  produce one or more witnesses knowledgeable about the subject

12  matter of the noticed topics.  See Elan Microelectronics

13  Corporation v. Pixcir Microelectronics Corporation Limited,

14  2013 U.S. Dist. LEXIS 114164 at star 13; Marker v. Union

15  Fidelity Life Insurance Company, 125 F.R.D. 121 at 126, Middle

16  District of North Carolina 1989.

17  Federal Rule of Civil Procedure 45(c)(1)(A) provides

18  that a subpoena may not command a nonparty to attend a

19  deposition beyond, quote, one-hundred miles of where the person

20  resides, is employed, or regularly transacts business in

21  person.

22  Rule 45(d)(3)(A)(ii) further mandates that a court

23  must quash or modify a subpoena if the subpoena, quote,

24  requires a person to comply beyond the geographical limits

25  specified in Rule 45(c).

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**49**

1      Rule 45(d)(1) requires that a party, quote, issuing

2  and serving a subpoena must take reasonable steps to avoid

3  opposing -- imposing undue burden or expense on a person

4  subject to a subpoena.

5      Rule 45(d)(3)(A)(iv) further provides that a court

6  must quash or modify a subpoena that, quote, subjects a person

7  to undue burden.

8      Discussion.  Ruling on the motion, it appears that the

9  Court is faced with three options:  one, quash the subpoena;

10  two, deny the motion to quash and require Mr. Leand, a former

11  director of Seadrill, to testify on Seadrill's behalf; three,

12  deny the motion to quash and require Seadrill to designate

13  either Mr. Davis or Mr. Vogel, the Seadrill directors located

14  within one-hundred miles of New York City, to serve as

15  Seadrill's 30(b)(6) witness, which will involve Seadrill

16  preparing such individual for testimony.

17      Because the Court finds no undue burden in requiring

18  Seadrill to comply with the Rule 30(b)(6) subpoena and no

19  violation of limitations proposed -- imposed by Rule 45 here,

20  the Court declines to quash the subpoena.

21      The Court will discuss each of the second and third

22  options in turn.  First, with respect to Mr. Leand, Seadrill

23  asserts vehemently that the foreign representative cites to no

24  case in which a court has compelled a corporate entity to

25  designate a former director, officer, and/or employee to serve

18-11094-scc   Doc 180-1   Filed 03/28/19   Entered 03/28/19 12:27:30   Exhibit A
Pg 52 of 75
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.

50

as its rule 30(b)(6) designee.  It further submits that the alleged presence of Mr. Leand in New York is irrelevant to this dispute because, as a former director of Seadrill, Mr. Leand is not an appropriate 30(b)(6) designee.

Seadrill points out that the foreign representative has already separately served a Rule 30(b)(6) subpoena on AMA Capital Partners, Mr. Leand's present employer, and Mr. Leand personally.

In sharp contrast, the foreign representative argues that it is uncontroversial for Mr. Leand, the former director, to serve as Seadrill's corporate deponent, citing to a number of cases in which a former employee of a corporate entity has served as the entity's Rule 30(b)(6) witness.  See, e.g., U.S. v. Taylor, 166 F.R.D. 356, Middle District of North Carolina 1996; Goguen v. Techtron (ph.) -- Textron, 476 F.Supp.2d. 5, District Massachusetts, 2007.

Further, because Mr. Leand is intimately familiar with the facts and events being investigated by the foreign representative, foreign representative asserts that it would not be an undue burden for Seadrill to prepare Mr. Leand for deposition.

The Court recognizes that Rule 30(b)(6) permits the corporation named as a deponent to select the individual who will testify on its behalf.  Specifically, the rule states in pertinent part that, quote, the named organization must then

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

51

1   designate one or more officers, directors, or managing agents,

2   or designate other persons who consent to testify on its

3   behalf.

4           Courts have noted that the testimony of a Rule

5   30(b)(6) designee, quote, represents the knowledge of the

6   corporation, not of the individual deponents.  U.S. v. Taylor

7   166 F.R.D. 356 at 361, Middle District of North Carolina, 1996.

8           A Rule 30(b)(6) designee presents the corporation's

9   position on the noticed topics, and the corporation has a duty

10  under Rule 30(b)(6) to provide a witness who is knowledgeable,

11  in order to provide binding answers on behalf of the

12  corporation.  See United States v. Massachusetts Industrial

13  Finance Agency, 162 F.R.D. 410, District of Massachusetts,

14  1995; Starlight International v. Herlihy, 186 F.R.D. 626,

15  District of Kansas 1999.

16          Accordingly, the duty to prepare a Rule 30(b)(6)

17  designee goes beyond matters personally known to the witness or

18  to matters in which the designated witness was personally

19  involved, but also extends to matters reasonably known by the

20  responding party.  See Elan Microelectronics Corporation v.

21  Pixcir Microelectrics (sic) Corporation, 2013 U.S. Dist. LEXIS

22  114164 at star 15, District of Nevada, August 7th, 2013 and

23  cases cited therein.

24          Seadrill cites to decisions from certain courts which

25  it says have held that an adequate excuse for an entity's

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**52**

1  noncompliance with Rule 30(b)(6) has been that all responsive

2  witnesses are located beyond the one-hundred mile limit imposed

3  by Rule 45.  Seadrill argues that the fact patterns in such

4  cases are virtually identical to the facts here.  See, e.g.,

5  Krueger Investments LLC v. Cardinal Health 1 -- Cardinal Health

6  110, Inc., 202 WL 326524, District of Arizona 2012; in Re Moose

7  Enterprises Party Limited, 2016 WL 10987320, Central District

8  of California 2016.  See also motion in page 9 and reply at

9  page 9.

10        The facts of such cases are distinguishable, however,

11  as they did not involve the presence of potential witnesses

12  located within one-hundred miles who, while not knowledgeable

13  as to the responsive information, at the time of the issuance

14  of the subpoena could, in fact, be educated and prepared by the

15  corporation to testify in a Rule 30(b)(6) deposition as to the

16  designated topics.

17        Notably, in one decision cited by Seadrill, Price

18  Waterhouse v. First American Corporation, the court by Judge

19  Sweet specifically noted that its decision would have been

20  different if the subpoena target, PW-UK, had a partner or an

21  employee within one-hundred miles of the court who possessed

22  knowledge of the matters outlined in the subpoena.

23        As the Price Waterhouse court noted, quote, critical

24  to the instant inquiry is that FAC, the subpoena in pardoned,

25  does not dispute the fact that the subpoena would require PW-UK

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

53

1    to produce, at the offices of FAC's counsel in New York, PW-

2    UK's partners or employees who reside, are employed, and

3    regularly transact business more than one-hundred miles beyond

4    the Rule 45 territorial boundaries of this court.  See 182

5    F.R.D. 56, Southern District of New York 1998, parentheses,

6    quote, it is important to bear in mind that if PW-UK could

7    designate a partner or employee capable of responding to the

8    subpoena who meets the territorial prescription of Rule 45, the

9    instant result would most likely be different.

10          In contrast to the cases on which Seadrill relies

11   here, Seadrill has several options with respect to individuals

12   located within one-hundred miles of New York City.  It can name

13   either Mr. Leand or Mr. Vogel and Mr. Davis to testify on its

14   behalf.  Such options do not run afoul of Rule 45.  In fact, in

15   the Court's view, Rule 45 is not implicated here at all.

16          Were Seadrill to select Mr. Leand, a former director,

17   the rule and applicable case law seem clear that, as a former

18   rather than current director of Seadrill, Mr. Leand's consent

19   would be required.  There is no indication, however, that Mr.

20   Leand has been asked for his consent.  Seadrill does not argue

21   that it would be extraordinarily burdensome to prepare him for

22   a Rule 30(b)(6) deposition on the topics outlined previously.

23          To be clear, Court does not believe it has the

24   authority to direct Seadrill to designate Mr. Leand as its

25   30(b)(6) designee.  Assuming arguendo that Seadrill, in fact,

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**54**

1    were to select Mr. Leand and he declines to consent, the Court

2    will next address whether Seadrill should then be required to

3    educate either Mr. Vogel or Mr. Davis to serve as its Rule

4    30(b)(6) witness in order to comply with the subpoena.

5            Seadrill argues that Mr. Vogel and Mr. Davis, two of

6    its directors located within the territorial limits of Rule 45,

7    cannot be Rule 30(b)(6) witnesses because neither has knowledge

8    concerning the topics set forth in the subpoena.  Seadrill

9    asserts that it has no obligation to educate such individuals

10   about the, quote unquote, wide-ranging topics set forth in the

11   subpoena, as this would be unduly burdensome to Seadrill.

12           Contrary to Seadrill's assertions, courts in this

13   district have held that a nonparty has an affirmative duty to

14   designate and prepare corporate designee in accordance with its

15   duties under Rule 30(b)(6) and that such duty, quote, goes

16   beyond matters personally known to such designee or to matters

17   in which that designee was personally involved.  Wultz v. Bank

18   of China Limited, 298 F.R.D. 91, Southern District of New York

19   2014, also known as Wultz II, citing Twentieth Century Fox Film

20   Corporation v. Marvel Enterprises, 2002, WL 1835439, Southern

21   District of New York 2002.

22           If a corporate designee does not possess personal

23   knowledge of the matter set out in the deposition notice,

24   quote, the corporation is obligated to prepare the designees so

25   that they may give knowledgeable and binding answers for the

18-11094-scc   Doc 180-1   Filed 03/28/19   Entered 03/28/19 12:27:30   Exhibit A
Pg 57 of 75
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.

55

1  corporation, and citing Twentieth Century Fox 2002 WL 1835439

2  at star 2.

3          Acknowledging the decision in Wultz II, Seadrill urges

4  the Court to afford it no weigh because Seadrill submits that

5  Wultz II, one, does not cite to a single case to support its

6  ruling and, two, fails to address the multitude of cases in

7  which other courts have determined that it must quash a

8  subpoena under similar circumstances.  See Seadrill motion at

9  page 10.

10          Instead, Seadrill points to an earlier decision in

11 Wultz v. Bank of China Limited, or Wultz I, in which a

12 magistrate judge quashed the defendant's subpoena, stating that

13 it would be unreasonable for the target of the subpoena to be

14 required to educate individuals in New York who had no

15 knowledge of the subpoena matters.  See Wultz I 293 F.R.D. 677,

16 Southern District of New York, 2013.

17          Far from being an outlier without citations, as argued

18 by Seadrill, Wultz II is a decision squarely on point here,

19 contains ample citations supporting its holding, and was

20 rendered by a court in this district.

21          In Wultz II, the Southern District of New York

22 addressed the exact question at issue here, whether the court

23 can require a nonparty to educate an employee or director

24 located within one-hundred miles of the court to serve as

25 deponent for a Rule third -- for third -- Rule 30(b)(6)

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

56

1   testimony on behalf of a corporate entity.  See Wultz II, 298

2   F.R.D. at 98, parentheses, quote, the only issue in question is

3   whether requiring the subpoena target to comply with its

4   affirmative duty to prepare a designee for Rule 30(b)(6)

5   testimony constitutes an undue burden, in light of its

6   assertion that all of the individuals with relevant information

7   or knowledge about the topics reside or work in Jerusalem.

8          In Wultz II, the defendant subpoenaed a nonparty

9   Israeli bank, Bank Hapoalim, which had a branch office in New

10  York.  Bank Hapoalim moved the district court to quash the

11  subpoena, based on Rule 45's geographical limitation.  Like

12  Seadrill, Bank Hapoalim argued, among other reasons, that it

13  had no employees in New York with any relevant knowledge of the

14  topics listed in the subpoena, and that it would be unduly

15  burdensome to educate any of its employees in New York to

16  testify on its behalf, id. at 95.

