# Exhibit A

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

### [2019] SGHC 35

Originating Summons No 126 of 2018
(Summons Nos 2473, 2960 and 4396 of 2018)

Between

(1)  Oro Negro Drilling Pte. Ltd.
(2)  Oro Negro Decus Pte. Ltd.
(3)  Oro Negro Fortius Pte. Ltd.
(4)  Oro Negro Impetus Pte. Ltd.
(5)  Oro Negro Laurus Pte. Ltd.
(6)  Oro Negro Primus Pte. Ltd.

... *Plaintiffs*

And

(1)  Integradora De Servicios
     Petroleros Oro Negro, S.A.P.I.
     De C.V.
(2)  Alonso Del Val Echeverria
(3)  Gonzalo Gil White

... *Defendants*

And

Jesús Ángel Guerra Méndez

... *Non-party*

# GROUNDS OF DECISION

[Civil Procedure] — [Injunctions]
[Civil Procedure] — [Appeals] — [Leave]

## TABLE OF CONTENTS

INTRODUCTION..................................................................................1

THE FACTS ........................................................................................3

    THE PARTIES ...................................................................................3

THE THREE APPLICATIONS ......................................................16

    THE ORIGINATING SUMMONS ........................................................16

    THE INJUNCTION APPLICATION ....................................................18

    THE SETTING ASIDE APPLICATION...............................................21

    THE ARGUMENTS ..........................................................................39

        *The defendants' submissions* ...............................................39

        *The non-party's submissions* ...............................................39

        *The plaintiffs' submissions*...................................................40

    THE DECISION ..............................................................................43

THE LEAVE APPLICATION ........................................................53

> This judgment is subject to final editorial corrections approved by the court and/or redaction pursuant to the publisher's duty in compliance with the law, for publication in LawNet and/or the Singapore Law Reports.

## Oro Negro Drilling Pte Ltd and others
### v
## Integradora de Servicios Petroleros Oro Negro, SAPI de CV and others

### [2019] SGHC 35

High Court — Originating Summons No 126 of 2018 (Summons Nos 2473, 2960 and 4396 of 2018)
Lai Siu Chiu SJ
11, 12, 13 and 14 September, 12 October, 8 November 2018

15 February 2019

**Lai Siu Chiu SJ:**

**Introduction**

1        On 30 January 2018, this court granted an interim injunction ("the Order of Court dated 30 January") against the three defendants on behalf of the six plaintiffs in Originating Summons No 126 of 2018 ("the OS"). The Order of Court dated 30 January, *inter alia*, restrained the defendants from taking or continuing legal action in Mexico or elsewhere, on behalf of the plaintiffs. The plaintiffs' application was made *ex parte* by way of Summons No 482 of 2018 ("the Injunction Application").

2        On 30 May 2018, by way of Summons No 2473 of 2018 ("the Setting Aside Application"), the three defendants applied, *inter alia*, to set aside the Order of Court dated 30 January.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

3        Subsequently, on 28 June 2018, a non-party to the OS, one Jesús Ángel
Guerra Méndez ("Mendez"), who is a lawyer from the Mexican law firm of
Guerra González y Asociados S.C. ("Guerra"), sought by Summons No 2960 of
2018 to vary the Order of Court dated 30 January ("the Variation Application").
Mendez sought, *inter alia*, a declaration that the powers of attorney ("the
POAs") granted to members of Guerra by the plaintiffs are not subject to the
injunction contained in the Order of Court dated 30 January. In the alternative,
Guerra sought to limit the jurisdiction of the Order of Court dated 30 January to
the extent that it is enforceable only if a court in the relevant country so declares
it to be enforceable.

4        Both the Setting Aside and the Variation Applications came up for
determination before this court. After a prolonged hearing spread over four
days, the court granted the Setting Aside Application and discharged the orders
made under the Order of Court dated 30 January. This included the order for
service outside jurisdiction on the defendants in Mexico. Having done that, the
orders prayed for in the Variation Application became academic. Consequently,
the court made no orders on the prayers sought therein but awarded Mendez his
costs.

5        The plaintiffs are dissatisfied with this court's decision and have filed
an appeal in Civil Appeal No 194 of 2018 against the orders (a) setting aside the
leave granted for service outside Singapore; (b) the declaration that a Singapore
court has no jurisdiction over the defendants in respect of the reliefs sought in
the OS; and (c) the costs order of $40,000 (excluding disbursements) to the
defendants.

6        The plaintiffs also applied by way of Summons No 4396 of 2018 ("the

2

*Oro Negro Drilling Pte Ltd v*                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Leave Application") pursuant to s 34(2)(*d*) of the Supreme Court of Judicature Act (Cap 322, 2007 Rev Ed) ("SCJA") for leave to appeal against the setting aside of the *ex parte* injunction and the costs of $20,000 (excluding disbursements) awarded to Mendez.

7        The Leave Application in [6] was heard and dismissed by this court on 8 November 2018. The plaintiffs have filed Civil Appeal Originating Summons No 41 of 2018 to appeal against the court's refusal to grant leave to appeal.

8        In the light of the plaintiffs' two appeals, I now set out the reasons for this court's decisions in the Setting Aside and the Leave Applications.

**The Facts**

***The parties***

9        The six plaintiffs in this case are all Singapore-incorporated companies.[1] Oro Negro Drilling Pte Ltd ("Oro Negro"), the first plaintiff, is the holding company of the other five plaintiffs. Oro Negro Decus Pte Ltd ("Decus"), Oro Negro Fortius Pte Ltd ("Fortius"), Oro Negro Impetus Pte Ltd ("Impetus"), Oro Negro Laurus Pte Ltd ("Laurus") and Oro Negro Primus Pte Ltd ("Primus") are the second to sixth plaintiffs respectively. The second to sixth plaintiffs each own jack-up oil rigs ("the rigs") which bear the names set out in parentheses above.[2] Henceforth, the second to sixth plaintiffs will be referred to collectively as "the rig owners" and all six plaintiffs would be referred to collectively as "the plaintiffs".

---

[1]        Second Defendant's First Affidavit dated 30 May 2018 at para 4.

[2]        Second Defendant's First Affidavit dated 30 May 2018 at paras 13–14.

3

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

10      The rigs were either built in Singapore or purchased from Singapore-based shipbuilders. After their construction or purchase, they were all relocated to Mexico and are currently lying in Mexican waters. The rigs are collectively worth approximately between US$1.2 and US$1.6bn. The rigs are estimated by the defendants to be worth between US$1.4 and US$1.6bn.[3] At the Injunction Application, the plaintiffs estimated that the rigs are worth US$1.2bn.[4]

11      The first defendant Integradora De Servicios Petroleros Oro Negro SAPI De CV ("Integradora") is the sole shareholder of Oro Negro. It is a company incorporated in Mexico and is in the business of providing integrated and diversified oilfield services. The first defendant's operations are centred in Mexico and its sole client is the Mexican state-owned petroleum company known as Petroleos Mexicanos ("Pemex"). The first defendant provides services to Pemex through its Mexican-incorporated subsidiary Perforadora Oro Negro S de RL de CV ("Perforadora").[5]

12      The relationship between the various companies and Pemex is best seen in the diagram below:[6]

---

[3]      Second Defendant's First Affidavit dated 30 May 2018 at para 15.

[4]      Transcript dated 30 January 2018 at p 6 lines 13–14.

[5]      Second Defendant's First Affidavit dated 30 May 2018 at paras 11–12.

[6]      Second Defendant's First Affidavit dated 30 May 2018 at para 19.

4

*Oro Negro Drilling Pte Ltd v*                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*



13      The second and third defendants were directors of the plaintiffs until their removal in September 2017 (see [26]).[7] It suffices to note at this juncture that the validity of their removal was disputed by the parties.

14      Perforadora entered into bareboat charters for the rigs with the rig owners which Perforadora then chartered to Pemex ("the Pemex Charters"). The Pemex Charters are governed by Mexican law and any disputes arising therefrom are subject to the jurisdiction of the Federal Courts of the City of Mexico.[8] Pemex assigned the charters in turn to its subsidiary Pemex Perforacion y Servicios.[9]

15      Apart from the fact that they own the rigs built in or bought from

---

7        Second Defendant's First Affidavit dated 30 May 2018 at para 59.

8        Paul Leand's First Affidavit dated 25 July 2018 at para 34.

9        Second Defendant's First Affidavit dated 30 May 2018 at para 12.

*Oro Negro Drilling Pte Ltd v*                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Singapore, the rig owners do not carry on any business activities in Singapore. In fact, their only source of income is from Mexico where they are tax residents. Similarly, the rig owners' parent company Oro Negro does not conduct any business activities in Singapore. Its directors and management are located in Mexico. It pays taxes in Mexico on the income it receives from the charters of the rigs through the rig owners.[10]

16      Currently, there are court proceedings in Mexico between Oro Negro and/or its subsidiaries and the bondholders of Oro Negro. There are also court proceedings in the United States ("US") which however have been stayed.[11]

17      By an agreement dated 24 January 2014 ("the Bond Agreement") that is subject to Norwegian law, Oro Negro issued bonds to various bondholders. The parties to the Bond Agreement are Oro Negro and Nordic Trustees ASA ("Nordic Trustee"). The latter acts on behalf of the bondholders. Events of default are set out under cl 15.1 of the Bond Agreement. In particular, under cl 15.1(g)(i), it would constitute an event of default if the issuer (*ie*, Oro Negro), parent (*ie*, the first defendant), charterer (*ie*, Perforadora) or the rig owners take "any corporate action, legal proceedings or other procedure [*sic*] step" in relation to, *inter alia*, winding up, dissolution, administration or reorganisation ("the Event of Default clause").[12]

18      Events in 2017 caused a liquidity crunch for the first defendant,

---

[10]    Second Defendant's First Affidavit dated 30 May 2018 at paras 16–17.

[11]    Daniel Pulecio-Boek's First Affidavit dated 30 May 2018 at para 6.

[12]    Second Defendant's First Affidavit dated 30 May 2018 at paras 20–21. Noel Blair Hunter Cochrane Jr's First Affidavit dated 25 January 2018 at pp 1081–1082.

Perforadora and Oro Negro. Between March and August 2017, Pemex insisted that permanent amendments be made to the terms of the Pemex Charters ("the Pemex Proposal"). The Pemex Proposal would have drastically reduced the charter hire and in turn the revenue of Oro Negro and the rig owners. The Pemex Proposal included suspending the operations of the Laurus and Primus rigs and drastically reducing the daily hire rates of the other three rigs. In addition, Pemex refused to allow Perforadora to invoice Pemex for the services provided by the rigs from and after April 2017.[13]

19      Income from the Pemex Charters are paid into trust accounts with banks in Mexico ("the Mexican Trust Accounts"). The Mexican Trust Accounts are operated by a Mexican subsidiary of Deutsche Bank ("DB Mexico") as trustee in accordance with the terms of a trust agreement dated 21 June 2016 ("the Trust Agreement"). The Trust Agreement is governed by Mexican law with Mexican courts having exclusive jurisdiction.[14] The monies in the Mexican Trust Accounts are distributed to the plaintiffs in accordance with the provisions of the Trust Agreement and the Bond Agreement in [17]. Perforadora first receives payment to fund its operating expenses and overheads. Thereafter, the rig owners receive their charter hire and the balance is paid to Oro Negro.[15]

20      Consequently, any reduction in the charter hire would adversely affect the plaintiffs. If Oro Negro defaults under the Bond Agreement, Nordic Trustee

---

[13]      Second Defendant's First Affidavit dated 30 May 2018 at paras 29–35.

