# Exhibit 1

## Sara Clark

| | |
|---|---|
| **From:** | Greenbaum, Carter <cgreenbaum@paulweiss.com> |
| **Sent:** | Monday, February 25, 2019 8:56 PM |
| **To:** | Daniel Pulecio-Boek |
| **Cc:** | Johnson, Crystal; Gabriel Soledad; Sara Clark; Samantha Gillespie; Juan Morillo; Eric Winston; Scott Shelley; GRP-OroNegro |
| **Subject:** | RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094 |

Dear Daniel,

We have answered all your questions regarding our document requests, custodian lists, and search terms seven different times already, and now again here.  We refer you to our January 11, 2019, January 18, 2019, January 21, 2019, January 25, 2019, January 31, 2019, February 1, 2019, February 5, 2019 responses to your questions.  It appears to us that you are attempting to create a record to suggest that we are not answering your questions, when we have repeatedly provided clear responses to your dozens (if not hundreds) of questions.

To respond to your most recent email, please see below, in red, bold text:

### Mexican Counsel

Please confirm that the Ad-Hoc Group refuses to collect and produce any documents from Mexican counsel, other than in connection with the criminal investigations.  As you know, the Ad-Hoc Group's Mexican attorneys met extensively with government officials and other relevant third parties in 2017 and 2018, including with Pemex.

The Ad-Hoc Group's Mexican attorneys' documents are under the group's control.  Therefore, the failure to produce those documents is a violation of the Court's discovery orders.
**You have asked the exact same question regarding Mexican criminal counsel twice with almost exactly the same language.  We refer you to our answers to this question from January 21, 2019 and January 31, 2019.  We have searched for and collected responsive documents from Mexican counsel as required by the December 21, 2018 Order.  As you know, the December 21 Order only requires the Interested Parties to produce their attorneys' documents related to the "Mexican Criminal Proceedings" (as described in the Order).  The Order does not contemplate discovery from Mexican counsel related to any other discovery topics.  As for the July 11, 2018 Order, we provided you our custodian list in response to your Rule 2004 subpoenas on July 15, 2018.  We had extensive discussions regarding that custodian list throughout August and September, including correspondence and a meet-and-confer.  We briefed discovery from Mexican counsel throughout October, November, and December.  Not once did you request discovery from Mexican counsel concerning the original Rule 2004 subpoenas. You have been aware of Mexican counsel's involvement in this matter long before discovery began, yet you never raised this issue before.  As we have said, raising a new discovery request now is contrary to the standstill agreement.**

### Notes

Please confirm that the Ad-Hoc Group refuses to collect notes from their Mexican attorneys (in connection with either of the discovery orders).  They cannot unilaterally decide not to collect a responsive document on the suspicion that it is privileged.  If it is privileged, then it must be logged it.

Notes of the Ad-Hoc Group's  Mexican attorneys are under the group's control.  Therefore, the Ad-Hoc Group's failure to collect and produce (or log) notes is a violation of the Court's discovery orders.

This, of course, includes GGB's notes with government officials in the course of their ~554 hours of meetings with government officials.

**Again, you have asked precisely the same question several times now and we refer you to our answers from January 31, 2019 and February 1, 2019 responses.   You are not contesting that the materials at issue are protected from discovery, and we therefore object to undertaking the burden that would be associated with this collection, review, and logging exercise.  We also note that to the extent that notes were captured based upon our discovery protocols, and contained responsive information, we have logged them.  Collecting attorney notes in addition to these would be unduly burdensome as the information involved is not discoverable.  It is not reasonable to impose the burden of collection on documents that are privileged and will not be produced.**

### Evidence

GGB's bill reflect that they spent ~660 hours "preparing evidence."  Yet, we received no evidence in the productions.  Please state the basis for withholding this evidence.

**We are not withholding evidence.  We performed a reasonable search for "evidence" pertaining to the Mexican Criminal Investigations that is in the possession of Mexican counsel.  What we found was either produced or logged.  This included over 1,500 documents from Mexican counsel.**

### Lambarri

The Ad-Hoc Group has failed to produce the documents on which Eduardo Lambarri relied to prepare his three expert reports.  Please state the basis for withholding these documents.

Likewise, the Ad-Hoc Group has failed to even describe Lambarri's compensation and the terms of his engagement.  Please confirm that they are unwilling to produce this information.

**We have produced or logged any documents in the possession of Mexican Counsel related to Mr. Lambarri's work concerning the Oro Negro matter.  Your clients have seen Mr. Lambarri's reports so if they believe a document was not produced or logged, please identify it.  Contrary to your accusation, the Ad Hoc Group is not "unwilling to produce" documents related to Lambarri's compensation.  We have requested such documents from GGyB and were told that none exist.  As we told you on February 5, 2019, there is no written engagement agreement between Mr. Lambarri and GGyB or the Ad Hoc Group concerning his work on the Oro Negro matter, and he hasn't submitted an invoice.  Neither GGyB nor the Ad Hoc Group have made any payments to Mr. Lambarri concerning his work on the Oro Negro matter to date.**

### Private Investigator

Please confirm whether the Ad-Hoc Group refuses to disclose the identity of GGB's private investigator.

**We refer you to our answers to this question from January 13 and February 1st.**

### Antonius

As reflected in numerous emails, texts and WhatsApp chats, Antonius was an agent working for the benefit and at the direction of the bondholders.  He identified and suggested Garcia Alcocer, the Ad-Hoc Group's lead counsel in Mexico, he met with the afores and Pemex on the bondholders' behalf, he participated in formulating and executing the Bondholders' media strategy, and he advised and reported directly to (and frequently) to Paul Leand.

This is the third time we seek confirmation as to whether the Ad-Hoc Group refuses to produce his documents.

Please once and for all confirm whether they refuse to collect and produce Antonius' documents.

**As we have told you on multiple occasions, Andres Antonius was retained by ARCM.  We are not producing documents from entities that are not subject to discovery.  Since ARCM is not subject to discovery in the Chapter 15 proceedings, we are not producing documents from ARCM's agents.**

**Rule 26 Certificate**

Please confirm whether you refuse to provide it.

On January 19, we told that that "our production is complete in that we have completed searches, collections and productions based on the protocols we have transparently described for you in the past, subject only to the specific additional things we have agreed to do in our recent emails." We do not know what more you are seeking. We asked you for applicable rules or legal authority to tell us what you meant by a "certificate of completion," and you responded that it was required under "Rule 26." A more productive response would be to explain the authority and provide an example of a certificate of completion. We have reviewed the applicable law. The certification requirement of Rule 26 applies to disclosures. It is contained in Rule 26(g)(1)(A), which requires that "every discovery request, response, or objection must be signed by at least one attorney of record … [to certify] that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry (A) with respect to disclosure, it is complete and correct as of the time it is made …" Fed. R. Civ. P. 26(g)(1). As Judge Andrew Peck held, "[t]he certification required by Rule 26(g)(1) applies 'with respect to a *disclosure.'* That is a term of art, referring to the mandatory initial disclosures required by Rule 26(a)(1). . . Rule 26(g)(1)(B) is the provision that applies to discovery responses. It does not call for certification that the discovery response is 'complete.'" *Moore* v. *Publicis Groupe*, 287 F.R.D. 182, 188 (S.D.N.Y. 2012), *adopted sub nom. Moore* v. *Publicis Groupe SA*, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012); *see also United States* v. *Fresenius Med. Care Holdings, Inc.,* 2014 WL 11517841, at *6 (N.D. Ga. May 13, 2014) (holding that Rule 26 does not require a certificate of completion). As Judge Peck wrote, a request for a certification that discovery is complete is "based on a misunderstanding or Rule 26(g)(1)." *Id.* If you have any contrary authority, we will consider it.

**"DF"**

Please confirm whether you refuse to reveal who "DF" in GGB's bills is.

This is the first time you have ever asked us this question. The manner in which the question is framed suggests that we refused to answer it previously. We understand that DF is Damian Fraser.

Regards,
Carter

**Carter E. Greenbaum** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3955 (Direct Phone) | +1 212 492 0955 (Direct Fax)
cgreenbaum@paulweiss.com | www.paulweiss.com

---

**From:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Sent:** Tuesday, February 12, 2019 7:51 PM
**To:** Greenbaum, Carter <cgreenbaum@paulweiss.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Carter:

Despite our repeated questions regarding the collection and production of documents related to the Mexican criminal investigations, it remains unanswered whether the Ad-Hoc Group has requested responsive communications from certain custodians, regardless of the counterparty of that communication and search terms.

At this stage, below are the items on which we would like to confirm your position.  We request such confirmation **by this Friday**.

Thanks.

\*\*\*

## Mexican Counsel

Please confirm that the Ad-Hoc Group refuses to collect and produce any documents from Mexican counsel, other than in connection with the criminal investigations.  As you know, the Ad-Hoc Group's Mexican attorneys met extensively with government officials and other relevant third parties in 2017 and 2018, including with Pemex.

The Ad-Hoc Group's Mexican attorneys' documents are under the group's control.  Therefore, the failure to produce those documents is a violation of the Court's discovery orders.

