**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

May 14, 2019

**VIA ECF AND ELECTRONIC MAIL**
Honorable Shelley C. Chapman
United States Bankruptcy Judge
Southern District of New York
One Bowling Green
New York, NY 10004
scc.chambers@nysb.uscourts.gov

Re:   *In re: Perforadora Oro Negro S. de R.L. de C.V., et al.*, Case No. 18-11094 (SCC) (Jointly Administered)

Dear Judge Chapman:

We write on behalf of Frederick J. Warren ("Mr. Warren"), a member of the Board of Directors and shareholder of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora") to respectfully request that the Court authorize him and the other U.S. shareholders of Integradora (the "U.S. Shareholders") to use the documents and deposition testimony produced in this Chapter 15 (the "Chapter 15 Evidence") in their pending arbitration against México (the "Arbitration") under the North American Free Trade Agreement (the "NAFTA").

This request is made in order to respond to the recent petition of the so-called "Ad-Hoc Group" of Oro Negro's Bondholders to intervene in the Arbitration in order to claim that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[1]

The U.S. Shareholders requested an extension to respond to the Ad-Hoc Group's Application, and last night, the NAFTA tribunal responded, giving the parties until May 20, 2019. Thus, we appreciate the Court's attention to this matter at its earliest convenience.

**The Ad-Hoc Group Attempts to Intervene in the Arbitration**

In June 2018, Mr. Warren and approximately three dozen other U.S. investors in Integradora that collectively own approximately 43% of its shares, initiated an arbitration against México under the NAFTA alleging that México had violated its obligations to afford the U.S. Shareholders fair and equitable treatment, avoid discriminating against them and their investment and not expropriate their investment without just compensation.[2]

On April 26, 2019, nearly a year after the U.S. Shareholders initiated the Arbitration, the Ad-Hoc Group filed an application with the NAFTA arbitration tribunal (the "Application") requesting leave to submit a brief, access the parties' documents and evidence as soon as possible, and generally

---

[1]   The public version of this letter redacts references to the content of the Chapter 15 evidence and substantive issues before the NAFTA Tribunal.

[2]   The U.S. Shareholders' Notice of Arbitration (the equivalent of a complaint) is attached as Exhibit A. Undersigned counsel represents the U.S. Shareholders in their NAFTA claim.

intervene in the NAFTA proceeding.³ ███████████████████████████████
████████████████████████████████████████████████████████████████████
██████████

      To properly make such a request to the NAFTA tribunal, the Ad-Hoc Group has to establish that ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████ In other words, NAFTA tribunals should ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

**Use of the Chapter 15 Evidence**

      The Chapter 15 Evidence undermines the Ad-Hoc Group's claim that it is █████
██████████████████████ It reflects █████████████████████████████████
███████████, and is therefore directly probative of whether the Ad-Hoc Group is █████
█████████. The "Confidentiality Agreement and Stipulated Protective Order," entered on October 9, 2018, (the "Protective Order") provides, however, that absent the Ad-Hoc Group's consent or an order from the Court, the U.S. Shareholders may not use the Chapter 15 Evidence in their NAFTA claim or in any proceeding where the Debtors are not parties or where any recovery would flow to Integradora's shareholders.⁸

      It is on that basis that the Ad-Hoc Group has vigorously objected to the U.S. Shareholders using the Chapter 15 Evidence in the NAFTA proceeding in any way, and claim that the U.S. Shareholders should not even be aware of the Chapter 15 evidence, despite that the Protective Order allows the "members," "partners," and "directors" (categories which necessarily include the shareholders and the Boards of Directors) of the Debtors to review the discovery.⁹

---

³   The Ad-Hoc Group's Application is attached as Exhibit B. The second portion of the document is the Ad-Hoc Group's proposed Submission, which the tribunal will consider only if the tribunal grants the Application. The Ad-Hoc Group submitted both the Application and Submission together as one pdf. At this point, the U.S. Shareholders are responding to the Application portion of the document only (pages 1-5 of the pdf).

⁴   Ex. B at pp. 2–3.

⁵   

⁶   ████████████████████████████████████████████████████████████████████████████████

⁷   Exhibit B, p. 2.

⁸   *See* D.E. 104.

⁹   The Ad-Hoc Group's emails reflecting its position are attached as Exhibit D.

