# Exhibit 1

18-11094-scc    Doc 199-1    Filed 05/21/19    Entered 05/21/19 11:52:43    Exhibit 1
Pg 1 of 15



FORMA B-2

PODER JUDICIAL DE LA FEDERACIÓN

**PROM. 8349, 8325, 8327, 8512, 8613, 8612, 8627 y 8674.**

**CONCURSO MERCANTIL 345/2017-I.**

**En quince de mayo de dos mil diecinueve, la secretaria certifica:**

**Primero**. El plazo de tres días a que se refiere el artículo 1335 del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles, para interponer el recurso de revocación contra el proveído de **dos de mayo de dos mil diecinueve**, transcurrió para Operadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, del **siete** al **nueve** de mayo del año en curso.

**Segundo**. El plazo de tres días concedido en proveído de **veintidós de marzo del año que transcurre**, a Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, División Fiduciaria, como fiduciaria del fideicomiso F/1695 y a Nordic Trustee As, antes Nordic Trustee ASA, para que se manifestaran en relación al recurso de revocación interpuesto por las comerciantes, en contra del auto de ocho de marzo de dos mil diecinueve, transcurrió del **veintisiete** al **veintinueve** de marzo del año en curso.

**Tercero**. Al escrito con folio 8612 se acompañó la tabla titulada "Desglose de pagos préstamo. Montos en dólares americanos".

**Cuarto**. Al escrito 8674 se acompañó el acuse del escrito dirigido al conciliador **Fernando Pérez Correa Camarena**, recibido el **quince de mayo de dos mil diecinueve**.

**Quinto.** El término de **veinticuatro horas**, concedido en proveído de diez de mayo de dos mil diecinueve, a Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, para que informara si obtuvo una nueva fuente de financiamiento para el pago de gastos laborales, diésel, fiscales y administrativos, **a partir del dieciocho de mayo de dos mil diecinueve**, así como para que informara cómo ha utilizado el financiamiento por el monto de $1´216,070.00 (Un millón doscientos dieciséis mil setenta dólares 00/100, moneda de los Estados Unidos de América), y el estado de conservación de las plataformas, concluyó a las **diez horas con quince minutos** del catorce de mayo de dos mil diecinueve.

**Sexto**. El término de **veinticuatro horas**, concedido en proveído de diez de mayo de dos mil diecinueve, al conciliador, para que informara cómo utilizó la comerciante el financiamiento por el monto de $1´216,070.00 (Un millón doscientos dieciséis mil setenta dólares 00/100, moneda de los Estados Unidos de América), y el estado de conservación de las plataformas, concluyó a las **diecisiete horas con cincuenta y cinco minutos** del catorce de mayo de dos mil diecinueve. **Conste.**

**La Secretaria.**

**Sara Cortés Méndez.**

En la misma fecha, la secretaria da cuenta al Juez, con cinco escritos signados por **Elías Mendoza Murguía**, uno como apoderado de Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable (registro 8325) y cuatro únicamente como apoderado de la primera moral

1



citada (folios 8327, 8612, 8613 y 8674); escrito signado por Antonio Flores Navarro, apoderado de Operadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable (registro 8349); un escrito signado por Manuel Ruiz de Chávez Gutiérrez de Velasco, como apoderado de Oro Negro Drilling, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., Oro Negro Impetus, Pte. Ltd., y Oro Negro Primus, Pte. Ltd. (registro 8512); un oficio proveniente del Octavo Tribunal Colegiado en Materia Civil del Primer Circuito (registro 8627); con las certificaciones que anteceden y con las constancias de autos. **Conste.**

### Ciudad de México, quince de mayo de dos mil diecinueve.

Agréguese a los autos los escritos signados por Elías Mendoza Murguía, uno como apoderado de Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable (registro 8325) y cuatro únicamente como apoderado de la primera moral citada (folios 8327, 8612, 8613 y 8674); Antonio Flores Navarro, apoderado de Operadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable (registro 8349); y Manuel Ruiz de Chávez Gutiérrez de Velasco, como apoderado de Oro Negro Drilling, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., Oro Negro Impetus, Pte. Ltd., y Oro Negro Primus, Pte. Ltd. (registro 8512); así como el oficio proveniente del Octavo Tribunal Colegiado en Materia Civil del Primer Circuito (registro 8627), en atención a su contenido se acuerda:

Con los escritos con registros **8325** y **8349**, en atención a su contenido y a la primera certificación de cuenta, respectivamente, se tiene a Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, y a Operadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, interponiendo en tiempo y forma legales **recurso de revocación** en contra del proveído de **dos de mayo de dos mil diecinueve.**

En razón de lo anterior, con fundamento en lo dispuesto por los artículos 268 de la Ley de Concursos Mercantil, y 1334 y 1335 del Código de Comercio, de aplicación supletoria al ordenamiento citado en primer término, **se admiten** los **recursos de revocación** en contra del proveído de **dos de mayo de dos mil diecinueve.**

En tal virtud, con los agravios expresados por las recurrentes, se ordena dar vista a Fernando Pérez Correa Camarena, conciliador designado por el Instituto Federal de Especialistas de Concursos Mercantiles, y a Oro Negro Primus, Pte. Ltd., por conducto de su apoderado Manuel Ruiz de Chávez Gutiérrez de Velasco, para que dentro del plazo de **tres días**, contado a partir del día siguiente al en que surta efectos la notificación del presente proveído, manifiesten lo que a su derecho convenga, para los efectos legales a que haya lugar.

