PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS   NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3248

WRITER'S DIRECT FACSIMILE
(212) 492-0248

WRITER'S DIRECT E-MAIL ADDRESS
wclareman@paulweiss.com

May 29, 2019

By ECF

Hon. Shelley C. Chapman
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

    Confidentiality Designations in *In re Perforadora Oro Negro, S. de R.L. de C.V.*, Case No. 18-11094 (SCC) (jointly administered) – Corrected Copy

Dear Judge Chapman:

    We write on behalf of AMA Capital Partners, LLC, Alterna Capital Partners, LLC, and Contrarian Capital Management, LLC (collectively, the "Interested Parties" or "Producing Parties") in response to the Foreign Representative's May 14, 2019, letter challenging certain of the Interested Parties' confidentiality designations (the "Designation Letter").  (ECF No. 194.)

    The Foreign Representative's request that the Court order the Interested Parties' documents be de-designated turns on whether the documents qualify for confidential treatment under the Confidentiality Agreement and Stipulated Protective Order (the "Protective Order") (ECF No. 104 ¶ 24).[1]  *See City of Hartford* v. *Chase*, 942 F.2d 130, 134 (2d Cir. 1991) (explaining that the confidentiality order "must be construed according to general principles of contract law").  But he has yet to articulate any basis why the challenged documents do not fall within one of the two standards for confidential

---

[1]   Capitalized terms not defined herein have the meaning set forth in the Protective Order.  In accordance with paragraph 24 of the Protective Order, this response is limited to three pages in length.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelley C. Chapman                                                                                                          2

treatment[2]—in fact, the Designation Letter identified 28 documents the Foreign Representative has not previously raised with the Interested Parties in prior exchanges, as well as 39 documents the Interested Parties already de-designated in the interest of narrowing the parties' disputes. Nor has he informed the Interested Parties to what use he intends to put the challenged documents.

The Foreign Representative has challenged hundreds of documents, each of which contains varying types of information appropriately designated as "Confidential" or "Highly Confidential" under the Protective Order. The Interested Parties have satisfied the "baseline showing of good cause" to maintain the confidentiality of such documents. *Standard Inv. Chartered, Inc.* v. *Nat'l Ass'n of Secs. Dealers, Inc.*, 621 F. Supp. 2d 55, 62 (S.D.N.Y. 2007); *see also S.E.C.* v. *TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (explaining that "[w]ithout an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless "annoyance, embarrassment, oppression, or undue burden or expense.").[3] For example:

- 12 documents contain bank account numbers or tax ID numbers—information that clearly qualifies as "Confidential";

---

[2] The Designation Letter only cites one of the two applicable standards for confidential treatment under the Protective Order. In addition to "Confidential" treatment, the Protective Order defines "Highly Confidential" material as material that

> constitutes or contains proprietary or commercially sensitive technical, business, financial, or other information subject to Federal Rule of Civil Procedure 45(d)(3)(B) or Bankruptcy Rules 9016 or 9018; or is subject by law, including foreign law, or by contract to a legally protected right of privacy; or the Producing Party is under a preexisting obligation to a third-party to treat as confidential; or such Discovery Material is highly personal in nature or is of such a nature that a risk of competitive injury would be created if such Discovery Material were disclosed to persons other than [specified individuals].

(Protective Order ¶ 5(b).)

[3] We note that the presumption of public access to judicial documents under the standards articulated in *Lugosch* does not apply to discovery documents exchanged between parties pursuant to a protective order. *United States* v. *Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); accord *Lugosch* v. *Pyramid Co. of Onandaga*, 435 F.3d 110, 119 (2d Cir. 2007) (explaining that the common law right of public access applies to "judicial documents").

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelley C. Chapman 3

- 18 documents reflect commercial information about legal services rendered by attorneys for their clients—including both amounts and services billed—that likewise qualifies as nonpublic financial information;

- 44 documents reflect negotiations about contractual terms in engagement or other agreements, which constitute commercially sensitive business information and, in some instances, is subject to contractual confidentiality obligations; and

- 12 documents are non-public filings and orders in the Mexican criminal actions, for which access is restricted under Mexican law. (*See* National Code of Criminal Procedure of Mexico Art. 218; Decl. of P. Almada ¶ 10 (ECF No. 129).)[4]

Finally, we note that while the Foreign Representative has disputed the confidentiality designations for 229 documents—thereby triggering the process for resolving those disputes under the protective order—the Foreign Representative has informed the Interested Parties on multiple occasions that he was treating the disputed documents as "not confidential" (ECF No. 194-3 at 2-3, 6, 8), and refused to revoke that position or confirm that he had respected the Interested Parties' confidentiality designations pending the outcome of this dispute. Unilaterally disregarding a party's confidentiality designations would itself violate the Protective Order. (*See* Protective Order ¶ 24.) Under the Protective Order, only the Court has the authority to order the removal of confidentiality designations. (*Id.*)[5]

Respectfully,

/s/ William Clareman

William Clareman

---

[4] The Interested Parties are willing to submit a binder to the Court setting forth the basis for confidentiality of the challenged Discovery Materials on a document by document basis, as requested in the Designation Letter, and await direction from the Court concerning how to most effectively present the dispute to the Court for resolution.

[5] In light of the timing of the Foreign Representative's challenges to the confidentiality designations relative to the U.S. Shareholders' attempt to obtain access to confidential discovery material, we have informed the Foreign Representative that changes to the confidentiality designations are not a basis to circumvent the prohibition on Chapter 15 discovery being used in the NAFTA arbitration. (ECF No. 194-3 at 7.) The Foreign Representative has not denied that the confidentiality challenges are motivated by an attempt to provide discovery materials to the U.S. Shareholders, notwithstanding the clear prohibition in paragraph 37 of the Protective Order.