Juan P. Morillo (*pro hac vice*)
Gabriel F. Soledad
Daniel Pulecio-Boek
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100
Email:  juanmorillo@quinnemanuel.com
Email:  gabrielsoledad@quinnemanuel.com
Email:  danielpulecioboek@quinnemanuel.com

Scott C. Shelley
Samantha Gillespie (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
Email:  scottshelley@quinnemanuel.com
Email:  samanthagillespie@quinnemanuel.com

Eric Winston (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
Email:  ericwinston@quinnemanuel.com

Sara C. Clark (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
711 Rusk Street, Suite 500
Houston, Texas 77002
Telephone:  (713) 221-7000
Facsimile:  (713) 221-7100
Email:  saraclark@quinnemanuel.com

*Counsel for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PERFORADORA ORO NEGRO,<br>S. DE R.L. DE C.V., *et al.*,<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 18-11094 (SCC)<br>(Jointly Administered) |

**MOTION OF FOREIGN REPRESENTATIVE FOR ORDER**
**PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 1520(a)(2),**
**1520(a)(3) AND 1521(a)(7) AUTHORIZING ENTRY INTO LITIGATION INTEREST**
**AGREEMENT AND GRANTING RELATED RELIEF**

Gonzalo Gil White, in his capacity as Foreign Representative (the "Foreign Representative") of both Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora") and Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora" and together with Integradora, the "Debtors") files this motion (the "Motion") for entry of an order pursuant to sections 105(a), 362, 363, 1520(a)(2), 1520(a)(3) and 1521(a)(7) of title 11, United States Code (the "Bankruptcy Code"), authorizing (i) the Debtors to enter into, and approving, a Pre-Paid Forward Purchase and Sale Agreement, dated as of June 6, 2019 (the "Litigation Interest Agreement"), by and among, (x) CM Squared ON LLC (the "Assignee"), (y) the Debtors, and (z) Quinn Emanuel Urquhart & Sullivan LLP (the "QE Law Firm");[1] (ii) the granting of a participation interest and related rights contemplated by the Litigation Interest Agreement as more specifically set forth therein (collectively, the "Transaction"); and (iii) the granting of related relief.  Filed concurrently with this Motion is a motion to file the Litigation Interest Agreement under seal and to approve the redactions of parts of this Motion concerning the terms of the Litigation Interest Agreement.  In support of the Motion, the Foreign Representative submits the "Declaration of Gonzalo Gil White" (the "Declaration") and respectfully represents as follows:

## Introduction

1.    By this Motion, the Foreign Representative is seeking approval of a transaction that will provide Integradora and Perforadora with a critical cash infusion that will permit them to pursue significant claims against individuals and entities that have colluded to seize the their Jack-Up Rigs, deprive them of cash to operate and force the liquidation of the Debtors.

---

[1]    Each of the Assignee, the Debtors and the QE Law Firm is a "Party," and the Assignee, the Debtors and the QE Law Firm together are the "Parties."

2.      Under the Litigation Interest Agreement, the Assignee will pay approximately

███████████ in return for a participation interest in a portion of any litigation proceeds from the

claims, causes of action, rights, choses in action, and entitlements, known or unknown, existing

or later arising, in connection or in any way relating to these Chapter 15 proceedings, including,

but not limited to, the U.S. Litigation (defined below), in favor of the Debtors or its affiliates

(whether through settlement, judgment, award or otherwise) (collectively, the "Claims").

Because the Claims arise under United States law, have been filed in the United States and

implicate the Debtors' rights under the Bareboat Charters (defined below), the Foreign

Representative seeks the approval of this bankruptcy court (this "Court"), pursuant to 11 U.S.C.

§§ 105(a), 362, 363, 1520 and 1521, as well as the Second Circuit's holding in *Fairfield Sentry

Ltd v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 241 (2d Cir. 2014)

(ordering bankruptcy court to apply 11 U.S.C. § 363(b) to sale of *Madoff* claim).

3.      The Litigation Interest Agreement was negotiated by the Parties in good faith and

at arm's length and enables the Debtors to pursue the Claims and thus potentially maximize

distributions to stakeholders.  Absent the Litigation Interest Agreement, the Debtors would be

unable to prosecute the Claims.  Accordingly, entry into the Litigation Interest Agreement

represents a sound exercise of the Debtors' business judgment, and the Transaction contemplated

by the Litigation Interest Agreement should be approved.

### Background

4.      In September 2017, the Debtors initiated voluntary restructuring proceedings in

México (the "*Concurso Mercantil*").  *See* ECF No. 3 (Del Val Decl.) ¶¶ 6–7.