17         Citing to other cases in this district, the district

18  court determined that, quote, despite its nonparty status,

19  Hapoalim had an affirmative duty to prepare the designee, to

20  the extent matters are reasonably available, whether from

21  documents, past employees, or other sources, end quote, and

22  that Bank Hapoalim was obligated to prepare its designees so

23  that they may give knowledgeable and binding responses on

24  behalf of the bank, id. at 99, citing cases.

25         Although a magistrate judge had previously determined

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
Pg 59 of 75
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.

57

1    to quash the subpoena, the district court -- the court -- the

2    district court determined that the defendant had significantly

3    modified and narrowed the subpoena, following the decision in

4    Wultz I, and therefore it denied Bank Hapoalim's motion to

5    quash, without directly overruling Wultz I.  See Wultz II, 298

6    F.R.D. at 94.

7            The district court concluded that, even though all of

8    the bank's documents and knowledgeable persons were in

9    Jerusalem, requiring Bank Hapoalim's compliance with the Rules

10   30(b)(6) subpoena would not impose an undue burden on the bank,

11   when weighed against defendant's need for the testimony.

12           In so holding, the district court noted that, quote, a

13   person in New York can easily be educated by a person in Israel

14   by telephone, email, or videoconference.  So too here.

15           In Wultz II, the court held, moreover, that, quote,

16   whether a subpoena imposes an undue burden depends on such

17   factors as relevance, the need of the party for the documents,

18   the breadth of the document, the time period covered by it, and

19   the particularity, and the -- of the documents described, and

20   the burden imposed.

21           Finding these factors here, the Court finds that

22   Seadrill has failed to establish the existence of an undue

23   burden that would arise from compliance with its duties under

24   Rule 30(b)(6), even taking into account that it may be required

25   to educate an outside director who does not currently have

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**58**

1    knowledge of the topics set forth in the subpoena.

2            Other than Seadrill's bald assertions that educating

3    Mr. Vogel or Mr. Davis would place, quote, an enormous burden

4    on Seadrill and, quote, that it would have to begin at square

5    one, Seadrill has provided no detailed, compelling arguments as

6    to why it could not comply with its duties under Rule 30(b)(6).

7            Here, the foreign representative seeks to depose

8    Seadrill about seven topics relating to a thirteen-month period

9    from March 7th to April 2018.  See Exhibit 1, Pulecio

10   declaration, at Schedule B.

11           In an effort to address some of Seadrill's concerns

12   that the foreign representative not be given carte blanche to

13   inquire into Seadrill's business as a purported competitor of

14   the debtors, the Court directs the foreign representative to

15   strike topic 1 from the subpoena, which is a general inquiry

16   about the debtors.

17           The Court otherwise finds that the six other subpoena

18   topics are appropriately narrow and that educating Mr. Vogel or

19   Mr. Davis about these discreet topics would be neither unduly

20   burdensome to Seadrill nor a daunting task.  Seadrill has been

21   presented, both by the foreign representative and now by the

22   Court, with numerous options from which to select, in order to

23   comply with its duties under Rule 30(b)(6).

24           While Seadrill has appeared unwilling to avail itself

25   of any of these options thus far, its compliance will now be

**PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.**

**59**

1    required.  For all of the foregoing reasons, the Court denies

2    the motion to quash the subpoena and orders that Seadrill

3    designate a 30(b)(6) witness to testify on its behalf.

4           Seadrill shall inform the foreign representative

5    within seven days of the date hereof of its designation so that

6    the deposition can be scheduled promptly.

7           Any questions?

8           MR. AUSLANDER:  No, Your Honor.

9           THE COURT:  All right.  I would ask that the parties

10   work together on an order and that you make reference and

11   incorporate a transcript of the hearing.  And after you both

12   agree on the form of order, submit it to me, and I'll take a

13   look at that.

14          Questions?

15          UNIDENTIFIED SPEAKER:  No.

16          THE COURT:  Okay.

17          MR. AUSLANDER:  Nothing, Your Honor.

18          THE COURT:  All right.  Thank you very much.

19          IN UNISON:  Thank you.

20          MR. AUSLANDER:  Thanks, Your Honor.

21          UNIDENTIFIED SPEAKER:  Thank you.

22          THE COURT:  Thanks, Matt.

23      (Whereupon these proceedings were concluded at 3:58 PM)

24

25

60

1

2                            I N D E X

3   RULINGS:                                    PAGE    LINE

4   Seadrill's motion to quash 30(b)(6) is      59       1

5   denied

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

61

1

2              C E R T I F I C A T I O N

3

4   I, Michael Drake, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9

10  _____

11  Michael Drake (CER-513, CET-513)

12  AAERT Certified Electronic Transcriber

13

14  eScribers

15  352 Seventh Ave., Suite #604

16  New York, NY 10001

17

18  Date:  March 21, 2019

19

20

21

22

23

24

25

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.
18-11094-scc
Pg 64 of 75

March 20, 2019

## A

**ability (1)**
11:18
**able (3)**
39:24;40:9;47:6
**above (1)**
16:21
**abroad (1)**
33:2
**abrogates (1)**
36:2
**Absolutely (4)**
29:25;30:10,14;
31:12
**accept (1)**
11:16
**accordance (1)**
54:14
**according (3)**
37:17,25;45:18
**Accordingly (1)**
51:16
**account (1)**
57:24
**accounting (1)**
15:17
**accurate (1)**
31:12
**accurately (1)**
47:1
**acknowledges (1)**
46:21
**Acknowledging (1)**
55:3
**acting (1)**
42:23
**action (1)**
43:1
**actions (1)**
43:7
**actively (1)**
22:7
**activities (1)**
40:25
**actual (3)**
17:3,4,7
**actually (7)**
10:5;12:17;15:18;
18:5;24:6;39:3;41:9
**ad (1)**
37:23
**add (2)**
29:3;31:21
**additional (2)**
36:14,19
**address (4)**
6:3;54:2;55:6;
58:11
**addressed (1)**
55:22
**adequate (1)**

## 51:25

**advise (1)**
47:25
**Advisory (1)**
44:13
**affairs (1)**
41:1
**affirmative (7)**
9:9;10:18;18:25;
25:3;54:13;56:4,19
**afford (1)**
55:4
**afield (1)**
40:2
**afoul (1)**
53:14
**afternoon (3)**
4:6,7,8
**against (3)**
43:1;44:13,16;
57:11
**Agency (1)**
51:13
**agents (2)**
47:21;51:1
**aggregating (1)**
5:20
**ago (1)**
23:8
**agree (3)**
22:21;26:23;59:12
**agreed (2)**
39:5,5
**agreement (4)**
24:23;29:10;39:1,2
**ahead (15)**
10:19;11:7;13:11;
14:13;20:20;22:23;
24:10;26:5,14;33:20;
35:9;39:4,15;41:24;
42:4
**allegation (1)**
7:21
**alleged (6)**
11:17;21:20;41:22;
43:7;46:3;50:2
**allow (1)**
42:7
**allowed (1)**
42:5
**Although (1)**
56:25
**always (1)**
43:21
**AMA (3)**
12:20;30:12;50:6
**amend (1)**
28:19
**amendments (1)**
45:11
**American (3)**
15:7;20:15;52:18
**among (3)**

## 7:14;44:21;56:12

**amongst (1)**
45:21
**ample (1)**
55:19
**analysis (2)**
5:10;34:12
**analyze (4)**
36:6,6,7;37:14
**analyzed (1)**
22:15
**analyzes (1)**
19:16
**and/or (2)**
42:23;49:25
**antiterrorism (1)**
41:21
**appear (2)**
13:11;40:4
**appeared (1)**
58:24
**appears (1)**
49:8
**apples (1)**
36:2
**applicable (4)**
27:16;46:19;47:15;
53:17
**applied (1)**
20:23
**applies (2)**
8:4;33:12
**apply (3)**
5:14;6:21;33:14
**appointed (1)**
46:16
**appropriate (7)**
10:1,11,12,15;
11:23;37:15;50:4
**appropriately (1)**
58:18
**approved (1)**
28:13
**April (3)**
44:23;45:15;58:9
**Arafat (1)**
15:1
**argue (2)**
23:25;53:20
**argued (4)**
21:14;45:16;55:17;
56:12
**arguendo (1)**
53:25
**argues (6)**
46:4,25;47:5;50:9;
52:3;54:5
**arguing (1)**
21:16
**argument (6)**
5:1;13:2,9,14;
27:25;29:22
**arguments (2)**

## 5:14;58:5

**arise (1)**
57:23
**arising (1)**
43:1
**Arizona (1)**
52:6
**around (3)**
13:19;23:10;43:17
**aside (1)**
12:8
**assertion (1)**
56:6
**assertions (2)**
54:12;58:2
**asserts (3)**
49:23;50:19;54:9
**assets (1)**
28:18
**associated (1)**
35:15
**Assuming (1)**
53:25
**attach (1)**
44:3
**attaches (2)**
32:24,25
**attack (1)**
42:2
**attempt (2)**
46:23;47:7
**attend (1)**
48:18
**August (2)**
17:11;51:22
**AUSLANDER (3)**
59:8,17,20
**authenticate (1)**
15:4
**authorities (1)**
20:11
**Authority (2)**
14:12;53:24
**authorization (1)**
28:15
**authorized (1)**
44:15
**avail (1)**
58:24
**available (5)**
12:4;19:1,19;48:2;
56:20
**Aviv (1)**
42:2
**avoid (1)**
49:2
**aware (5)**
30:18;41:23;42:12,
13,13
**away (3)**
27:24;28:4;43:22

## B

**back (4)**
40:3,13;43:17,17
**back-and-forth (1)**
5:11
**Background (1)**
44:8
**bald (1)**
58:2
**Bank (20)**
41:22,23;42:2,4,5,
6,8,12,12;54:17;
55:11;56:9,9,10,12,
22,24;57:4,9,10
**bank's (1)**
57:8
**based (1)**
56:11
**basically (4)**
17:22;28:16;39:4;
42:11
**basis (2)**
22:19;25:6,7;35:9
**BBC (1)**
14:17
**bear (5)**
15:12;16:4,11;
44:6;53:6
**becomes (2)**
23:19;44:3
**begin (2)**
40:4;58:4
**beginning (1)**
31:9
**begins (2)**
18:14;40:1
**behalf (19)**
4:12,14,16;11:2,13,
15;12:20;35:16;
47:11,23;49:11;
50:24;51:3,11;53:14;
56:1,16,24;59:3
**believes (3)**
30:2;42:25;45:20
**bench (3)**
43:23;44:1,7
**benefit (1)**
45:10
**beyond (6)**
48:19,24;51:17;
52:2;53:3;54:16
**binding (1)**
51:11;54:25;56:23
**bit (2)**
5:8;6:6
**blanche (1)**
58:12
**board (2)**
46:11,16
**Boek (1)**
32:24