[14]      Second Defendant's First Affidavit dated 30 May 2018 at p 820.

[15]      Second Defendant's First Affidavit dated 30 May 2018 at para 36.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

would be entitled to pursue the rig owners under various security documents.[16]

21      Unless the Bond Agreement was restructured to take into account the
Pemex Proposal, Oro Negro would not have sufficient cash to fund its
operations and would eventually default on its repayment obligations under the
Bond Agreement.[17] However, Oro Negro's attempts to put forward a debt
restructuring proposal through the first defendant were thwarted by obstacles
placed in its path by an ad hoc group of bondholders ("the Ad Hoc Group").
Their demands would have meant draining Oro Negro's cash flow and resulted
in its defaulting under the Bond Agreement.[18]

22      The first defendant surmised that the Ad Hoc Group had an ulterior
motive for its actions. The first defendant suspected that the Ad Hoc Group was
secretly negotiating with Pemex for new charters for the rigs. The Ad Hoc
Group would benefit greatly from a creditor seizure of the rigs. This was
particularly so as a member of the Ad Hoc Group is an investment fund which
is closely related to one of the first defendant's competitors, Seamex Ltd
("Seamex"). Seamex has extensive experience contracting with Pemex, having
already leased five rigs to the latter with the most favourable commercial terms
amongst any of Pemex's vendors.[19]

23      Nordic Trustee's subsequent letter to the bondholders dated 5 October
2017 proved that the first defendant's suspicions were correct. In that letter,

---

[16]    Second Defendant's Fi rst Affidavit dated 30 May 2018 at para 38.

[17]    Second Defendant's First Affidavit dated 30 May 2018 at para 38.

[18]    Second Defendant's First Affidavit dated 30 May 2018 at para 39–52.

[19]    Second Defendant's First Affidavit dated 30 May 2018 at para 52.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Nordic Trustee stated that the Ad Hoc Group continued to support the Pemex Proposal and that the "Ad Hoc Group, together with certain other Bondholders, [would] continue to work with their advisors and [Nordic Trustee] to establish a viable platform for the ongoing, uninterrupted operation of the Rigs".[20]

24    Fearing the worse, the first defendant decided to take pre-emptive steps to protect the plaintiffs. On 31 August 2017, the rig owners via the second and third defendants as their directors, issued the POAs to members of Guerra including Mendez. The POAs granted the Guerra lawyers various powers including a "general power of attorney for litigation and collections". The POAs were signed by the second and third defendants in Mexico.[21]

25    On 11 September 2017, Perforadora voluntarily filed a petition with the Second District Court in Civil Matters in Mexico City ("the Second District Court") to place itself in *concurso mercantil* (insolvency proceedings) ("the First *Concurso* Petition"). The First *Concurso* Petition enabled Perforadora to obtain interim protection from its creditors while it negotiated with them to restructure its debt obligations.[22]

26    In response to the First *Concurso* Petition, Nordic Trustee sent a letter to Oro Negro dated 25 September 2017, asserting that the filing of the First *Concurso* Petition amounted to an event of default under the Bond Agreement ("the Event of Default Notice"). Nordic Trustee then proceeded to seize control of the plaintiffs. It purportedly removed the second and third defendants as

---

[20]    Second Defendant's First Affidavit dated 30 May 2018 at p 553.

[21]    Second Defendant's First Affidavit dated 30 May 2018 at para 55.

[22]    Second Defendant's First Affidavit dated 30 May 2018 at paras 56–57.

9

*Oro Negro Drilling Pte Ltd v*                                     [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

directors from the boards of directors of the plaintiffs (with effect from
25 September 2017). It appointed two new directors in their place, namely
Roger Arnold Hancock ("Hancock") and Roger Alan Bartlett ("Bartlett").
Nordic Trustee further blocked the bank accounts of the plaintiffs that had been
charged to Nordic Trustee under two account charges dated 29 April 2016 and
7 June 2017.[23]

27      According to the first affidavit of the plaintiffs' director Noel Blair
Hunter Cochrane ("Cochrane"), Nordic Trustee was able to take the steps in
[26] because the second and third defendants had pre-executed resignation
letters and resolutions that authorised the appointment as directors of persons
nominated by Nordic Trustee while the first defendant had executed a blank
share transfer form.[24]

28      On 29 September 2017, Mendez filed a petition with the Second District
Court for the first defendant and the plaintiffs to be placed in *concurso*
proceedings ("the Second *Concurso* Petition"). In his affidavit dated 27 June
2018, Mendez explained that the Second *Concurso* Petition was a response to
Nordic Trustee's Event of Default Notice in [26]. Although the rig owners had
sufficient funds for Oro Negro to meet its payment obligations in October 2017,
Guerra filed the Second *Concurso* Petition because he feared Nordic Trustee
and the Ad Hoc Group would continue to take disruptive measures that could
irreparably harm the first defendant and the plaintiffs.[25]

---

[23]     Second Defendant's First Affidavit dated 30 May 2018 at para 59.

[24]     Cochrane's First Affidavit dated 25 January 2018 at para 23.

[25]     Mendez's First Affidavit dated 27 June 2018 at para 51.

*Oro Negro Drilling Pte Ltd v*                                  [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

29      On 3 October 2017, Pemex purportedly terminated the Pemex Charters
in respect of the Primus, Laurus, Fortius and Decus rigs on the basis that Pemex
had entered into leases with other vendors for rigs at a daily hire rate of
US$116,300 which Perforadora was apparently not agreeable to. As for the
Impetus rig, Pemex cited the First *Concurso* Petition as the reason for its
termination.[26]

30      The defendants asserted that Pemex had no basis to terminate the
charters of the rig owners. Perforadora had in fact agreed to the Pemex Proposal
which would reduce the daily charter hire of the four rigs to US$116,300 as
Pemex demanded. As for the Impetus rig charter, Pemex's termination based on
the First *Concurso* Petition was a violation of Mexican law and public policy.[27]
Indeed, the Mexican court subsequently ruled on 29 December 2017 that a
provision in the Pemex Charters, which is similar to the Event of Default clause
in the Bond Agreement and which Pemex relied on to terminate the Pemex
Charters, was invalid for contravening Mexican law.[28]

31      On 4 October 2017, Nordic Trustee exercised its powers under a share
charge ("the Share Charge") and using the executed blank transfer form in [27],
transferred the first defendant's shares in Oro Negro to another company
controlled by Nordic Trustee, namely OND Pte Ltd ("OND"). From that date,
Nordic Trustee and/or OND purported to seize control and ownership of the rig
owners even though the outstanding sums due under the Bond Agreement

---

[26]    Second Defendant's First Affidavit dated 30 May 2018 at para 63.

[27]    Second Defendant's First Affidavit dated 30 May 2018 at para 64.

[28]    Second Defendant's First Affidavit dated 30 May 2018 at p 1028.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

approximated US$916m whereas the rigs were worth US$1.2–$1.6bn.[29]

32      On 5 October 2017, the Mexican court issued various injunctions as part of the proceedings in the First *Concurso* Petition including (a) ordering Nordic Trustee to refrain from declaring any enforcement act regarding the assets and rights of Perforadora relating to the Trust Agreement in [19]; and (b) to refrain from affecting, modifying or terminating the Trust Agreement. On 11 October 2017, the Mexican court expanded the injunctions issued on 5 October 2017.[30]

33      On or about 9 October 2017, the newly appointed directors Hancock and Bartlett passed resolutions purportedly to rescind on the plaintiffs' behalf "any and all authorities including any Powers of Attorney given by the Company to any person previously" ("the 9 October Resolution").[31]

34      On 17 October 2017, a lawyer Manuel Ruiz de Chavez Gutierrez de Velasco ("Chavez"), who was appointed by Hancock and Bartlett, filed a motion to withdraw the Second *Concurso* Petition ("the Withdrawal Motion").[32]

35      On 25 October 2017, Mendez filed an "inefficiency and punitive damages claim" ("the Inefficiency Motion") in the Second District Court on behalf of the plaintiffs, Perforadora and the first defendant. In the Inefficiency Motion, Mendez sought the following reliefs:

---

[29]     Second Defendant's First Affidavit dated 30 May 2018 at para 65.

[30]     Second Defendant's First Affidavit dated 30 May 2018 at pp 828–919.

[31]     Cochrane's First Affidavit dated 25 January 2018 at pp 1734–1739.

[32]     Second Defendant's First Affidavit dated 30 May 2018 at para 71.

12

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

(a)    a declaration that the Event of Default Notice (in [26]) issued by
Nordic Trustee and its various other acts following the Event of Default
Notice were illegal, ineffective and have no effect; and

(b)    punitive damages in the amount of US$916,100,517, that being
the then unpaid principal on the bonds.[33]

36    On 31 October 2017, the Mexican court accepted the Second *Concurso*
Petition of the plaintiffs and added it to the pending First *Concurso* Petition of
Perforadora.[34] Henceforth, the two *concurso* petitions will be referred to
collectively as "the joint *Concurso* Proceedings".

37    According to the defendants, Nordic Trustee and/or OND took steps to
prevent the Inefficiency Motion from being heard by refusing to accept personal
service at their address in Mexico. That necessitated Mendez having to apply
for an order from the Mexican court to effect service on Nordic Trustee by
newspaper advertisements ("the Nordic Trustee Service Order").[35]

38    On 14 February 2018, Chavez filed a motion in the Mexican court asking
for the Nordic Trustee Service Order to be revoked. He had also filed another
motion on 10 November 2017 to revoke the Inefficiency Motion on behalf of
OND ("the Revocation Motion").[36]

---

[33]    Second Defendant's First Affidavit dated 30 May 2018 at para 72.

[34]    Second Defendant's First Affidavit dated 30 May 2018 at p 608.

[35]    Second Defendant's First Affidavit dated 30 May 2018 at para 76.

[36]    Second Defendant's First Affidavit dated 30 May 2018 at para 77.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

39      On 27 November 2017, Chavez filed an application seeking a declaration that Mendez lacked the authority to represent the plaintiffs ("the Lack of Standing Motion").[37]

40      On 20 December 2017, the second defendant was notified by DB Mexico that a sum of US$23m was transferred from the plaintiffs' account to the bank account of Nordic Trustee. The second defendant was not aware of the reasons for the transfer. In his first affidavit dated 30 May 2018 ("the Second Defendant's First Affidavit") for the Setting Aside Application, the second defendant deposed that the transfer was a breach of the injunctions granted by the Mexican court on 5 October 2017 (at [32]) which essentially prohibited Nordic Trustee from obtaining funds from the Mexican Trust Accounts.[38]

41      On 20 March 2018, the Mexican court allowed OND's Revocation Motion on purely procedural grounds because:

(a)      The Inefficiency Motion was defective as it raised issues that ought not to be resolved by an ancillary action; and

(b)      The Mexican court had no jurisdiction to deal with the validity of the clauses in the Bond Agreement as the same was governed by Norwegian law.