## Notes

Please confirm that the Ad-Hoc Group refuses to collect notes from their Mexican attorneys (in connection with either of the discovery orders).  They cannot unilaterally decide not to collect a responsive document on the suspicion that it is privileged.  If it is privileged, then it must be logged it.

Notes of the Ad-Hoc Group's  Mexican attorneys are under the group's control.  Therefore, the Ad-Hoc Group's failure to collect and produce (or log) notes is a violation of the Court's discovery orders.

This, of course, includes GGB's notes with government officials in the course of their ~554 hours of meetings with government officials.

## Evidence

GGB's bill reflect that they spent ~660 hours "preparing evidence."  Yet, we received no evidence in the productions.  Please state the basis for withholding this evidence.

## Lambarri

The Ad-Hoc Group has failed to produce the documents on which Eduardo Lambarri relied to prepare his three expert reports.  Please state the basis for withholding these documents.

Likewise, the Ad-Hoc Group has failed to even describe Lambarri's compensation and the terms of his engagement.  Please confirm that they are unwilling to produce this information.

## Private Investigator

Please confirm whether the Ad-Hoc Group refuses to disclose the identity of GGB's private investigator.

## Antonius

As reflected in numerous emails, texts and WhatsApp chats, Antonius was an agent working for the benefit and at the direction of the bondholders. He identified and suggested Garcia Alcocer, the Ad-Hoc Group's lead counsel in Mexico, he met with the afores and Pemex on the bondholders' behalf, he participated in formulating and executing the Bondholders' media strategy, and he advised and reported directly to (and frequently) to Paul Leand.

This is the third time we seek confirmation as to whether the Ad-Hoc Group refuses to produce his documents.

Please once and for all confirm whether they refuse to collect and produce Antonius' documents.

**Rule 26 Certificate**

Please confirm whether you refuse to provide it.

**"DF"**

Please confirm whether you refuse to reveal who "DF" in GGB's bills is.

\*\*\*

If a call would be helpful to discuss any of these, please let us know.

Kind regards,

Daniel

**Daniel Pulecio-Boek**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8167 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielpulecioboek@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Greenbaum, Carter [mailto:cgreenbaum@paulweiss.com]
**Sent:** Tuesday, February 05, 2019 10:02 AM
**To:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Dear Daniel:

We respond to your emails of Saturday February 2 at 3:49 PM and Thursday January 31, 2019.  We have pasted our Thursday January 31, 2019 email and your Thursday January 31, 2019 response below because it appears that our earlier responses to you have been selectively edited in that thread.

We have endeavored to respond to each and every one of the dozens (if not hundreds) of individual questions you have asked us regarding our discovery methodology during the month of January alone.  It appears you are attempting to manufacture disputes with what we believe has been a reasonable and diligent process.  To be clear, we are not refusing to answer your questions.  We have gone above and beyond our obligations and provided clear answers to your numerous questions, some of them multiple times.

In contrast to the time and effort we have expended in providing these responses, you have declined to reciprocate by providing responses to our questions about the basis for (1) your requests for a "certificate of completion" (which we maintain is not required under the Federal Rules) or (2) your assertion that Andres Antonius is a "central agent" of the Ad Hoc Group.  We have now requested information concerning those issues five different times, and you have yet to provide any explanations.

We also disagree with your assertions as to certain "impasses" we have reached in our meet-and-confer process.  We disagree, for example, with your assertion that the Ad Hoc Group has failed to produce discovery concerning valuations of Oro Negro Drilling.  You accuse the Interested Parties' of "refus[ing] to produce valuations," however, as we explained, the Interested Parties produced "hundreds (if not thousands) of documents reflecting valuations."  To be clear, to the extent that any documents exist for the relevant time frame, we have conducted a searching review (based on search terms we previously agreed upon) and any responsive documents have either been produced or withheld on the basis of privilege.  We even offered to further investigate any valuations you believe were withheld based on the privilege log, but you have declined to take us up on that offer—instead asserting that "we are at an impasse."  We can only assume that you believe creating a manufactured record of discovery "impasses" for the Court is a more effective strategy than explaining your curious and unintelligible accusations of the Interested Parties' imagined "refusal to produce" to documents.  We reiterate our invitation to identify any valuations you believe were withheld based on the privilege log in an effort to resolve this supposed "impasse."  We have made other accommodations to your requests where reasonable and will continue to do so.

Regarding your questions about Mr. Lambarri's payment, neither GGyB nor the Ad Hoc Group have made any payments to Mr. Lambarri concerning his work on the Oro Negro matter.

We believe our responses to the questions in your January 24, 2019, email were clear.  However, we are willing to accommodate your request to respond with "yes" or "no" answers to those questions, which are in red, bold text below:

1.  Did you ask the Mexican attorney custodians to search for and provide all their communications (including emails from any accounts or communications in any texting applications) with the individuals listed in 1?  **Yes.  Please see our January 31, 2019 email for a full breakdown of which attorneys searched for which terms.**

2.  Did you ask the Mexican attorney custodians to search for and provide all their communications (including emails from any accounts or communications in any texting applications) regarding the criminal investigations with anyone other than clients, retained experts and co-counsel?  **This is a compound question, so we respond in parts.**

    (a)  **Did counsel for the Ad Hoc Group asked the Mexican attorney custodians to provide all their communications regarding the criminal investigations with anyone other than clients, retained experts and co-counsel?  Yes.  We asked all Mexican counsel to provide all their communications (including emails from any accounts or communications in any texting applications) regarding the criminal investigations with anyone other than clients, retained experts and co-counsel.**

(b) **Did counsel for the Ad Hoc Group** *also* **ask attorney custodians to search for all their communications regarding the criminal investigations with anyone other than clients, retained experts and co-counsel?  Yes.  We refer you to the search methodology described in our January 31 email.  Consistent with the conventional practice we have searched for all such communications by conducting reasonably diligent searches using reasonable search terms to capture the sought after communications.  This we have done and described for you in detail.  We offered several weeks ago to entertain reasonable additional requests, and as a result of your requests, we have searched for communications with the Secretaria de Hacienda and with Yasmine Santana-Reyes.  You have not provided any additional requests.**

3.    Did you ask the Mexican attorney custodians whether they use email accounts other than their firm email accounts such as hushmail accounts or commercial email accounts?  **Yes.  Please see our January 31, 2019 email for a full breakdown of the specific questions addressed to the respective attorneys.**

Regards,
Carter

From: Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
Sent: Thursday, January 31, 2019 11:21 PM
To: Greenbaum, Carter <cgreenbaum@paulweiss.com>
Cc: Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
Subject: Re: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Carter:

This is the fifth time I ask the same questions.  To shortcut the issue, I asked in my last email that you respond yes or no to my questions.  For some reason you refuse to do this.  As always, we find troubling the resistance to provide clear, simple responses.  Again, all this back and forth could have been avoided by meeting and conferring on methodology — but, tellingly, Paul Weiss preferred to proceed to a deficient, unilateral, self-serving collecting of GGB's documents and communications.

Here in this email, again, the issue continues being unclear.

You state:  "We asked all Mexican counsel to provide all their communications (including emails from any accounts or communications in any texting applications) regarding the criminal investigations with anyone other than clients, retained experts and co-counsel.  We refer you to our January 18 email which explains which searches we requested and how we determined the appropriate search terms."  As I've identified before, this is contradictory.  Either you asked for "all communications" regardless of the recipient of the communication or search term; or you did not.

Again, for much needed clarity, please respond yes or no to the questions I asked or simply state that you are unwilling to do so.

Daniel

Quinn Emanuel Urquhart & Sullivan, LLP

**From:** Greenbaum, Carter
**Sent:** Thursday, January 31, 2019 8:07 PM
**To:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Daniel,

Responses to the issues you raised in your Thursday, January 24 email from 10:40 AM are below:

**Agents**

*Andres Antonius/Plan B*:  We told you on October 26, 2018 and January 18, 2019 that Andres Antonius and Plan B were retained by ARCM, not the Ad Hoc Group.  As we explained in our January 18 email, we do not believe that the documents that you cited in your email of January 13, 2019 contradict our representations or demonstrate that Mr. Antonius was a "central agent" of the Ad Hoc Group.  We asked you on January 18 and again on January 21 to explain the basis for your assertion that Andres Antonius/Plan B are "central agents" of the Ad Hoc Group (which you offered to do in your January 13 email) and have yet to a receive an answer.  We have endeavored to provide you forthright answers to all of your questions and request the same courtesy from you.  Once more, please describe the basis for your position that Andres Antonius/Plan B are "central agents" of the Ad Hoc Group and the documents that you are relying on.  We await your response.