**The U.S. Shareholders Should be Allowed to Use the Chapter 15 Evidence**[10]

The Court should grant the U.S. Shareholders leave to use the Chapter 15 Evidence in the Arbitration for the following reasons.[11]

<u>First</u>, circumstances have changed significantly since the entry of the Protective Order, and recent events justify the U.S. Shareholders' use of the Chapter 15 Evidence. At the time the Protective Order was entered, the Ad-Hoc Group had produced almost no documents and the facts surrounding the criminal investigations that the Ad-Hoc Group initiated against Oro Negro had not yet come to light, including the use of fabricated evidence. Indeed, it was not until 10 days after the entry of the Protective Order that the Ad-Hoc Group illegally obtained the order to take over the Rigs. Further, there was no way to then predict that the Ad-Hoc Group would attempt to intervene in the Arbitration.

<u>Second</u>, the Ad-Hoc Group should be estopped from arguing that the U.S. Shareholders may not use the Chapter 15 Evidence ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Indeed, after months of extensive discovery disputes, including several disputes that required this Court's intervention, the Ad-Hoc Group was forced to turn over evidence demonstrating ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, placing at issue in the NAFTA proceeding the facts to which the Chapter 15 Evidence

---

[10] For avoidance of any doubt, neither the Foreign Representative nor the U.S. Shareholders are seeking any amendment of the Protective Order. The Protective Order allows, if the Court so orders or with the Bondholders' consent, for the U.S. Shareholders to use the Chapter 15 evidence in the NAFTA proceeding. As such, the standard for—and presumption against—modification of a protective order set forth in *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979), and its progeny do not apply here. Even if this was a request to modify the Protective Order, the *Martindell* standard would not apply because this request does not entail making the Chapter 15 Evidence publicly accessible and the Ad-Hoc Group did not produce the Chapter 15 discovery in reliance of the Protective Order. *See, e.g., Fournier v. Erickson*, 242 F. Supp. 2d 318, 342 (S.D.N.Y. 2003) (in a case involving a protective order almost identical to the Protective Order here, "the Court concludes that the heightened extraordinary circumstances burden for unsealing documents, which contemplates the Court already having considered each document in the first instance according to a good cause standard, is not appropriate given the open-ended and unilateral deference to the parties, the plain language of the Protective Order, and the implications of a contrary interpretation.") (citations and quotations omitted); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 319, 325 (D. Conn. 2009) ("Stipulated blanket orders are even less resistant to a reasonable request for modification . . . The stipulated blanket protective order at issue here grants sweeping protections for discovery materials, has express language that anticipates modification, and generally should not invite the type of reliance that would call for application of the *Martindell* presumption against modification.") (citations and quotations omitted); *see also Picard v. Katz*, 2011 WL 5022923, at *1 (S.D.N.Y. Oct. 19, 2011) (authorizing amendment of a protective order in an adversary proceeding following a Rule 2004 investigation because "the [*Martindell*] high standard, however, applies only where, as in *Martindell*, someone has relied on a protective order when submitting confidential information, and modification of that order threatens to permit the disclosure of information that the person believed would be kept confidential.") (citations and quotations omitted).

[11] The U.S. Shareholders intend to submit in the NAFTA proceeding a narrow set of the documents that the Ad-Hoc Group has produced in the Chapter 15. Mainly, these are (1) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; (2) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and (3) the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

If the Court considers helpful to review the Chapter 15 Evidence that the U.S. Shareholders intend to submit in the NAFTA proceeding, we will deliver those materials to the Court.

directly relates. As such, the Ad-Hoc Group should be estopped from arguing that the U.S. Shareholders be precluded from using the Chapter 15 Evidence to rebut the Ad-Hoc Group's express premise underlying its attempted intervention in the NAFTA proceeding.[12]

Third, and similar to the above point, the U.S. Shareholders need the evidence to preserve the integrity of the NAFTA proceeding. ████████████████████████████████████████ This assertion of ██████████████████████████████ will effectively go unchallenged in the Arbitration if not rebutted by actual evidence. Thus, the U.S. Shareholders need the Chapter 15 Evidence to prevent a grave injustice upon the NAFTA tribunal and to the U.S. Shareholders.