Por otro lado, en atención a la segunda certificación de cuenta, se advierte ha transcurrido el plazo de tres días para que Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, División Fiduciaria, como fiduciaria del fideicomiso F/1695 y Nordic Trustee As, antes Nordic Trustee ASA, se manifestaran en relación al recurso de revocación interpuesto por las comerciantes, en contra del auto de ocho de marzo de dos mil diecinueve; por tanto, con fundamento

FORMA B-2



PODER JUDICIAL DE LA FEDERACIÓN

en el artículo 1078 del Código de Comercio, de aplicación supletoria a la ley concursal, se tiene por perdido el derecho que pudieron ejercer.

En las relatadas condiciones, con fundamento en lo dispuesto por el artículo 1335 del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles, **PASEN LOS AUTOS A LA VISTA DEL JUEZ, A EFECTO DE QUE DICTE LA RESOLUCIÓN QUE EN DERECHO CORRESPONDA.**

En diverso aspecto, en atención a la sexta certificación de cuenta, se advierte que transcurrió el término de **veinticuatro horas**, concedido en proveído de diez de mayo de dos mil diecinueve, al conciliador, para que informara cómo utilizó la comerciante el financiamiento por el monto de $1'216,070.00 (**Un millón doscientos dieciséis mil setenta dólares 00/100, moneda de los Estados Unidos de América**), y el estado de conservación de las plataformas, sin que lo hubiere realizado.

En consecuencia, se le requiere al conciliador **Fernando Pérez Correa Camarena**, para que en cumplimiento al proveído de diez de mayo de dos mil diecinueve, en el término de **veinticuatro horas,** contadas a partir de que le sea entregada personalmente la presente notificación, informe al suscrito en relación a las plataformas, lo siguiente:

1. Monto, fecha y concepto de los gastos que se han efectuado con la cantidad de $1'216,070.00 (Un millón doscientos dieciséis mil setenta dólares 00/100, moneda de curso legal de los Estados Unidos de América);

2. Actos que han realizado para el mantenimiento y conservación de las plataformas marinas;

3. Gastos futuros que se pretenden erogar por concepto de mantenimiento y conservación de las plataformas marinas con la cantidad de $1'216,070.00 (Un millón doscientos dieciséis mil setenta dólares 00/100, moneda de curso legal de los Estados Unidos de América);

4. En atención a las condiciones actuales de las plataformas, el plazo en el cual se podría reactivar la operación;

5. Recursos necesarios que se tendrían que inyectar para poner a trabajar o reactivar las operaciones;

6. Condición y estado actual de cada una de las plataformas, a saber: Primus, Decus, Laurus, Fortius e Impetus, mencionando si hay que dar algún mantenimiento correctivo o de mejora, así como el costo que éstos impliquen para que estén en condiciones óptimas para iniciar operación;

7. Si existe necesidad de contratar seguros para iniciar la operación de las plataformas y los costos que implican sus contrataciones; y,

8. Si existe necesidad de contratar mantenimientos, certificaciones y trámites para tener en clase los equipos de perforación de las Plataformas.

Se le apercibe que de no hacerlo, con fundamento en el artículo 269, fracción I, de la Ley de Concursos Mercantiles, en relación con los transitorios segundo y tercero del Decreto publicado en el Diario Oficial de la Federación el veintisiete de enero de dos mil dieciséis, por el que se declaran reformadas y adicionadas diversas disposiciones de la Constitución Política de los Estados Unidos Mexicanos, en materia de desindexación del salario mínimo, **se le impondrá una multa equivalente a ciento veinte Unidades de Medida y Actualización, en su valor diario, para el año dos mil diecinueve, que podrá duplicarse en caso de reincidencia**, por desacato a un mandato judicial.

3



En otro tópico, con el escrito con folio **8327**, la comerciante Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable solicita se ordene a la **Comisión Nacional Bancaria y de Valores, dentro del plazo de veinticuatro horas** libere las cuentas de la fiduciaria y la comerciante, relacionadas con el fideicomiso F/1695, hasta por la cantidad de $13´779,983.91 (Trece millones setecientos setenta y nueve mil novecientos ochenta y tres dólares 91/100 moneda de curso legal de los Estados Unidos de América), y se ordene a Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, División Fiduciaria, como fiduciaria, a BBVA Bancomer, Sociedad Anónima, Institución de Banca Múltiple, y a Scotiabank Inverlat, Sociedad Anónima, Institución de Banca Múltiple, liberen y ordenen se tenga acceso a los recursos indicados.