5.      On March 15, 2018, the Singapore Rig Owners, acting under the purported

control and direction of the Bondholders, sued Perforadora in this District (the "New York

Litigation").  *See* Complaint, *Oro Negro Decus, et. al. v. Perforadora Oro Negro, S. de R.L. de*

*C.V.*, No. 18-cv-02301 (S.D.N.Y. Mar. 15, 2018), ECF 1.  The primary purpose of the New York Litigation was for the Singapore Rig Owners to re-possess the Jack-Up Rigs.  *See id.* ¶¶ 87–94.[2]

6.    On April 20, 2018, the Foreign Representative commenced these Chapter 15 proceedings in order for this Court to recognize the *Concurso Mercantil* as the foreign main proceeding (and obtain all of the protections provided under Bankruptcy Code section 1520) and grant certain discretionary relief, including giving full force and effect to four orders issued by the *Concurso* Court;[3] and authorizing the Foreign Representative to obtain discovery from the Ad-Hoc Group, AMA Capital Partners, LLC ("AMA"), their New York-based financial advisor, and other parties.  *See* ECF 2.  The Foreign Representative's recognition petition expressly stated that property located in the United States included Perforadora's rights under the five agreements with the Singapore Rig Owners (the "Bareboat Charters") that are governed by U.S. maritime law and claims relating thereto.  *See id.* ¶ 29.

7.    On May 9, Alterna Capital Partners LLC ("Alterna") and the Singapore Rig Owners (acting under the purported control of the Bondholders), filed an objection to the Debtors' request for recognition and all other relief.  *See* ECF 39.  Ultimately, however, they did not dispute that, pursuant to the Bareboat Charters, Perforadora had property rights located in the United States.  *See* ECF 62 (Transcript of May 17, 2018 Hearing), at 8.

8.    On May 17, 2018, the Court issued an order (a) recognizing the Debtors' *Concurso Mercantil* as the foreign main proceeding; and (b) granting protection afforded by Bankruptcy Code section 1520, including staying all actions against the Debtors' assets and

---

[2]    As the Foreign Representative has described to the Court, Integradora and the Bondholders are disputing the control of the Singapore Rig Owners.  *See, e.g.,* ECF 3 ¶ 64.  The High Court of the Republic of Singapore recently affirmed dismissal of an action by the Bondholders seeking a declaratory ruling that the Bondholders control the Singapore Rig Owners.  *See* ECF 181-1.  The Bondholders have appealed that ruling.

[3]    The four orders are orders issued by the *Concurso* Court on October 5, October 11, October 31 and December 29, 2017.

rights in the United States. *See* ECF 54 (the "Recognition Order"). This included staying the New York Litigation. *Id.*

9.      On June 27, 2018, the Court heard arguments on several issues, including the Foreign Representative's request that the Court (a) recognize and grant full force and effect to four orders issued by the *Concurso* Court (including the October 5 & 11 Orders); and (b) authorize the Foreign Representative to obtain discovery (the "June 27 Hearing").

10.     On July 11, 2018, the Court entered an order, (a) recognizing, granting comity and entitling full force and effect in the United States to four orders issued by the *Concurso* Court (including the October 5 & 11 Orders); and (b) authorizing that the Foreign Representative obtain discovery from several parties, including the Ad-Hoc Group and AMA. *See* ECF 85 (the "Comity Order").

11.     This discovery has provided substantial documentary and testimonial evidence indicating that members of the Ad-Hoc Group, individual affiliates of members, and advisors retained to advance the non-lender interests of the Group members have schemed to deprive the Debtors of the Jack-Up Rigs and any cash so that the Debtors would cease to operate as a going concern. These activities have reached as far as initiating four baseless criminal proceedings, litigation around the world without any regard to the *Concurso* Court or this Court, and numerous other instances of conduct that no rational, commercially reasonable lender would undertake.

12.     From January to March 2019, the Foreign Representative, the Debtors and certain members of the Ad-Hoc Group engaged in mediation with Lic. Fernando Pérez-Correa Camarena, in his capacity as the court-appointed *conciliador* in the *Concurso Mercantil*

proceeding number 345/2017 pending before the Second District Court for Civil Matters of México City (the "*Conciliador*"), and the Hon. James M. Peck.

13.    On January 18, 2019, this Court entered a stipulation and order appointing Judge Peck and the *Conciliador* (together, the "Mediators"), and establishing certain guidelines and procedures for the mediation. The Mediators conducted the mediation over various dates commencing on January 19, 2019, and continuing through March 26, 2019. Despite the diligent efforts of the Mediators and the active participation of the mediation parties, the mediation failed to produce an agreement.

14.    As a result of the Ad-Hoc Group's and their co-conspirators' misconduct, the Debtors lost the Jack-up Rigs, have no available cash and are on the precipice of liquidation. After nearly two years of schemes, the Ad-Hoc Group finally has forced the Debtors to surrender the Jack-Up Rigs, and the *Concurso Mercantil* will convert to liquidation.

15.    Regardless of whether the Debtors convert to liquidation, the Debtors, which were solvent companies that had never missed a payment prior to commencing the *Concurso* proceeding, hold valuable Claims, and now have the Assignee willing and able to monetize and help fund the prosecution of such Claims.

### The Litigation Interest Agreement

16.    The Litigation Interest Agreement, a copy of which is attached hereto as **Exhibit A**[4], sets forth the terms and conditions of the Transaction under which the Assignee will pay up to ▮▮▮▮▮▮ to preserve the Debtors' ability to investigate and prosecute claims on behalf of the Debtors, including in an adversary proceeding entitled, *Gil-White v. Ercil, et al.,* Adv. Pro. No. 19-01294-scc (Bankr. S.D.N.Y.) (the "U.S. Litigation").