# C

**bondholders (8)**
21:19;22:7,9;
37:23;42:22,23;45:7,
22
**bones (1)**
32:18
**both (6)**
5:10,13,14;48:4;
58:21;59:11
**boundaries (1)**
53:4
**branch (2)**
34:4;56:9
**breadth (1)**
57:18
**break (1)**
43:16
**brief (3)**
27:10;28:17;35:20
**bright (1)**
37:12
**bring (2)**
21:3;37:18
**British (1)**
15:17
**broad (3)**
22:22;37:17;45:17
**broken (1)**
37:15
**Brothers (1)**
23:4
**brought (2)**
38:25;39:7
**bunch (1)**
20:12
**burden (38)**
21:11,12;22:23,24;
23:2,6,9;29:3,22;
30:14;31:3,13;32:13;
33:8;35:10,15,16;
36:2,3,6,7,8;37:14;
39:8;40:10;46:20;
47:7,12;49:3,7,17;
50:20;56:5;57:10,16,
20,23;58:3
**burdens (4)**
24:7;31:19;40:21;
48:4
**burdensome (11)**
24:9;28:8;31:1;
33:4,5;35:14,23;
53:21;54:11;56:15;
58:20
**bureau (1)**
14:20
**Burton (1)**
27:14
**business (8)**
34:4;35:17;38:13;
40:5;46:9;48:20;
53:3;58:13

**California (2)**
26:22;52:8
**call (2)**
8:14;40:3
**came (4)**
20:2;24:1;26:14,17
**can (32)**
6:11;7:14,15,25;
8:1;12:8;13:10,11;
18:20;19:19,20,20,
21;23:17,20,24;24:3;
27:10;29:18;30:4;
32:4,11;33:2;40:2,3;
43:23;44:2,4;53:12;
55:23;57:13;59:6
**capable (4)**
15:13;16:5,12;53:7
**Capital (1)**
50:7
**Cardinal (2)**
52:5,5
**care (1)**
32:9
**carefully (2)**
4:23;10:24
**Carolina (4)**
26:21;48:16;50:14;
51:7
**carte (1)**
58:12
**case (52)**
5:12,25;6:22;7:3;
8:25;9:9,17;10:20;
11:6,9,22,24;12:1;
13:16;14:1,16;15:6,
25;17:1,4;18:5,9,10,
18;19:5,10,12;20:22;
21:19;23:14;24:2;
25:2,9,12,15;26:3,7,
8,9;27:16;35:11,14;
36:24;39:20;41:8,17,
21,21;42:17;49:24;
53:17;55:5
**cases (52)**
4:24;5:22;6:10,21;
8:2;9:18;10:6,25;
11:11;13:18,18,19;
14:8,17;15:5;17:23;
18:3,15;19:14;20:12,
17;24:4;25:8,10;
26:14,21;27:1,8,10,
15,20,22;30:1;32:20;
33:4,9,10,14;35:22,
24;36:7,22,24;37:17;
50:12;51:23;52:4,10;
53:10;55:6;56:17,24
**categorically (1)**
23:1
**categories (1)**
45:3

**category (3)**
8:1;11:1,3
**cause (1)**
42:25
**causes (1)**
20:22
**causing (2)**
13:23;35:6
**Central (1)**
52:7
**Century (2)**
54:19;55:1
**certain (1)**
51:24
**Chapter (1)**
41:3
**characterization (1)**
14:6
**chartering (1)**
38:16
**China (4)**
41:22,23;54:18;
55:11
**China's (1)**
42:2
**choice (1)**
43:21
**choose (1)**
10:7
**chosen (1)**
7:17
**circumstances (2)**
37:16;55:8
**citation (2)**
19:4,10
**citations (7)**
18:8,18;19:8,8;
44:4;55:17,19
**cite (8)**
5:22;10:6;16:7;
27:9,21;29:25;36:23;
55:5
**cited (7)**
5:12;7:3;18:3;
20:12;35:11;51:23;
52:17
**cites (6)**
18:9,10,15;36:23;
49:23;51:24
**citing (5)**
50:11;54:19;55:1;
56:17,24
**City (6)**
44:23;46:10,13;
47:9;49:14;53:12
**Civil (4)**
44:22;46:6;47:15;
48:17
**claim (1)**
47:7
**Clark (2)**
4:16,16
**clear (11)**

5:9;9:16;10:25;
11:22;13:16;19:9;
25:10;27:6;40:22;
53:17,23
**clearly (1)**
6:1
**client (3)**
39:14,16;40:10
**clients (1)**
39:9
**Cody (1)**
27:13
**coextensive (1)**
39:25
**colleague (1)**
38:24
**Columbia (1)**
14:12
**command (1)**
48:18
**commencement (1)**
45:22
**company (6)**
17:10;23:9;32:1,5;
35:12;48:15
**compel (1)**
7:10,25;8:19,20
**compelled (2)**
8:19;49:24
**compelling (1)**
58:5
**competitor (2)**
38:6;58:13
**completely (5)**
20:9;21:10;26:16;
36:1;39:25
**compliance (3)**
57:9,23;58:25
**complicated (1)**
19:17
**comply (8)**
8:22;46:5;48:24;
49:18;54:4;56:3;
58:6,23
**complying (2)**
12:23;39:17
**concept (2)**
35:22;36:2
**concerned (1)**
24:13
**concerning (4)**
6:23;14:25;46:15;
54:8
**concerns (1)**
58:11
**concert (1)**
42:23
**concluded (2)**
57:7;59:23
**conclusion (1)**
22:4
**concurso (2)**
43:8;45:23

**conduct (1)**
21:20
**conducts (2)**
43:7;46:9
**conference (3)**
23:18;39:4;44:25
**confusion (2)**
17:1,1
**conjunction (1)**
33:11
**connecting (2)**
35:8,9
**connection (2)**
22:18;40:24
**consent (9)**
7:18;11:1;12:5;
30:5;47:22;51:2;
53:18,20;54:1
**consents (4)**
11:13,15,23;13:4
**consequence (1)**
27:18
**conspiracy (2)**
45:21;46:3
**constitutes (1)**
56:5
**consuming (1)**
21:8
**contact (2)**
9:10;10:19
**contains (1)**
55:19
**contemplates (3)**
23:15;25:11;37:16
**context (2)**
16:18;28:1
**continue (1)**
31:25
**continuous (1)**
40:10
**contracts (7)**
28:18,19;37:25;
45:6,8,12,25
**contrary (2)**
26:17;54:12
**contrast (2)**
50:9;53:10
**control (2)**
7:22;42:22
**convince (2)**
9:23;24:8
**convincingly (1)**
21:15
**Corp (1)**
15:7
**corporate (11)**
9:4;25:24;37:10;
46:24;47:3;49:24;
50:11,12;54:14,22;
56:1
**corporation (2)**
7:13;23:20;35:16,
18;39:24;47:18;

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.
18-11094-scc                                                                      Pg 66 of 75

March 20, 2019

48:13,13;50:23;51:6,
9,12,20,21;52:15,18;
54:20,24;55:1
**corporations (1)**
9:18
**corporation's (1)**
51:8
**corporative (1)**
9:11
**correspondence (4)**
22:7;32:24;38:7,10
**costly (1)**
21:7
**counsel (4)**
8:22;11:20;31:5;
53:1
**couple (2)**
7:19;30:11
**course (5)**
21:13;22:17;24:11;
35:14;42:8
**COURT (202)**
4:2,4,9,18,21;5:7;
6:4,7,13,16,19,25;
7:2,6,10,12,23;8:6,8,
11,14;9:6,12,14;10:3,
5,8,10,21,23;11:8,19,
21;12:10,12,15,19,
21;13:1,6,8,12;14:3,
5,10,14,16,19,22;
15:3,5,8,11,19,23;
16:3,9,14,20;17:7,13,
15,18,20,25;18:3,5,8,
11,14,17,21,24;19:7,
15,25;20:5,14,22;
21:6,15,18,24;22:3,6,
12,13,16,18,24;23:1,
4,24;24:10,19,22;
25:5,9,16,18,20,23;
26:11,15,18,19,24;
27:2,5,12,20,23;
28:20,24;29:7,20;
30:3,7,16,21,24;31:9,
14;32:3,6,8,11,16,20;
33:13,18,22,24;34:9,
11,16,20,24;35:1,3,5,
19;36:15,18,21,25;
37:6,8,22;38:8,10;
39:10,16,22;40:13,
15;41:11,25;42:16,
19;43:14,20;44:8,9,
14,25;48:3,22;49:5,9,
17,20,21,24;50:22;
52:18,21,23;53:4,23;
54:1;55:4,20,22,24;
56:10,18;57:1,1,2,7,
12,15,21;58:14,17,
22;59:1,9,16,18,22
**courthouse (3)**
6:22;20:19;26:6
**Courts (4)**
51:4,24;54:12;55:7
**Court's (1)**

53:15
**cover (2)**
31:7;39:13
**covered (2)**
45:14;57:18
**crazy (1)**
27:7
**created (1)**
39:8
**critical (1)**
52:23
**current (8)**
5:18;7:14;13:13;
23:18;32:11,12,14;
53:18
**currently (2)**
32:5;57:25
**custodians (3)**
29:10;31:22,23

## D

**Dakota (1)**
26:21
**Daniel (1)**
4:12
**data (1)**
31:19
**date (1)**
59:5
**daunting (1)**
58:20
**Davis (7)**
46:12;49:13;53:13;
54:3,5;58:3,19
**day (3)**
38:23,23;42:10
**days (2)**
25:15;59:5
**DC (2)**
14:23;26:22
**debtor (1)**
41:2
**debtors (6)**
24:21;28:17,18;
45:5;58:14,16
**debtor's (1)**
45:22
**decision (25)**
5:10;16:19;18:1,2,
10;19:24;20:2,9;
26:16;33:25;34:2,12;
35:17;41:12;43:18,
24;44:1,4,7;52:17,19;
55:3,10,18;57:3
**decisions (6)**
20:8,14;33:25;
34:15,18;51:24
**declaration (2)**
32:25;58:10
**decline (5)**
9:13,14,15,20;12:2
**declined (1)**

46:23
**declines (2)**
49:20;54:1
**defendant (3)**
41:22;56:8;57:2
**defendant's (2)**
55:12;57:11
**defense (2)**
7:5;42:2
**defenses (1)**
44:17
**definitely (1)**
31:15
**definitional (1)**
33:6
**denied (2)**
44:14;57:4
**denies (1)**
59:1
**deny (2)**
49:10,12
**denying (1)**
44:10
**depends (1)**
57:16
**deponent (8)**
12:1;13:17;27:7;
37:18;47:18;50:11,
23;55:25
**deponents (1)**
51:6
**depose (1)**
58:7
**deposed (3)**
16:25;29:14;30:12
**deposition (26)**
6:24;21:5;27:19;
28:10,11,14;30:12;
38:3,22;39:13;40:1,
2;44:21;45:4;46:7;
47:4,8,17;48:7,9,19;
50:21;52:15;53:22;
54:23;59:6
**Depositions (1)**
38:23
**describe (2)**
47:19;48:7
**described (1)**
57:19
**designate (29)**
7:14,15;9:22;10:1,
11;11:1,3,4,7,10;
15:13;16:4,12,24;
30:4,20,23;46:23;
47:5,21,22;49:12,25;
51:1,2;53:7,24;
54:14;59:3
**designated (8)**
7:13,16;8:2;13:10;
47:24;48:1;51:18;
52:16
**designating (3)**
30:1,2;48:4

**designation (3)**
10:9;48:1;59:5
**designee (22)**
8:17,20;9:3;11:23;
18:25;23:20;24:4;
25:24;28:21;29:14;
50:1,4;51:5,8,17;
53:25;54:14,16,17,
22;56:4,19
**designees (2)**
54:24;56:22
**despite (4)**
18:22,23,24;56:18
**detail (1)**
30:4
**detailed (2)**
43:24;58:5
**determined (4)**
55:7;56:18,25;57:2
**determining (1)**
28:8
**devote (1)**
40:11
**different (8)**
7:14;15:15;16:6,
15;21:16;40:17;
52:20;53:9
**differently (2)**
6:6;9:8
**direct (2)**
38:5;53:24
**directly (3)**
38:17;46:2;57:5
**director (22)**
5:16;7:2,17;8:15;
9:1;11:2,12;15:24;
19:3;23:18;37:4,6,
10;46:21;49:11,25;
50:3,10;53:16,18;
55:23;57:25
**director/employee (1)**
35:13
**directors (17)**
5:17,17;13:14;
24:15;29:18;32:1,12,
14;33:2;38:13;46:11;
47:8,11,21;49:13;
51:1;54:6
**directs (1)**
58:14
**disagree (8)**
9:6,7;11:5;21:22,
24;22:1,3;40:8
**discovering (1)**
48:4
**discovery (14)**
39:3,7;40:12,16,16,
19,22;44:10,12,13,
15,16,18;48:6
**discreet (1)**
58:19
**discrete (1)**
43:6