The Mexican court did not deal with any of the substantive Mexican law issues raised in the Inefficiency Motion.[39]

---

[37]      Second Defendant's First Affidavit dated 30 May 2018 at para 80.

[38]      Second Defendant's First Affidavit dated 30 May 2018 at para 92.

[39]      Second Defendant's First Affidavit dated 30 May 2018 at para 78.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

42      On 2 May 2018, the Mexico court found that the POAs that the plaintiffs
had granted to Mendez on 31 August 2017 had not been validly revoked or
rescinded. On that basis, the Mexican court dismissed the Withdrawal Motion
in [34]. At the same time, the Mexican court also dismissed the Second
*Concurso* Petition on the ground that the approval of the plaintiffs' independent
director, Cochrane, had to be obtained in order for the plaintiffs to be placed in
*concurso* proceedings. This approval was not obtained. Mendez has filed a
motion known as an *amparo* to request the Mexican court to reconsider the
dismissal ("the *Amparo* Motion").[40]

43      In the US, the rig owners under the control of the bondholders
commenced proceedings against Perforadora on 15 March 2018 in the US
District Court for the Southern District of New York seeking the return of the
rigs following the alleged termination of the Pemex Charters ("the New York
Proceedings"). By an order of the US Bankruptcy Court for the Southern
District of New York ("US Bankruptcy Court"), proceedings there were stayed
on 17 May 2018.[41]

44      On 20 April 2018, the second defendant filed petitions in the US
Bankruptcy Court to commence proceedings in the name of the first defendant
and Perforadora pursuant to Chapter 15 of the US Bankruptcy Code (Title 11,
USC). The purpose of the proceedings was to obtain orders recognising the joint
*Concurso* Proceedings in Mexico as a foreign main proceeding and recognising
the second defendant as the "Foreign Representative" of the first defendant and

---

[40]      Second Defendant's Second Affidavit dated 23 August 2018 at para 34.

[41]      Second Defendant's Second Affidavit dated 23 August 2018 at para 41.

*Oro Negro Drilling Pte Ltd v*                                      [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Perforadora. The US Bankruptcy Court granted the orders sought on 17 May 2018. As a result, the first defendant and Perforadora have been granted automatic reliefs including a stay of the New York Proceedings.[42]

45      On 11 July 2018, the US Bankruptcy Court issued a further order granting various discretionary reliefs. This included a ruling that various orders made by the Mexican court in the joint *Concurso* Proceedings be recognised and be entitled to full force and effect in accordance with their terms solely with respect to persons or property over whom/which the US Bankruptcy Court has jurisdiction.[43]

**The Three Applications**

***The Originating Summons***

46      The plaintiffs had prayed for the following orders in the OS:

(a)      A declaration that each of the *"Resolutions in writing of Sole Shareholder"*, specified in Annex A, purporting to authorize members of Guerra to seek a *concurso* on the plaintiffs' behalf, is ultra vires and/or incapable of enabling the plaintiffs to seek any *concurso* or any other insolvency matter, without procuring the vote of approval from the plaintiffs' independent director Cochrane;

(b)      A declaration that the first and/or second and/or third defendants, whether by themselves, their servants or agents or howsoever and whether by way of the *"Resolutions in writing of Sole Shareholder of*

---

[42]      Daniel Pulecio-Boek's First Affidavit dated 30 May 2018 at para 5.

[43]      Second Defendant's Second Affidavit dated 23 August 2018 at para 42.

*Oro Negro Drilling Pte Ltd v*                                     [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

*the Company"* specified in Annex A or otherwise, have no authority to
cause and shall not cause the Plaintiffs to commence, continue and/or
maintain any *concurso* petition or insolvency action and/or any other
legal action including in Mexico or elsewhere, purportedly on behalf of
the plaintiffs;

(c)      A declaration that the first and/or second and/or third defendants,
whether by themselves, their servants or agents or howsoever, have no
authority to act and/or shall not act for any of the plaintiffs and/or deal
with the plaintiffs' assets including but not limited to the rigs named
DECUS, FORTIUS, IMPETUS, LAURUS and PRIMUS in any manner
whatsoever;

(d)      An injunction to restrain the first and/or second and/or third
defendants, whether by themselves, their servants or agents or
howsoever, from relying on and/or continuing to rely on the
*"Resolutions in writing of Sole Shareholder of the Company"* specified
in Annex A, to cause the plaintiffs to commence, continue and/or
maintain any *concurso* petition or insolvency action and/or any other
legal action including in Mexico or elsewhere, purportedly on behalf of
the plaintiffs;

(e)      An injunction to restrain the first and/or second and/or third
defendants, whether by themselves, their servants or agents or
howsoever, from commencing, continuing and/or maintaining any
*concurso* petition or insolvency action and/or any other legal action
including in Mexico or elsewhere, purportedly on behalf of the
plaintiffs.

17

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

### *The Injunction Application*

47      The prayers in the Injunction Application mirrored those that the plaintiffs applied for in the OS and do not bear repeating save for the third and fourth prayers which state:

> (a)      Leave be granted, if necessary, to serve a sealed copy of the OS on the defendants at Javier Barros Sierra No. 540, Oficina 103 Park Plaza, Torre 1, Colonia State, FE 01210, Mexico, D.F; and

> (b)      That the time for the defendants to file an Affidavit, if any, be 21 days after service on him the OS and its supporting affidavits.

48      For the Injunction Application, the plaintiffs filed two affidavits, one by Cochrane (who was appointed as the plaintiffs' independent director on 29 September 2016) and the other by Vicente Bañuelos Rizo ("Rizo"), a lawyer from the Mexican firm of solicitors Garza Tello-Clyde & Co ("Garza Tello").

49      Cochrane's affidavit relied on the First *Concurso* Petition as a breach of the Event of Default clause which prompted Nordic Trustee to take action against the plaintiffs and the filing of the Injunction Application. Cochrane alleged that as the plaintiffs' independent director, he should have but was not informed of the First *Concurso* Petition nor did he attend any meeting where it was discussed or receive board documents in connection with such a meeting. Neither was he asked to vote or approve any resolution for the plaintiffs to file a *concurso* petition. Consequently, he contended that the First *Concurso* Petition was wrongful and *ultra vires* the plaintiffs' constitutions.[44]

---

[44]      Cochrane's First Affidavit dated 25 January 2018 at para 31.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

50      Cochrane further alleged that the first defendant's representation that it continues to retain control over the plaintiffs caused the Mexican court to grant orders in the First *Concurso* Petition. These orders prohibited the present directors including Hancock and Bartlett, from managing the business and affairs of the plaintiffs.[45]

51      Cochrane deposed that after they learnt of the POAs, the plaintiffs' directors passed the 9 October Resolution in [33] to revoke the POAs. The 9 October Resolution was brought to the defendants' notice on 23 October 2017. Despite the revocations, he alleged that the defendants persisted in unlawfully holding themselves out as purportedly acting on the plaintiffs' behalf. In support of his allegation, Cochrane cited the following examples of the defendants' actions:

(a)      the defendants' filing through Guerra of a motion on 27 October 2017 to revoke an order of the Mexican court dated 20 October 2017 admitting the plaintiffs' Withdrawal Motion in [34];

(b)      the filing of the Inefficiency Motion on 25 October 2017 by Mendez through Guerra as well as the filing on the same day of a motion for pre-emptive measures (which was dismissed on 31 October 2017);

(c)      the filing of the *Amparo* Motion in [42];

(d)      Guerra's filing of a Motion on 8 December 2017 to revoke an earlier order of the Mexican court made on 1 December 2017 admitting the Lack of Standing Motion in [39]; and

---

[45]      Cochrane's First Affidavit dated 25 January 2018 at para 62.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

(e)    On 29 November 2017, Guerra filed a motion for an order to revoke an earlier order of the Mexican court dated 21 November 2017 that had admitted a statutory declaration made by the plaintiffs' Singapore solicitor Haridass Ajaib ("HA") containing a legal opinion ("HA's Legal Opinion"). HA's Legal Opinion had been filed in the Inefficiency Motion at [35] by the plaintiffs' Mexican solicitors.[46]

52    The above examples are not exhaustive as Cochrane had listed eleven instances in his first affidavit. It suffices to say that Cochrane's complaints against the second and third defendants of misrepresentation and breach of their duty of care as directors were viewed as serious enough by the plaintiffs to warrant the filing of the OS and the Injunction Application.

53    At this juncture, I need to digress. Cochrane's "independent directorship" was challenged by the defendants. The defendants alleged that Cochrane was in a position of conflict. Cochrane works for North Atlantic Drilling which is owned by Seadrill which in turn owns Seamex, Oro Negro's competitor. He did not disclose his occupation in his affidavits, other than his directorship of the plaintiffs.[47]

54    Rizo's affidavit was a confirmatory affidavit of Cochrane's affidavit. He repeated Cochrane's chronology of the Mexican legal proceedings between the parties. In short, Rizo deposed that:

---

[46]    Cochrane's First Affidavit dated 25 January 2018 at paras 34–37.

[47]    Transcript dated 14 September 2018, p 4 lines 12–17.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

(a)    The plaintiffs did not have the legal capacity to file a *concurso* petition;

(b)    The defendants did not have the authority to instruct Guerra to file a *concurso* petition purportedly on the plaintiffs' behalf; and

(c)    The plaintiffs' position was that the issue of whether their constitutions had been complied with concerned Singapore law. Likewise, the issue of whether Guerra was properly authorised to act for the rig owners was a matter of Singapore law. These issues should be resolved conclusively by the courts in Singapore and not Mexico as they relate to Singapore-incorporated plaintiffs.[48]

### The Setting Aside Application

55    In the Setting Aside Application, the defendants prayed for the following reliefs:

(a)    The Order of Court granting leave to serve the OS on the defendants outside Singapore be set aside and discharged;

(b)    A declaration that the Court has no jurisdiction over the defendants in respect of the subject matter of the claims, reliefs and remedies sought in this action;

(c)    The Order of Court dated 30 January be set aside and discharged; and

---

[48]    Rizo's First Affidavit dated 25 January 2018 at para 21.

*Oro Negro Drilling Pte Ltd v*                                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

(d)    The costs of and incidental to this application be paid by the
plaintiffs to the defendants.

The ground for the Setting Aside Application was that the plaintiffs had failed
to make full and frank disclosure, instances of which will be set out later.

56    Numerous affidavits were filed for the Setting Aside Application. Apart
from those of five translators (an expensive exercise which involved translating
the voluminous Spanish text of the affidavits into English) and that of a notary
public (Alfredo Trujillo Betanzos), the parties and the non-party Mendez filed
19 affidavits including ten from the plaintiffs. The second defendant was the
defendants' representative who deposed to facts in his first affidavit as outlined
above at [9]–[45].

57    The defendants' second deponent on facts was Daniel Pulecio-Boek
("Pulecio-Boek"), an associate with the American law firm Quinn Emanuel
Urquhart & Sullivan LLP. Pulecio-Boek had acted for the second defendant as
the foreign representative of Oro Negro in proceedings commenced by the latter
in the US Bankruptcy Court. Pulecio-Boek confirmed [44] and [45] above in
regard to the status of the US proceedings.