*Cervantes Sainz/Garcia Alcocer:*  We are surprised by your new request for documents from Mexican counsel's files responsive to discovery requests in your clients' July 11 Rule 2004 subpoenas.  Such discovery was not contemplated or authorized by either the July 11 or the December 21 Orders.  As you know, the December 21 Order expressly provides that our clients were required to produce discovery from Mexican counsel concerning the "Mexican Criminal Proceedings" (as described in the Order) for the period from June 1, 2018 to November 7, 2018.  The Order does not contemplate discovery from Mexican counsel related to any other discovery topics.  Indeed, in contrast to the description of the discovery ordered from Mexican counsel, the provisions of the December 21 Order concerning Messrs. Aagaard and Fraser required our clients to collect and produce documents responsive to the "Discovery Order," which is defined as the July 11 Order and which authorized five discrete discovery topics for the time period from March 1, 2017 to April 20, 2018.  (*See* ECF 85 at 5.)  With respect to the July 11 Rule 2004 subpoenas, you have known since we disclosed our custodian list to you on July 15, 2018 that Mexican counsel were not included.  Yet, you never raised the issue of including Mexican counsel as custodians for any discovery topics other than the criminal proceedings in any of your letters to us or to the Court.

Accordingly, we disagree with your new claim that our clients were obligated under either Order to collect and produce discovery responsive to the July 11 subpoenas from Garcia Alcocer or Cervantes Sainz; if you believed that was true it should have been raised sooner.  We consider this to be a new request and contrary to the spirit, if not the letter, of the Standstill Agreement.

**Specific Searches**
We previously explained the specific searches we asked Mexican counsel to conduct and refer you to our January 18th email, which is shown below as red text responding to questions within your January 13 email to us lower in this chain.   For ease of reference, we created the table below to respond to your questions regarding specific searches:

| Requested Searches | All Mexican Custodians | All GGyB Custodians | All CS/GA/GT Custodians |
|---|---|---|---|
| Rocio Zarate | Yes | Yes | Yes |
| Gustavo Pineda | Yes | Yes | Yes |

| | | | |
|---|---|---|---|
| Antonio Monter | Yes | Yes | Yes |
| Andres Maximino Perez Hicks | Yes | Yes | Yes |
| Maria Concepcion Prado Garcia | Yes | Yes | Yes |
| Guillermo Rey | Yes | Yes | Yes |
| Jorge Arollo | Yes | Yes | Yes |
| Guadalupe del Carmen Arojona Garcia | Yes | Yes | Yes |
| Edmundo Garrido-Osorio | Yes | Yes | Yes |
| Enrique Cedillo Garcia | Yes | Yes | Yes |
| Yasmine G. Santana-Reyes | Yes | Yes | Yes |
| Judith Reyes Pacheco | No | Yes | No |
| Adan Camargo Peralta | No | Yes | No |
| David Isaac Rios Mares | No | Yes | No |
| Eduardo Amerena | No | Yes | No |
| Joe Merino | No | Yes | No |
| Reforma reporters | No | Yes | No |
| Chris Lormand | No | Yes | No |
| Lindsay Briggs | No | Yes | No |
| Jose Cuervo | No | Yes | No |
| Kim Hansen | No | Yes | No |
| Investigador Privado | Yes | Yes | Yes |
| Deutsche Bank | No | No | Yes* |

* Note that our January 18 email should have included Garza Tello in our list of law firms we asked to run searches for communications with Deutsche Bank.

**Additional Searches**

We asked for all of the Mexican counsel to search for and provide all their communications (including emails from any accounts or communications in any texting applications) with the individuals mentioned above as indicated in the table above.

We asked all Mexican counsel to provide all their communications (including emails from any accounts or communications in any texting applications) regarding the criminal investigations with anyone other than clients, retained experts and co-counsel.  We refer you to our January 18 email which explains which searches we requested and how we determined the appropriate search terms.  In short, we interviewed Mexican counsel to determine which third parties each Mexican counsel spoke to regarding the criminal investigations, and asked them to run searches based, in part, on their answers.  We also asked Mexican counsel to run additional confirmatory searches by searching for communications with certain names mentioned by you and others from the discovery record.

When we asked all Mexican counsel to search for and provide responsive communications, we did not limit our inquiry to firm accounts.  Our questions broadly requested any communications "in written form."  As a result of those requests, we collected and previously produced documents from Alejandro Alfaro's hotmail email account.  We did not specifically ask whether Mexican custodians used any other accounts besides their firm email account (such as hushmail).  Nevertheless, since your request, we have specifically asked all GGyB custodians whether they use other accounts (such as hushmail) to discuss Oro Negro matters.  The answer was no, except for with respect to Alejandro Alfaro's hotmail account, which we had already previously collected from.


Regards,
Carter

**Carter E. Greenbaum** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3955 (Direct Phone) | +1 212 492 0955 (Direct Fax)
cgreenbaum@paulweiss.com | www.paulweiss.com

---

**From:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Sent:** Saturday, February 2, 2019 3:49 PM
**To:** Greenbaum, Carter <cgreenbaum@paulweiss.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Thanks, Carter.

So Lambarri has not been paid at all? Is that your position?  Or did GGB pay Lambarri without an invoice?  If so, how much?

As to valuations and notes, we are at an impasse.

Best,

Daniel

---

**From:** Greenbaum, Carter [mailto:cgreenbaum@paulweiss.com]
**Sent:** Friday, February 1, 2019 9:32 PM
**To:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Daniel,

Responses to the issues you raised in your emails from Thursday, January 24 from 8:16 PM and Saturday January 26 at 6:03 AM are below in red, bold text.

**GGB's "Experts"**

Please confirm when you will produce Lambarri's and Barretiuta's engagement agreements.  Relatedly, please provide their invoices and time entries – or does GGB contend that none of these documents exist as well?  **GGyB does not have any written engagement agreements with Lambarri, Barrutieta, or Washington Mayobre related to any work performed in the Oro Negro matter.  Washington Mayobre has provided GGyB a time entry and invoice for work**

10

**performed by Mr. Barrutieta until October 26, 2018, which we will produce on Monday.  Lambarri has not provided GGyB his time entries or any invoices.**

As to Barretiuta, the privilege log reflects that the expert firm was Washington Mayobre's firm.  Please confirm whether the supposed expert was Barretiuta or Mayobre and, in any event, please produce their engagements, invoices and time entries.  **The expert report is Barrutieta's, which we presume you know because your clients have access to his report, which is contained in the prosecutor's file.  Please see our answer above regarding engagement agreements, invoices, and time entries.**

<u>**Valuations**</u>

Oddly, we did not receive in your production any valuation of the rigs or Oro Negro Drilling's shares.  Yet, your privilege and redaction logs are replete with entries regarding valuations.  Please confirm that you stand on your refusal to produce any valuations.

**We never refused to produce valuations and in fact produced hundreds (if not thousands) of documents reflecting valuations of the rigs and for Oro Negro Drilling.  A search in our production for the term "valuations" alone retrieves over 1,000 non-privileged documents that we have produced.  By way of example, we refer you to ORO-NEGRO-ALTERNA-00023626 (estimating value of Rigs) and to ORO-NEGRO-CONTRARIAN_0009206 (providing analysis of annual EBITDA/rig and value of bonds).  If you have specific concerns about entries in the privilege and redaction log, please identify them and we will investigate further.**

<u>**Notes**</u>

Your emails below state that you did not even collect notes of meetings between your agents and third parties (e.g., notes of a meeting between GA and Pemex, or notes of a meeting between GGB and the prosecutors).

Please confirm whether you stand on your refusal to produce, even if redacted or logged, notes of your agents' meetings with third parties.

For abundance of clarity, this question relates to both the July and the December discovery orders.

**Regarding the December discovery order, we did not collect nor will we produce attorney notes of meetings between Mexican counsel and prosecutors, government officials, or other third parties.  Attorney notes are covered by the work product doctrine under US law, and we are advised the same is true under Mexican law.  Our response regarding the July discovery order is contained in our January 31 email to you.**

<u>**Private Investigator**</u>

For clarity, the private investigator (1) performed no work whatsoever for your clients or their agents; and (2) received no payments from your clients or their agents?

Your email says GGB did not "retain him" but I would be grateful if we could clarify what that means.

**The private investigator has performed work for GGyB on other matters, unrelated to Oro Negro.  The investigator pitched GGyB for business related to Oro Negro, but was never retained and did not work at the request of the Ad Hoc Group or GGyB.  The investigator received no payments related to the Oro Negro matter.**

Regards,
Carter



**Carter E. Greenbaum** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3955 (Direct Phone) | +1 212 492 0955 (Direct Fax)
cgreenbaum@paulweiss.com | www.paulweiss.com

---

**From:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Sent:** Thursday, January 24, 2019 8:16 PM
**To:** Greenbaum, Carter <cgreenbaum@paulweiss.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Carter:

As we continue to await responses to the numerous gaps and deficiencies in your discovery, we would be grateful if you could provide confirmation on several fronts.

**GGB's "Experts"**

Please confirm when you will produce Lambarri's and Barretiuta's engagement agreements.  Relatedly, please provide their invoices and time entries – or does GGB contend that none of these documents exist as well?

As to Barretiuta, the privilege log reflects that the expert firm was Washington Mayobre's firm.  Please confirm whether the supposed expert was Barretiuta or Mayobre and, in any event, please produce their engagements, invoices and time entries.

**Valuations**

Oddly, we did not receive in your production any valuation of the rigs or Oro Negro Drilling's shares.  Yet, your privilege and redaction logs are replete with entries regarding valuations.  Please confirm that you stand on your refusal to produce any valuations.