Fourth, there is no prejudice to the Ad-Hoc Group (nor has it attempted to articulate any) in allowing the U.S. Shareholders to use the Chapter 15 Evidence in the NAFTA proceeding.[13] The U.S. Shareholders' submission of the Chapter 15 Evidence in the NAFTA proceeding would comply in every material way with the confidentiality requirements of the Protective Order because the NAFTA tribunal is required to enforce any protective orders governing the evidence that the parties submit.[14] In any event, most of the documents that the U.S. Shareholders intend to use are non-confidential documents—either documents the Ad-Hoc Group has already conceded were improperly designated as confidential and are no longer marked as such or documents whose confidentiality designation the Foreign Representative is contesting. And while the Ad-Hoc Group may not want the NAFTA tribunal to see the evidence that establishes ██████████████████████████████, as this will directly undermine its Application, that is not legal prejudice that should be recognized by this Court.

Fifth, the Ad-Hoc Group itself has now characterized the NAFTA proceeding as a proceeding where the use of the Chapter 15 Evidence would be indisputably allowed by the Protective Order.[15] In its Application to intervene, the Ad-Hoc Group characterizes the NAFTA proceeding as ███████████████████████████████████████████████████████████████ The Protective Order indisputably permits using the Chapter 15 Evidence in such proceedings. Either the Ad-Hoc Group

---

[12] See Price v. Fox Entm't Grp., Inc., 2007 WL 241387, at *3 (S.D.N.Y. Jan. 26, 2007) ("Equitable estoppel applies in both law and equity to deny a litigant the right to plead or prove an otherwise important fact because of something he has done or omitted to do. The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.") (citations and quotations omitted).

[13] See, e.g., Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc., 287 F.R.D. 130, 134 (E.D.N.Y. 2012) ("In this case, there is a compelling and extraordinary need to share these common discovery materials with counsel for the same plaintiff in other related litigations against Electrolux, especially in the absence of any discernible prejudice to Electrolux."); Allen v. City of New York, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) ("[A] party can show good cause for protection of a document under Fed. R. Civ. P. 26(c) if it demonstrates a clearly defined and serious injury that would result from disclosure of the document.") (quotations omitted).

[14] The NAFTA proceeding's Procedural Order No. 1, Paragraph 25.5 governs the confidentiality of the parties' submissions and is attached as Exhibit E.

[15] See Ex. B, p. 2 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

genuinely believes in that premise or it does not; but it cannot assert it when convenient and disavow it when it is not.

Sixth, the U.S. Shareholders would be able to obtain the Chapter 15 Evidence pursuant to a request under 28 U.S.C. § 1782.[16] Requiring the U.S. Shareholders to undertake the cost, time, and burden of such a petition would, however, be inefficient and wasteful of judicial resources.[17]

\*      \*      \*

The Chapter 15 Evidence directly contradicts the Ad-Hoc Group's express premise underlying its attempted intervention in the NAFTA proceeding, and is therefore vital to the U.S. Shareholders' ability to rebut the Ad Hoc Group's claim and protect their recovery in the Arbitration.[18] Accordingly, the Court should grant its use in that proceeding.

Respectfully submitted,

Gabriel F. Soledad

---

[16] *In re Application of Mesa Power Group, LLC*, 2012 WL 2886827 (S.D. Fla. July 13, 2012) (permitting discovery from a third party for a NAFTA arbitration). In evaluating discovery requests under Section 1782, federal courts follow the four-factor approach outlined by the U.S. Supreme Court in *Intel v. Advanced Micro Devices*, 542 U.S. 241 (2004). The four *Intel* factors are: (1) whether the applicant may obtain the same evidence through discovery in the foreign proceeding; (2) whether the foreign tribunal is receptive to U.S. federal court assistance; (3) whether the Section 1782 request circumvents foreign evidence-gathering restrictions or rules; and (4) whether the request is unduly intrusive or burdensome. The U.S. Shareholders easily satisfy all four factors here.

[17] *See Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012) ("As a threshold matter, the Court notes that allowing the sharing of discovery among related cases is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases.").

[18] *See In re Accent Delight Int'l Ltd.*, 2017 WL 6568059, at *2 (S.D.N.Y. Dec. 22, 2017) (allowing use of evidence in parallel litigation where the Court concluded that such use would only be prohibited if the opposing parties "establish[ed] bad faith or some other abuse of process."); *In re EPDM Antitrust Litig.*, 255 F.R.D. at 313 (allowing use of discovery exchanged in a U.S. litigation in a foreign litigation, a Canadian class action, by a different plaintiff, where the plaintiff made a showing that the evidence was relevant and its confidentiality would preserved in the Canadian proceedings).