Al respecto, dígase que no ha lugar a acordar de conformidad, y que deberá estarse a lo acordado en proveído de cinco de marzo de dos mil diecinueve, confirmado mediante interlocutoria emitida el ocho de abril siguiente.

En diverso aspecto, en atención al requerimiento realizado en proveído de **diez de mayo de dos mil diecinueve**, mediante escrito **8613**, presentado a las veintitrés horas con treinta minutos el catorce del mes y año en curso, en la Oficina de Correspondencia Común de los Juzgados de Distrito en Materia Civil en la Ciudad de México, recibido en este juzgado al día siguiente; esto es, de manera extemporánea al termino otorgado, tal como se observa de la quinta certificación que antecede, bajo protesta de decir verdad, la comerciante Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable informa que:

1. Ha obtenido recursos por la cantidad de $450,000.00 (cuatrocientos cincuenta mil dólares 00/100 moneda de curso legal de los Estados Unidos de América);

2. Que esa cantidad es a cargo del **crédito contra la masa previamente aprobado por el conciliador, lo cual ya había hecho del conocimiento de dicho especialista**; y,

3. Que con dicha cantidad tendría liquidez suficiente para realizar el pago de gastos operativos, laborales, de diésel, fiscales y administrativos, **hasta el catorce de junio de dos mil diecinueve.**

Añade que actualmente negocia un financiamiento adicional para continuar con liquidez, y que informará al suscrito la fecha a partir de la cual dejará de tener fluidez suficiente para mantener y conservar debidamente las plataformas marinas en su posesión.

En alcance al escrito anterior, por escrito **8674** recibido en este órgano jurisdiccional, en la fecha que se actúa a las **catorce horas con treinta y tres minutos**, la comerciante expone que:

a.     La cantidad de $450,000.00 (cuatrocientos cincuenta mil dólares 00/100 moneda de curso legal de los Estados Unidos de América), se obtuvo como una ampliación al monto del financiamiento que Navix de México, Sociedad Anónima de Capital Variable, Sociedad Financiera de Objeto Múltiple, Entidad no Regulada y Sagecrest Living Trust, otorgaron y que el conciliador aprobó el **veintitrés de abril del año en curso,** ampliación que se sometió a la aprobación del conciliador.

Para acreditar lo anterior, acompaña acuse del escrito dirigido al conciliador Fernando Pérez Correa Camarena, recibido el **quince de mayo de dos mil diecinueve.**

b.     Explica el monto es menor al que había estado gastando en meses anteriores; pero suficiente, en virtud de que implementó los siguientes ahorros:



**PODER JUDICIAL DE LA FEDERACIÓN**

i. Determinó el suministro de diésel a las plataformas se efectuara mensualmente en lugar de semanal, pues en mayo, solicitó el suministro por todo el mes, por lo que sólo pagó un servicio de transporte, en lugar de cuatro;

ii. Las oficinas de Ciudad del Carmen, Campeche, y la Ciudad de México, ya no generaran rentas, ya que las primeras han sido entregadas, y el costo de las segundas ha sido absorbido por un tercero; y,

iii. Empleados clave han acordado posponer el cobro de sus sueldos.

Además, en cumplimiento al auto de diez de mayo de dos mil diecinueve, relativo a informar los conceptos en que ocupó el monto de $1´216,070.00 (**Un millón doscientos dieciséis mil setenta dólares 00/100, moneda de los Estados Unidos de América**), así como diversos temas relacionados con el estado de conservación de las plataformas, con el escrito **8612** informa lo siguiente:

1. Para acreditar en qué ocupó el monto del crédito, exhibe la tabla titulada "Desglose de pagos préstamo. Montos en dólares americanos", en la que se aprecia que del veintiséis de abril al trece de mayo del año en curso, realizó pagos clasificados como laborales, de diésel, impuestos y gastos de oficina-administrativos, por el total de $1´216,543.79 (**Un millón doscientos dieciséis mil quinientos cuarenta y tres dólares 79/100, moneda de los Estados Unidos de América**), como se ve monto mayor al crédito otorgado;

2. Que los actos que ha realizado de mantenimiento y conservación de las plataformas marinas, son conocidos por las propietarias de las plataformas, en virtud de que del cinco al veintitrés de febrero de dos mil diecinueve, se inspeccionaron los equipos, cuyo resultado informó al suscrito mediante promoción 7712, y que si bien los inspectores contratados por los acreedores hicieron algunas observaciones y **no conformidades, concluyeron que las plataformas se encuentran en buen estado.**

No obstante lo anterior, refiere que la tripulación enciende los equipos con frecuencia para verificar su funcionalidad y para conservar los componentes, entre otras cosas, engrasan cables y válvulas.