---

[4]    A copy of the Litigation Interest Agreement has been filed under seal.

17. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████

18.    The Litigation Interest Agreement provides that the Assignee's payment includes

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

---

[5] ████████████████████████████████████████████████████

████████████████████████████████████████████████████

19.     Section 2.1 of the Litigation Interest Agreement provides that no later than ten (10) business days after the later of the closing date and the date upon which certain conditions in the Litigation Interest Agreement are satisfied or waived by the Assignee, the Assignee will pay an initial purchase price ████████████ to Debtors, which represents ████████████████████ ████████████████████████████████ Section 2.2 of the Litigation Interest Agreement provides for additional payments up to (and at the Assignee's discretion, beyond) the Assignee's ██████████ commitment.

20.     In return for the Assignee's payments, the Assignee will obtain a return on the proceeds, if any, recovered on the Debtors' Claims in accordance with a payment waterfall outlined in the Litigation Interest Agreement. Specifically, Section 3.4 in the Litigation Interest Agreement provides that proceeds from Debtors' pursuit of its Claims will be distributed as follows:



21.     The right to recovery from the Claims that the Assignee is receiving may prove to have no value if the Debtors do not succeed on their Claims and because the payments described

---

6 ████████████████████████████████████████████████
████████

in paragraphs 18 and 19 are non-recourse, the Debtors are transferring a portion of the risk associated with prosecuting the Claims to the Assignee.

22.

23.

24.     The Transaction contemplated by the Litigation Interest Agreement is not a loan, but rather a granting to the Assignee of a beneficial ownership interest (a participation) in a portion of the potential proceeds of the Debtors' Claims.

25.     Other than the rights described in paragraph 23 above, the Assignee has no right to direct or control the U.S. Litigation (█████████████████████████████), nor the settlement or other resolution thereof.

26.     Section 7.1 in the Litigation Interest Agreement provides certain information that will be provided to the Assignee in connection with the prosecution of Debtors' claims. The Assignee will not be entitled to any privileged information relating to the prosecution of the Claims.

27.     Section 10 of the Litigation Interest Agreement provides for standard indemnification obligations, whereby the Debtors have agreed to (i) reimburse the Assignee for reasonable attorneys' fees and other related expenses in connection with the enforcement of the Litigation Interest Agreement; and (ii) indemnify and defend the Assignee for (x) losses sustained relating to breaches of warranties, representations or covenants by the Debtors in the Litigation Interest Agreement or their engagement agreements with counsel (y) any claims by brokers or third parties, and (z) taxes owed or assessed that are the obligation of the indemnifying party.

28.     The Debtors would not be able to pursue the Claims absent the Transaction. The Litigation Interest Agreement is the product of an arduous negotiation process, and was negotiated at arm's length and in good faith by each of the Parties. Each of the Parties was represented by capable and experienced legal counsel in the negotiation. The Foreign Representative believes that the Litigation Interest Agreement is fair and reasonable, and in the best interests of the Debtors and all stakeholders. *See* Gil Declaration at ¶ 7.

29.     Fernando Pérez-Correa, the *Conciliador* in the Debtors' *Concurso*, has received notice of the Transaction and has expressed no objections.

### Jurisdiction and Venue

30.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.   Recognition of foreign proceedings and *other matters under Chapter 15 of the Bankruptcy Code* are expressly designated as core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in the Court pursuant to 28 USC § 1410.

### Relief Requested

31.    By this Motion, the Foreign Representative seeks entry of an order, substantially in the form attached hereto as **Attachment A**, authorizing the Debtors to enter into, and approving, the Litigation Interest Agreement, pursuant to Bankruptcy Code sections 105(a), 362, 363, 1520(a)(2), 1520(a)(3) and 1521(a)(7).

### Discussion

## I.    The Transaction Should Be Approved as an Exercise of Sound Business Judgment Pursuant to Bankruptcy Code Section 363(b)

32.    By the Recognition Order, the Debtors' *Concurso Mercantil* was granted recognition as a foreign main proceeding.  Under Bankruptcy Code sections 1520(a)(2) and 1520(a)(3), upon recognition of a foreign proceeding as a foreign main proceeding, Bankruptcy Code section 363 applies to a transfer of an interest of the debtor in property that is located within the territorial jurisdiction of the United States and to a foreign representative's operation of a debtor's business.  Section 1520(a) provides in relevant part:

> (a)  Upon recognition of a foreign proceeding that is a foreign main proceeding –
> [ . . . ]
> (2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate; [and]

> (3) unless the court orders otherwise, the foreign representative
> may operate the debtor's business and may exercise the rights and
> powers of a trustee under and to the extent provided by sections
> 363 and 552.

11 U.S.C. § 1520(a).   This Court entered the Recognition Order on May 17, 2018, thus making

these provisions applicable.  *See* ECF 54.