**discuss (1)**
49:21
**discussed (1)**
33:1
**discussion (2)**
18:14;49:8
**dispute (3)**
29:7;50:3;52:25
**Dist (2)**
48:14;51:21
**distinguish (5)**
19:13,14;26:11,14,
21
**distinguishable (1)**
52:10
**distinguished (2)**
26:9,12
**District (30)**
14:12;26:25;33:25;
34:1,2,13,17;48:16;
50:14,16;51:7,13,15,
22;52:6,7;53:5;
54:13,18,21;55:16,
20,21;56:10,17,17;
57:1,2,7,12
**docket (2)**
44:10,12
**document (3)**
15:2;45:19;57:18
**documentary (1)**
14:25
**documents (35)**
19:1,3,21;21:19,
25;22:5,6,15;23:13;
29:4,6,13,14,16,19;
31:3,6,6,7,22;33:3;
37:1;39:8,13,18,18,
23,24;40:23;41:7;
43:3;56:21;57:8,17,
19
**done (4)**
8:18;9:16;15:1;
19:21
**dots (1)**
35:8
**down (1)**
20:10
**dozen (1)**
36:23
**drawn (3)**
38:14;41:5;47:14
**duplicate (1)**
41:9
**during (2)**
21:20,21
**duties (5)**
9:18;54:15;57:23;
58:6,23
**duty (15)**
9:10;12:1;18:25;
21:10;25:3;26:5;
28:1,4;48:1;51:9,16;
54:13,15;56:4,19

# E

**earlier (3)**
6:3;33:11;55:10
**easily (1)**
57:13
**easy (1)**
24:17
**educate (24)**
19:19;21:2,10;
22:23;23:7,16;24:18;
28:1,4;31:1,20;32:1,
22;33:7;34:6;35:12,
23;37:3;54:3,9;
55:14,23;56:15;
57:25
**educated (6)**
13:15,23,23;36:5;
52:14;57:13
**educating (7)**
24:24;27:6;31:13;
36:8;46:18;58:2,18
**education (4)**
25:11,13,24;37:16
**effectuate (1)**
42:24
**effort (1)**
58:11
**efforts (4)**
28:19;37:22;42:21;
45:6
**eg (2)**
50:13;52:4
**either (7)**
10:15;25:24;29:17;
46:18;49:13;53:13;
54:3
**Elan (2)**
48:12;51:20
**elects (1)**
47:5
**eleven (2)**
25:14;35:20
**eligible (2)**
7:16;8:1
**Eloy (1)**
4:7
**else (3)**
7:15;10:16;20:20
**email (2)**
19:21;57:14
**Emanuel (2)**
4:13;40:1
**employed (3)**
46:8;48:20;53:2
**employee (18)**
7:25;9:10,10;
10:19,25;11:7,11,12;
15:13;16:5,12,23;
37:4;49:25;50:12;
52:21;53:7;55:23
**employees (13)**

5:18;9:19;10:15;
19:2;31:25;32:2,4,11,
14;53:2;56:13,15,21
**employer (1)**
50:7
**employs (2)**
17:8;24:13
**enabled (1)**
41:24
**end (4)**
9:3;16:9;42:10;
56:21
**engaged (3)**
5:11;22:8;44:24
**English (2)**
29:16;31:6
**enormous (1)**
58:3
**enough (1)**
32:20
**entered (1)**
44:9
**Enterprises (2)**
52:7;54:20
**entire (2)**
16:19;19:14
**entitlement (1)**
40:16
**entity (8)**
17:2;34:3;37:10;
42:24;47:19;49:24;
50:12;56:1
**entity's (2)**
50:13;51:25
**equal (1)**
10:14
**Erins (1)**
27:13
**establish (1)**
57:22
**Estate (1)**
14:11
**Europe (2)**
21:4,5
**even (7)**
8:18;11:17;12:2;
17:23;37:4;57:7,24
**event (1)**
44:3
**events (3)**
46:8,17;50:18
**eventual (1)**
45:23
**exact (7)**
6:11,14,16;17:9;
34:15;39:13;55:22
**Exactly (7)**
15:25;16:10;17:20;
19:2;23:15;43:4,5
**examination (5)**
41:16;45:14;46:15;
47:20;48:9
**examine (2)**

38:12;43:9
**example (3)**
19:13;24:21;28:24
**except (1)**
12:8
**exception (4)**
25:13;26:4;33:15;
39:6
**excuse (1)**
51:25
**Exhibit (1)**
58:9
**exist (2)**
16:22;23:13
**existence (1)**
57:22
**expect (1)**
26:17
**expedition (1)**
41:4
**expense (1)**
49:3
**explain (3)**
14:7;28:21;43:25
**explains (1)**
18:10
**explicitly (1)**
27:17
**exploration (1)**
46:3
**extends (1)**
51:19
**extent (7)**
5:1;18:25;27:15;
30:25;31:12;40:1;
56:20
**extraneous (1)**
19:17
**extraordinarily (1)**
53:21
**extreme (5)**
22:23,24;23:2,5,9

# F

**FAC (2)**
17:11;52:24
**faced (1)**
49:9
**FAC's (1)**
53:1
**fact (28)**
5:20;6:11,14,16;
9:14;10:7,8,10;12:9;
13:1,21;14:9;16:1;
17:9;20:16;21:1;
24:1;33:1;41:5,18;
42:6,14;43:1;52:3,14,
25;53:14,25
**factors (3)**
19:17;57:17,21
**facts (11)**
6:21;19:12;31:10;

34:3;35:24;38:2;
41:19;43:2;50:18;
52:4,10
**failed (1)**
57:22
**fails (2)**
46:5;55:6
**fair (5)**
38:11;39:23;40:9,
9;41:2
**falls (3)**
10:25;11:2;28:4
**familiar (2)**
30:13;50:17
**far (7)**
24:13;29:4;40:24;
42:9;45:19;55:17;
58:25
**faulting (1)**
34:11
**favor (1)**
17:19
**Federal (4)**
44:22;46:6;47:15;
48:17
**feel (2)**
10:1;22:22
**few (1)**
29:3
**Fidelity (1)**
48:15
**fifteen (1)**
43:17
**filing (2)**
23:7;43:8
**Film (1)**
54:19
**final (2)**
31:8,21;35:10
**Finally (1)**
45:18
**Finance (1)**
51:13
**find (9)**
6:1;9:19;18:19;
23:6,7;25:15;33:5;
35:11;42:5
**finding (3)**
40:6;43:10;57:21
**finds (3)**
49:17;57:21;58:17
**fine (1)**
7:24
**fine-tune (1)**
41:13
**finish (1)**
29:12
**Fintech (4)**
44:13,16;45:19,21
**fire (1)**
34:22
**firm (1)**
15:17

**first (8)**
5:13;7:20;15:7;
20:14;26:13;28:13;
49:22;52:18
**fishing (1)**
41:4
**fit (1)**
43:23
**five (3)**
27:10,14;30:1
**five-year (1)**
33:5
**focused (1)**
40:4
**folks (1)**
29:23
**follow (3)**
20:8,16;31:2
**following (2)**
18:12;57:3
**follows (3)**
5:9;44:8;45:5
**footnote (2)**
16:20,22
**force (7)**
11:4;12:3;21:4;
30:7,16,17,17
**forced (1)**
13:11
**forcing (1)**
13:22
**foregoing (1)**
59:1
**foreign (41)**
4:13,14,16;5:15,16,
20;7:15,21;21:8;
25:14;26:10;30:2;
31:10;34:3;39:23;
40:18,25;41:1;42:25;
43:5;44:11,19,20;
45:2,3,13,18;46:1;
47:1,4,10;49:23;50:5,
9,18,19;58:7,12,14,
21;59:4
**forget (1)**
29:20
**form (1)**
59:12
**formal (1)**
44:4
**format (1)**
4:25
**former (26)**
7:2,17,25;8:15;9:1,
10,10,19;10:19,25;
11:2,7,10,11;30:2;
32:2;35:13;36:23;
46:21;49:10,25;50:3,
10,12;53:16,17
**formulating (1)**
22:8
**Forth (7)**
29:17;44:18;46:5,

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.
18-11094-scc                                          Pg 68 of 75

March 20, 2019

15;54:8,10;58:1

**found (5)**
5:7;7:4;26:8,9;
42:14

**Four (3)**
31:22,25;38:16

**fours (1)**
34:3

**Fox (2)**
54:19;55:1

**frame (3)**
6:5;9:8;47:13

**framework (1)**
27:7

**frankly (1)**
40:17

**FRD (10)**
48:15;50:14;51:7,
13,14;53:5;54:18;
55:15;56:2;57:6

**front (1)**
22:12

**frustrated (1)**
35:6

**FSupp2d (1)**
50:15

**further (4)**
48:22;49:5;50:1,17

**furtherance (1)**
46:2

**G**

**Gabriel (1)**
4:14

**game (4)**
22:8;25:25;38:11;
41:2

**gave (2)**
18:22;40:18

**general (3)**
27:22,25;58:15

**generally (4)**
38:13,18,20;40:5

**geographical (4)**
28:2;46:22;48:24;
56:11

**geography (1)**
12:10

**given (2)**
14:8;58:12

**gives (2)**
9:9;25:3

**goes (3)**
17:19;51:17;54:15

**Goguen (1)**
50:15

**Good (4)**
4:6,7,8,21

**grand (1)**
41:5

**granted (2)**
6:10;19:12

**granting (1)**
44:11

**great (3)**
12:15;37:8,8

**group (2)**
28:14;37:23

**groups (1)**
7:14

**guess (2)**
8:22;39:6

**H**

**hang (1)**
43:17

**Hapoalim (6)**
18:24;56:9,10,12,
19,22

**Hapoalim's (2)**
57:4,9

**happened (1)**
29:7

**happens (1)**
33:17

**happy (1)**
5:4

**hard (2)**
35:6;36:10

**Health (2)**
52:5,5

**hear (3)**
5:1,4;40:20

**heard (1)**
12:22

**hearing (4)**
4:18;27:3;43:21;
59:11

**held (4)**
34:9;51:25;54:13;
57:15

**hello (1)**
8:15

**help (2)**
27:5,8

**helpful (3)**
27:15;28:7;35:11

**hereof (1)**
59:5

**Here's (3)**
7:7;11:15;42:20

**Herlihy (1)**
51:14

**herring (1)**
22:11

**hey (1)**
38:13

**hoc (1)**
37:23

**Hold (5)**
14:14;34:20,22,24;
42:2

**holding (2)**
55:19;57:12

**holds (1)**
38:2

**honest (1)**
6:1

**Honor (49)**
4:6,7,8,20;5:5;6:2;
9:8;10:17;11:5;
12:11;14:7;16:8,10;
17:6,10;18:19;19:9,
22;20:13;21:22;
22:10;23:22;24:6,16;
25:3;26:13,23;27:9;
28:13;29:1,25;30:10;
31:18;33:10;34:14;
35:4;36:13,16,20;
38:5,21;39:4,12;
40:8;41:10,15;59:8,
17,20