58    On their part, the plaintiffs' representatives who deposed to the factual
matrix (the versions of the plaintiffs and defendants differed somewhat) were
(a) Cochrane; (b) Hancock; and (c) Paul Leand ("Leand").

59    Leand is the managing director and chief executive officer of AMA
Capital Partners ("AMA"), a US-incorporated company that provides advisory
and restructuring services to distressed companies. Leand deposed that AMA

22

*Oro Negro Drilling Pte Ltd v*                              [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

had been retained by certain bondholders in relation to the bond obligations of
the first defendant and the plaintiffs on two separate occasions (2 June 2015 and
2 August 2016) to advise them on their restructuring needs. AMA had since
August 2017 advised the Ad Hoc Group.[49] Leand stated that AMA opposed both
the Setting Aside and the Variation Applications.

60    In response to the defendants' contention that Mexico was the
appropriate forum for this dispute, Leand asserted that Singapore was more
appropriate for the trial of the OS due to the many connections to Singapore as
compared with Mexico. This was because of the alleged repeated blatant
contraventions of the plaintiffs' constitutions and the Companies Act (Cap 50,
2006 Rev Ed) ("Companies Act") by the defendants. He contended that the
connections to Mexico referred to by the defendants were more artificial than
real. There was also no question of duplicity of proceedings as the proceedings
in Mexico currently afoot did not cover the same issues that are before the
Singapore courts.[50]

61    Leand pointed out the defendants' delay in filing the Setting Aside
Application on 30 May 2018, which was four months after the Injunction Order
was obtained. The Variation Application was filed even later on 28 June 2018.[51]

62    Leand alleged that the defendants deliberately chose to conceal their
plan to file the First *Concurso* Petition from the independent director Cochrane.

---

[49]    Leand's First Affidavit dated 25 July 2018 at paras 1–3.

[50]    Leand's First Affidavit dated 25 July 2018 at paras 11 and 15–16.

[51]    Leand's First Affidavit dated 25 July 2018 at para 25.

23

*Oro Negro Drilling Pte Ltd v*                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

The defendants empowered Guerra to file the same purportedly on the plaintiffs' behalf without Cochrane's knowledge or consent.[52]

63      Leand deposed that the various aspersions cast on the Ad Hoc Group by the defendants were unfounded. The Ad Hoc Group was committed to facilitating an out of court restructuring arrangement under the Bond Agreement that would allow the continued operational performance of the rigs with Pemex. This would minimise the economic impact on all stakeholders by maintaining the pre-existing ownership structure. In fact, the Ad Hoc Group's plan required no additional capital injection by the equity shareholders or anyone else.[53]

64      Leand admitted that the Ad Hoc Group's attempts at restructuring were unsuccessful. However, he alleged that this was only because negotiations ended abruptly as a result of the clandestine collaboration between the defendants and Guerra that led to the filing of the First *Concurso* Petition.[54] I should point out that this and the earlier paragraphs were disputed by the second defendant (see [117], [120] and [121]).

65      Leand claimed that the Ad Hoc Group had agreed to the Pemex Proposal and conveyed its support to the first defendant on 11 August 2017. They recognised that losing Pemex (the sole client of Perforadora) if the Pemex Proposal was rejected was not an option. It would lead to the immediate default on the Bond Agreement, the downfall of the first defendant and its entire group

---

[52]      Leand's First Affidavit dated 25 July 2018 at para 13.

[53]      Leand's First Affidavit dated 25 July 2018 at para 44.

[54]      Leand's First Affidavit dated 25 July 2018 at para 45.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

of companies.[55]

66      However, implementing the Pemex Proposal required amendments to
the Bond Agreement. The Ad Hoc Group prepared a term sheet with proposed
amendments to the Bond Agreement ("the Bondholders' Proposal"). However,
Leand asserted that despite the Ad Hoc Group's willingness to engage in
negotiations, as it had done in the past for previous amendments to the Bond
Agreement, the first defendant failed to meaningfully engage with the Ad Hoc
Group.[56]

67      Consequently, the bondholders issued a bondholder's summons on
12 September 2017 in response to the First *Concurso* Petition.[57]

68      By a press release on 28 August 2017, the first defendant presented a
restructuring proposal to address the Pemex Proposal. Later, on 13 September
2017, the first defendant stated that the proposal embodied in the bondholders'
summons was not acceptable. The first defendant reiterated its desire to proceed
with its restructuring proposal even though that would effectively compromise
substantially all of the bondholders' secured claims, while leaving the existing
management in place and granting 90% of Oro Negro's common equity to the
existing shareholders.[58]

69      Leand alleged that as late as 13 September 2017, the first defendant

---

[55]     Leand's First Affidavit dated 25 July 2018 at para 55.

[56]     Leand's First Affidavit dated 25 July 2018 at paras 56–57.

[57]     Leand's First Affidavit dated 25 July 2018 at para 66.

[58]     Leand's First Affidavit dated 25 July 2018 at paras 71–72. Second Defendant's First
         Affidavit dated 30 May 2018 at pp 187–190.

*Oro Negro Drilling Pte Ltd v*                          [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

continued to persuade the bondholders to accept their proposal which would
convert the bondholders' secured claims to equity. This was even though
Perforadora had already filed the First *Concurso* Petition by then, a fact which
was unknown to the bondholders. Leand claimed that the bondholders only
came to know of the First *Concurso* Petition on 19 September 2017 from some
Mexican newspaper article while Perforadora disclosed the same on
21 September 2017 through a belated press release.[59]

70      Contrary to what the court was told at the hearing of the Injunction
Application (that the rigs were worth about US$1.2–$1.6bn),[60] Leand deposed
in his affidavit that without charters, each rig would only be worth US$160m or
a total of US$800m. This was significantly less than the total principal sum
outstanding on the bond of US$916,100,517.[61] It should be noted that the second
defendant had estimated in his first affidavit that each rig was worth between
US$280m and US$320m.[62]

71      Leand alleged that after the charters of the rigs were terminated by
Pemex on or about 3 October 2017, Perforadora was obliged to but failed to
deliver the rigs to the rig owners at a location to be agreed between the parties.
He added that the rig owners were denied access to the rigs for purposes of
inspecting their condition and maintenance.[63]

---

[59]      Leand's First Affidavit dated 25 July 2018 at paras 72–74.

[60]      Transcript dated 30 January 2018 at p 6 lines 13–14.

[61]      Leand's First Affidavit dated 25 July 2018 at para 93.

[62]      Second Defendant's First Affidavit dated 30 May 2018 at para 15.

[63]      Leand's First Affidavit dated 25 July 2018 at paras 95–98.

*Oro Negro Drilling Pte Ltd v*                                   [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

72      Leand's allegations were hotly disputed by the second defendant in his
second affidavit.[64] The second defendant accused Leand of misleading the court
by giving a false impression that he was simply a neutral professional from
AMA who was advising the bondholders. Leand failed to disclose his close
personal and professional ties to key players involved in the dispute. Leand did
not inform the court he is on the board of directors of Seadrill Ltd ("Seadrill")
which is affiliated to Seamex, one of Oro Negro's main competitors (see [22]).
Seamex is itself a joint venture between Seadrill and Fintech Advisory, an
investment fund.

73      The second defendant further alleged that Leand had close ties with a
European billionaire John Fredriksen ("Fredriksen"), who is Seadrill's largest
shareholder. Fredriksen is closely linked to a leading member of the Ad Hoc
Group, namely Ship Finance International ("SFIL"), as he controls the largest
shareholder of SFIL.[65]

74      The second defendant also rebutted Leand's claim that the plaintiffs had
no basis to have any issues with his role in restructuring the plaintiffs in the light
of the Pemex Proposal, given his earlier involvement in two prior restructurings
(in 2015 and 2016). He pointed out that the ownership and board composition
of the plaintiffs in 2015 differed from that in 2017. In fact, the second and third
defendants had no say/input on the 2015 restructuring exercise which was far
less extensive than that in 2017.[66]

---

[64]     Second Defendant's Second Affidavit dated 23 August 2018 at paras 8–9.

[65]     Second Defendant's Second Affidavit dated 23 August 2018 at para 11.

[66]     Second Defendant's Second Affidavit dated 23 August 2018 at paras 13–15.

27

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

75     As for the 2016 restructuring exercise, the second defendant disclosed that contrary to Leand's claim that there were no issues with his role therein, Leand had insisted that AMA (led by him) should be the only financial advisor for the 2016 restructuring exercise, representing *both* the plaintiffs and the bondholders. However, the plaintiffs rejected his demands and he only advised the bondholders. The plaintiffs engaged their own advisors.[67]

76     The second defendant further criticised Leand for AMA's excessive charges as its monthly fees for the 2016 exercise was almost twice what it charged for 2015. It was a matter of concern for the plaintiffs as they had to pay the fees incurred by the bondholders.[68]

77     Additionally, the second defendant denied Leand's claim (see [64]) that the first defendant did not act in good faith in negotiating with the bondholders in the restructuring exercise. It was open to the first defendant to withdraw the First *Concurso* Petition if the plaintiffs had reached a sensible agreement with the bondholders.[69]

78     The second defendant also criticised Leand for his attempt to downplay the value of the rigs (contradicting what was told to the court at the Injunction Application) and for claiming that the bondholders were denied access/possession of the rigs.[70] There were injunctions in place granted by the Mexican court in the First *Concurso* Petition (at [32]) that prohibited Nordic

---

[67]     Second Defendant's Second Affidavit dated 23 August 2018 at para 16(a).

[68]     Second Defendant's Second Affidavit dated 23 August 2018 at para 16(b).

[69]     Second Defendant's Second Affidavit dated 23 August 2018 at para 19.

[70]     Second Defendant's Second Affidavit dated 23 August 2018 at paras 21–22.

*Oro Negro Drilling Pte Ltd v*                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Trustee from taking any enforcement action against the rigs and obtaining funds from the Mexican Trust Accounts.[71] He added that the first defendant and Perforadora are maintaining the rigs and paying for their insurance despite Nordic Trustee's unlawful seizure of the plaintiffs.[72]

79     All three parties, *ie*, the plaintiffs, the defendants and the non-party Mendez filed opinions from their legal experts. In the plaintiffs' case, the court was initially under the impression that their expert was Rizo who was instructed by the plaintiffs' Mexican lawyers Cervantes Sainz S.C. ("Cervantes"). Rizo filed three affidavits on the plaintiffs' behalf. However, Rizo's position was ambivalent. On the one hand, he deposed that he was instructed by Cervantes to explain the nature of the joint *Concurso* Proceedings and the subsequent other proceedings in Mexico.[73] On the other hand, in his third affidavit, he pointed out that the defendants had mischaracterized his role in this action; he was not their expert.[74] However, the distinct impression given by his first affidavit dated 25 January 2018 was otherwise. Why would he be a deponent for the plaintiffs on the legal proceedings that transpired in Mexico? Rizo is not employed by any of the plaintiffs nor from Nordic Trustee or any of the bondholders of Oro Negro. Why was he then involved in the OS if he was not the plaintiffs' expert? He was not their lawyer.