**Notes**

Your emails below state that you did not even collect notes of meetings between your agents and third parties (e.g., notes of a meeting between GA and Pemex, or notes of a meeting between GGB and the prosecutors).

Please confirm whether you stand on your refusal to produce, even if redacted or logged, notes of your agents' meetings with third parties.

For abundance of clarity, this question relates to both the July and the December discovery orders.

Thank you,

Daniel

**Daniel Pulecio-Boek**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8167 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielpulecioboek@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Daniel Pulecio-Boek
**Sent:** Thursday, January 24, 2019 10:40 AM
**To:** Greenbaum, Carter <cgreenbaum@paulweiss.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Carter:

You said you would get back to us with several items during the week and we never heard back from you.  When will you respond?

Regarding Plan B, CS and GA, your obligation arising from the July and December orders was to produce all documents under your control.  This includes agents.  We already went through this regarding Aagard and Fraser.  You improperly failed to collect and produce documents and communications of Plan B, CS and GA.  Accordingly, we are at an impasse.  This is not a "new" discovery request.  This is the discovery you were obligated to provide by January 15.  It is for example striking that you improperly failed to collect and produce the communications of these agents with Pemex or Pemex's representatives.

As to the Mexican criminal investigations, apologies for insisting, but we still do not understand the steps you took to request the Mexican custodians' documents.  Had you met and conferred with us regarding your "methodology" for the criminal investigation documents, before implementing such methodology, we could have discussed these steps and asked you all clarifying questions then.

To avoid any misunderstandings, we ask that you simply respond "yes or no" to the specific, straightforward questions we set forth here.

1.  Did you ask the Mexican attorney custodians to search for and provide all their emails from their firm email accounts regarding Oro Negro with:

    a.  Eduardo Amerena
    b.  Joe Merino

    c.   Any Reforma reporters
    d.   Mike Allen
    e.   Chris Lormand
    f.   Lindsay Briggs
    g.   Jose Cuervo
    h.   Kim Hansen
    i.   Rocio Zarate
    j.   Gustavo Pineda
    k.   Antonio Monter
    l.   Andres Maximino Perez Hicks
    m.   Maria Concepcion Prado Garcia
    n.   Guillermo Rey
    o.   Jorge Arollo
    p.   Guadalupe del Carmen Arojona Garcia
    q.   Edmundo Garrido-Osorio
    r.   Enrique Cedillo Garcia
    s.   Yasmine G. Santana-Reyes
    t.   Judith Reyes Pacheco
    u.   Adan Camargo Peralta

2. Did you ask the Mexican attorney custodians to search for and provide all their communications (including emails from any accounts or communications in any texting applications) with the individuals listed in 1?

3. Did you ask the Mexican attorney custodians to search for and provide all their communications (including emails from any accounts or communications in any texting applications) regarding the criminal investigations with anyone other than clients, retained experts and co-counsel?

4. Did you ask the Mexican attorney custodians whether they use email accounts other than their firm email accounts such as hushmail accounts or commercial email accounts?

Thank you,

Daniel

---

**From:** Daniel Pulecio-Boek
**Sent:** Wednesday, January 23, 2019 8:56 PM
**To:** Greenbaum, Carter <cgreenbaum@paulweiss.com>
**Cc:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>; GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** Re: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Carter:

I would be grateful for the courtesy of a response.

Thank you,

Daniel

On Jan 21, 2019, at 4:05 PM, Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com> wrote:

Carter:

A certification under Rule 26.

Please be respectful of our time and avoid unnecessary back and forth.  You know what certificate we are referring to.

State whether you will provide it, please.

Thank you,

Daniel

Quinn Emanuel Urquhart & Sullivan, LLP

On Jan 21, 2019, at 4:03 PM, Greenbaum, Carter <cgreenbaum@paulweiss.com> wrote:

Dear Daniel,

Please see our responses to your email of Saturday, January 19 at 2:02 PM in red text below.  In addition, we note in response to your email of Saturday, January 19 at 10:07 A.M.:

1. For each request we made of Mexican counsel, we either received responsive documents which were produced or logged, or obtained confirmation from Mexican counsel that no responsive documents were found as a result of their search.
2. Your emails request "a sworn certificate of completion as the rules require."  Please identify the applicable rules or legal authority that you believe require a sworn certification of completion.  We have confirmed for you that our production is complete in that we have completed searches, collections and productions based on the protocols we have transparently described for you in the past, subject only to the specific additional things we have agreed to do in our recent emails.

Many thanks,
Carter

**Carter E. Greenbaum** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3955 (Direct Phone) | +1 212 492 0955 (Direct Fax)
cgreenbaum@paulweiss.com | www.paulweiss.com

**From:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Sent:** Saturday, January 19, 2019 2:02 PM
**To:** Greenbaum, Carter <cgreenbaum@paulweiss.com>; Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>
**Cc:** GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Counsel:

As you prepare your sworn certificate of completion, in an effort to narrow the issues we will bring to Judge Chapman's attention, please provide responses to the following questions.

We will get back to you shortly with proposals on how to get some discovery, any discovery, from Mexican counsel given that you produced almost no documents from them and now reveal that virtually no written communications, of any kind, with anyone, exist in relation to the Mexican criminal investigations.

To the extent you have reasonable requests, we will consider them.  However, based on the interviews we have conducted, it is our understanding that communications with third parties about the Mexican criminal investigations – in any form – were very limited.  Only one of the Mexican firms is responsible for handling the criminal investigations – GGB.  Communications with prosecutors are primarily accomplished by in person meetings.  There are formal channels for submitting evidence requests to prosecutors, but the prosecutors are ultimately responsible for running the criminal investigations, and as a result evidence collection is done by those prosecutors.

****

1.  Please confirm that you refuse to collect documents and communications from your agents Andres Antonius/Plan-B, Cervantes Sainz and Garcia Alcocer to provide discovery into the issues in which the Court has authorized discovery.

    **Andres Antonius/Plan B.**  Andres Antonius is ARCM's agent.  If you believe documents in the existing production provide a basis for discovery from Mr. Antonius, please let us know which documents and we will consider them.

    **Cervantes Sainz & Garcia Alcocer**.  We do not understand your assertion that we "refuse[d] to collect documents and communications from . . .Cervantes Sainz and Garcia Alcocer."  We requested documents from both firms concerning the Mexican Criminal investigations and produced what was received.  Shared drives created by both firms were produced, and emails from Cervantes Sainz were produced.  You appear to be making a new request for discovery that goes beyond the Mexican Criminal Investigations; such new requests are not consistent with the standstill or your repeated representations that you were forbearing from pursuing new discovery other than with respect to the criminal investigations.  New discovery requests should be taken up only in the event that the standstill and funding agreement is terminated.  If we have misunderstood your request, please clarify.

2.  You stated you would look into ORO-NEGRO-AMA_00061143.  Please provide a date certain when we can expect to hear back from you.

    This document is a picture of a filing in the Mexican criminal proceeding, and is an attachment to a WhatsApp conversation between Paul Leand and Roberto Garcia Gonzalez.  The conversation itself is privileged.  We did not request from GGB communications directly with clients or among counsel.

3.  Please provide a date certain when you will produce the @asomar emails.  We have been raising the issue of the @asomar account for months.  We apologize for the delay and will get back to you as soon as we can regarding this email account.  We will be in a position to provide more details by Wednesday.

4.  Please let us know when we can expect production of Mr. Aagaard's pre-October 2017 documents and emails.  We will produce the pre-October 2017 documents from Mr. Aagaard's "Oro Negro" laptop folder by tomorrow.  We do not believe the other emails addresses are property of Oro Negro but if you think that is mistaken please explain.

5.  For the third time, please confirm the identity of the "private investigator" that GGB met with.

When we discussed the private investigator with GGB, we learned that no private investigator was retained or paid in connection with this matter.  None of the GGB attorneys know the name of the investigator other than Roberto Garcia Gonzalez and Guillermo Barradas – the attorneys that met with him in June 2018.  We (i.e., Paul, Weiss, AMA) do not know the name of the investigator and as we have said cannot obtain document discovery from him, which was the focus of our inquiries to Mexican counsel.  We will, however, request that Messrs. Garcia Gonzalez and Barradas provide us with his name.

6.  For the third time, please confirm what was the purpose of the meetings with Amerena.  Otherwise, please confirm that you are refusing to provide any more information other than "the meetings concerned Pemex."

We were not participants in the meetings and have described the subject matter of the conversation to you, as relayed to us by Mr. Garcia Gonzalez, months after the fact.  Mr. Gonzalez's "purpose" in having a conversation with a third party is privileged and is attorney work product.

7.  We are confused with your representations below regarding your request from Mexican counsel for communications with third parties.  You state that "[f]or GGYB, we have requested all communications regarding Oro Negro with third parties.  With respect to the other Mexican firms, we have requested all communications with third parties that pertain to the criminal investigations."  Yet, lines later, you state that "[t]hird, we requested that GGyB custodians search for all communications concerning Oro Negro with Amerena, Merino, any Reforma reporters, and with Mike Allen, Chris Lormand, Lindsay Briggs, Jose Cuervo, and Kim Hansen by searching for their names or by searching for the term "reforma."" and that "we further asked Mexican counsel from Garcia Alcocer and Cervantes Sainz to search for any communications to and from Deutsche Bank."