3. En relación a los gastos futuros que pretende erogar por concepto de mantenimiento y conservación de las plataformas marinas con el monto del crédito aprobado el veintitrés de abril de dos mil diecinueve, índica que dichos recursos han sido consumidos en su totalidad;

4. En lo referente a las condiciones actuales de las plataformas reitera que existe una inspección de las plataformas conocida por los propietarios;

5. Expone está imposibilitada para informar el plazo y costo para reactivar operaciones, ya que ello depende de la revisión a las plataformas que realicen los proveedores, lo cual no se ha realizado, toda vez que no se le ha notificado la reactivación de operaciones y **carece de recursos para ello**;

6. Finalmente, refiere que para que las plataformas Primus e Impetus, tenga el certificado de clase, es necesario realizar los pagos correspondientes a la **Oficina Americana de Navegación (American Bureau Of Shipping),**

En lo referente a la petición de que el anexo que acompañó al escrito 8612, se ordene su resguardo como confidencial, en tanto que su contenido se relaciona con la operación financiera de la comerciante, y



por lo tanto parte integrante se su contabilidad, no ha lugar a proveer de conformidad, en tanto que su contenido se relaciona con el pago de gastos laborales, diésel, fiscales y administrativos, pertinentes para salvaguardar el estado físico de las plataformas, lo cual en el procedimiento concursal no sólo es de interés de la comerciante.

Lo anterior es así, debido a que conforme al artículo 1 de la Ley de Concursos Mercantiles, entre otras cosas prevé una protección a los acreedores frente al detrimento del patrimonio de la empresa en concurso.

De ahí que, el juez y los demás sujetos del proceso, regulados por la ley concursal deberán regir sus actuaciones, en todo momento, bajo los principios de trascendencia, economía procesal, celeridad, publicidad y buena fe.

Principios que deben ser entendidos como una directriz que permita tener un procedimiento trasparente y sobre todo ajustado al objetivo que persigue el procedimiento concursal, que es principalmente **conservar las empresas y evitar que el incumplimiento generalizado de las obligaciones de pago ponga en riesgo la viabilidad de las mismas y de las demás con las que mantenga una relación de negocios.**

Bajo esa premisa, es indudable que el documento en cuestión debe ser público en el procedimiento concursal y de ninguna forma se podrá restringir el acceso a los interesados, principalmente acreedores de la comerciante, cuyo derecho se vislumbra en la posibilidad que tienen de cuestionar en qué se destinan los recursos que forman parte de la masa concursal, con la cual, en su momento deberán ser cubiertos los créditos a su favor.

Una vez acotado lo expuesto por la comerciante en los escritos **8613, 8674** y **8612**; en concordancia con el proveído de diez de mayo de dos mil diecinueve, el suscrito determina que la comerciante no aportó elementos fehacientes que revelen que a partir del **dieciocho de mayo** y hasta el **catorce de junio, de dos mil diecinueve**, contará con recursos disponibles y suficiente para realizar el pago de gastos laborales, diésel, fiscales y administrativos, en conservación de las plataformas marinas autoelevables que se conocen como **Fortius, Laurus, Primus, Decus e Impetus.**

Por tal motivo, con fundamento en el artículo 1 de la Ley de Concursos Mercantiles, que no solo protege a la comerciante, sino a los demás entes con los que mantiene una relación de negocios, se determina las plataformas deben ser restituidas a sus propietarios, a fin de que se encarguen de su mantenimiento y conservación.

Lo anterior, porque de continuar la comerciante con la posesión de las plataformas sin liquidez inmediata y necesaria, representa un riesgo del principal activo de Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., Oro Negro Impetus, Pte. Ltd., y Oro Negro Primus, Pte. Ltd., como propietarias de las plataformas; además, que el inadecuado o nulo mantenimiento puede generar daños ambientales, como enunciativamente puede ser derrame de diésel o petróleo, incendios o incluso el hundimiento de los equipos.

No obsta que en proveído de cinco de octubre de dos mil diecisiete al admitirse la solicitud de declaración de concurso mercantil -y reiteradamente en diversas actuaciones judiciales-, se determinó que la viabilidad de la empresa de la comerciante, se basa en la protección de su operación ordinaria, que esencialmente se apoya en los contratos de fletamento, por virtud de los cuales obtuvo la posesión de las cinco plataformas marinas autoelevables, y que posteriormente dio en arrendamiento a Pemex Perforación y Servicios.



PODER JUDICIAL DE LA FEDERACIÓN

Por lo cual, desde el auto admisorio se determinó necesario que **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable** mantuviera la posesión de las plataformas marinas, para lo cual se decretaron las medidas precautorias siguientes:

*"VII. La orden dirigida a **Nordic Trustee ASA.**, para el efecto de que se abstenga de declarar cualquier acto de ejecución respecto de los bienes y derechos de Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, que no se encuentren cedidos formalmente, y se relacionen con los contratos de **fideicomiso irrevocable de administración y fuente de pago número F/1695** y **de fletamento a casco desnudo de las plataformas marinas autoelevables que se conocen como FORTIUS, LAURUS, PRIMUS, DECUS e IMPETUS,** así como sus respectivos convenios modificatorios.*