33.    In addition, upon recognition of a foreign proceeding, pursuant to section

1521(a)(7), the Court may grant a foreign representative certain forms of relief that are available

to a trustee.  Specifically, section 1521(a) provides, in pertinent part, as follows:

> (a) Upon recognition of a foreign proceeding, whether main or
> nonmain, where necessary to effectuate the purpose of this chapter
> and to protect the assets of the debtor or the interests of the
> creditors, the court may, at the request of the foreign representative,
> grant any appropriate relief, including –
>
> [. . .]
>
> (7) granting any additional relief that may be available to a
> trustee, except for relief available under sections 522, 544,
> 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

34.    In assessing whether relief should be granted under section 1521, section 1522

provides that the "court may grant relief under . . . section 1521 . . . only if the interests of

creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C.

§ 1522(a).  This standard ensures a balance between the discretionary relief that may be granted

to the foreign representative and the interests of persons potentially affected by such relief.  *See* 8

COLLIER ON BANKRUPTCY ¶ 1522.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.

Rev.).

35.    As described in more detail below, the Foreign Representative respectfully submits that the "sufficient protection" requirements of section 1521 and 1522 are satisfied by the proposed transaction for which approval is sought by this Motion.

36.    Section 363(b)(1) of the Bankruptcy Code, applicable herein by operation of section 1520(a)(2), empowers a court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   As the Second Circuit made clear in *Fairfield Sentry*, a foreign representative must obtain Chapter 15 court approval for any use, sale, or lease of property located in the United States outside the ordinary course of business.   *Fairfield Sentry*, 768 F.3d at 245.   This includes the transfer of interests in affirmative claims held by a debtor.   *See In re Ace Track Co., Ltd.*, 556 B.R. 887, 917 (Bankr. N.D. Ill. 2016) ("Rule 9019 and section 1520 of the Bankruptcy Code (and applicable thereby sections 362 and 363) do not permit settlement of the VPI Arbitration or assignment of the VPI Receivable treated therein without further order of the court.").

37.    The Foreign Representative's decision to use, sell or lease assets outside the ordinary course of business must be based on sound business judgment.   *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a section 363(b) application must provide a good business reason to grant such application); *see also Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) (stating that the "rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is a "good business reason").   This includes a Foreign Representative's decision to sell an interest in litigation claims.   *See In re Nicole Energy Servs.,*

*Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008) ("§ 363(a) contemplates that many forms of intangible personalty are included within the trustee's power to use, sell, or lease property of the estate ... [including] a debtor's sale of litigation claims.") (internal quotations and citations omitted).

38.     Once a debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (internal quotations omitted).  Courts will generally accord significant deference to a debtor's business judgment to sell assets outside the ordinary course of business. *See In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw.").

39.     In the present case, the Claims arise directly or indirectly from the Debtors' rights under the Bareboat Charters, which are governed by U.S. maritime law, and by operation of chapter 15 of the Bankruptcy Code, including violations of Bankruptcy Code section 1520 and orders of this Court.  Perforadora's right under the Bareboat Charters to "full possession" of the Jack-Up Rigs constitutes property located within the territorial jurisdiction of the United States. *See In re Berau Capital Res. Pte Ltd*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015) (concluding in a Chapter 15 proceeding that a foreign debtor's obligation under a debt indenture that contained both a New York choice of law and New York forum selection clause was "property" located in New York); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017), appeal

dismissed, 585 B.R. 31 (S.D.N.Y. 2018) (concluding in a Chapter 15 proceeding that the debtor's United States "property" included the foreign debtor's contract obligations under several contracts governed by United States law). Based on precedent from this District, the Debtors' Claims constitute property in the U.S.

40.     The business justification for the Litigation Interest Agreement is clear: without this cash infusion, the Debtors will lack sufficient funds to continue to prosecute the Claims that are likely to be the primary source of distributions to stakeholders. Approval of the Litigation Interest Agreement will permit the Debtors to initiate litigation to hold responsible the persons and entities that have acted to destroy the Debtors as a going concern.

41.     There is no meaningful cost to the Debtors because they are incurring no obligations outside of selling participation interests in the Claims.[7] If the Claims do not generate any proceeds, then the Assignee will have no recourse against the Debtors and thus bears some of the risk associated with the prosecution of the Claims.

42.     The interests of non-conflicted creditors are protected,[8] and indeed enhanced, by the Litigation Interest Agreement, because absent a cash infusion, the Debtors will be unable to prosecute the Claims.

43.     Given the foregoing, the relief requested herein is both necessary to protect the Debtors' assets and the interests of all stakeholders and will not cause harm to any party in interest. The Litigation Interest Agreement is the product of good faith, arm's length

---

[7]     Mexican counsel has advised that the Transaction does not require approval of the *Concurso* court.

[8]     The Ad-Hoc Group members, who are the subject of the Claims, hold bonds issued by Oro Negro Drilling and have certain rights in respect of a guarantee issued by Integradora. The Ad-Hoc Group members are not creditors of Perforadora. Without conceding such entities and persons have standing to oppose the Motion, any objection they might have to this Motion would not be as honest creditors, but as litigation defendants hoping to derail any effort to fund litigation against them.

negotiations, contains terms that are favorable to the Debtors and all stakeholders, and represents

a sound exercise of business judgment.