**huge (1)**
39:8

**human (1)**
17:7

**hundred (23)**
6:22;7:8;8:9;13:14,
24;16:23;17:2;20:18,
25;21:1;24:16;26:6,
7;28:4;30:18;33:18,
19,21;36:4,5,9;40:3;
47:9

**hundred-mile (3)**
5:21;28:2,9

**I**

**id (2)**
56:16,24

**identical (1)**
52:4

**identified (1)**
31:23

**identify (1)**
17:23

**ignore (2)**
12:9;34:1

**ignored (1)**
21:10

**II (9)**
54:19;55:3,5,18,
21;56:1,8;57:5,15

**immediately (1)**
7:6

**impart (1)**
23:19

**implicated (1)**
53:15

**important (5)**
15:12;16:4,11;
42:14;53:6

**impose (3)**
46:20;47:12;57:10

**imposed (2)**
9:18;49:19;52:2;
57:20

**imposes (3)**
21:11;48:3;57:16

**imposing (1)**
49:3

**Inc (1)**
52:6

**incidental (1)**
31:11

**including (4)**
20:14,15;37:22;
45:6

**incorporate (1)**
59:11

**indicates (1)**
17:4

**indication (1)**
53:19

**indirectly (1)**
38:17

**indiscernible (1)**
29:2

**individual (3)**
49:16;50:23;51:6

**individuals (14)**
23:23;24:20;26:5;
31:1,23,25;33:1;
37:12;46:13,19;
53:11;54:9;55:14;
56:6

**Industrial (1)**
51:12

**inform (1)**
59:4

**information (5)**
25:1;45:4;48:2;
52:13;56:6

**inquire (1)**
58:13

**inquiry (2)**
52:24;58:15

**instant (1)**
15:14;52:24;53:9

**instead (2)**
39:17;55:10

**Insurance (1)**
48:15

**Integradora (1)**
38:18

**interest (1)**
45:10

**interested (2)**
23:11;41:1

**interesting (1)**
31:15

**International (1)**
51:14

**interpreted (1)**
26:3

**intimately (1)**
50:17

**into (7)**
5:24;11:1,2;32:22;
41:17;57:24;58:13

**investigated (1)**
50:18

**investigating (1)**
31:11

**Investments (1)**
52:5

**involve (2)**
49:15;52:11

**involved (2)**
51:19;54:17

**involvement (3)**
21:20;42:21;43:10

**involving (1)**
31:10

**irrelevant (1)**
50:2

**Israel (2)**
19:19;57:13

**Israeli (6)**
42:4,5,6,8,12;56:9

**issuance (1)**
52:13

**issue (6)**
5:8;6:5;19:22;
42:14;46:8,17;55:22;
56:2

**issued (2)**
21:6;46:1

**issues (3)**
22:11;29:16;41:6

**issuing (2)**
12:10;49:1

**J**

**jack- (1)**
45:5

**jackup (6)**
37:24;38:8,11,17,
19;42:22

**jack-up (1)**
45:7,9,10,24

**Jerusalem (2)**
56:7;57:9

**Judge (10)**
15:11;18:15;19:16,
25;34:9;42:10,14;
52:18;55:12;56:25

**July (1)**
46:16

**jurisdiction (1)**
26:20

**jurisdictions (1)**
20:9

**jury (1)**
42:15

**K**

**Kansas (1)**
51:15

**keep (2)**
29:23;35:3

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.
18-11094-scc                                                    Pg 69 of 75

March 20, 2019

**kind (7)**
5:7,9,11;6:18;7:7;
31:14,15
**Klieman (1)**
14:11
**knowledge (48)**
5:17,18;6:23;7:17;
8:16;9:1,17;13:16,20,
22;14:25;16:17;
17:10;20:19,21;
23:15,16,17,17,19;
24:3,4;25:10;26:5;
27:18;28:3,9;31:24;
32:14,21;33:8,16,17,
20;34:6;35:23;36:9;
42:8;46:7,14;51:5;
52:22;54:7,23;55:15;
56:7,13;58:1
**knowledgeable (8)**
32:22,23;48:11;
51:10;52:12;54:25;
56:23;57:8
**known (5)**
48:2;51:17,19;
54:16,19
**knows (1)**
25:25
**Krueger (1)**
52:5

**L**

**language (1)**
27:17
**law (19)**
6:8;7:18,23;8:25;
9:9,16;10:20;11:22,
24;13:16;14:1;19:10;
23:14;24:2;25:2,10;
46:19;47:15;53:17
**layer (1)**
28:2
**lays (1)**
28:7
**Leand (47)**
5:16;6:25;7:16,19;
8:9,14,15;9:4;10:10,
15;11:15,22,24,25;
12:2,8,18;13:2,3;
21:18;22:6;23:12,17,
17;24:12;29:17,21,
23;30:12;46:21,23;
47:2,5,7;49:10,22;
50:2,3,7,10,17,20;
53:13,16,20,24;54:1
**Leand's (2)**
50:7;53:18
**lease (1)**
45:9
**leasing (1)**
38:16
**leave (1)**
44:12

**lectern (1)**
34:21
**legion (1)**
35:25
**Lehman (2)**
23:4,6
**less (1)**
43:24
**lessen (2)**
13:2,9
**letters (1)**
21:6
**LEXIS (2)**
48:14;51:21
**Liberation (1)**
20:15
**Life (1)**
48:15
**light (1)**
56:5
**likely (2)**
15:14;53:9
**limit (3)**
20:23;33:12;52:2
**limitation (6)**
5:19,21;28:2;36:1;
46:22;56:11
**limitations (2)**
26:2;49:19
**Limited (10)**
31:6,7;37:23;
38:22;44:13,14;
48:13;52:7;54:18;
55:11
**limits (5)**
8:4;13:10;46:5;
48:24;54:6
**line (1)**
19:14
**listed (2)**
47:13;56:14
**listen (2)**
10:23;38:16
**listening (1)**
11:8
**literally (4)**
12:9;23:10,12;34:2
**little (4)**
6:6;30:8;41:13;
44:5
**LLC (1)**
52:5
**located (17)**
15:18,20,21,23;
17:5,8;31:4,4,24;
33:19;46:22;49:13;
52:2,12;53:12;54:6;
55:24
**London (5)**
14:24,24;15:2;
24:18;31:25
**long (5)**
25:2;33:7;39:2;

44:6;45:17
**look (7)**
15:8;16:19;33:11;
37:7,20;47:6;59:13
**looked (1)**
22:16
**looking (3)**
6:13;36:7;38:12
**lot (2)**
37:2;41:9

**M**

**magistrate (2)**
55:12;56:25
**magnitude (1)**
41:6
**major (1)**
37:10
**makes (2)**
13:16;20:24
**making (1)**
33:6
**man (1)**
37:9
**management (1)**
45:23
**managing (2)**
47:21;51:1
**mandates (1)**
48:22
**mantra (1)**
32:17
**many (3)**
18:6;39:7;41:8
**March (2)**
45:15;58:9
**Marker (1)**
48:14
**Marvel (1)**
54:20
**Massachusetts (3)**
50:16;51:12,13
**massive (1)**
17:1
**Matt (2)**
4:10;59:22
**matter (5)**
8:16;12:10;15:19;
48:12;54:23
**matters (12)**
19:1;47:20,23;
48:8;51:17,18,19;
52:22;54:16,16;
55:15;56:20
**may (11)**
11:3;16:25;29:3;
31:21;42:25;47:18,
23;48:18;54:25;
56:23;57:24
**maybe (3)**
5:5,24;19:9
**mean (12)**

13:22;17:17,25;
18:17,21;27:24;
33:18;34:6;35:5,19,
20,24
**Meaning (4)**
18:1;28:18;32:1;
34:3
**meat (1)**
32:17
**meet (2)**
4:4,5
**meet-and-confers (1)**
44:24
**meets (2)**
16:13;53:8
**members (1)**
46:11
**mercantil (1)**
45:23
**mere (1)**
45:15
**merely (3)**
11:11;12:3;34:21
**met (1)**
16:16
**Microelectrics (1)**
51:21
**Microelectronics (3)**
48:12,13;51:20
**Middle (3)**
48:15;50:14;51:7
**mile (1)**
13:25;52:2
**miles (36)**
6:22;7:8,8;9:9,2,
23;13:13,14,20,22,
24;16:24;17:3;19:18;
20:18,25;21:1;24:16;
26:6,7;28:4;33:18,19,
21;36:4,5,9;46:9,12;
47:9;48:19;49:14;
52:12,21;53:3,12;
55:24
**million-document (1)**
41:8
**mind (5)**
5:9;15:12;16:4,11;
53:6
**minimal (1)**
31:11
**minutes (1)**
43:17
**mistake (1)**
9:20
**misunderstanding (1)**
7:23
**modified (2)**
39:5;57:3
**modify (2)**
48:23;49:6
**moment (1)**
33:7
**money (4)**

39:14,16;40:12;
42:7
**months (3)**
37:19;40:11;45:15
**Moose (1)**
52:6
**more (12)**
10:20;11:21,22;
29:5;37:17;42:8;
43:1;44:4;47:21;
48:11;51:1;53:3
**moreover (1)**
57:15
**most (6)**
5:25;10:1,11,12,
14;53:9
**motion (13)**
6:9;19:11;44:7,11,
12,15;49:8,10,12;
52:8;55:8;57:4;59:2
**moved (2)**
14:13;56:10
**much (6)**
4:24;29:5;31:17;
37:17;39:7;59:18
**multiplied (1)**
40:21
**multitude (1)**
55:6
**Murphy (1)**
27:14
**must (10)**
7:13;47:19,20,25;
48:1,23;49:2,6;
50:25;55:7

**N**

**name (2)**
47:18;53:12
**named (3)**
47:20;50:23,25
**narrative (1)**
28:16
**narrow (8)**
37:19;42:18,20,20,
20;43:7;45:14;58:18
**narrowed (5)**
20:3,4;42:10,11;
57:3
**narrowing (3)**
20:6,7,7
**narrowly (4)**
29:2;38:14;41:4;
47:13
**need (9)**
10:20;19:25;21:1;
29:18;33:18;41:13;
44:3;57:11,17
**needs (1)**
36:5
**Negro (6)**
37:24;38:5;45:6,8,

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.
18-11094-scc                                    Pg 70 of 75

March 20, 2019

12,25
**neighborhood (2)**
12:9;23:12
**neither (5)**
5:11;45:16;46:14;
54:7;58:19
**Nevada (1)**
51:22
**new (34)**
5:17;15:18,22,23;
16:23;17:5,9,14;
26:25;33:25;34:1,2,4,
4,13,18;44:22;46:9,
13;47:9;49:14;50:2;
53:1,5,12;54:18,21;
55:14,16,21;56:9,13,
15;57:13
**news (1)**
14:20
**next (1)**
54:2
**Nice (2)**
4:4,5
**night (2)**
5:8;35:8
**nobody (1)**
13:19
**noncompliance (1)**
52:1
**none (1)**
35:21
**nonetheless (1)**
7:24
**nonexecutive (2)**
24:15;37:4
**nonparty (9)**
14:13;15:17;18:24;
47:25;48:18;54:13;
55:23;56:8,18
**nonresponsive (1)**
39:7
**nor (1)**
18:10;58:20
**North (5)**
26:21,21;48:16;
50:14;51:7
**Norway (3)**
10:16;24:18;31:24
**Notably (1)**
52:17
**noted (5)**
48:3;51:4;52:19,
23;57:12
**notice (5)**
28:15;30:12;47:17;
48:10;54:23
**noticed (2)**
48:12;51:9
**notion (1)**
21:10
**November (2)**
44:9,19
**nowhere (1)**