80     It seemed to the court that Rizo disavowed his status as an expert because the second defendant's first affidavit alleged that Rizo failed to disclose

---

[71]    Second Defendant's Second Affidavit dated 23 August 2018 at para 37.

[72]    Second Defendant's Second Affidavit dated 23 August 2018 at para 58.

[73]    Rizo's First Affidavit dated 25 January 2018 at para 6.

[74]    Rizo's Third Affidavit dated 25 July 2018 at para 4.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

that he had previously advised the bondholders and Nordic Trustee on the bond issuance. His firm had also advised the plaintiffs on, *inter alia*, labour law issues. He had also filed on behalf of Nordic Trustee a document in the joint *Concurso* Proceedings on 18 April 2018 stating that Nordic Trustee refused to appear in the Mexican court because it had not been properly served.[75]

81     The plaintiffs' expert is one Thomas Stanley Heather ("Heather"), a senior partner at Ritch, Mueller, Heather y Nicolau S.C., a leading Mexico law firm based in Mexico City.

82     On the eve (10 September 2018) of the hearing, the plaintiffs applied via Summons No 4179 of 2018 for the second affidavit of Heather dated 3 September 2018 to be admitted along with the fourth affidavit of Rizo dated 6 September 2018. With the consent of the other parties, the plaintiffs' application was granted on condition that the court would grant leave (which it did) to the defendants to admit the third affidavit of the second defendant and the third affidavit of Mendez. Due to the lateness of the plaintiffs' application, the court awarded costs thereof to both the second defendant and Mendez.

83     Heather's first affidavit/first legal opinion dated 23 July 2018 answered a whole host of questions including the following:

    (a)     Did he agree with the opinion of Mendez's expert Carlos David Villasante Santoyo ("Santoyo") that "the lack of standing motion and the pending motions for reconsideration or revocation motions would be dismissed"?

---

[75]     Second Defendant's First Affidavit dated 30 May 2018 at para 125.

*Oro Negro Drilling Pte Ltd v*                                           [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

(b)    Is the *amparo* filed against the dismissal of the Inefficiency
Petition likely to succeed?

(c)    Is the first defendant in breach of the Companies Act and/or Oro
Negro's constitution in executing the shareholder resolution to file the
First *Concurso* Petition?

(d)    Are the second and third defendants in breach of the Companies
Act and/or the plaintiffs' constitutions and/or their duty to act honestly
and use reasonable diligence in their capacity as directors of the
plaintiffs in purportedly conferring powers on Guerra through the
POAs?

(e)    Are the second and third defendants in breach of the Companies
Act and/or the plaintiffs' constitutions and/or their duty to act honestly
and use reasonable diligence in their capacity as directors of the
plaintiffs in purportedly representing that the plaintiffs have legal
capacity to grant the powers set out in the POAs?

(f)    Are the defendants in breach of the Companies Act and/or the
plaintiffs' constitutions for holding themselves out as having
management powers even after they ceased to be the shareholder and
directors of the plaintiffs, as the case may be?

(g)    What will the courts in Mexico consider to be the governing law
in determining, *inter alia*, whether a director, existing or former, of a
Singapore-incorporated company (i) owes a duty to that company to act
in a manner that is consistent with the constitution of that company; and
(ii) is in breach of that duty?

31

> (h)    What will the courts in Mexico consider to be the governing law
> in determining whether an attorney-in-fact, existing or former, of a
> Singapore-incorporated company is lawfully capable of carrying out an
> act on behalf of Singapore-incorporated company?[76]

84    In his second affidavit (where he attached his second opinion) dated
3 September 2018, Heather sought to explain why he had not disclosed in his
first affidavit the fact that he had previously acted for Nordic Trustee.[77] He
explained that in his prior (limited) engagement (for which a fee statement dated
22 November 2017 of US$750 was issued by his firm without his knowledge),
he had advised Perforadora on insolvency law and Perforadora is not a party to
these proceedings. However, even in his second affidavit, Heather did not
disclose that he had rendered advice *to* Nordic Trustees *on* Perforadora, the
former being a party very much involved in the dispute in the OS and in the
Mexican proceedings.

85    In their submissions, the defendants criticised Heather's non-disclosure
as troubling and showed that he lacked independence. They requested the court
to disregard his opinion and give more weight to the legal opinion of the
defendants' expert Alfonso M Lopez Melih ("Melih") on the merits of the
defendants' *amparo* appeal. In fact, in the US bankruptcy proceedings, Heather
had admitted (as he did in his second opinion) that he is not a litigator and had
himself engaged the services of Melih as an expert on a previous occasion.[78]

---

[76]    Heather's First Affidavit dated 23 July 2018 at pp 19–73.

[77]    Heather's Second Affidavit dated 3 September 2018 at paras 8–10.

[78]    Defendants' Written Submissions dated 7 September 2018 at para 53.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

86      The defendants' expert Melih is the founding partner of Lopez Melih y
Estrada S.C. Melih is a recognised expert (by the US Bankruptcy Court, *inter
alia*) in Mexican bankruptcy law. Melih disclosed at the outset that he had
previously represented Ares Management LP ("Ares") and Temasek Holdings
("Temasek") in relation to their roles and interests as shareholders in the first
defendant but not for either company in connection with the bonds issued by
Oro Negro. However, he no longer acts for either Ares or Temasek and neither
are currently shareholders of the first defendant.[79]

87      Melih filed two affidavits on the defendants' behalf. In his first affidavit,
Melih opined that Mexico should be the forum to determine the parties' dispute.

88      Melih rendered his first legal opinion on the following five issues:

(a)      If the Mexican courts find in favour of the plaintiffs in the Lack
of Standing Motion and dismisses the Second *Concurso* Petition as well
as the Inefficiency Motion, would the plaintiffs in the OS be able to
pursue any claims against the defendants in any Mexican courts and
obtain reliefs such as damages for the defendants' conduct in causing
the Second *Concurso* Petition to be filed?

(b)      Would the Mexican court be able to decide any questions of
Singapore law that may arise in the course of the Lack of Standing
Motion and the Inefficiency Motion proceedings by receiving expert
evidence on Singapore law or by any other means?

---

[79]      Melih's First Affidavit dated 17 May 2018 at para 4.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

(c)    Is there any process under Mexican law by which persons
resident in Mexico may be compelled to testify as witnesses in
Singapore court proceedings?

(d)    Is there any process under Mexican law to compel a person
resident in Mexico to testify as a witness in Mexican court proceedings?

(e)    In Rizo's affidavit, he had opined that any determination by the
Mexican courts in the Lack of Standing Motion is only binding within
the Second *Concurso* Petition and "does not have a general *res judicata*
effect". Is Rizo correct as a matter of Mexican law?[80]

89    It is pointless for the purpose of this decision to set out Melih's answers
to each of the five issues listed above for the reason (not surprisingly), that
Melih (and Santoyo) disagreed with the views expressed by Heather. However,
Melih's answers on three questions do merit stating. He disagreed with Rizo's
opinion on question (e) above – in deciding the Lack of Standing Motion, Melih
said the Mexican court is likely to provide an official interpretation of the
plaintiffs' by-laws, given that the Lack of Standing Motion raises arguments
about whether the plaintiffs' by-laws were followed. Such a ruling would have
a general *res judicata* effect over every other *concurso* or bankruptcy petition
filed in Mexico by the plaintiffs.[81] Further, Melih opined in his second expert
report that even if fresh *concurso* proceedings were filed by the plaintiffs, the

---

[80]    Melih's First Affidavit dated 17 May 2018 at pp 15–26.

[81]    Melih's First Affidavit dated 17 May 2018 at p 25 para 6.9.

34

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

case would be sent back to the same court which would be unlikely to rule differently from its previous decision.[82]

90      In answer to question (c) above, Melih gave an affirmative answer. He explained that the process is by way of a letter of request from the Singapore court to the Mexican Court which however may take a year to approve the request.[83] As for question (d), Melih deposed that a Mexican court may order the arrest of a witness or impose a fine in order to compel a witness to testify in Mexican court proceedings.[84]

91      I should add that for question (c), Melih disclosed that both Singapore and Mexico are parties to The Hague Convention on the Taking of Evidence Abroad in Civil or Criminal Matters (18 March 1970), (entered into force 7 October 1972), accession by Singapore 27 October 1978 ("the Convention"). The Convention enables a judicial authority of a contracting party to request the competent authority of another one, by means of a letter of request, to obtain evidence within its jurisdiction to be used in a pending proceeding in the requesting state.[85] It is noteworthy that Heather had admitted in his deposition in the US bankruptcy proceedings, that Mexican law allows Mexican courts, including insolvency courts, to apply foreign law.[86]

---

[82]     Melih's Second Affidavit dated 21 August 2018 at p 7 para 10.

[83]     Melih's First Affidavit dated 17 May 2018 at p 19 para 4.1.

[84]     Melih's First Affidavit dated 17 May 2018 at p 21 para 5.1.

[85]     Melih's First Affidavit dated 17 May 2018 at p 20.

[86]     Second Defendant's Second Affidavit dated 23 August 2018 at para 65.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

92      Melih filed his second affidavit/expert report in response to Heather's
first affidavit, Rizo's third affidavit and in conjunction with the second
defendant's first affidavit. The text of Article 87 of the *Ley de Concursos
Mercantiles* ("LCM") was set out in Melih's second affidavit/second expert
report.[87] The Article states that, excluding the provided exceptions, "any
contractual provision that due to the filing of a concurso petition or concurso
lawsuit, or its declaration, sets modifications that worsen the contractual terms
for the debtor, shall be deemed as not existent". Melih referred to these
provisions as "*Concurso*-based Worsening Clauses".[88]

93      Melih added that without Article 87, the *Concurso*-based Worsening
Clauses would benefit only the interested creditor, at the expense of both the
debtor and every other creditor. Article 87 entailed an order to ignore *Concurso*-
based Worsening Clauses at any stage of a *concurso* proceeding. Otherwise,
actual applications or executions derived from *Concurso*-based Worsening
Clauses could effectively take place before the court even issues a *concurso*
judgment which may result in irreversible prejudice to the debtor and its
creditors as a whole.[89]

94      Melih gave a further reason why Article 87 must apply at every stage of
*concurso* proceedings. The operation of *Concurso*-based Worsening Clauses
may result in the debtor company never being able to progress to the critical
stage where the court issues a *concurso* judgment. It is at this stage that the court
will thoroughly study the elements of the case and decide whether it declares

---

[87]    Melih's Second Affidavit dated 21 August 2018 at p 8 para 13.

[88]    Melih's Second Affidavit dated 21 August 2018 at p 8 para 13.