So which is it? Did you request **_all_** communications with third parties pertaining to Oro Negro and the criminal investigations or just **_some_** communications focused on **_some_** topics or key words with **_some_** third parties?

We will try again to explain and eliminate any confusion.

**GGB.**  With respect to GGB, we met with the custodians we have identified previously and informed them that we needed to collect all emails with third parties concerning Oro Negro within the responsive date range.  By third parties, we excluded (1) other counsel (CS, GA, GT, PW), (2) clients, and (3) retained experts (i.e., those that submitted expert reports in the criminal investigations).  Through our interviews, we identified specific individuals with whom there had been communications, or potential communications.

Once we had that information, we worked with GGB attorneys to conduct searches of their email in-boxes and out-boxes.  To do this, a Paul Weiss associate sat with each of the GGB custodians, and directed them to run searches using the terms we have previously shared with you.  All "hits" on these terms – i.e., communications with third parties – were printed and provided to Paul, Weiss, and responsive documents have been produced or logged.

**CS & GA.**

We undertook the same process for CS and GA, except that in our interviews we inquired about communications about Oro Negro with third parties that pertained to the criminal investigations.  As you are aware, those firms, unlike GGB, are counsel in the *Concurso*.  The process was otherwise the same, except that unlike for GGB searches, a Paul Weiss attorney was not literally in the room with the lawyers when the searches were done.  They subsequently confirmed for us that they performed the searches and located no documents, or provided documents to us.

8.  We reiterate our request that you inquire about written communications with the any official of the Secretaria de Hacienda (your email below dodges the question by stating that "[w]e did not use the specific terminology "Secretaria de Hacienda" in our discussions with Mexican counsel, but did inquire whether there were any

communications with Mexican tax authorities broadly, which would encompass the Secretaria de Hacienda.")  Please confirm whether you refuse our request.

We certainly did not mean to "dodge" this issue or question, but we believe our previous inquiries to Mexican counsel were sufficiently broad to encompass the "Secretaria de Hacienda," despite the fact that we did not use this exact terminology.  In any case, we will make the specific follow up request and let you know by Friday whether we learn additional information.

9.  Your email below states that "Ricardo Contreras and Roberto Garcia Gonzalez do not as a practice retain WhatsApp messages on their phones to manage data storage."  Please confirm whether this means that they do not have any WhatsApps.  We find this deeply concerning given that you represented to us months ago that they were on hold.  Are all the other lawyers preserving their WhatsApps?

We will respond to this more comprehensively after speaking with the lawyers involved.

10.  Please confirm whether any member of GGB uses or has used since Jun 2018 texting applications that allow for the destruction of the texts such as Telegram or Wickr.  Also, please confirm whether they use or have used texting non-self-destroying apps other than WhatsApp (e.g., Viber).

We will discuss this issue with attorneys from GGyB and get back to you by Friday.

11.  The Teneo-Fraser document is 31187.  Please provide a date certain when you will get back to us with a response.

We will look into this matter and get back to you by Friday.

12.  You say you are not claiming privilege over the discussions with Pemex in connection with a potential common interest agreement.  Yet you withheld the attachments to this email.  Please produce them forthwith (ORO-NEGRO-AMA_00060991).

We investigated the documents that were attached to the email ORO-NEGRO-AMA_00060991 and determined that the attachments were previously sent to Pemex's counsel, although the January 9, 2018 email itself is privileged.  We will therefore agree to produce those attachments.  We will do so by tomorrow.

Thank you,

Daniel

**Daniel Pulecio-Boek**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8167 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielpulecioboek@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Daniel Pulecio-Boek
**Sent:** Saturday, January 19, 2019 10:07 AM
**To:** 'Greenbaum, Carter' <cgreenbaum@paulweiss.com>; Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>
**Cc:** GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Thank you.

These responses are seriously concerning.

To clarify, at several points in your email below, you say "you have requested" certain documents and communications from Mexican counsel.  Should we understand from your statement of completion below, that Mexican counsel responded to those requests and you produced whatever they provided?

Lastly, please provide a sworn certificate of completion as the rules require no later than Monday.

**From:** Greenbaum, Carter [mailto:cgreenbaum@paulweiss.com]
**Sent:** Friday, January 18, 2019 11:01 PM
**To:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>; Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>
**Cc:** GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Dear Daniel:

Our responses to your January 13 and January 14 email are below in red text.  We believe that those responses will answer most of the questions you raised in yesterday's email, dated January 17.  Subject to the additional searches we agree to below, our production is complete.  In addition, we have reviewed our redactions to ORO-NEGRO-AMA_00060587 and will reproduce a version with fewer redactions.  We have also reviewed ORO-NEGRO-AMA-61774-61793 and believe that they have been appropriately redacted for privilege.  We are still looking into your questions about ORO-NEGRO-AMA_00061143 and the Asomar Outlook email and will get back to you soon as to those issues.

Regards,
Carter

**Carter E. Greenbaum** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3955 (Direct Phone) | +1 212 492 0955 (Direct Fax)
cgreenbaum@paulweiss.com | www.paulweiss.com

**From:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Sent:** Thursday, January 17, 2019 12:15 PM
**To:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo

<juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>
**Cc:** GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Crystal:

This is to follow up on your production.  We have not received a certificate of completion.  Indeed, the production seems fundamentally incomplete, contrary to the January 15 deadline so clearly set by the Court.

Recognizing that we all want to be focusing on the mediation next week, we must note that obvious gaps in your production go well beyond any retail-level issues we might expect and stand to color our perspective and position:  We will naturally be assuming for purposes of the mediation that (1) the withheld materials are even more damning and even more at odds with your clients' representations and positions to date; and (2) we will be successful in compelling production of the materials (potentially following in camera review by Judge Chapman, if that proves necessary) absent amicable resolution at the mediation.  Your clients are of course welcome to disagree with us about either or both assumptions, but the only way to persuade us away from them is by showing us critical documents that remain outstanding.

We do not see addressed in the production many of the issues we have been flagging for months.  There are still virtually no documents and communications from March to September 2017.  There are no notes of meetings with Pemex or Pemex's representatives.  There are virtually no documents and communications from Mexican counsel other than hard copy filings in the Mexican bankruptcy and *amparo* proceedings – indeed, there are no filings in the Mexican criminal proceedings.

On the topic of Mexican counsel, to provide one example, ORO-NEGRO-AMA_00061143 is a document that, as its metadata indicates, comes from "Roberto."  Yet, GGB's production does not contain whatever "Roberto" sent.

We would be grateful if you could let us know when we can expect your log.  The court order requires it.  We note this because we continue seeing redactions for which we believe there is no basis.  For example, ORO-NEGRO-AMA_00060587 does not involve counsel yet it is entirely redacted.  Similarly, ORO-NEGRO-AMA_00061774-61793 is a chain of text messages that does not seem to discuss legal issues and yet it is heavily redacted.

Lastly, as you may recall, we asked about collection and production of emails in Mr. Aagaard's Asomar email account.  Attached our email on this topic.  Please let us know when you will produce that.

Best wishes,

Daniel

**Daniel Pulecio-Boek**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8167 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielpulecioboek@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any

review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>
**Sent:** Monday, January 14, 2019 12:38 PM
**To:** Johnson, Crystal <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>
**Cc:** GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Crystal:

My sincere apologies for sending a short follow on email.

Regarding redactions, we are also seeing redactions in emails between NT's counsel and Ole Aagaard (ORO-NEGRO-AAGAARD_00000329) and in emails between Ole and third parties (ORO-NEGRO-AAGAARD_00000350).

Please let us know when you will reproduce those emails unredacted.  We agree to produce both of these documents without redactions, and will do so today.

Thanks and we are at your disposal to discuss if you have any questions,

Daniel

**From:** Daniel Pulecio-Boek
**Sent:** Sunday, January 13, 2019 7:08 PM
**To:** 'Johnson, Crystal' <cjohnson@paulweiss.com>; Gabriel Soledad <gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie <samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston <ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>
**Cc:** GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** RE: In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Crystal:

Thank you for your email.

Please allow me to ask several follow up questions and also to follow up regarding several open questions from last year.

**Ole Aaagard's Pre-Oct. 2017 Documents**

Thanks for flagging this issue.  We agree that you should not review his pre-October 2017 documents and communications.  Please turn over these documents and communications to us, without reviewing them.  Please let us know if you agree with this approach.

We agree to turn over documents collected from Ole Aagaard regarding Oro Negro without reviewing them from March 1, 2017 until October 5, 2017, which we collected from his computer in a folder entitled "Oro Negro."  As for his communications, we only collected from Mr. Aagaard's personal phone and email addresses.  We are looking into your question about the Asomar.offshore@outlook.com address.  We understand that Mr. Aagaard used an Oro Negro email

address during the time in which he worked for Oro Negro. We did not collect from that email address as he no longer has access to those emails. We also understand that Mr. Aagaard used a computer and phone issued by Oro Negro, which he returned upon his resignation. Thus, Oro Negro already possesses any of Mr. Aagaard's communications that belong to the Company from that time frame.