*VIII. La orden dirigida a **Nordic Trustee ASA.**, para el efecto de que se abstenga de afectar, modificar o terminar, la relación contractual que tiene la comerciante respecto de los **Contratos de Fletamento a Casco Desnudo y sus derivados,** celebrados con Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd., y, Oro Negro Impetus, Pte. Ltd., propietarias de las plataformas marinas autoelevables que se conocen como FORTIUS, LAURUS, PRIMUS, DECUS e IMPETUS, así como del **fideicomiso** irrevocable de administración y fuente de pago número F/1695, celebrado con **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable,** como fideicomitente y fideicomisaria en tercer lugar, Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd., y Oro Negro Impetus, Pte. Ltd., en su carácter de fideicomisarios en segundo lugar Nordic Trustee ASA., como agente de garantía en representación de los tenedores de bonos del acuerdo de emisión y en su carácter de fideicomisario en primer lugar y en primer orden de prelación, y **Deutsche Bank México, Sociedad Anónima, Institución de Banca Múltiple, División Fiduciaria,** en su carácter de Fiduciario."*

Y, en el diverso proveído de once de octubre de dos mil diecisiete, se ampliaron las medidas y se concedió la providencia precautoria siguiente:

*"II. La orden dirigida a **Nordic Trustee ASA.**, para que se abstengan de ejecutar la terminación de la relación contractual que tiene la comerciante respecto de los **Contratos de Fletamento a Casco Desnudo y sus derivados,** celebrados con Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd. y, Oro Negro Impetus, Pte. Ltd., propietarias de las plataformas marinas autoelevables que se conocen como FORTIUS, LAURUS, PRIMUS, DECUS e IMPETUS, esto es, se continúe con las operaciones de la comerciante en cuanto a esos contratos de la forma como se ha venido desempeñando para los efectos mencionados, a efecto de salvaguardar la operatividad y funcionamiento de la comerciante."*

Aunado a que, en la ejecutoria emitida en sesión de trece de marzo de dos mil diecinueve en el recurso de revisión 21/2019-I, por el **Octavo Tribunal Colegiado en Materia Civil del Primer Circuito** resolvió que el juez concursal podía obsequiar las medidas cautelares para **paralizar ciertos efectos** del contrato de emisión de bonos, celebrado el veinticuatro de enero de dos mil catorce entre Nordic Trustee Asa y Oro Negro Drilling, Pet. Ltd., como lo es, que la primera no



ejecutara las garantías del contrato y no tomara el control que implicará quedarse con la posesión de las plataformas marinas autolevables identificadas como Primus, Laurus, Fortius, Decus e Impetus.

En efecto, no es contradictorio que en la admisión se determinará que en protección a la operación ordinaria de la comerciante, se ponderara procurar que ésta mantuviera la posesión de las cinco plataformas marinas autoelevables y para ello se decretaran diversas medidas, pues dicha posesión por si misma le generó la obligación a la comerciante, relativas a que las mantuviera y conservara en buen estado, pues la finalidad era que estuvieran listas para operar en caso de que se reactiva su actividad ordinaria; sin embargo, a la fecha en que se actúa, no se tienen elementos que evidencien al suscrito que la comerciante cuenta con liquidez inmediata para su conservación, lo cual implica un riesgo inminente para las plataformas y su tripulación.

Lo que se afirma, pues con ninguno de los escritos que se provén, la comerciante acredita que cuenta con recursos de disponibilidad inmediata y suficiente para continuar con el pago de los gastos de conservación de las plataformas a partir del **dieciocho de mayo** y hasta el **catorce de junio, de dos mil diecinueve**, como lo afirma.

Ya que con el escrito **8613**, bajo protesta de decir verdad la comerciante afirma que obtuvo recursos por la cantidad de $450,000.00 (cuatrocientos cincuenta mil dólares 00/100 moneda de curso legal de los Estados Unidos de América), que le permitirán tener liquidez suficiente para mantener y conservar debidamente las plataformas en su posesión, a partir del **dieciocho de mayo** y hasta el **catorce de junio, de dos mil diecinueve**, y que de ello ya tiene conocimiento el conciliador.

Y que en el escrito **8674** añade los recursos obtenidos son una ampliación al crédito aprobado por el conciliador el veintitrés de abril de dos mil diecinueve, **su contenido y anexo revelan que el mismo se encuentra en proceso de aprobación ante el conciliador**, lo cual, en términos del artículo 75 de la Ley de Concursos Mercantiles, no es de manera inmediata, sino que deberá ser previa opinión de los interventores.

Conclusión a la que se llega, pues en el escrito expresamente señala la aprobación de la ampliación del crédito fue sometida al conciliador, lo que se corrobora con el anexo consistente en el acuse del escrito dirigido al conciliador Fernando Pérez Correa Camarena, para que en proceda en términos de artículo citado en el párrafo anterior de la Ley de Concursos Mercantiles.