**II.      The Litigation Interest Agreement and Transaction Are Proposed in Good Faith and Without Collusion, and the Assignee Is a "Good-Faith Purchaser."**

44.      The Debtors request that the Court find that the Assignee is entitled to the benefits

and protections provided by section 363(m) of the Bankruptcy Code in connection with the

Transaction.

45.      Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

46.      Section 363(m) of the Bankruptcy Code thus protects the Assignee of assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal, as long as the Assignee

purchased the Participation and related rights in "good faith."  *Reloeb Co. v. LTV Corp (In re*

*Chateaugay Corp.)*, 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993); *see also Allstate Ins. Co.*

*v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith

transfers of property will not be affected by the reversal or modification on appeal of an unstayed

order, whether or not the transferee knew of the pendency of the appeal.")

47.      In the absence of a definition of "good faith" in the Bankruptcy Code and the

Bankruptcy Rules, courts determining whether a buyer was a "good faith purchaser" have

"turned to traditional equitable principles, holding that the phrase encompasses one who

purchases in 'good faith' and for 'value'" and have looked to the "integrity of his conduct in the course of the sale proceedings." *In re Colony Hill Assocs.*, 111 F.3d 269, 275 (2d Cir. 1997); *see also Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (holding that a purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (internal citations omitted).

48.     The Debtors submit that the Assignee is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Purchase Agreement is a good-faith agreement on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.  First, as set forth in more detail above, the consideration received by the Debtors pursuant to the Litigation Interest Agreement is substantial, fair and reasonable.  Second, the Litigation Interest Agreement with the Assignee is the culmination of a process in which the Debtors were represented by counsel and all negotiations were conducted on an arm's length, good-faith basis. Third, there is no indication of any "fraud, collusion between the Assignee and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Transaction or Litigation Interest Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Fourth, the Assignee's offer has been evaluated and approved by the Debtors in consultation with their advisors.  Fifth, the Assignee is not an insider of the Debtors and is in no way affiliated with the Debtors or their insiders.

49.     Accordingly, the Debtors believe that the Assignee, the Litigation Interest Agreement and the Transaction should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

### III.    Waiver of Stay Under Bankruptcy Rule 6004(h)

50.    The Debtors also request that the Court waive any applicable stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h).

51.    As such, the Foreign Representative respectfully requests that the Court enter an order authorizing the Debtors to enter into, and approving, the Litigation Interest Agreement and authorizing the Transaction.

### **Conclusion**

WHEREFORE, Foreign Representative  respectfully requests that the Court grant the relief requested and such other and relief as may be just and proper.

Dated:  June 7, 2019
New York, New York

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

  /s/   Gabriel F. Soledad
Gabriel F. Soledad
Juan P. Morillo (*pro hac vice*)
Daniel Pulecio-Boek
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100
Email:  gabrielsoledad@quinnemanuel.com
Email:  juanmorillo@quinnemanuel.com
Email:  danielpulecioboek@quinnemanuel.com

Scott C. Shelley
Samantha Gillespie (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  212-849-7000
Facsimile:  212-849-7100
Email: scottshelley@quinnemanuel.com
Email: samanthagillespie@quinnemanuel.com

Eric Winston (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
Email:  ericwinston@quinnemanuel.com

Sara C. Clark (*pro hac vice*)
711 Rusk Street, Suite 500
Houston, Texas 77002
Telephone:  (713) 221-7000
Facsimile:  (713) 221-7100
Email:  saraclark@quinnemanuel.com

*Counsel for the Foreign Representative*

# ATTACHMENT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 15 |
| PERFORADORA ORO NEGRO, S. DE R.L. DE C.V., *et al.*, | Case No. 18-11094 (SCC) (Jointly Administered) |
| Debtors in a Foreign Proceeding. |  |

## [PROPOSED] ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 1520(a)(2), 1520(a)(3) AND 1521(a)(7) AUTHORIZING ENTRY INTO A LITIGATION INTEREST AGREEMENT AND GRANTING RELATED RELIEF

This matter having come before the Court on the motion (the "Motion")[9] of Gonzalo Gil White, in his capacity as Foreign Representative (the "Foreign Representative") of both Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora") and Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora" and together with Integradora Oro Negro, and their respective successors and/or assigns the "Debtors"), seeking entry of an order pursuant to sections 105(a), 362, 363, 1520(a)(2), 1520(a)(3) and 1521(a)(7) of title 11, United States Code (the "Bankruptcy Code"), authorizing (i) the Debtors to enter into, and approving the Pre-Paid Forward Purchase and Sale Agreement, dated as of June 6, 2019 (the "Litigation Interest Agreement")[10], by and among, (x) CM Squared ON LLC (the "Assignee"), (y) the Debtors, and (z) Quinn Emanuel Urquhart & Sullivan LLP (the "QE Law Firm") (ii) the granting of a participation interest and related rights contemplated by the Litigation Interest Agreement as more specifically set forth therein (collectively, the "Transaction") and (iii) granting related relief; and the Court having considered the Motion and the Declaration of Gonzalo Gil White submitted in support thereof, and the opposition thereto, if any; and the Debtors having provided

---

[9]    Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Motion.