27:7
**number (13)**
6:10;14:8;20:13;
26:12;27:9;31:6;
34:15;38:16;41:6,7;
44:10,12;50:11
**numerous (2)**
8:2;58:22

## O

**objections (1)**
44:17
**obligated (2)**
54:24;56:22
**obligation (6)**
9:22;10:18;20:17,
20,24;54:9
**obtain (2)**
42:22;44:12
**obviously (2)**
30:13;38:6
**occurred (1)**
43:7
**off (3)**
7:7;39:10,11
**office (1)**
56:9
**officer (1)**
49:25
**officers (2)**
47:21;51:1
**offices (1)**
53:1
**once (1)**
45:24;48:9
**one (50)**
5:24;6:1,23;7:4;
8:1;10:15;11:6,21,
22;13:15;14:10,12,
17;16:17;17:9;18:20;
21:9;23:10;24:20;
26:3,17;27:17;28:4,
10,17;29:3;30:11;
31:21;33:1;34:5;
36:9,24,24;37:13;
38:12;39:6;43:1,12,
13;45:5;47:8,11,21;
48:3,11;49:9;51:1;
52:17;55:5;58:5
**one- (1)**
47:8
**one-hundred (10)**
46:9,12;48:19;
49:14;52:2,12,21;
53:3,12;55:24
**one-hundred-mile (2)**
31:2;36:1
**one-hundred-territorial (1)**
33:12
**ones (1)**
14:25
**ongoing (1)**

29:11
**only (8)**
4:18;14:19;18:7;
26:7,8;28:3;41:17;
56:2
**onus (1)**
35:17
**open-ended (1)**
41:4
**operate (3)**
24:21,24,25
**operating (1)**
38:19
**opinion (1)**
16:9
**opposing (1)**
49:3
**opposite (1)**
34:15
**opposition (1)**
35:20
**option (1)**
12:4
**options (6)**
49:9,22;53:11,14;
58:22,25
**oranges (1)**
36:3
**order (15)**
11:25;12:7;37:18;
40:19;42:24;44:3,9,
10,18;47:2;51:11;
54:4;58:22;59:10,12
**ordered (2)**
40:15,18
**orders (1)**
59:2
**organization (4)**
47:20,25;48:3;
50:25
**Oro (6)**
37:24;38:5;45:6,8,
11,24
**Otherwise (3)**
7:10;44:18;58:17
**out (20)**
6:11;8:11;9:19;
12:3,17;16:18;18:1;
20:1;24:13;27:5,8;
28:7;42:5;43:1,10;
45:16;47:1,23;50:5;
54:23
**outlier (5)**
14:4;18:7;20:11;
26:8;55:17
**outlined (2)**
52:22;53:22
**outside (8)**
5:19;13:13,21;
28:3;33:19;34:1;
47:11;57:25
**over (12)**
17:2;22:9;23:4;

25:25;28:2;29:8;
36:4,4;37:24;38:8,
11;45:7
**overrule (2)**
19:24;20:2
**overruling (1)**
57:5

## P

**page (7)**
12:13,14;18:21,22;
52:8,9;55:9
**pages (4)**
37:2;41:7,9;44:6
**painted (1)**
43:5
**Palestine (1)**
20:15
**Palestinian (1)**
14:11
**papers (7)**
4:23;5:2;12:17;
21:14;26:9;35:12;
36:17
**parallel (1)**
38:24
**pardoned (1)**
52:24
**parentheses (2)**
53:5;56:2
**part (12)**
16:8;29:22;30:9;
31:15;32:16;35:17;
38:3;40:23;44:10,11;
47:16;50:25
**participate (1)**
29:21
**particularity (4)**
47:19;48:8,8;57:19
**parties (7)**
5:7;10:9;19:16;21;
43:1;44:24;59:9
**Parties' (1)**
46:4
**partner (6)**
15:13;16:5,12,23;
52:20;53:7
**Partners (2)**
50:7;53:2
**party (15)**
11:6,10;17:12;
20:24;33:19;47:16,
18;48:4,5,6,10;49:1;
51:20;52:7;57:17
**passing (2)**
5:8;35:8
**past (2)**
19:1,3;47:6;56:21
**pattern (9)**
6:12,14,17;14:9;
16:1;17:9;20:16;
41:18;43:2

**patterns (1)**
52:3
**Paul (1)**
46:21
**Pemex (3)**
28:19;42:24;45:24
**Pemex's (1)**
45:10
**pending (1)**
44:8
**people (15)**
7:14;13:10,21;
14:20,23,24,24;15:1,
21;16:16;17:8;19:18;
23:7,11;28:3
**people-move-on (1)**
13:18
**Peral (1)**
4:7,7
**percent (2)**
30:18;40:4
**perfect (3)**
43:23,24;44:4
**Perforadora (1)**
45:8
**period (10)**
21:21;28:11;29:15;
31:7;33:6;43:8;
45:14,17;57:18;58:8
**permits (1)**
50:22
**permitted (1)**
41:20
**person (37)**
4:5;10:2,11,12,15;
11:1,12;15:23;17:2,3,
4,7,7;19:19;20:18,25;
21:1;23:19;24:2;
32:21,22;33:16,17,
20;36:3,5;37:22;
38:17;46:9;47:23;
48:19,21,24;49:3,6;
57:13,13
**personal (8)**
9:17;13:16;23:14;
25:10;27:18;28:9;
46:14;54:22
**personally (6)**
12:18;50:8;51:17,
18;54:16,17
**persons (5)**
8:1;47:22;48:1;
51:2;57:8
**pertinent (1)**
50:25
**ph (7)**
25:13;27:13,13,14,
14,14;50:15
**phone (4)**
19:20;23:18;29:19;
33:2
**pick (1)**
28:24

18-11094-scc Doc 180-1 Filed 03/28/19 Entered 03/28/19 12:27:30 Exhibit A
PERFORADORA ORO NEGRO, S. DE R.L.
18-11094-scc Pg 71 of 75

March 20, 2019

picture (2)
24:14;43:4
Pixcir (2)
48:13;51:21
place (1)
58:3
plaintiff (1)
41:22
plan (2)
22:8;38:13
please (2)
9:11;43:16
pm (3)
43:19,19;59:23
point (10)
8:11;20:10;27:24;
30:1;31:8,21;33:1;
35:10,25;55:18
pointed (1)
12:17
pointing (2)
12:3;29:23
points (11)
7:19;29:3;30:11;
31:3,19,20;36:19;
45:15;47:1;50:5;
55:10
position (5)
5:23,25;19:11;
29:20;51:9
positions (1)
46:4
possess (1)
54:22
possessed (1)
52:21
possession (1)
31:4
possibility (1)
16:22
potential (1)
52:11
power (1)
37:8
practices (1)
38:19
precedent (1)
18:2
preclude (1)
13:2
precludes (2)
8:25;16:22
Preforadora (2)
11:14;38:18
Preforadora's (1)
22:19
prejudice (1)
44:14
preparation (2)
47:2,10
prepare (14)
18:25;28:8;32:11,
14;35:15;43:22;

50:20;51:16;53:21;
54:14,24;56:4,19,22
prepared (3)
5:1,3;52:14
preparing (4)
27:18;39:15;47:7;
49:16
prerogative (1)
30:19
prescription (2)
16:16;53:8
prescriptions (1)
16:13
presence (3)
45:20;50:2;52:11
present (1)
50:7
presented (2)
31:9;58:21
presents (1)
51:8
preservation (1)
44:17
preside (1)
23:4
pretty (2)
38:3;41:4
prevails (1)
40:18
previously (2)
53:22;56:25
Price (2)
52:17,23
PriceWaterhouse (6)
15:6,9,11,13;16:1;
20:14
principles (1)
5:13
printout (1)
18:22
prior (1)
35:23;43:8;45:22
private (1)
47:18
probably (3)
24:24;35:21;41:9
problem (1)
32:9
Procedure (4)
44:22;46:6;47:15;
48:17
proceeding (1)
43:9
proceedings (1)
59:23
process (4)
25:11,14;27:6;
37:16
produce (4)
21:3;29:4;48:11;
53:1
produced (8)
21:19;29:13;37:2;

39:18,19,22,25;40:24
producing (4)
29:5,12;31:5,22
production (1)
45:19
productions (1)
29:11
profound (1)
35:7
programs (1)
36:11
promptly (1)
59:6
proposed (2)
24:4;49:19
proposition (5)
7:4;14:2,8;19:6;
35:12
protect (1)
40:10
provide (4)
26:5;33:20;51:10,
11
provided (1)
58:5
provides (4)
26:2;47:16;48:17;
49:5
public (1)
47:18
publication (1)
43:23
Puelcio (1)
4:12
Pulecio (2)
32:25;58:9
PULECIO-BOEK (23)
4:12;27:3,4,9,13,
21;28:6,23;29:1,9,25;
30:6,10,18,22,25;
31:18;32:4,7;35:4,
10;36:13,16
purchase (1)
45:24
purely (1)
37:14
purported (2)
45:11;58:13
purpose (1)
40:5
purposes (2)
24:12;47:3
pursuant (3)
21:5;44:20,21
pursue (1)
40:19
put (4)
12:8;34:5;36:4;
37:13
puts (1)
18:1
putting (2)
10:18;32:17

PW- (1)
53:1
PWUK (6)
16:4,11,23,24;17:3,
9
PW-UK (3)
52:20,25;53:6
PWUS (3)
17:5,8,8

Q

qualifies (1)
11:12
quash (16)
6:9;17:23;19:11;
20:16;44:7;48:23;
49:6,9,10,12,20;55:7;
56:10;57:1,5;59:2
quashed (4)
16:1;41:18;46:25;
55:12
quickly (1)
27:10
Quinn (2)
4:13;40:1
quite (2)
4:23;37:12
quiz (1)
5:25
quote (24)
11:1,12;37:9;
44:16;47:17;48:7,19,
23;49:1,6;50:25;
51:5;52:23;53:6;
54:10,15,24;56:2,18,
21;57:12,15;58:3,4

R

radius (2)
28:10;31:2
raised (1)
41:16
ranging (1)
40:2
rather (1)
53:18
Re (1)
52:6
reach (1)
44:25
reached (2)
29:9,10
read (13)
4:23,24;16:19,20;
18:5,6,8;24:5;26:1;
43:18,23;44:1,6
really (3)
5:22;35:7,7
rearguing (1)
40:16
reargument (1)

40:20
reason (5)
6:10;9:23;39:1,2;
41:15
reasonable (3)
47:19;48:8;49:2
reasonably (4)
19:1;48:2;51:19;
56:20
reasoning (1)
43:25
reasons (3)
46:24;56:12;59:1
received (1)
45:19
Recess (1)
43:19
recognize (1)
11:11
recognizes (1)
50:22
recognizing (1)
12:16
record (1)
37:15
red (1)
22:11
redeploy (1)
45:9
refer (2)
27:10;41:7
reference (1)
59:10
regard (3)
28:6;30:11;31:8
regarding (3)
29:17;31:3;38:19
regularly (3)
46:8;48:20;53:3
related (1)
38:10
relates (1)
38:7
relating (1)
58:8
relevance (1)
57:17
relevant (8)
21:21;28:11;31:24;
35:24;46:2;47:16;
56:6,13
relief (1)
40:19
relies (3)
17:24;19:10;53:10
relieve (2)
9:21;20:23
rely (2)
26:13;32:4
remarks (2)
5:3;36:14
render (1)
41:12