[89]    Melih's Second Affidavit dated 21 August 2018 at pp 8–9 para 16.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

the debtor's *concurso*, with all the consequences of such declaration for the debtor and all its creditors. Accordingly, this likely makes it the most significant judgment of the whole *concurso* proceeding. Therefore, it would be against the most basic objective and purpose of the LCM to hinder the issuance of a *concurso* judgment by allowing the enforcement of *Concurso*-based Worsening Clauses before the issuance of a *concurso* judgment.[90]

95     Mendez engaged Santoyo, a partner from law firm Villasante y Freyman S.C. as his legal expert. Santoyo's first expert opinion addressed (amongst others) the issue of the position of Mendez and the others members of Guerra as the plaintiffs' attorneys. Santoyo opined that the attorneys are not deemed to be servants or agents of the defendants when they so act. Instead, as attorneys, they solely represent the interests of the plaintiffs.[91]

96     Santoyo added that the attorneys must act on the instructions they receive from the plaintiffs. Given the dispute over the management of the plaintiffs, the attorneys must act in what they deem to be in the best interests of the plaintiffs according to Article 2563 of the Civil Code for Mexico City.[92]

97     As stated earlier (at [51(e)]), the plaintiffs had procured HA's opinion on certain issues that arose in Mexico. HA's opinion was attached to a statutory declaration dated 9 November 2017 that the plaintiffs apparently submitted in the Mexican proceedings on 14 November 2017 so as to persuade the Mexican

---

[90]    Melih's Second Affidavit dated 21 August 2018 at p 9 para 17.

[91]    Santoyo's First Affidavit dated 27 June 2018 at p 33 paras 25–26.

[92]    Santoyo's First Affidavit dated 27 June 2018 at p 35 paras 27–28.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

court in the Lack of Standing Motion that the Second *Concurso* Petition was
filed on the plaintiffs' behalf by unauthorised persons.[93] Chavez also relied on
HA's opinion to counter the Inefficiency Motion filed by Mendez at [35].[94]

98      HA's Legal Opinion encompassed such issues as:

    (a)      What is the applicable law to decide the effectiveness of any acts
done by a company incorporated in Singapore?

    (b)      Did the Guerra attorneys have the capacity to file a *concurso* in
Mexico on behalf of the Singapore-incorporated plaintiffs?

    (c)      Was the transfer of shares of Oro Negro from the first defendant
to OND effective?

    (d)      Was the resignation of the former directors of the plaintiffs
effective?

    (e)      Was the appointment of the current directors of the plaintiffs
effective?

    (f)      Was the revocation of the POAs effective?[95]

99      Although it was not reflected in the notes of arguments, the court had
inquired of HA the wisdom of rendering a legal opinion for use by the plaintiffs
in the Mexican proceedings when he was on record as solicitors for the

---

[93]   Second Defendant's First Affidavit dated 30 May 2018 at paras 118–120. Cochrane's
First Affidavit dated 25 January 2018 at p 1809.

[94]   Second Defendant's First Affidavit dated 30 May 2018 at para 110.

[95]   Rizo's First Affidavit dated 25 January 2018 at p 147.

*Oro Negro Drilling Pte Ltd v*                [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

plaintiffs. Surely, his impartiality would be challenged and the objectivity of his legal opinion questioned.

100     Although there was no formal application before the court, the plaintiffs submitted that Mendez should be added as a defendant to the OS pursuant to O 15 r 6(2)(*b*) of the Rules of Court (Cap 322, R 5, 2006 Rev Ed) ("Rules of Court).[96]

**The arguments**

*The defendants' submissions*

101     The *gravamen* of the defendants' submissions was the lack of full and frank disclosure by the plaintiffs of material facts such as the all-important Article 87 in Mexico's insolvency laws and the failures of Cochrane and Heather (and even Rizo) to disclose their possible conflict of interests as set out earlier at [53], [72] and [80].

*The non-party's submissions*

102     Counsel for Mendez, Mr Thio, pointed out that the Order of Court dated 30 January did not expressly restrain the attorneys from Guerra from commencing, continuing and/or maintaining any *concurso* petition or insolvency action and/or other legal action (including in Mexico or elsewhere), purportedly on behalf of the plaintiffs. Under Mexican law, the Guerra attorneys are not servants or agents of the defendants. The plaintiffs have not produced any evidence to contradict that statement of law.

---

[96]     Plaintiffs' Skeletal Submissions dated 7 September 2018 at para 153.

39

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

103    Notwithstanding their position in [102], in his supporting affidavit for
the Variation Application, Mendez deposed that he/the attorneys erred on the
side of caution and made the Variation Application – they did not potentially
want to be accused of being in breach of an order of court of another
jurisdiction.[97] Despite not having obtained leave of court to do so, the plaintiffs
had threatened Mendez and the attorneys with contempt proceedings which
according to the plaintiffs' submissions, the court is empowered of its own
motion to do so pursuant to O 52 r 4 of the Rules of Court.[98] This court would
point out that it is unlikely a court would commit a party for contempt of court
of its own volition, unless there is strong cogent evidence of such contempt
having been committed which was not in the case here.

104    Both Mr Bull, counsel for the defendants, and Mr Thio complained that
the plaintiffs' conduct and the Order of Court dated 30 January was akin to the
second and third defendants as well as Mendez being in a boxing ring with their
hands tied behind their backs while the plaintiffs punched them; it was an unfair
and unequal fight.

*The plaintiffs' submissions*

105    The plaintiffs' submissions focussed on the breaches by the second and
third defendants of their duties as directors of the Singapore-incorporated
plaintiffs with numerous cases cited in support of this argument.

---

[97]    Mendez's First Affidavit dated 27 June 2018 at para 114.

[98]    Plaintiffs' Skeletal Submissions dated 7 September 2018 at para 7.

40

106     In relation to Oro Negro, the second and third defendants were alleged
to have breached Articles 115A and 116(B) of its constitution. The Articles
read:

> **115A** – Notwithstanding any other Article, unless:
>
> > (i)      approved by the Company in General Meeting
> > and
> >
> > (ii)     If an Independent Director has been appointed
> > in accordance with Article 88A, the Independent
> > Director (whose vote is necessary) has voted in approval,
> > the Directors shall not carry into effect any of the
> > following;
> >
> > > (a)      the voluntary cessation of business,
> > > dissolution and liquidation of, or any filing for
> > > bankruptcy or concurso mercantile or judicial
> > > restructuring by or of the Company;
> > >
> > > (b)      any merger, spin-off, transfer, sale,
> > > consolidation or corporate restructuring of the
> > > Company; and
> > >
> > > (c)      any petition in respect of, the
> > > commencement or agreement by the Company to
> > > become a debtor under any bankruptcy,
> > > insolvency or similar filing, case or proceeding
> > > including without limitation, any filing, case or
> > > proceeding seeking liquidation, winding up,
> > > reorganisation, arrangement, adjustment,
> > > protection, scheme of arrangement… including
> > > the . filing of a voluntary or a pre-packaged
> > > Concurso filing under the provisions of the
> > > Mexican Ley de Concurso Mercantiles.
>
> **116(B)** – The Directors may from time to time by power of
> attorney under the Seal appoint any company, firm or
> person or any fluctuating body of persons whether
> nominated directly or indirectly by the Directors to be
> the attorney or attorneys of the Company for such
> purposes and with such powers, authorities and
> discretions (not exceeding those vested in or exercisable
> by the Directors under these Articles) and for such
> period and subject to such condition as they may think
> fit, and any such power of attorney may contain such
> provisions for the protection and convenience of persons

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

> dealing with such attorneys as the Director may think
> fit and may also authorise any such attorney to
> subdelegate all or any of the powers, authorities and
> discretions vested in him.

I should add that the rig owners have either the same or similar articles in their respective constitutions.[99]

107    However, the plaintiffs' reliance on the above articles would not apply to or prevent, the first defendant as a *shareholder* of Oro Negro and in turn the rig owners, from applying to the Mexican courts for a *concurso* petition.

108    The plaintiffs had argued that Singapore is the more appropriate forum compared to Mexico for this dispute, citing the following determining factors as spelled out by the Court of Appeal in *Rappo Tania v Accent Delight* [2017] 2 SLR 265 at [71]:

(a)    personal connections of the parties and their witnesses;

(b)    connections to relevant events and transactions;

(c)    applicable law to the dispute;

(d)    existence of proceedings elsewhere; and

(e)    "shape of the litigation" (*ie*, the manner in which the claim and defence have been pleaded).[100]

While the court can (and did) give due regard to the above factors, it bears remembering that this is a Setting Aside Application of an anti-suit injunction that was granted *ex parte*, not an application based on *forum non conveniens*.

---

[99]    Plaintiffs' Skeletal Submissions dated 7 September 2018 at para 26.

[100]    Plaintiffs' Skeletal Submissions dated 7 September 2018 at para 20.

*Oro Negro Drilling Pte Ltd v*                              [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

### The decision

109    It would be useful to first look at the provisions in the Companies Act
and O 29 r 1 of the Rules of Court which were the premise for this OS. I begin
with the provisions in the Companies Act.

**Effect of constitution**

**39.**—(1) Subject to this Act, the constitution of a company shall
when registered bind the company and the members thereof to
the same extent as if it respectively had been signed and sealed
by each member and contained covenants on the part of each
member to observe all the provisions of the constitution.

**Injunctions**

**409A.**—(1) Where a person has engaged, is engaging or is
proposing to engage in any conduct that constituted,
constitutes or would constitute a contravention of this Act, the
Court may, on the application of —

(a) the Registrar; or

(b) any person whose interests have been, are or would
be affected by the conduct,

grant an injunction restraining the first-mentioned person from
engaging in the conduct and, if in the opinion of the Court it is
desirable to do so, requiring that person to do any act or thing.

(2) Where a person has refused or failed, is refusing or failing,
or is proposing to refuse or fail, to do an act or thing that he is
required by this Act to do, the Court may, on the application of
—

(a) the Registrar; or

(b) any person whose interests have been, are or would
be affected by the refusal or failure to do that act or
thing,

grant an injunction requiring the first-mentioned person to do
that act or thing.

(3) Where an application is made to the Court for an injunction
under subsection (1), the Court may, if in the opinion of the
Court it is desirable to do so, before considering the application,
grant an interim injunction restraining a person from engaging

43

*Oro Negro Drilling Pte Ltd v*                                          [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

> in conduct of the kind referred to in subsection (1) pending the
> determination of the application.
>
> (4) The Court may rescind or vary an injunction granted under
> subsection (1), (2) or (3).

110    It was the *gravamen* of the plaintiffs' case against the second and third

defendants that they had breached s 157 of the Companies Act which relevant

extracts read as follows:

> **As to the duty and liability of officers**
>
> **157.**—(1) A director shall at all times act honestly and use
> reasonable diligence in the discharge of the duties of his office.
>
> (2) An officer or agent of a company shall not make improper
> use of his position as an officer or agent of the company or any
> information acquired by virtue of his position as an officer or
> agent of the company to gain, directly or indirectly, an
> advantage for himself or for any other person or to cause
> detriment to the company.

111    Then there is O 29 r 1 of the Rules of Court which states:

> **Application for injunction (O. 29, r.1)**
>
> **1.**—(1) An application for the grant of an injunction may be
> made by any party to a cause or matter before or after the trial
> of the cause or matter, whether or not a claim for the injunction
> was included in that party's originating process, counterclaim
> or third party notice, as the case may be.
>
> (2) Such application may be made by summons supported by
> an affidavit and where the case is one of urgency, may be made
> ex parte.