**Time Period**

**Emails Prior to October 2017**

Other than a handful of emails regarding the purported exercise of security interests and correspondence with Oro Negro regarding bond restructuring proposals, we have received virtually no emails predating October 2017. This is the same issue we have raised on numerous occasions. Will you please let us know if we can expect emails from that time period by January 15 or whether you are withholding emails from this period, and, if so, why?

We are not withholding documents or communications. Nearly one-third of our production includes documents pre-dating October 1, 2017 – and that count includes emails. Is there something you are expecting to see, but are not?

**Mexican Criminal Investigations**

**Mexican "Custodians" and Collection**

Thanks for the list of custodians you have provided.

First, why are Jose Antonio Garcia (father and son) not included as custodians?

We did not include them based on our understanding that they are not involved in any significant way in this matter. Jose Antonio Garcia Alcocer does not appear on any bills in this matter. Jose Antonio Garcia Luque appears only once in October. We will, however, interview Garcia Luque; we will also confirm that Garcia Alcocer has no substantive role in the matter, consistent with the bills. If any supplemental production results, we will make that production next week.

Second, you say that you have requested documents and communications. Is Paul Weiss not collecting documents directly from the Mexican custodians' devices and servers? If the answer is no, how is each custodian determining which documents are responsive? How can we be sure that they are identifying and producing all responsive documents and communications?

Broadly speaking, there are three types of documents that are responsive to the Court's Order and which we collected from Mexican counsel. Those categories of documents are as follows: (1) Documents submitted to prosecutors, including any evidence or filings; (2) Evidence related to the criminal investigations in Mexican counsel's possession, but which has not been submitted to prosecutors; and (3) communications with third parties regarding Oro Negro – and as to the last category, this includes all communications with prosecutors or criminal judges involved in the investigations, regardless of subject matter.

The first and second categories were collected directly from central repositories by Paul Weiss, and supplemented based on custodian interviews. No responsiveness decisions were made by Mexican counsel as to those documents.

With respect to the third category:

1. We requested all communications with the specific list of prosecutors and judges we provided to you within the applicable date range; as to those communications, there is no responsiveness decision made by Mexican counsel.

2. With respect to other third parties (i.e. excluding communications among counsel or with clients, or with retained experts), we requested all communications pertaining to Oro Negro.  For GGYB, we have requested all communications regarding Oro Negro with third parties.  With respect to the other Mexican firms, we have requested all communications with third parties that pertain to the criminal investigations.  For example, we have not sought all communications between CS and the *concurso* Court as those communications are not related to the criminal investigations.  More specific information concerning manner of search is described below.  Note that Paul, Weiss has not collected email servers directly, and cannot do so, as the Mexican firms have other clients and communications with those clients are of course on their servers.

Third, do the communications you will collect include mobile device communications, such as SMS and WhatsApp?

We requested communications in this form, if any responsive communications exist with third parties.  We did not receive any, other than pictures of evidentiary materials from Diego Urizza.  We were advised that Ricardo Contreras and Roberto Garcia Gonzalez do not as a practice retain WhatsApp messages on their phones to manage data storage.

**Mexican IRS**

The Mexican IRS is part of the Secretaria de Hacienda, as I am sure you know.

Your email states that none of the Mexican attorneys communicated "in writing" with the Mexican IRS.

To clarify what we meant to convey by the "in writing" limitation: We understand that GGyB, in the course of the criminal investigations, requested that prosecutors subpoena materials from the Mexican IRS; that information request was made by prosecutors directly to the Mexican IRS.  We further understand that GGyB attorneys went to the IRS in order to inquire about the status of the information request by prosecutors.  We understand this to be an administrative process – one that involved physical travel to the IRS offices and oral communications (i.e., inquiries about status), but one for which there are no written communications.

First, did you inquire whether they communicated "in writing" with the Secretaria de Hacienda?

We did not use the specific terminology "Secretaria de Hacienda" in our discussions with Mexican counsel, but did inquire whether there were any communications with Mexican tax authorities broadly, which would encompass the Secretaria de Hacienda.

As reference, Alejandro Sainz's bills reveal he met with Max Diener in late 2017, a senior Secretaria de Hacienda official (responsible for tax enforcement).

We have asked Mr. Sainz about Mr. Diener and he has stated that there are no written communications between them, although he did meet with Mr. Diener as the bills reflect.

Second, relatedly, please confirm that notes of in person meetings will be produced, with the IRS, the Secretaria de Hacienda or other government officials in connection with the Mexican criminal investigations.  We understand that your limitation above about "in writing" communications is meant to convey that they did communicate by phone or in person.  Please let us know if we are mistaken.

We have described the communications with the Mexican IRS of which we are aware above.

We have not requested attorney notes (other than the document created by Mr. Contreras used for purposes of his interview with prosecutors about the sham companies).  Attorney notes are covered by the work product doctrine under US law, and we are advised the same is true under Mexican law, so we do not understand the basis for this request.

**Missing Documents from Mexican Counsel**

We have yet to receive any documents from Mexican counsel. For example, GGB's bills have several entries referring to "evidence preparation" and "document review and analysis," which we take as reflecting their creation and/or possession of relevant documents. But we have not received any of that. Will you please let us know when you will be producing those documents and communications?

Documents from Mexican counsel were included in the previous productions.

**Meetings with Judges and Prosecutors**

The majority of hours in GGB's bills relate to in-person meetings with the PGR, with the Mexico City Prosecutor's office and with judges. Will you please let us know when you expect to be producing notes, reports, as well as any transcripts or recordings, of those meetings? Or were those meetings not memorialized in any way?

We have requested whether there are any "transcripts" or "recordings" of the in-person meetings with PGR, and have been informed that none exist. We have not, however, made a request for attorney notes (or, for that matter, communications only among counsel or clients); attorney notes are protected by the work product doctrine under US law, and we are informed they are afforded similar treatment under Mexican law.

**Communications With Prosecutors and Judges**

Your email states that you have requested communications with a number of prosecutors and Judge Cedillo. We notice that Yasmine G. Santana-Reyes and Edmundo Garrido-Osorio are missing.

Ms. Santana participated in the Oct. 18 hearing and Mr. Garrido was the head of the prosecutor's office at the time (in addition to being the brother of the Mexican IRS official responsible for DIOT filings). Why are you not collecting communications with these officials? What steps did you take to determine that you should only request communications with some officials and not others, and exclude Ms. Santana and Mr. Garrido?

The list we used was based on our understanding regarding which prosecutors were actually involved in the investigation. Although we do not believe that Edmundo Garrido-Osorio is actually involved, we nonetheless previously asked all Mexican custodians for communications with him; we inadvertently left that name off our January 11 email. Since receiving your email, we have additionally asked for communications with Yasmine G. Santana-Reyes specifically, and will confirm whether any additional documents should be produced as a result no later than next Friday (or sooner, once we have heard from all counsel).

**Communications with Third Parties**

We don't see in your email below any references to requests or collection of communications with third parties regarding the criminal investigations. As you know, we have inquired on numerous occasions about communications with third parties such as ultimate beneficial owners, shareholders, directors, officers, representatives or agents of the "sham" companies. We of course expect production of these communications. Please confirm that production of these communications is forthcoming.

We have shown the list of sham companies and related individuals that we received from you to Mexican counsel, and asked if they have communicated with them, and have been told that they have not communicated with those individuals or entities.

**Reynaldo Ortiz**

Thank you for confirming who he is.  Please let us know how the bondholders obtained that document.  As you can see, it is a secret, internal draft of a seizure order prepared by the PGR.

We disagree with your characterization of this document.  We have been informed that this document is a translation of a request filed by PGR, not an internal draft by PGR.  The translation was prepared by GGyB and put onto a PGR document template, originally sourced online.

## Privilege and Confidentiality Designations

**Nordic Trustee**

You have redacted communications with Nordic Trustee and its Mexican, Singaporean and Norwegian lawyers.  Of course, you are not counsel to Nordic Trustee and, according to your representations to Judge Chapman, Nordic Trustee is a separate, independent entity outside of your clients' control.  We therefore do not believe there is a basis for redacting these communications.

Please let us know whether you will produce unredacted versions of those communications, and, if so, when.  Please also let us know whether you have withheld any documents on these grounds, and if so whether and when you will produce them.  Given your prior representations to the Court, which precluded us from seeking discovery directly from Nordic Trustee, correct treatment of these documents is a time-sensitive priority

Although Nordic Trustee is a separate entity whom we do not represent, the communications you reference are protected under the "common interest" exception to waiver of attorney-client privilege, and privilege is maintained on that basis.

**Moneda, Greylock and Other Bondholders**

You are similarly redacting communications with Moneda, Greylock and other bondholders that are not Ad-Hoc Group members.  Since you are not their counsel, we do not believe there is a basis for redacting these communications.  Please let us know whether you will produce unredacted versions of these communications, and, if so, when.  Please also let us know whether you have withheld any documents on these grounds, and if so whether and when you will produce them.