Escrito entregado al auxiliar el **quince de mayo de dos mil diecinueve**, de ahí que en términos del artículo 76 de la Ley de Concursos Mercantiles, el conciliador debe enviar la propuesta de la operación a los interventores nombrados, quienes a su vez cuentan con cinco días para emitir su opinión, a fin de que el conciliador determine la aprobación o no, a partir de cual, se deduce que en caso de ser aprobado difícilmente el suscrito tendrá conocimiento de ello antes del diecisiete del mes y año en cursos, y además, evidencia que el crédito que la comerciante informa ha obtenido, hasta en tanto no sea aprobado, **no puede estar a su disposición**.

Razón por la que el suscrito debe tomar las medidas necesarias que salvaguarden las plataformas, tripulación y el medio ambiente que se podría ver afectado a falta de nulo o deficiente mantenimiento por falta de recursos financieros.

Y aun y cuando el crédito o la ampliación del crédito fuera aprobado en los plazos establecidos en los artículos 75 y 76 de la Ley de Concursos Mercantiles, la comerciante no aporta elementos que

FORMA B-2



PODER JUDICIAL DE LA FEDERACIÓN

objetivamente generen convicción de que es suficiente para mantener y proteger a las plataforma, en atención a que:

I.    En el escrito 8674, sólo se limita a exponer que será suficiente ya que ha previsto ahorros sustanciales en los gastos, que no representan un impacto en la operación y mantenimiento de las plataformas.

Ahorros que sólo anuncia de manera muy general, sin explicar concretamente el grado de ahorro que representa el que en un mes sólo se realice un viaje y no cuatro para el suministro de diésel; narre a partir de qué fecha las oficinas en Ciudad del Carmen, Campeche, dejaron de generar renta y dejo de ser un gasto, así como quien es el tercero que absorberá las rentas de las oficinas que la comerciante mantiene en la Ciudad de México, y en su caso, si dicha propuesta es a título gratuito u oneroso, y tampoco el porcentaje que sobre los gastos representa que ciertos empleados acordaran posponer recibir sueldo.

II.    De constancias de autos es notorio que los recursos con los que contó la comerciante para realizar el pagos de gastos laborales, diésel, fiscales y administrativos, desde el mes de octubre de dos mil dieciocho, al diecisiete de mayo del año en curso, fue muy superior, a los $450,000.00 (cuatrocientos cincuenta mil dólares 00/100 moneda de curso legal de los Estados Unidos de América), que aduce serán suficientes para solventar los gastos de las plataformas por casi un mes.

Se afirma lo anterior, porque en autos consta que en el mes de octubre de dos mil dieciocho, la comerciante obtuvo del contrato de fideicomiso irrevocable de administración y fuente de pago F/1695, la cantidad total $251'197,387.97 (doscientos cincuenta y un millones cientos noventa y siete mil trescientos ochenta y siete pesos 97/100 moneda nacional), de la cual $90'878,478.00 (noventa millones ochocientos setenta y ocho mil cuatrocientos setenta y ocho pesos 00/100 moneda nacional), destinó al pago del impuesto al valor agregado a su cargo al Servicio de Administración Tributaria, toda vez que si bien tenía un adeudo por la primera cantidad, el pago total lo realizó mediante compensación y transferencia.

De ahí que le resultó la cantidad de $160'318,909.97 (Ciento sesenta millones trescientos dieciocho mil novecientos nueve pesos 97/100 moneda nacional), la cual informó ocupó para pagar los gastos de su operación ordinaria, hasta diciembre de dos mil dieciocho.

Ante la imposibilidad de continuar obteniendo dinero del fidecomiso, por virtud de congelamiento de las cuentas afines decretado por una autoridad penal, en proveído de dieciocho de enero de dos mil diecinueve, se tuvo al conciliador informando que autorizó un crédito a favor de la comerciante por el monto de $3'197,214.07 (tres millones ciento noventa y siete mil doscientos catorce dólares 07/100 moneda de curso legal de los Estados Unidos de América), y cualquier cantidad superior, para finalmente por escrito con folio 8154, el conciliador informó el crédito ascendió al monto total de $6'518,066.07 (seis millones quinientos dieciocho mil sesenta y seis dólares 07/100 moneda del curso legal de los Estados Unidos de América), el cual se utilizó para el pago de gastos esenciales operativos, laborales, fiscales y de conservación de las plataformas, relativos a los meses de enero, febrero y marzo de dos mil diecinueve.

Finalmente, en abril de dos mil diecinueve, se hizo del conocimiento del suscrito la aprobación de un financiamiento por la cantidad de $1'216,070.00 (Un millón doscientos dieciséis mil setenta dólares 00/100, moneda de los Estados Unidos de América), el cual la concursada expone le da liquidez suficiente para realizar pagos de gastos laborales, diésel, fiscales y administrativos, **hasta el diecisiete de mayo de dos mil diecinueve.**



**III.**    Si bien en autos consta que la comerciante y los acreedores acordaron inspeccionar las plataformas, mediante proveído de diez de mayo del año en curso, se le requirió indicara si había que dar algún mantenimiento correctivo o de mejora a las plataformas y los costos de la misma; sin embargo, al dar contestación se limitó a exponer que dichos actos eran conocidos por las propietarias como resultado de la inspección, la cual había informado del suscrito por escrito 7712.