[10]    A copy of the Litigation Interest Agreement is attached to the Motion as **Exhibit A** and has been filed under seal.

due and adequate notice of the Motion; and the Court having held a hearing on the Motion on

June 25, 2019; and the Court having considered the factual record and the applicable law, makes

the following findings of fact and conclusions of law, and issues the following order:

### Findings of Fact and Conclusions of Law

(A)    The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of

fact constitute conclusions of law, they are adopted as such.  To the extent any of the following

conclusions of law constitute findings of fact, they are adopted as such.

(B)    The statutory and other legal predicates for the relief sought in the Motion are

sections 105(a), 362, 363, 1520, 1521 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004,

and Local Rule 6004-1.

(C)    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and

1334(a) and (b);

(D)    Venue is properly located in this district pursuant to 28 U.S.C. §§ 1410(a)(1) and

(3);

(E)    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M) and (P);

(F)    A fair and reasonable opportunity to object to and to be heard with respect to the

Motion, the Transaction, and the relief requested in the Motion has been given, as required by

the Bankruptcy Code and the Bankruptcy Rules, to all parties entitled to notice.

(G)    The claims, causes of action, rights, choses in action and entitlements, known or

unknown, existing or later arising, in connection or in any way relating to these chapter 15 cases

including, but not limited to, the U.S. Litigation in favor of the Debtors and their affiliates which

are the subject of the Litigation Interest Agreement (collectively, the "Claims") are related to Perforadora Oro Negro's rights under the five agreements with the Singapore Rig Owners governing use of certain jack-up rigs (the "Bareboat Charters"), which are governed by U.S. maritime law, and these rights, and the Claims held by Integradora Oro Negro arising from the Bareboat Charters, constitute property of the Debtors within the territorial jurisdiction of the United States;

(H)    The Litigation Interest Agreement provides for the granting of a participation interest in a portion of the proceeds of the Claims (the "Participation") and other related rights and remedies as more fully set forth in the Litigation Interest Agreement;

(I)    The Litigation Interest Agreement is the product of an arduous negotiation process, and was negotiated at arm's length and in good faith by each of the Parties;

(J)    The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code;

(K)    In connection with the negotiation of the Litigation Interest Agreement, each of the Parties was represented by capable and experienced counsel;

(L)    The consideration contemplated by the Litigation Interest Agreement (the "Pre-Paid Assignee Price") is critical to the Debtors' continued pursuit of the Claims and will permit the Debtors the opportunity to maximize value for their stakeholders;

(M)    The terms of the Transaction contemplated by the Litigation Interest Agreement are fair and reasonable, and in the best interests of the Debtors; and

(N)    The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for this Court to grant the relief requested in the Motion (including the granting of the Participation and related rights) and such other relief as is expressly set forth herein.  The

Debtors' entry into and performance under the Litigation Interest Agreement: (i) constitutes a sound and reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors, their creditors, shareholders, and all other parties in interest; (ii) provides value to and is beneficial to the Debtors; and (iii) is reasonable and appropriate under the circumstances.

(O)     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  To the extent any inconsistency arises between this Order and the Litigation Interest Agreement, this Order shall control.

(P)     The total consideration provided by the Assignee, upon the terms and conditions set forth in the Litigation Interest Agreement constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value and reasonable market value for the Participation for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and the other laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

(Q)     Under the facts and circumstances of these chapter 15 cases, the consideration for the Transaction is fair and reasonable.

(R)     The Litigation Interest Agreement was proposed, negotiated, and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) of the Bankruptcy Code.

(S)     The Assignee is a purchaser in good faith with respect to the Transaction as that term is used in sections 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  The Debtors were free to deal with any other party interested in buying the Participation and related rights.  The Litigation Interest Agreement and Transaction

-4-

contemplated therein were negotiated, proposed, and entered into by the Debtors and the Assignee in good faith, without collusion and from arm's-length bargaining positions.

(T)      The Assignee is not, and will not be, a mere continuation of, or successor to, and is not holding itself out as mere continuation of, or successor to, the Debtors in any respect, and there is no continuity of enterprise between the Debtors or the Assignee.  The Transaction does not amount to a consolidation, merger, or de facto merger of the Assignee and the Debtors. Neither the Assignee nor any of its Affiliates[11] and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) and/or any Debtor's estate, including any obligation under any labor practice agreement, except as expressly provided in the Litigation Interest Agreement or herein.

(U)      The Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.

(V)      Subject to the terms and conditions set forth in the Litigation Interest Agreement, the Debtors may sell or transfer the Participation and, pursuant to certain remedies set forth in section 9.3 of the Litigation Interest Agreement, the Claims.

(W)      As of the Closing, the transfer of the Participation and related rights to the Assignee will be a legal, valid, and effective transfer of the Participation and related rights, and will vest the Assignee with all right, title, and interest of the Debtors in, and to, the Participation and related rights in accordance with the Litigation Interest Agreement.

---

[11]    "Affiliate" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person, where "control" means the power, directly or indirectly, to direct or cause the direction of the management and policies of another Person, whether through the ownership of voting securities, by contract, or otherwise.