18-11094-scc    Doc 180-1    Filed 03/28/19    Entered 03/28/19 12:27:30    Exhibit A
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.
18-11094-scc    Pg 72 of 75

March 20, 2019

**rendered (1)**
55:20
**renewed (1)**
16:25
**replace (1)**
45:8
**reply (1)**
52:8
**represent (2)**
7:20,24
**representative (43)**
4:13,15,17;5:15,
20;7:16,21;9:4,11;
21:8;25:14;26:10;
29:11;31:10;36:23;
39:23;40:18;41:1;
42:25;43:5;44:19,21;
45:2,3,13,18;46:2,7,
24;47:1,3,4,10;49:23;
50:5,9,19,19;58:7,12,
14,21;59:4
**representatives (2)**
9:19;30:2
**representative's (1)**
44:11
**represented (1)**
8:18
**represents (1)**
51:5
**repurpose (1)**
45:9
**request (1)**
45:1
**requested (3)**
28:14;40:19;48:9
**requests (1)**
40:22
**require (8)**
9:24;21:3;25:23;
47:2;49:10,12;52:25;
55:23
**required (13)**
9:17;10:13,24;
26:20;34:5;46:19;
48:7,10;53:19;54:2;
55:14;57:24;59:1
**requirement (3)**
13:17;23:14;25:11
**requires (8)**
7:18;9:12;11:24;
13:15;32:21,23;
48:24;49:1
**requiring (3)**
49:17;56:3;57:9
**reside (3)**
46:12;53:2;56:7
**resides (3)**
46:8;47:8;48:20
**resolution (1)**
45:1
**resources (1)**
21:8
**respect (8)**

9:3;36:22;37:1;
44:15;45:1,23;49:22;
53:11
**respond (1)**
24:7
**responded (1)**
40:22
**responding (6)**
15:14;16:5,12;
48:10;51:20;53:7
**responses (1)**
56:23
**responsibilities (1)**
37:11
**responsibility (1)**
37:9
**responsive (4)**
39:19,22;52:1,13
**result (5)**
15:14;16:6,15;
42:1;53:9
**revealed (1)**
45:20
**review (2)**
29:19;31:5
**reviewing (2)**
31:5;39:15
**right (41)**
4:21;5:16,6;15;7:3,
9,11;8:24;9:20,21;
12:21,24,25;13:6,7;
14:18,20,21;15:5,16;
16:10,14;17:17;
18:23;23:7;27:20,23;
28:25;29:1;30:17,21,
24;32:3,6,8;34:13;
36:18;37:25;39:20,
22;59:9,18
**rights (1)**
44:17
**rigs (17)**
22:9;24:21,24,25;
28:18,22;37:24;38:8,
11,17,20;42:22;45:6,
7,9,10,24
**road (1)**
7:7
**robust (1)**
34:11
**rogatory (1)**
21:7
**Rule (85)**
5:13,13,15;7:5,8;
8:2,4,4,8,16;9:16;
13:10,15;16:13,16;
20:24;23:13,21;25:6,
21,23;26:1,2;27:7,20,
22;28:1;32:21;33:11,
12,14,15;35:21;36:1,
8,24;37:13,14,15;
44:22;46:6,13,22,23;
47:4,15;48:3,6,10,17,
22,25;49:1,5,18,19;

50:1,6,13,22,24;51:4,
8,10,16;52:1,3,15;
53:4,8,14,15,17,22;
54:3,6,7,15;55:25,25;
56:4,11;57:24;58:6,
23
**rules (2)**
28:7;57:9
**ruling (3)**
44:2;49:8;55:6
**rulings (1)**
27:16
**run (3)**
30:3;36:11;53:14

# S

**same (8)**
12:12,14;15:25;
16:1;17:9,10;39:14;
41:18
**Sara (1)**
4:16
**saved (1)**
39:16
**saying (15)**
10:14,18,24,25;
13:13;17:15;18:12;
21:15;25:4,4,6,7,21;
26:1;27:17;33:6
**Schedule (1)**
58:10
**scheduled (1)**
59:6
**Scheindlin (3)**
18:15;19:16;34:9
**scheme (1)**
41:5
**scope (4)**
28:10;45:13,16;
47:12
**Seadrill (69)**
8:14,25;9:4;12:2,
24;13:3,22;19:24;12;
37:24;40:23,25;43:9;
44:13,16,20,22;45:7,
16,19,21;46:4,6,11,
13,16,18,20,20,24;
47:5,12;49:11,12,13,
15,18,22;50:3,5,20;
51:24;52:3,17;53:10,
11,16,18,20,24,25;
54:2,5,8,11;55:3,4,8,
10,18;56:12;57:22;
58:4,5,8,20,20,24;
59:2,4
**Seadrill's (16)**
8:20;21:20;28:21;
38:19;40:5;42:21;
45:1,4;47:3;49:11,
15;50:11;54:12;58:2,
11,13
**SeaMex (5)**

50:1,6,13,22,24;51:4,

37:23;38:6;44:14,
15;45:21
**search (2)**
29:8,10
**seat (4)**
4:22,22;25:18;27:2
**Second (6)**
7:20;18:20;28:10,
17;29:15;49:21
**seeking (2)**
43:9;48:6
**seeks (3)**
44:21;45:4;58:7
**seem (3)**
5:14;39:19;53:17
**seems (2)**
27:6;29:22
**select (5)**
12:1;50:23;53:16;
54:1;58:22
**selection (1)**
11:25
**sell (1)**
45:8
**selling (1)**
38:16
**send (2)**
41:24;43:21
**sense (4)**
20:24;22:21;31:16;
35:7
**sentence (1)**
16:17
**separately (2)**
8:12;50:6
**serve (9)**
9:2;10:13;28:15;
44:2;49:14,25;50:11;
54:3;55:24
**served (8)**
8:12;17:14;28:14;
30:11;44:20;48:9;
50:6,13
**serving (1)**
49:2
**set (11)**
6:11;38:14;43:6;
44:18;46:5,15;47:23;
54:8,10,23;58:1
**seven (4)**
31:22,22;58:8;59:5
**several (1)**
53:11
**shall (1)**
59:4
**sharp (1)**
50:9
**ships (2)**
5:8;35:7
**Shkolnik (141)**
4:2,3,5,18,20;5:5;
6:2,5,8,15,18,20;7:1,
3,9,11,19;8:4,7,10,

13;9:5,7,13,25;10:4,
6,9,17,22,23;11:5,9,
17,20;12:11,14,16,
20,25;13:5,7,9;14:1,
4,7,11,15,18,21,23;
15:4,6,10,16,21,25;
16:7,10,15;17:5,8,14,
17,19,22;18:1,4,6,9,
13,16,19,23;19:5,9,
22;20:4,13;21:13,17,
22;22:1,3,4,10,15,17,
21,25;23:3,22;24:6,
11,20,23;25:7,12,17,
19,22;26:1,12,16,23,
25;27:6;30:4;32:8,
10,13,19;33:10,14,
23;34:8,10,14,17,23,
25;35:2,21;36:19,20,
22;37:1,7,21;38:5,9,
21;39:12,21;40:8,14;
41:10,15;42:1,17;
43:12
**Shkolnik's (1)**
28:24
**short (1)**
38:3
**Show (5)**
14:10;21:19;22:5,
6;24:3
**shows (2)**
32:25;40:24
**sic (1)**
51:21
**side (2)**
5:11;37:13
**sides (1)**
5:11
**sign (1)**
37:9
**Significantly (2)**
20:4;57:2
**similar (2)**
19:12;55:8
**simple (1)**
22:13
**simply (4)**
26:6;31:11;35:25;
40:6
**simultaneously (1)**
36:12
**single (3)**
19:12;25:12;55:5
**sit (1)**
26:20
**situation (1)**
23:15
**six (2)**
37:19;58:17
**so-called (1)**
41:4
**Sokolow (1)**
20:15
**SOLEDAD (5)**

4:6,8,11,14,14
**somebody (5)**
  7:15;19:18;23:15,
  16;25:24
**somehow (3)**
  5:18,19;28:3
**someone (16)**
  9:22;13:23,23;
  20:19,20;21:3;23:6,
  7;24:12,17,18;28:8;
  33:7;34:6;35:15;37:3
**somewhere (1)**
  10:16
**sort (2)**
  18:2;21:7
**sound (1)**
  37:15
**sources (3)**
  19:2,4;56:21
**Southern (11)**
  26:25;33:25;34:1,
  2,12,17;53:5;54:18,
  20;55:16,21
**spare (1)**
  23:5
**speak (1)**
  23:20
**SPEAKER (2)**
  59:15,21
**specific (5)**
  5:6;14:25;25:1;
  31:19;38:20
**specifically (10)**
  9:25;15:12;19:23,
  23;26:4;27:21;30:1;
  37:16;50:24;52:19
**specified (1)**
  48:25
**speed (1)**
  37:18
**spend (1)**
  40:12
**spent (1)**
  39:14
**Springs (1)**
  27:13
**square (2)**
  34:5;58:4
**squarely (1)**
  55:18
**stand (3)**
  14:8;19:5;40:3
**stands (2)**
  7:4;34:12
**star (6)**
  18:14,16,19;48:14;
  51:22;55:2
**Starlight (1)**
  51:14
**starting (1)**
  35:20
**statement (1)**
  16:21

**States (3)**
  35:13;50:24;51:12
**stating (1)**
  55:12
**status (2)**
  18:24;56:18
**Stay (1)**
  8:6
**steps (2)**
  31:20;49:2
**still (1)**
  34:20
**stipulate (1)**
  23:24
**stop (1)**
  40:2
**story (1)**
  9:3
**street (1)**
  20:10
**strike (1)**
  58:15
**strip (1)**
  27:24
**stuff (1)**
  25:25
**subject (4)**
  8:16;44:16;48:11;
  49:4
**subjects (1)**
  49:6
**submission (1)**
  16:21
**submissions (1)**
  24:1
**submit (1)**
  59:12
**submits (6)**
  45:13;46:13,18;
  47:10;50:1;55:4
**subpoena (62)**
  6:9;8:12,16,21;
  15:14;16:2,5,13,25;
  17:14,23;20:2,16;
  21:5;22:20;36:1;
  39:17;41:18;42:4;
  44:20;45:2;46:1,4,15,
  25;47:13,17,25;
  48:18,23,23;49:2,4,6,
  9,18,20;50:6;52:14,
  20,22,24,25;53:8;
  54:4,8,11;55:8,12,13,
  15;56:3,11,14;57:1,3,
  10,16;58:1,15,17;
  59:2
**subpoenaed (5)**
  9:18;11:10;12:18;
  47:16;56:8
**subsidiary (2)**
  15:18,20
**successor (2)**
  13:18;23:9
**suggest (1)**

  31:17
**suggesting (2)**
  7:25;24:16
**summarized (1)**
  28:17
**summarizes (1)**
  45:3
**supplied (1)**
  4:24
**supplying (1)**
  4:25
**support (4)**
  5:23;14:1;19:11;
  55:5
**supported (1)**
  5:12
**supporting (2)**
  27:8;55:19
**supports (4)**
  5:12,25;6:9;25:15
**suppose (1)**
  21:6
**Sure (20)**
  4:11;5:5;6:2,4;
  10:6;14:11,15;15:10;
  17:22;21:17;22:25;
  23:3;27:12;34:8,25;
  35:2;37:12;39:21;
  41:15;42:19
**sustained (1)**
  40:11
**Sweet (2)**
  15:11;52:19