112    It is unusual for a corporate applicant (as in this case) to apply for an

injunction founded on s 409A of the Companies Act. A corporate applicant can

just as well apply for an injunction in equity as an injunction is an equitable

remedy. Similarly, there is no necessity to resort to the statutory duties of

directors under s 157 of the Companies Act for allegations of breaches by the

second and third defendants when their common law duties as directors are no

*Oro Negro Drilling Pte Ltd v*                              [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

different. In any event, the plaintiffs' reliance on s 39 of the Companies Act (at [109]) is misconceived. As directors of the plaintiffs, the second and third defendants are not "members" of the companies. Not being "members", the second and third defendants are not bound by the constitutions of the plaintiffs.

113   It is the court's view that there was no necessity for the plaintiffs to rely on O 29 of the Rules of Court either. A Singapore High Court has the following additional powers under r 14 of the First Schedule under the SCJA:

> **Reliefs and remedies**
>
> 14. Power to grant all reliefs and remedies at law and in equity, including damages in addition to, or in substitution for, an injunction or specific performance.

114   Why then did the plaintiffs rely on Singapore legislation and subsidiary legislation for the OS? It is the court's view that it was a pretext in order to bring proceedings in Singapore.

115   From the documentation presented at the hearing, it was clear that quite apart from the above provisions of our Companies Act and O 29 of the Rules of Court, the court must have regard to the Mexican proceedings.

116   It also became increasingly clear from the arguments tendered at the hearing of the Setting Aside Application, that Article 87 of Mexico's LCM is crucial in the determination of the parties' dispute. However, at the hearing of the Injunction Application, no mention was made of Article 87 at all. Instead the court was told that "the only issue the Mexican courts are considering is Article 20 of the concurso law, a narrow ground".[101] Nothing could be further

---

[101]   Transcript dated 30 January 2018, p 10 lines 23–25.

45

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

from the truth.

117    The defendants had submitted that the non-disclosure to the court of Article 87 was deliberate while Mendez accused the plaintiffs of suppression. In this regard, Mr Thio had informed the court that Article 87 is crucial in relation to the punitive damages claim at [35(b)]. If Article 87 prevails, it would invalidate the Event of Default clause in the Bond Agreement (at [17]). That in turn meant that all subsequent actions by Nordic Trustees/the bondholders such as the appointment of new directors and revocation of the appointment of existing directors would be invalid. That also meant that Nordic Trustees' appointments of Hancock and Bartlett as directors (at [26]) would be invalid and so too the OS that they initiated.[102]

118    The first defendant had deposed that the Mexican court had ruled on 29 December 2017 (*before* the Injunction Application) that a provision in the Pemex Charters, which was similar to the Event of Default clause in the Bond Agreement and upon which Pemex relied on to terminate the Pemex Charters, was invalid for contravening Mexican law. The court was not told of this crucial fact at the hearing of the Injunction Application.[103]

119    Mr Bull highlighted that a typical anti-suit injunction issued by the Singapore courts results in foreign proceedings coming to a halt. However, the injunction that the plaintiffs sought would have allowed for the foreign proceedings to continue, but essentially placed a "gag" on the defendants and

---

[102]    Transcript dated 11 September 2018, p 12 lines 20–30.

[103]    Defendants' Written Submissions dated 7 September 2018 at para 35.

46

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Mendez. Mr Bull stated that he could not find a single precedent where this was done before. I should point out that the plaintiffs had no answer to this submission.[104]

120    Further, until it was disclosed in the second defendant's second affidavit,[105] the court was unaware that the rig owners had filed criminal complaints against the second defendant and three lawyers from Guerra. In addition, the second and sixth plaintiffs had filed identical law suits in Mexico City in April 2018, and sometime in June to July 2018, against DB Mexico and Perforadora.[106]

121    What Nordic Trustee, the bondholders and the plaintiffs have done was to vigorously defend the Mexican proceedings in the joint *Concurso* Proceedings initiated by the first defendant and Perforadora, and launch fresh proceedings through the plaintiffs or the rig owners against the second defendant, the Guerra attorneys and Perforadora. Thereafter, using the plaintiffs, they came to Singapore in their attempt to muzzle and stop the defendants from proceeding with the joint *Concurso* Proceedings in Mexico. Such underhand tactics cannot be condoned.

122    It also emerged from the second defendant's second affidavit that the reason for the rig owners being Singapore-incorporated companies had nothing to do with the first defendant's intention (as the plaintiffs contended through

---

[104]    Transcript of 11 September 2018, p 9 lines 10–16.

[105]    Second Defendant's Second Affidavit dated 23 August 2018 at paras 71–72.

[106]    Second Defendant's Second Affidavit dated 23 August 2018 at para 73.

47

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Cochrane, Hancock and Leand) that any disputes arising out of the capacity and management of the plaintiffs should be subject to Singapore and the Singapore court's jurisdiction.[107] Instead, it was a requirement of a different group of creditors who had underwritten the purchase of the first two rigs through a bridging loan as an interim financing option. That loan has since been paid off.

123    As for Hancock's claim that the plaintiffs maintained bank accounts in Singapore with DNB ASA Singapore Branch,[108] the second defendant accused the plaintiffs of failing to disclose that those accounts were closed *before* the OS was taken out. The funds in the Singapore bank accounts had been transferred to the Oslo branch of DNB ASA.[109]

124    At the outset of the hearing of the Injunction Application, the court had posed the following question to counsel for the plaintiffs:

> This matter covers only Mexican parties, but the suit is brought in Singapore?[110]

Counsel's response was only to draw the court's attention to and rely on the two affidavits of Cochrane and Rizo filed for the Injunction Application.[111]

---

[107]   Second Defendant's Second Affidavit dated 23 August 2018 at paras 80–81. Leand's First Affidavit dated 25 July 2018 at para 14. Hancock's First Affidavit dated 26 July 2018 at para 31.

[108]   Hancock's First Affidavit dated 26 July 2018 at para 36.

[109]   Second Defendant's Second Affidavit dated 23 August 2018 at paras 85–86.

[110]   Transcript dated 30 January 2018 at p 2 lines 8–9.

[111]   Transcript dated 30 January 2018 at p 2 lines 11–12.

48

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

125     In an attempt to persuade the court that Singapore is the correct forum
to determine the dispute, Hancock in his first affidavit, which was filed to
oppose the Setting Aside and Variation Applications, had said:

> It is a matter of public record that the Rigs (which the Plaintiffs
> took delivery of as registered owners) were all constructed in
> Singapore by ship-builders incorporated in Singapore (Keppel
> Fels Ltd and PPL Shipyard Pte Ltd): see [45–123]. In all
> likelihood, the Plaintiffs would be parties to the rig construction
> contracts with those Singapore-incorporated shipbuilders.
> *These contracts were probably priced in excess of USD 1.2 billion
> (see Cochrane's 1st Affidavit at [61.1]) and the full amount of the
> contract prices, presumably, would have been paid to the
> Singapore-incorporated shipbuilders prior to the Plaintiffs taking
> delivery of the Rigs* .[112]
>
> [emphasis added]

126     I agree with the defendants' submission that this linkage is contrived and
in the court's view, the above italicised portion shows how desperate the
plaintiffs were to establish their tenuous connection(s) with Singapore.[113] To
adopt the words of Mr Bull, it is totally fortuitous that the plaintiffs are
Singapore companies or that the rigs were built in Singapore.[114] It bears noting
that the second defendant's explanation (at [122]) as to why the rigs are owned
by Singapore-incorporated companies was neither disputed nor rebutted by the
plaintiffs. The fact that the plaintiffs' auditors are from a reputable Singapore
accounting firm is neither here nor there.[115]

---

[112]     Hancock's First Affidavit dated 26 July 2018 at para 35.

[113]     Defendants' Written Submissions dated 7 September 2018 at para 133.

[114]     Transcript dated 14 September 2018 at p 8 lines 23–24.

[115]     Hancock's First Affidavit dated 26 July 2018 at para 33.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

127    It was clear from the affidavits and documentation before the court that the dispute in the Mexican proceedings and in the OS had nothing to do with Singapore or Singapore law albeit the fact that the plaintiffs are all Singapore-incorporated companies. The documentation revealed the following conflicting jurisdictions:

(a)    The parties to the Bond Agreement dated 24 January 2014 are only Oro Negro and Nordic Trustee while the document is subject to Norwegian law;

(b)    The Trust Agreement dated 21 June 2016 between Oro Negro and Nordic Trustee is subject to Mexican law;

(c)    The Pemex Charters between Perforadora and Pemex are governed by Mexican law and jurisdiction; and

(d)    The two Share Charge agreements between (i) the first defendant and Nordic Trustee; and (ii) Oro Negro and Nordic Trustee both dated 29 April 2016 are governed by Singapore law.[116]

128    Whilst the constitutions of the rig owners all referred to Singapore, only the Share Charge agreements in (d) above are governed by Singapore law.

129    In the plaintiffs' submissions, there were repeated references to breaches of the various agreements in [127]. But there was no reference to who were the parties in breach – they were not the defendants.

---

[116]    Plaintiffs' Bundle of Core Documents at p 1202.

50

130    To elaborate, the rig owners have no privity of contract *vis-à-vis* the Bond Agreement, the Trust Agreement, the Pemex Charters or the Share Charges. Consequently, they do not have any *locus standi* to make the many complaints deposed to in the affidavits of Cochrane and Hancock.

131    There was an attempt by the plaintiffs in their submissions to request the court to join Mendez as a defendant to the proceedings.[117] Fortunately, this was not pursued. The court would not have acceded to the request bearing in mind that, like the request to the court for committal of the second and third defendants for contempt of court, there was no formal application placed before the court.

132    For the plaintiffs to say that the plaintiffs' case is bound to succeed is premature.[118] The plaintiffs then went on to make the sweeping statement that:

> Mexico is not an available forum because (i) its existence as a forum is manufactured by the Defendants and predicated on their illegal acts, which contravene Singapore laws, statutes and public policy and (ii) to hold otherwise would subvert the exclusive jurisdiction agreements in favour of Singapore, and make a mockery of the obligations they had voluntarily assumed in the Share Charges recognising Singapore as the most appropriate forum which also includes a contractual estoppel to argue otherwise.[119]

With respect, the court does not share that view.

133    Instead, it appeared to this court that the plaintiffs were acting in bad faith. They not only resisted the Mexican proceedings initiated by the first

---

[117]    Plaintiffs' Skeletal Submissions dated 7 September 2018 at para 153.

[118]    Plaintiffs' Snapshot Submissions dated 11 September 2018 at para 19.1.

[119]    Plaintiffs' Snapshot Submissions dated 11 September 2018 at para 23.2.

*Oro Negro Drilling Pte Ltd v*                              [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

defendant and Perforadora but had also launched fresh proceedings (at [120])
against the Guerra attorneys, the second defendant and Perforadora. The
plaintiffs then applied to the Singapore courts to muzzle and/or prevent the
defendants from pursuing the pending Mexican proceedings by an anti-suit
injunction. It would be a different consideration altogether if the plaintiffs had
applied to the Mexican courts to stay proceedings there against Oro Negro
and/or the rigs owners but they did not.