We similarly will not unredact all communications with Moneda, Greylock, or other bondholders, as certain of those communications are protected under the "common interest" exception to waiver of attorney-client privilege and privilege is maintained on that basis.

**36284, et. seq. and 36280, et. seq.**

You produced 36284, et. seq. and 36280, et. seq. heavily redacted and as highly confidential.  Especially given that no counsel is copied on those documents, we do we do not believe there is a basis for redacting them.  Nor does it appear to come anywhere close to the definition of "highly confidential documents" under the protective order, which you specifically described to Judge Chapman.  Please let us know whether you are willing to produce unredacted versions of these documents and lift your designation of them as "highly confidential," and, if so, when.  I note that these are especially important documents from our perspective (for reasons that should be apparent, but I'd be glad to explain) and correct treatment of them will be a time-sensitive priority.

We have reviewed these documents and believe that they have been appropriately redacted for privilege.  The mere fact that counsel is not copied on a document does not preclude appropriate redactions when two individuals, represented by the same lawyers, or otherwise within the scope of privilege, discuss privileged matters.  We suggest you review the privilege and redaction logs in regards to this request.

We will, however, agree to reduce the designation on this document to CONFIDENTIAL, from HIGHLY CONFIDENTIAL.

**42538**

This document is heavily redacted.  No counsel is copied in the document and it discusses solely communications/contacts with a third party, i.e., Pemex.

Please reproduce it unredacted.

We have reviewed this document and believe that it is appropriately redacted for privilege.  The mere fact that counsel is not copied on a document does not preclude appropriate redactions when two individuals, represented by the same lawyers, or otherwise within the scope of privilege, discuss privileged matters.  We suggest you review the privilege and redaction logs in regards to this request.

**46730**

This document is heavily redacted.  No counsel is copied in the document and it discusses solely contacts with third parties.

Please reproduce it unredacted.

We have reviewed this document and will reproduce it with appropriate redactions for privilege.  We note that the document is already appropriately redacted for responsiveness.

**Aagaard 00020**

You produced Aagaard 00020 as highly confidential.  We are surprised that this document was never included in any of Paul Leand's productions.  Why was it suppressed from those productions?

Second, there is nothing in that document that makes it "highly confidential."  Please confirm that you agree to treat this document as "confidential" and reproduce it with that designation.

We will agree to treat this document as "confidential".  We have produced this document from Mr. Leand's files.

**<u>Richard Sjøqvist</u>**

As I am sure you know, he was counsel to Oro Negro.  Now, we are seeing that he is the bondholders' Norwegian counsel.

Please let us know what measures you took (if any) to prevent Richard from sharing with or using in the bondholders' representation privileged information that he obtained from Oro Negro.

If you believe Mr. Sjøqvist owes a professional obligation to your clients, we suggest you raise this with him directly, rather than address this with us.

**<u>Agents</u>**

**Antonius**

36284, et. seq. and 36280, et. seq. indicate that, contrary to your representations to Judge Chapman, Andres Antonius was a central agent for the bondholders and that his role included selecting and managing counsel for the bondholders

(Garcia Alcocer) and meeting with Pemex and the afores on the bondholders' behalf.  Do you nonetheless stand on your refusal to collect and produce his documents?

We hope not, and trust you understand (but would be glad to explain) why we cannot accept that position, especially in light of revelations to date.

We have said that "Mr Antonius was retained only by ARCM, not the Ad Hoc Group or any other member of the Ad Hoc Group."  *See* Dkt. 127 at 15.  We also represented that Mr. Antonius "has no agreement to provide services to the Ad Hoc Group."  *Id.*  Neither of the documents you cite suggests otherwise.  Both are WhatsApp chats with Alp Ercil, the Chief Executive Officer of ARCM, who retained Mr. Antonius.  The WhatsApp chat, 36280, does not include Mr. Antonius.  The WhatsApp chat, 36284, only includes him because Mr. Ercil added him to a group chat and "hope[d] that [Paul and Mr. Antonius] will have the opportunity to meet in Mexico."  We will therefore take you up on your offer to explain the basis for your belief that Mr. Antonius is a "central agent" for the bondholders – are there documents other than these you are relying on?

**Rig Deployment Plan**

Mr. Aaagard references a rig deployment plan in Aagaard-00001.  Will you please let us know when you will produce that plan?

We have completed our production of documents from Mr. Aagaard (subject only to the open issues described above) and have not seen a "plan" document other than what is reflected in the emails we have produced.

**Kyle Mooney (18765)**

Please let us know whether the bondholders or their agents ever executed an agreement with Mr. Mooney and if so, whether you will produce any other communications with him or his companies regarding absconding with the rigs.

Mr. Mooney is a contractor that performed work on Paul's house.  The text message about "drilling rigs" was a joke; there is no agreement or communications with his companies about Oro Negro.

**Damian Fraser-Teneo**

We noticed in one email that he has a Teneo email account.  Please let us know what involvement, if any, Teneo had with this matter and whether they acted as the bondholders' media or public relations advisors.

We were unable to locate the document you reference.  Would you please provide us with the Bates Number?

**Pemex**

**Common-Interest Agreement with Pemex**

Your latest productions reference preparing and exchanging drafts of a common interest agreement with Pemex.  Yet, we never received any drafts, the agreement itself (if it was ever signed) or any exchanges of correspondence with Pemex or its U.S. or Mexican attorneys or any communications regarding such agreement.  Will you please let us know when you will produce this?

A common interest agreement was never signed with Pemex.  We have not asserted a common interest privilege with respect to Pemex or its counsel.  One email with Pemex's counsel, Cleary Gottlieb, was inadvertently marked as privilege (it appears at the bottom of an otherwise privileged chain).  We will produce that email to you today.

**Cervantes Sainz's Communications**

CS's bills reflect numerous meetings and correspondence with Pemex. Yet, we have not received any documents regarding such meetings or correspondence with Pemex. Will you please let us know when you will produce this?

We have not performed a collection from CS regarding Pemex. The only matters for which we have collected documents from Mexican counsel pertain to the Mexican Criminal Investigations during the date range specified in the Court's discovery order of June 1, 2018 – November 7, 2018.

Relatedly, dozens of entries in their bills relate to in person meetings with Pemex and their attorneys. Will you please advise us as to when you will produce notes and reports, as well as any transcripts or recordings, of all those meetings? Or were those meetings not memorialized in any way?

Attorney notes are protected from disclosure as work product and/or applicable privileges under both U.S. and Mexican law. We have not collected such notes and do not intend to do so.

## Mexican Counsel Central Repositories

Thank you for making a first production of this. Almost the entirety of this production are files in Garcia Alcocer's Dropbox. Some other documents are from CS's repository. Are these all the documents in Garcia Alcocer and CS's repositories?

We produced all the documents in the Garcia Alcocer and Cervantes Sainz repositories that were shared with, and used by, GGyB, as these are repositories of documents that pertain to the Mexican Criminal Investigations.

Does GGB not have a central repository?

GGyB has access to the two central repositories described above, as well as one prepared by Garza Tello. We in fact obtained the links to these three repositories from GGB, and produced them. We have been told that GGB does not have a separate central electronic central repository apart from these sources, which they can access.

GGB did have hard copy records which we have separately collected and produced. In addition, one GGyB attorney also received certain documents (in picture form via WhatsApp) which are separate from the central repositories referred to above, and those documents have been collected and produced.

## Outstanding Emails

We continue to look forward to your responses to several outstanding questions. Our emails containing those questions are attached, for your convenience.

First, we noticed that one of the attorneys working on the matter is Valentina Scherer, the niece of Julio Scherer (the general counsel of the President of Mexico) and dozens of her hours in GGB's bills are for "delivering documents." Can you please be sure to let us know what involvement, if any, Mr. Scherer had in the criminal investigations against Oro Negro? This connects to ORO-NEGRO-FRASER_00000818, in which Garcia Alcocer states that he is very close to Mr. Scherer.

Valentina Sherer is a GGyB intern and her job, as described to us, literally involves delivering documents and is not substantive. We are also informed that Mr. Scherer has not had involvement in the criminal investigations regarding Oro Negro.

Second, we have not heard back from you regarding the search terms you will apply on documents collected from the custodians related to the Mexican criminal investigations. On December 21, you stated "we are working on a

methodology for identifying and collecting responsive communications and will revert." But we never heard back from you.

Our email dated January 11, 2019, was meant to lay out our methodology for identifying and collecting responsive documents and communications. Other than with respect to third party communications as described below, we are not using search terms, and do not believe broad search terms are reasonable for collection from the attorneys in this case.