Dicha contestación solo es evasiva y no se justifica por el hecho de que la solicitud realizada en auto de diez del mes y año que transcurre, derivó de la petición de las propietarias de las plataformas, pues la conservación y mantenimiento de las plataformas marinas no solo es de interés de quien solicitó la información, sino también del suscrito como rector del procedimiento concursal.

**IV.**    Además, la cantidad que refiere obtuvo, no puede considerarse como suficiente, si anteriormente con más recursos le fue imposible obtener los certificados de clase de las plataformas Primus e Impetus, con el crédito que ahora aduce obtuvo, mucho menos podrá cumplir con dicha carga, lo cual invariablemente pone en riesgo a la tripulación, las mismas plataformas y en consecuencia el riesgo inminente de un accidente que afecte el medio ambiente.

Atento a lo expuesto con antelación, se ordena a Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, que haga entrega material de las cinco plataformas marinas autoelevables denominadas Primus, Laurus, Fortius, Decus e Impetus a sus propietarios Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. LTD., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd., y Oro Negro Impetus, Pte. Ltd., respectivamente.

Lo anterior deberá hacerlo en los siguientes términos:

- Una vez notificado del presente proveído, Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, tiene **veinticuatro horas**, para permitir la toma de posesión de cada una de las plataformas por parte de las personas físicas que representan en este concurso mercantil a Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. LTD., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd., y Oro Negro Impetus, Pte. Ltd., en términos de los proveídos de veintisiete de julio y catorce de agosto, ambos de dos mil dieciocho.

- Dentro del mismo plazo antes establecido, Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable deberá hacer entrega de toda la documentación correspondiente a cada una de las plataformas marinas autoelevables denominadas Primus, Laurus, Fortius, Decus e Impetus a sus propietarios Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. LTD., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd., y Oro Negro Impetus, Pte. Ltd, por conducto de sus representantes; en este caso, aquellos que están reconocidos en el presente concurso mercantil, mediante proveídos de veintisiete de julio y catorce de agosto, ambos de dos mil dieciocho,

- Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, es completamente responsable de evitar cualquier confrontación entre el personal a bordo y los representantes de los propietarios



PODER JUDICIAL DE LA FEDERACIÓN

de las plataformas marinas que arriben con el fin de cumplir con la presente determinación.

- Transcurridas las **veinticuatro horas antes precisadas**, gradualmente y sin exceder de **cuarenta ocho horas (dos días naturales)**, con todas las medidas de seguridad necesarias para garantizar la integridad del personal a bordo de cada una de las cinco plataformas, deberán retirar la tripulación a su cargo, para que los propietarios puedan colocar el personal que designen.

- También, en el mismo término indicado (cuarenta y ocho horas) deberán hacer entrega de los inventarios correspondientes por cada una de las plataformas marinas autoelevables denominadas **Primus, Laurus, Fortius, Decus e Impetus.**

- Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, deberá realizar los avisos correspondientes a las autoridades marítimas a efecto de que tengan conocimiento de la entrega de las plataformas a sus propietarios.

Queda apercibida **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, que de no dar cumplimiento a lo anterior, en los plazos establecidos para ello, con fundamento en el artículo 269, fracción II, de la Ley de Concursos Mercantiles, **se ordenará de inmediato el uso de la fuerza pública** para efecto de materializar lo ordenado y hacer la entrega de las plataformas marinas precisadas en favor de sus propietarios.

Asimismo, se debe precisar a **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, que las órdenes aquí plasmadas deben ser atendidas sin demora y en perfecta coordinación con las empresas que son propietarias de las plataformas, a través de los representantes de las mismas que están plenamente identificados en el procedimiento concursal que nos ocupa.

Ahora, **Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. LTD., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd., y Oro Negro Impetus, Pte. Ltd**., por conducto de quien las represente, deberán informar a este juzgado federal en el término de **veinticuatro horas** a partir de que sea emitido este acuerdo, el avance para tomar posesión de los bienes consistentes en las cinco plataformas marinas autoelevables denominadas **Primus, Laurus, Fortius, Decus e Impetus**, de las cuales son propietarios.

Asimismo, deberán informar a este juzgador federal, durante las cuarenta y ocho horas otorgadas a la comerciante **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable**, sobre los avances que tenga acerca del retiro de la tripulación por parte de dicha persona moral, documentos e inventarios correspondientes.

También, deberán hacer del conocimiento de este juzgador federal, todo lo relativo a las medidas de seguridad y demás previsiones que consideren necesarias para garantizar que dicha ocupación se lleve a cabo de manera ordenada y pacífica; para lo cual, de igual forma que la comerciante, los representantes de los propietarios de las plataformas marinas, deben evitar toda confrontación con la tripulación a bordo que corresponde a la comerciante **Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable.**

Vale la pena precisar que los términos otorgados para el cumplimiento de lo ordenado para la restitución de las plataformas



marinas, atiende directamente a la necesidad imperiosa de recursos suficientes para atender las necesidades de dichos equipos y evitar que se sigan deteriorando; además, de lo importante que resulta evitar un posible accidente que ocasione un daño medioambiental.