(X)     The Debtors (i) have full corporate power and authority to execute the Litigation Interest Agreement and all other documents contemplated thereby, and the Transaction has been duly and validly authorized by all necessary corporate action of the Debtors, (ii) have all of the corporate power and authority necessary to consummate the Transaction contemplated by the Litigation Interest Agreement, and (iii) upon entry of this Order, other than any consents identified in the Litigation Interest Agreement, need no consent or approval from any other Person [12], entity or governmental or regulatory body to consummate the Transaction contemplated by the Litigation Interest Agreement.

(Y)     The Transaction must be approved and consummated promptly in order to preserve the value of the Participation and the Claims.  Therefore, time is of the essence in consummating the Transaction, and the Debtors and the Assignee intend to close the Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Transaction.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rule 6004(h) with regards to the transactions contemplated by this Order.

(Z)     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

NOW, THEREFOR, IT IS HEREBY ORDERED

1.      The Motion is GRANTED as set forth herein.

2.      Any responses or objections to, unless otherwise adjourned, or

---

[12]  As used herein, the term "Person" means any natural person, corporation, partnership (of whatever form), trust, estate, limited liability company, association, governmental authority or unit, or any other entity, whether acting in an individual, fiduciary or other capacity.

reservations of rights regarding, the entry of this Order or the relief granted herein or requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

3.      Notice of the Transaction was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

4.      The Litigation Interest Agreement and the ancillary documents thereto and the consummation thereof, and the Transaction themselves shall not be avoided under section 363(n) or chapter 5 of the Bankruptcy Code.  The consideration provided by the Assignee under the Litigation Interest Agreement is fair and reasonable.  Neither the Debtors nor the Assignee have engaged in any conduct that would cause or permit the Litigation Interest Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

5.      The Litigation Interest Agreement, any schedules or exhibits thereto, and all transactions contemplated therein, and all of the terms and conditions thereof are hereby approved and are incorporated herein by reference, and the Debtors are authorized to take any and all actions necessary or appropriate to consummate the Litigation Interest Agreement and the Transaction.  The failure specifically to include any particular provision of the Litigation Interest Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Litigation Interest Agreement, be authorized and approved in its entirety.

6.      The automatic stay under Section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit the Debtors and the Assignee to fully perform under

the Litigation Interest Agreement, including, without limitation, to exercise the rights and remedies available to the Assignee under an in accordance with the Litigation Interest Agreement.

7.      Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with the terms of the Litigation Interest Agreement and to consummate the granting of the Participation and, if applicable the Claims, pursuant to, and in accordance with, the terms and conditions of the Litigation Interest Agreement and this Order. The provisions of this Order shall be self-executing, and neither the Debtors nor the Assignee shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

8.      The Debtors, their Affiliates and their respective officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Litigation Interest Agreement and to take all further actions as may be: (a) reasonably requested by the Assignee for the purpose of assigning, transferring, granting, conveying, and conferring to the Assignee, or reducing to possession, the Participation; or (b) necessary or appropriate to the performance of the obligations contemplated by the Litigation Interest Agreement, all without further order of the Court.

9.      All Persons that are currently, or are on or after the Closing, in possession of the Participation are hereby directed to surrender possession of such Participation to the Assignee as of the Closing or at such time as the Assignee requests.

10.     Each and every federal, state, local, or foreign government or

governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept this Order and any and all other documents and instruments necessary and appropriate to consummate the transactions contemplated by the Litigation Interest Agreement.

11.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized to transfer the Participation and related rights in accordance with the terms of the Litigation Interest Agreement and subject to any conditions precedent contained therein.  The Participation shall be transferred to the Assignee, and upon the Closing, such transfer shall be valid, legal, binding, and effective, and vest the Assignee with all right, title, and interest of the Debtors (who are presently the sole and rightful owners of the Participation) in the Participation.

12.     This Order (a) shall be effective as a determination that, as of the Closing, the conveyances and transfers described herein have been effected, and (b) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any asset; and each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Litigation Interest Agreement.

13.     The Debtors are hereby authorized to take all actions necessary to

implement and effectuate the terms of this Order and the relief granted pursuant to this Order, the

Transaction, and the Litigation Interest Agreement.

14.    This Order shall constitute the findings of fact and conclusions of law of

this Court and shall take immediate effect upon execution hereof.

15.    Pursuant to section 363(m) of the Bankruptcy Code, the Assignee shall be,

and hereby is, deemed to have purchased the Participation and related rights in good faith.  The

transactions contemplated by the Litigation Interest Agreement are undertaken by the Assignee

in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly,

the Assignee is entitled to all of the benefits and protections afforded by section 363(m) of the

Bankruptcy Code and the reversal or modification on appeal of the authorization provided herein

of the Transaction shall neither affect the validity of the Transaction nor the transfer of the

Participation and related rights to the Assignee.

16.    To the extent any of the deadlines set forth in this Order do not comply

with the Local Rules, such Local Rules are hereby waived and the terms of this Order shall

govern.

17.    Notwithstanding the applicability, or the possible applicability, of

Bankruptcy Rules 4001, 6004(h), 7062, 9014, or otherwise, this Court, for good cause shown,

orders that the terms and conditions of this Order shall not be stayed in any respect and shall be

immediately effective and enforceable upon its entry.  This Order constitutes a final order upon

which the Debtors and the Assignee are entitled to rely.