**T**

**tailored (2)**
  28:16;29:2
**talk (8)**
  10:7;20:5,6;23:22;
  24:15;31:17;34:18;
  41:19
**talked (1)**
  33:4
**talking (13)**
  8:8,24;15:16;
  17:21;20:7;24:7,11;
  33:3;37:3,19;41:6;
  42:18,19
**talks (3)**
  23:13,14;36:24
**target (3)**
  52:20;55:13;56:3
**task (2)**
  24:17;58:20
**Taylor (1)**
  35:13,14;50:14;
  51:6
**Techtron (1)**
  50:15
**Tel (1)**
  42:2
**telephone (1)**

  57:14
**telephonic (1)**
  44:25
**telling (3)**
  12:2;20:8;33:24
**ten (1)**
  44:6
**terminate (1)**
  28:19
**terminated (1)**
  45:24
**terminations (1)**
  45:11
**terms (7)**
  29:8,10;38:25;
  39:1,2,5,6
**territorial (7)**
  16:13,16;26:2;
  46:5;53:4,8;54:6
**terrorism (1)**
  42:9
**terrorist (4)**
  41:23,24;42:6,13
**testify (18)**
  11:2,13,15;15:2;
  16:24;35:16;47:3,11,
  22,24;48:2;49:11;
  50:24;51:2;52:15;
  53:13;56:16;59:3
**testimony (6)**
  47:17;49:16;51:4;
  56:1,5;57:11
**Textron (1)**
  50:15
**Thanks (2)**
  59:20,22
**therefore (6)**
  10:12,12;12:5;
  23:19;43:4;57:4
**therein (1)**
  51:23
**thinking (1)**
  30:8
**third (7)**
  11:6;17:11;28:11;
  33:19;49:21;55:25,
  25
**thirteen (3)**
  23:8;37:19;45:15
**thirteen-month (2)**
  29:15;58:8
**thoroughly (1)**
  20:10
**though (1)**
  57:7
**three (9)**
  28:7,16,19;29:12,
  15;45:3,10;49:9,11
**thus (3)**
  45:19;48:3;58:25
**tie (1)**
  41:16
**timeframe (1)**

  40:25
**time-goes-by (1)**
  13:19
**times (1)**
  18:6
**today (4)**
  4:19;8:23;22:12;
  41:12
**together (2)**
  26:1;59:10
**told (2)**
  21:11;29:5
**ton (1)**
  39:14
**took (2)**
  22:9;37:7
**topic (4)**
  23:8;39:10,11;
  58:15
**topics (34)**
  22:19,22;23:11;
  28:10,13,16;29:2;
  30:13,13;32:15;37:5,
  19;38:7,15;39:14,25;
  41:16;42:11;45:17;
  46:7,15;47:13;48:12;
  51:9;52:16;53:22;
  54:8,10;56:7,14;58:1,
  8,18,19
**total (1)**
  37:2
**transact (1)**
  53:3
**transacts (1)**
  48:20
**transcript (2)**
  44:2;59:11
**transfer (1)**
  43:11
**transfers (3)**
  41:24;42:5,7
**translations (1)**
  29:17
**travel (1)**
  29:18
**tree (1)**
  5:10
**try (4)**
  8:21;11:21,22;
  22:23
**trying (4)**
  5:15;16:8;18:19;
  28:5;37:3
**turn (2)**
  5:24;49:22
**Twentieth (2)**
  54:19;55:1
**two (23)**
  5:17;13:13;21:16;
  23:23;24:15;25:13,
  15;26:4;28:6,7;
  29:12,17;31:1;32:1;
  34:18;36:11,11;45:5;

46:11;47:8;49:10;
54:5;55:6
**type (1)**
5:10

---

**U**

---

**UK (1)**
15:13
**UK's (1)**
53:2
**ultimately (1)**
45:11
**Um-hum (1)**
37:21
**unable (1)**
44:25
**uncontroversial (1)**
50:10
**uncovering (1)**
40:5
**under (14)**
8:2;19:12;20:24;
25:21;36:8;37:14;
41:18;48:10;51:10;
54:15;55:8;57:23;
58:6,23
**underlying (1)**
6:23
**undermine (1)**
13:2
**undue (15)**
21:11,12;33:8;
40:10;46:20;47:7,12;
49:3,7,17;50:20;
56:5;57:10,16,22
**unduly (5)**
31:1;35:23;54:11;
56:14;58:19
**UNIDENTIFIED (2)**
59:15,21
**Union (1)**
48:14
**UNISON (1)**
59:19
**United (2)**
35:13;51:12
**universe (2)**
29:6,13
**unless (4)**
9:23;13:4;21:11;
36:16
**unquote (2)**
44:17;54:10
**unreasonable (1)**
55:13
**unwilling (1)**
58:24
**up (8)**
28:24;31:3;37:18;
38:2,25;40:3;41:11;
45:6
**urges (1)**

55:3
**user-friendly (1)**
4:25
**using (1)**
32:17

---

**V**

---

**various (1)**
33:1
**veering (1)**
7:7
**vehemently (1)**
49:23
**version (2)**
37:25;38:2
**viable (1)**
7:5
**video (2)**
19:20;23:18
**videoconference (1)**
57:14
**view (5)**
6:20;17:16;40:17,
17;53:15
**violate (1)**
5:15
**violating (1)**
13:24
**violation (1)**
49:19
**virtually (2)**
47:2;52:4
**Vogel (3)**
46:12;49:13;53:13;
54:3,5;58:3,18

---

**W**

---

**waiting (1)**
43:20
**walk (1)**
33:3
**Walt's (7)**
25:13,15;26:4;
28:6,7;33:15;34:18
**Washington (3)**
14:20,23;26:22
**waterfall (1)**
5:9
**Waterhouse (2)**
52:18,23
**way (6)**
19:16;20:1,23;
39:10,11;40:21
**ways (1)**
26:12
**weeks (2)**
24:25;29:12
**weigh (1)**
55:4
**weighed (1)**
57:11

**weren't (1)**
42:13
**what's (1)**
38:13
**Whereupon (1)**
59:23
**whole (1)**
36:2
**who's (2)**
36:3;37:3
**wide (2)**
40:2,2
**wide-ranging (1)**
54:10
**willing (2)**
8:17;9:2
**win (2)**
10:13;24:3
**wire (4)**
41:24;42:5,7;43:11
**wishful (1)**
30:8
**withdraw (1)**
45:2
**within (34)**
6:22;8:9;9:1,22;
13:14,19,24;16:23;
17:2;19:18;20:18,25;
21:1;24:16;26:6,7;
28:9;31:2;33:17,20;
36:3,5;43:7;46:9,12,
22;47:8;49:14;52:12,
21;53:12;54:6;55:24;
59:5
**without (8)**
18:2;32:17;35:23;
36:8;43:22;44:14;
55:17;57:5
**witness (17)**
12:24;13:3;27:19;
31:13,21;32:22;
35:23;36:8;45:5;
47:6;49:15;50:13;
51:10,17,18;54:4;
59:3
**witnesses (6)**
32:24;46:14;48:11;
52:2,11;54:7
**WL (4)**
52:6,7;54:20;55:1
**word (1)**
24:1
**words (2)**
11:14;23:1
**work (5)**
10:13;28:22;40:11;
56:7;59:10
**world (1)**
37:25
**worth (1)**
17:20
**wrap (1)**
41:11

**Wultz (28)**
14:3,4,6;17:16,17,
18,19,21,22;19:24,
24;41:17,19;54:17,
19;55:3,5,11,15,
18,21;56:1,8;57:4,5,
5,15

---

**Y**

---

**Yasser (1)**
15:1
**years (1)**
23:8
**York (32)**
15:18,22,23;16:23;
17:5,9;27:1;33:25;
34:1,2,4,5,13,18;
44:23;46:10,13;47:9;
49:14;50:2;53:1,5,
12;54:18,21;55:14,
16,21;56:10,13,15;
57:13
**Yup (1)**
35:10

---

**Z**

---

**zeroing (1)**
43:6

---

**1**

---

**1 (6)**
17:19;19:24,24;
52:5;58:9,15
**1,000-mile (1)**
20:23
**10 (1)**
55:9
**100 (6)**
9:1,22;13:13,19,
21;19:18
**100- (1)**
13:24
**100-mile (1)**
5:19
**10987320 (1)**
52:7
**110 (1)**
52:6
**111 (1)**
44:12
**114164 (2)**
48:14;51:22
**121 (1)**
48:15
**125 (1)**
48:15
**126 (1)**
48:15
**13 (1)**
48:14

**13th (1)**
44:9
**14th (1)**
44:19
**15 (2)**
41:3;51:22
**156 (1)**
44:10
**162 (1)**
51:13
**166 (2)**
50:14;51:7
**182 (1)**
53:4
**1835439 (2)**
54:20;55:1
**186 (1)**
51:14
**1989 (1)**
48:16
**1995 (1)**
51:14
**1996 (2)**
50:15;51:7
**1997 (1)**
17:11
**1998 (1)**
53:5
**1999 (1)**
51:15

---

**2**

---

**2 (10)**
14:3,4,6;17:17,18,
21,22;41:17,19;55:2
**2002 (3)**
54:20,21;55:1
**2006 (1)**
23:7
**2007 (1)**
50:16
**2012 (1)**
52:6
**2013 (5)**
14:12;48:14;51:21,
22;55:16
**2014 (1)**
54:19
**2016 (2)**
52:7,8
**2017 (2)**
43:8;45:15
**2018 (5)**
44:9,19;45:15;
46:16;58:9
**2019 (2)**
38:13;44:23
**202 (1)**
52:6
**293 (1)**
55:15
**298 (3)**

PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.
18-11094-scc

March 20, 2019

54:18;56:1;57:5

**3**

**3:14 (1)**
 43:19
**3:33 (1)**
 43:19
**3:58 (1)**
 59:23
**306b (1)**
 26:1
**30b6 (63)**
 5:14;7:8,13;8:2,5,
 16,20;9:25;11:10,23,
 25;12:24;13:3,9,15,
 17;20:24;25:23;27:7,
 19,22;28:1,21;33:12,
 14;36:8;37:14,18;
 44:22;45:5;46:14,23;
 47:4,6,16;48:3,6,10;
 49:15,18;50:1,4,6,13,
 22;51:5,8,10,16;52:1,
 15;53:22,25;54:4,7,
 15;55:25;56:4;57:10,
 24;58:6,23;59:3
**326524 (1)**
 52:6
**356 (2)**
 50:14;51:7
**36 (1)**
 46:14
**361 (1)**
 51:7
**3rd (1)**
 44:23

**4**

**410 (1)**
 51:13
**45 (27)**
 5:13,15;7:5,8;8:4,
 8;13:10;16:13,16;
 27:7,20,22;33:11,15;
 35:21;36:1,24;37:13;
 46:6,22;49:19;52:3;
 53:4,8,14,15;54:6
**45c (2)**
 26:2;48:25
**45c1A (1)**
 48:17
**45d1 (1)**
 49:1
**45d3Aii (1)**
 48:22
**45d3Aiv (1)**
 49:5
**45's (1)**
 56:11
**476 (1)**
 50:15

**5**

**5 (1)**
 50:15
**56 (1)**
 53:5

**6**

**6,688 (1)**
 37:2
**626 (1)**
 51:14
**677 (1)**
 55:15

**7**

**7th (2)**
 51:22;58:9

**8**

**8 (4)**
 16:20,22;18:21,22

**9**

**9 (2)**
 52:8,9
**91 (1)**
 54:18
**94 (1)**
 57:6
**945 (2)**
 29:4,13
**95 (1)**
 56:16
**98 (1)**
 56:2
**99 (4)**
 18:14,16,19;56:24