134    It is also telling that the plaintiffs selectively chose to rely on the Share
Charges because those were the only agreements (see [127(d)]) that are
governed by Singapore law. However, only Oro Negro and the first defendant
are parties to those agreements. Their counterparty is Nordic Trustee who is *not*
a party to the OS. The rig owners have no basis to complain or sue the
defendants on those agreements.

135    Moreover, the main agreement in relation to the Mexican proceedings
and the OS is the Bond Agreement (at [127(a)]) which contracting parties again
are only Oro Negro and Nordic Trustee. All the other agreements (save for the
Pemex Charters) flowed from the Bond Agreement.

136    Consequently, the plaintiffs' submissions and the assertions in
Cochrane's and Hancock's affidavits that the dispute only concerned
Singapore-incorporated companies rang hollow when viewed objectively
against the backdrop of the agreements in [127]. Both had studiously avoided
mention of Article 87 in their affidavits.

137    The court had also noted earlier (at [47]) that the prayers in the
Injunction Application mirrored those in the OS. Granting the Injunction

*Oro Negro Drilling Pte Ltd v*                                      [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

Application effectively meant giving the plaintiffs the relief they wanted in the OS.

138    In short, the court set aside the injunction because it offended the court's sense of fair play to allow the plaintiffs' injunction to remain in place in the light of the ongoing Mexican proceedings. An injunction is an equitable remedy. He who comes to equity must come with clean hands – the plaintiffs' hands were not clean as material facts had been suppressed.

139    Moreover, the court must have regard to the comity of nations. Due consideration must be given to the court proceedings in Mexico as well as the fact that the US Bankruptcy Court had granted a stay of proceedings of actions initiated in the US by Nordic Trustees.

**The Leave Application**

140    As alluded to earlier (at [7]), the court had also dismissed the plaintiffs' application for leave to appeal against the setting aside of the *ex parte* injunction and the costs of $20,000 awarded to Mendez, those being interlocutory orders. The defendants and Mendez were in agreement that leave was not required for the orders which are the subject matter of Civil Appeal No 194 of 2018.

141    In support of the Leave Application, Hancock filed his second affidavit dated 20 September 2018. Not surprisingly, the Leave Application was resisted by the defendants as well as by Mendez. In this regard, the second defendant filed his fourth affidavit dated 9 October 2018 in opposition.

53

*Oro Negro Drilling Pte Ltd v*                                          [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

142    The plaintiffs' instructed counsel Mr Calvin Liang listed the questions of general principle and public importance to be determined by the Court of Appeal as follows:

(a)    Whether a Singapore-incorporated company, pending final determination of any action, continues to be subjected to foreign or even local insolvency proceedings notwithstanding that its constitution prohibits the carrying into effect of insolvency proceedings unless certain conditions precedent are satisfied;[120]

(b)    What is the scope and application of injunctions granted pursuant to s 409A of the Companies Act on which there is only a High Court authority, *Tang Yoke Kheng v Lek Benedict* [2004] 3 SLR(R) 12 ("*Lek Benedict*"), but no Court of Appeal authority;[121]

(c)    What is the interaction between the applicable legal tests for injunctions which contain elements of an anti-suit injunction, an injunction to prevent the breach of negative covenants, as in *RGA Holdings v Loh Choon Ping and Anor* [2017] 2 SLR 997 ("*RGA Holdings*") and an injunction pursuant to s 409A of the Companies Act; and

(d)    Whether an applicant must demonstrate that the balance of convenience lies in his favour regardless of which type of injunction is applied for.[122]

---

[120]    Plaintiffs' Written Submissions dated 8 November 2018 at para 17.
[121]    Plaintiffs' Written Submissions dated 8 November 2018 at paras 18–22.
[122]    Plaintiffs' Written Submissions dated 8 November 2018 at 23–34.

143    Mr Liang submitted that if leave to appeal to the Court of Appeal is denied, and the Court of Appeal subsequently finds that the Singapore courts have jurisdiction over the defendants, it would be fettered from determining whether the injunction should be reinstated. The plaintiffs would suffer prejudice if they have to apply for an injunction afresh before the High Court and possibly before the Court of Appeal again.[123] There would be prejudice to the plaintiffs while this was happening as time and costs would be wasted in Mexican proceedings which the plaintiffs contended should not have been brought in the first place. He alleged that the second and third defendants as directors are liable for inducing the continuing breaches of the plaintiffs' constitutions.[124]

144    Mr Liang added that the first prayer granted in the Setting Aside Application, namely that the Singapore courts lacked jurisdiction, had a "knock-on" effect on the orders for which the plaintiffs sought leave to appeal against. The Court of Appeal should therefore look at the matter. No authorities were cited for this proposition.[125]

145    In opposing the Leave Application, the second defendant in his fourth affidavit deposed that the plaintiffs' questions of general importance are contrived and in any event do not warrant a decision of a higher tribunal.[126] The court had expressed a similar sentiment at [114] above in relation to the

---

[123]    Plaintiffs' Written Submissions dated 8 November 2018 at paras 8–9.

[124]    Plaintiffs' Written Submissions dated 8 November 2018 at para 15(c).

[125]    Transcript dated 8 November 2018 at p 5 lines 13–30 and p 6 lines 1–2.

[126]    Second Defendant's Fourth Affidavit dated 11 October 2018 at para 9.

plaintiffs' reliance on Singapore legislation and subsidiary legislation for the OS.

146    The second defendant made the following points in response to the plaintiffs' assertion that the defendants disregarded the plaintiffs' constitutions. The second defendant deposed that the first defendant was only a shareholder of Oro Negro (the first plaintiff) and not of the rig owners. Consequently, to warrant being granted leave to appeal, the first defendant could only have breached a provision in Oro Negro's constitution. However, the first defendant could not have breached Oro Negro's constitution, in particular Article 115A (at [106]), by resolving to place Oro Negro in *concurso* proceedings. Article 115A does not prohibit the first defendant from resolving to place Oro Negro in *concurso* proceedings. In fact, Article 115A(i) specifically provides that the first defendant as Oro Negro's sole shareholder had to resolve in a general meeting that Oro Negro be placed in *concurso* proceedings.[127]

147    The second defendant pointed out that what Article 115A in Oro Negro's constitution and the equivalent provisions in the constitutions of the rig owners prohibit are *directors* of the plaintiffs from carrying into effect a petition for the commencement of *concurso* proceedings. Neither the second nor the third defendants breached Article 115A in this regard as they have no privity of contract with the plaintiffs.[128] As stated above at [112], the second and third defendants are not *members* of the plaintiffs and are not bound by their constitutions. It follows therefrom that the second and third defendants could not have breached any negative covenant of the sort found in *RGA Holdings*.

---

[127]    Second Defendant's Fourth Affidavit dated 11 October 2018 at para 10.

[128]    Second Defendant's Fourth Affidavit dated 11 October 2018 at para 12.

*Oro Negro Drilling Pte Ltd v*                                       [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

148    Counsel for the defendants submitted that leave to appeal on questions
of principle and public importance relate to issues that have a broader impact
than just one case. He argued that the plaintiffs did not come close to satisfying
the legal requirements for leave to appeal as spelt out in *Lee Kuan Yew v Tang
Liang Hong* [1997] 2 SLR(R) 862 at [16]. These consist of the following three
disjunctive limbs:

    (a)    a *prima facie* case of error of law;

    (b)    a question of general importance decided for the first time; or

    (c)    a question of importance upon which further argument and a
    decision of a higher tribunal would be to the public advantage.

149    The court agreed with the defendants that the plaintiffs' case did not
warrant being granted leave to appeal. Earlier, the court had observed at [112]
that it was not necessary for the plaintiffs to have relied on ss 157 and 409A of
the Companies Act for the OS. It was done purely as a tactical move to buttress
the tenuous links the plaintiffs have with Singapore.

150    Here, there were no negative covenants to be complied with, let alone
the threat to repeat the breach of such a covenant (as in *RGA Holdings*) to
warrant the grant of an injunction. The plaintiffs were seeking an anti-suit
injunction to restrain proceedings in Mexico in which they actively participated
and in which the second and sixth plaintiffs had launched fresh proceedings (at
[120]). As stated earlier at [133], it would be a different consideration altogether
if the plaintiffs had sought to stay the existing Mexican proceedings in favour
of proceedings being commenced in Singapore.

*Oro Negro Drilling Pte Ltd v*                                      [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

151     The plaintiffs submitted that the scope and application of injunctions granted pursuant to s 409A of the Companies Act was a question of general principle and public importance. In *Lek Benedict*, the plaintiffs had applied for statutory injunctions under s 409A of the Companies Act against the defendants to enjoin the latter from disposing or otherwise dealing with the goods and other assets of the company. The court granted the injunctions on an interim basis. The injunctions were subsequently discharged on the defendants' application on the basis that the plaintiffs had not made full and frank disclosure of material facts in obtaining them (*Lek Benedict* at [14]). There was nothing in that case to suggest that a court in determining whether a statutory injunction under s 409A should be granted would have regard to factors/considerations different from those applicable in ordinary injunctions.

152     The plaintiffs had also cited *The Xin Chang Shu* [2016] 3 SLR 1195, a shipping case where the High Court had to decide whether a wrongful arrest order was an "interlocutory order" for the purpose of para (*e*) of the Fifth Schedule of the SCJA for which leave to appeal was required. I do not see the relevance of this case nor of other cases cited by the plaintiffs.

153     The court was therefore of the view that there were no grounds for leave to appeal to be granted. While the plaintiffs also relied on logic and sensible case management considerations,[129] these are not grounds for granting leave to appeal for interlocutory applications. Neither could I see how denying leave to appeal to the plaintiffs would have the undesirable effect of tying the hands of the Court of Appeal.[130]

---

[129]     Plaintiffs' Written Submissions dated 8 November 2018 at para 11.

[130]     Plaintiffs' Written Submissions dated 8 November 2018 at para 8.

*Oro Negro Drilling Pte Ltd v*                                    [2019] SGHC 35
*Integradora de Servicios Petroleros*
*Oro Negro, SAPI de CV*

154    It is to be noted that the plaintiffs sought leave to appeal against the costs
order made in favour of Mendez. Costs orders *per se* are not appealable as of
right under the Fifth Schedule of the SCJA. Furthermore, the plaintiffs'
arguments premised on provisions of the Companies Act set out at [109] and
[110] have no application to Mendez – he is neither a director nor shareholder
of any of the plaintiffs.

155    Consequently, the court dismissed the Leave Application.

Lai Siu Chiu
Senior Judge

Ajaib Haridass, Mohammad Haireez Bin Mohameed Jufferie and
Ragini d/o Parasuram (Haridass Ho & Partners), Calvin Liang
(instructed counsel for the Leave Application) (Essex Court
Chambers Duxton (Singapore Group Practice)) for the
plaintiffs/appellants;
Cavinder Bull SC, Rajaram Vikram Raja and Lua Jie Ying, Kelly
(Drew & Napier LLC) for the defendants/respondents;
Thio Shen Yi SC and Md Noor E Adnaan
(TSMP Law Corporation)
for the non-party/respondent.

Certified true copy

Private Secretary to Senior Judge
Supreme Court Singapore