Specifically, we requested the following searches. First, we asked that all Mexican counsel search for all communications with the following individuals and provide us with any such communications in the date range from June 1, 2018 to November 7, 2018 by searching for their names: Rocio Zarate; Gustavo Pineda; Antonio Monter; Andres Maximino Perez Hicks; Maria Concepcion Prado Garcia; Guillermo Rey; Jorge Arollo; Guadalupe del Carmen Arojona Garcia; Edmundo Garrido-Osorio; Enrique Cedillo Garcia; and (more recently) Yasmine G. Santana-Reyes. Second, we requested that GGyB custodians search for all communications with the following court personnel and provide us with any such communications in the date range from June 1, 2018 to November 7, 2018 by searching for their names: Judith Reyes Pacheco; Adan Camargo Peralta; and David Isaac Rios Mares. Third, we requested that GGyB custodians search for all communications concerning Oro Negro with Amerena, Merino, any Reforma reporters, and with Mike Allen, Chris Lormand, Lindsay Briggs, Jose Cuervo, and Kim Hansen by searching for their names or by searching for the term "reforma." Fourth, we asked that Roberto Garcia Gonzalez and Guillermo Barradas both search for all communications with any private investigators with whom they've spoken in relation to Oro Negro by searching for the investigator's names or the term "investigator privado." Relatedly, we asked for all Mexican counsel to search for any communications with a private investigator by using the search term "investigador privado." Fifth, we requested that Alejandro Alfaro search for all communications with any entities contacted in connection with the attempts to execute the restitution order. Sixth, we further asked Mexican counsel from Garcia Alcocer and Cervantes Sainz to search for any communications to and from Deutsche Bank.

With regard to how these terms were identified, as described above, we made a request for all communications with third parties related to criminal investigations concerning Oro Negro. After interviewing Mexican counsel, we asked them to run specific searches, based on the individuals with whom Mexican counsel reported they'd had potentially responsive communications concerning Oro Negro, and supplemented with certain names mentioned by you (e.g. Mr. Merino) and others from the discovery record (e.g. Jose Cuervo).

Third, we are waiting to hear from you regarding the source of two Excel spreadsheets with highly confidential information regarding Oro Negro's finances.

We have reviewed both excels once again and believe that our email of December 14, 2018 correctly explains the source of the figures in both excels. We note that the excels contain many, many thousands of figures. If there are specific figures or portions of the spreadsheets which you are concerned about, please identify them, or at least examples, and we can see if we can obtain more information.

Fourth, we are waiting to hear from you regarding the identity of the private investigator that was working for GGB. We also await confirmation that you will collect and produce responsive documents from the private investigator.

We understand that two GGB attorneys met with the private investigator, but the investigator was not retained. We have nevertheless requested any responsive email or other written communications between GGB and the investigator, and have been advised there are none because the investigator was not retained, we are not collecting from their documents.

Fifth, we are waiting to hear from you regarding the nature and purpose of GGB's meetings with Eduardo Amerena, the "sham" companies' counsel.

We informed you that the subject matter of GGyB's meetings with Mr. Amerena concerned Pemex.

\*\*\*

As always, we are at your disposal and would be glad to discuss any of the above.

Thank you,

Daniel


**From:** Johnson, Crystal [mailto:cjohnson@paulweiss.com]
**Sent:** Friday, January 11, 2019 2:44 PM
**To:** Daniel Pulecio-Boek <danielpulecioboek@quinnemanuel.com>; Gabriel Soledad
<gabrielsoledad@quinnemanuel.com>; Sara Clark <saraclark@quinnemanuel.com>; Samantha Gillespie
<samanthagillespie@quinnemanuel.com>; Juan Morillo <juanmorillo@quinnemanuel.com>; Eric Winston
<ericwinston@quinnemanuel.com>; Scott Shelley <scottshelley@quinnemanuel.com>
**Cc:** GRP-OroNegro <grp-oronegro@paulweiss.com>
**Subject:** In re Perforadora Oro Negro, S. de R.L. de C.V. et al., Case No. 18-11094

Daniel,

We write with respect to several matters pertaining to the Interested Parties' production.

**Paul Leand's text messages**

First, we have succeeded in recovering Paul Leand's text messages for the entire discovery period.  We are in the
process of reviewing these messages and they will be produced with the remainder of the discovery materials.

**Documents collected from Ole Aagaard**

Second, Ole Aagaard has provided our discovery vendor all of the documents he had on his laptop pertaining to Oro
Negro, including documents related to his employment with Oro Negro (i.e., documents from before October 5,
2017).  We do not regard these pre-consulting documents as our clients' documents, however, and therefore do not
believe we are in a position to review them and so will not include these documents in our production.  We would be
happy to meet and confer about how you would like us to treat these documents.

We will take the same approach to his text messages and emails.

**Discovery from Mexican legal advisors**

Third, we have been diligently working on collecting documents pursuant to the Court's order concerning the Mexican
Criminal Proceedings.  Attorneys from Paul, Weiss have interviewed Mexican legal advisors—both in person and over
the phone—concerning the Court's order, and have spent several days in Mexico City in their respective offices
collecting documents, both last week and this week.  We have interviewed the following attorneys for purposes of
collecting discovery:  Roberto Garcia Gonzalez, Guillermo Barradas, Ricardo Contreras, Sharon Paola, Diego Uriza,
Alejandro Alfaro, Vicente Banuelos, Gabriela Angel, Alejandro Sainz, Daniel Diaz, Gabriela Avenado, Daniel Pardo,
Estefania Sierra, Gabriel Najera, Santiago Garcia, and Pedro Garcia, for purposes of collecting documents (we thus
regard the foregoing as the "custodians").  We note that Garza Tello is counsel to Nordic Trustee, which is not subject to
the Discovery Order, however, Vicente Banuelos and Gabriela Angel were interviewed for purposes of identifying third
parties with whom Mexican counsel communicated regarding Oro Negro in relation to the Mexican Criminal
Proceedings.

We have requested all evidence (including contracts, spreadsheets, invoices, and the like) pertaining to the Mexican Criminal Proceedings, regardless of whether it has been provided to prosecutors, as well as any other materials submitted to prosecutors or courts in connection with the Mexican Criminal Proceedings.  (Note:  We are not collecting filings in the *Amparo* proceeding, as we understand that your clients have all such filings.)

With respect to Mexican counsel's communications:

- We have requested all communications regardless of content from June 1, 2018 to November 7, 2018, between Mexican counsel and government officials (such as prosecutors or criminal judges) related to the Mexican Criminal Proceedings.

  We have been told there were no such communications by Cervantes Sainz, Garcia Alcocer, or Garza Tello, but that certain GGyB attorneys have communicated in this fashion.  We requested that the interviewed attorneys search their emails for any communications with:  Rocio Sarate, Gustavo Pineda, Antonio Monter, Andres Maximino Perez Hicks, Maria Concepcion Prado Garcia, Guillermo Reyes, Guadalupe del Carmen Arojona Garcia, Jorge Arollo, Judge Enrique Cedillo Garcia, or criminal court staff.  We have requested all communications be provided for our review.

- We have, during our interviews, specifically asked whether any of the above counsel have had any communications in writing with the Mexican IRS related to the Mexican Criminal Proceedings (e.g., letters, emails, text messages, or WhatsApp).  We have been told there are no such communications.

- We have requested all written communications from June 1, 2018 to November 7, 2018 with the helicopter companies and any security company retained in connection with the restitution order.

- We have requested all written communications from June 1, 2018 to November 7, 2018 with members of the media in connection with the Mexican Criminal Proceedings.

- We have requested all written communications concerning the Mexican Criminal Proceedings with any other third party, other than retained experts (which are discussed in more detail below), during the period from June 1, 2018 to November 7, 2018.

- We have also asked all Mexican counsel whether any of them have had any communications with "lobbyists, *operadores*, intermediaries, or *coyotes*" related to the Mexican Criminal Proceedings.  We have been told that there have been no such communications, and no such individuals have been retained in connection with Oro Negro.

In addition, we have asked whether any agents were retained in connection with the Mexican Criminal Proceedings, and are advised that two experts were retained by GGyB in the relevant date range:  (1) Luis Lambarri, an accountant; and (2) Emanuel Barretiuta, a marine engineer.  Your clients have seen the expert reports produced by both, as these reports are part of the investigative file with the Mexico City prosecutor to which Oro Negro has access.  We have asked GGyB to provide any evidentiary materials in the experts' possession beyond what they were provided by GGyB (and which would therefore be produced or logged from GGyB's files) and any engagement agreements with the experts.  We have also requested that, to the extent they exist, any communications between the experts and third parties in relation to Oro Negro be provided to us, but have not collected communications between the lawyers and the experts as such communications would be privileged work product.

Information received is being reviewed for responsiveness and privilege and will be produced or logged accordingly.

**Ken Becker's notebook**

You inquired about pages 118 and 119 of Ken Becker's notebook.  We confirmed that no pages were missing.  Rather, the notebook sections that were produced last week were from two separate notebooks, and the proximity in page numbers was entirely coincidental.

**Reynaldo Ortiz**

You inquired as to the author of ORO-NEGRO-AMA_00031082, Reynaldo Ortiz.  He is a translator who works for a translation company used by Mexican counsel, which is why the metadata lists him as the author of the document.

Best,

Crystal

**Crystal Johnson** | Associate - Admitted only in New York - *Not a member of the DC Bar. Supervised by a member of the DC Bar.
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
2001 K Street, NW | Washington, DC 20006-1047
+1 202 223 7312 (Direct Phone) | +1 202 204 7369 (Direct Fax)
cjohnson@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.