En efecto, resulta para este juzgador federal un hecho notorio que la Agencia de Seguridad, Energía y Ambiente[1], informó en un comunicado oficial que el accidente acaecido en abril de dos mil quince, en la plataforma Abkatún –A, ubicada en el Estado de Campeche, dejó como saldo cinco trabajadores muertos y fue provocado por una fuga de gas por corrosión en las líneas de gas combustible, por ácido sulfhídrico y presencia de microorganismos.

Dicha autoridad, en el informe deriva del accedente mencionado definió diversas medidas de inmediata aplicación producto del análisis realizado sobre el accidente en comento.

En ese sentido, la agencia en comento no sólo establece un precedente para la gestión y la regulación de la seguridad industrial y la protección al medio ambiente, sino que instruye en la implementación de una cultura de prevención que permita convertir al sector de hidrocarburos mexicano en un ambiente más seguro; tomando como objetivo primordial **mitigar los principales riesgos y reducir la probabilidad de accidentes y sus consecuencias para las personas y el medio ambiente**.

De lo anterior, podemos observar que el tema de la prevención de riesgos en las plataformas petroleras, no es un asunto que pueda ser postergado por falta de recursos o cuestiones análogas, puesto que como ya ocurrió en el caso en comento de la plataforma Abkatún –A, ubicada en el Estado de Campeche, cualquier falta de cuidado o inversión insuficiente para su debida conservación puede poner en riesgo las instalaciones, el medio ambiente e incluso a los trabajadores.

Finalmente, se solicita al conciliador Fernando Pérez Correa Camarena, para que en uso de sus atribuciones como conciliador del presente procedimiento concursal, se mantenga alerta y en todo momento facilite a las partes involucradas en las órdenes aquí emitidas (comerciante y propietarias de plataformas), la comunicación y mediación que pudiera aportar para realizar la entrega de las plataformas de la manera más ordenada y diligente posible.

Con el escrito con folio **8512**, como lo solicita Oro Negro Drilling, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., Oro Negro Impetus, Pte. Ltd., y Oro Negro Primus, Pte. Ltd., por conducto de su apoderado Manuel Ruiz de Chávez Gutiérrez de Velasco, se tiene como autorizada en términos del artículo 1069, tercer párrafo, del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles, a Estefanía Sierra Ulibarri, quien queda facultada para interponer los recursos que procedan, ofrecer e intervenir en el desahogo de pruebas, alegar en las audiencias, pedir se dicte sentencia para evitar la consumación del término de caducidad por inactividad procesal y realizar cualquier acto que resulte ser necesario para la defensa de los derechos de su autorizante, sin que pueda sustituir o delegar dicha facultad en un tercero.

---

[1] Órgano administrativo desconcentrado de la Secretaría de Medio Ambiente y Recursos Naturales que regula y supervisa la seguridad industrial, seguridad operativa y protección al ambiente respecto de las actividades del sector hidrocarburos.

FORMA B-2



**PODER JUDICIAL DE LA FEDERACIÓN**

En la inteligencia que la autorizada deberá acreditar encontrarse legalmente facultada para ejercer la profesión de licenciada en Derecho, debiendo mostrar la cédula profesional o carta de pasante para la práctica de la abogacía, en las diligencias de prueba en que intervenga, en el entendido que si no cumple con lo anterior, perderá la facultad a que se refiere este artículo en perjuicio de la parte que la designa, y solamente tendrá las que se indican en el sexto párrafo del precepto citado.

Y por autorizada en términos del artículo 1069, penúltimo párrafo, del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles, a Citlali Anahí Nava Marín.

En diverso aspecto, con el oficio con folio **8627**, el Octavo Tribunal Colegiado en Materia Civil del Primer Circuito comunica el proveído emitido el catorce de mayo del año en curso, en el recurso de revisión **R.I. 148/2019-IV** de su índice, en el que tuvo por recibido y admitió el recurso interpuesto por Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable, e Integradora de Servicios Petroleros Oro Negro, Sociedad Anónima Promotora de Inversión de Capital Variable, en contra de la interlocutoria emitida en el cuaderno de suspensión derivado del amparo 270/2019, del índice del **Juzgado Décimo Primero de Distrito en Materia Civil en la Ciudad de México.**

Con fundamento en lo dispuesto por el artículo 1065 del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles, se habilitan días y horas inhábiles, para el efecto de llevar a cabo la presente notificación.

**Notifíquese y por lista a** Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. LTD., Oro Negro Decus, Pte. Ltd., Oro Negro Impetus, Pte. Ltd., y Oro Negro Primus, Pte. Ltd. y personalmente a Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable y al conciliador.

Así lo proveyó y firma **Benito Arnulfo Zurita Infante**, Juez Segundo de Distrito en Materia Civil en la Ciudad de México, asistido de la secretaria **Sara Cortés Méndez**, con quien actúa y da fe.



PODER JUDICIAL DE LA FEDERACIÓ

13