18.    The terms and provisions of the Litigation Interest Agreement and this

Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their

estates and their creditors (whether known or unknown), the Assignee, and its respective

Affiliates, successors and assigns, and any affected third parties, including all Persons asserting an interest in the Participation (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, receiver, party, entity, or other fiduciary under any chapter of the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, or any trustee, examiner or receiver, party, entity, or other fiduciary. The provisions of this Order and the terms and provisions of the Litigation Interest Agreement, and any actions taken pursuant hereto or thereto as of the date of the entry of such Order shall survive the entry of any order that may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases to a liquidation or *Quiebra* proceeding, and the terms and provisions of the Litigation Interest Agreement, as well as the rights and interests granted pursuant to this Order and the Litigation Interest Agreement shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including any liquidator, trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors.

19.    In the event that there is any conflict or derogation between the terms of this Order and the terms of (a) the Litigation Interest Agreement, or (b) any other order of this Court, the terms of this Order shall control.  Nothing contained in any order in these chapter 15 cases, the *Concurso* or any subsequent liquidation proceeding shall alter, conflict with, or derogate from the provisions of the Litigation Interest Agreement or the terms of this Order. This Order shall survive any dismissal of any of these chapter 15 cases or the *Concurso*.

20.    The Litigation Interest Agreement, and any related agreements, documents

or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; *provided* that any such modification, amendment or supplement does not materially change the terms of the Litigation Interest Agreement or any related agreements, documents, or other instruments.

21.    In accordance with the terms of the Litigation Interest Agreement, Debtors shall cause all Proceeds (as defined in the Litigation Interest Agreement) to be deposited directly into the Escrow Account (as defined in the Litigation Interest Agreement), (ii) the QE Law Firm and Debtors shall hold the Assignee Portion of all Proceeds (as defined in the Litigation Interest Agreement) in trust for the account and sole benefit of Assignee and (iii) the Debtors, their affiliates, successors and assigns shall have no equitable or beneficial interest in the Assignee Portion of any such Proceeds, which shall for all purposes constitute the exclusive property of Assignee. The QE Law Firm shall deliver (which delivery Debtors shall be deemed to direct), in accordance with Section 3.4 of the Litigation Interest Agreement, the full Assignee Portion (free of any withholding, setoff, recoupment, or deduction of any kind) of such Proceeds promptly (but in no event later than five (5) Business Days after the date on which such Assignee Portion is deposited into the Escrow Account) to Assignee in the same form received in immediately available funds by wire transfer to Assignee's account as specified to Debtors in writing from time to time.

22.    At and from the Closing Date (as defined in the Litigation Interest Agreement), Assignee shall be the sole and absolute owner of the right to receive, in the future, the Assignee Portion of the Proceeds (as defined in the Litigation Interest Agreement). Notwithstanding anything to the contrary contained in any other document, the QE Law Firm

shall distribute all Proceeds in accordance with the terms of the Litigation Interest Agreement (including, without limitation, Section 3.4 of the Litigation Interest Agreement).

23.     If a Default occurs (as defined in the Litigation Interest Agreement), the Assignee is authorized to exercise applicable remedies available under the Litigation Interest Agreement. Neither the failure of the Assignee to seek relief or otherwise exercise their rights and remedies under this Order, the Litigation Interest Agreement or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of such parties' rights hereunder, thereunder, or otherwise.

24.     Unless the Assignee shall have provided its prior written consent or the Litigation Interest Agreement has been terminated and the Debtors have indefeasibly paid to the Assignee the Assignee's Aggregate Entitlement (as defined in the Litigation Interest Agreement), the Debtors shall be enjoined and prohibited from and shall not allow any party to sell, assign, dispose, encumber, charge or place an interest or grant liens against or on the Proceeds or the Claims (as those terms are defined in the Litigation Interest Agreement) except as set forth in the Litigation Interest Agreement.

25.     Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary. In determining to make any funding available to the Debtors or in exercising any rights or remedies as and when permitted pursuant to this Order or the Litigation Interest Agreement, the Assignee shall not (i) be deemed to be in control of the Debtors or any subsequently appointed trustee or liquidator or (ii) owe any fiduciary duty to the Debtors, its respective creditors, shareholders, or estates.

26.     The provisions set forth in the Litigation Interest Agreement concerning

indemnification and exculpation of the Assignee are hereby approved, and such indemnifications are authorized to be paid by the Debtors in accordance with the Litigation Interest Agreement without further notice, motion, or application to, order of, or hearing before, this Court.

27.    This Court shall retain jurisdiction (to the greatest extent allowed by applicable law) with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order, the Litigation Interest Agreement, all amendments thereto, and any waivers and consents thereunder (and the agreements executed in connection therewith), to adjudicate disputes related to this Order or the Litigation Interest Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein and all parties to the Litigation Interest Agreement shall have standing to be heard on such issues.

Dated: New York, New York
          June ___, 2019

_____
Hon. Shelley C. Chapman
United States Bankruptcy Judge