**Hearing Date and Time: To be determined**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel:  212-373-3000
Fax: 212-757-3990
Andrew N. Rosenberg
Aidan Synnott
William  A. Clareman

*Counsel for the Interested Parties*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                                                         :          Chapter 15
                                                                                   :
PERFORADORA ORO NEGRO S. DE R.L.        :          Case No. 18-11094  (SCC)
DE C.V., *et al.*                                                       :          (Jointly  Administered)
                                                                                   :
Debtors in a Foreign Proceeding.                         :
                                                                                   :
-------------------------------------------------------------x

**OBJECTION OF THE INTERESTED PARTIES TO FREDERICK J. WARREN'S**
**MOTION FOR AUTHORIZATION TO USE EVIDENCE PRODUCED IN THE**
<u>**CHAPTER 15 PROCEEDING**</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..............................................................................................iii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND.............................................................................................................. 7

I.      Chapter 15 Proceeding........................................................................................ 7

II.     NAFTA Proceeding............................................................................................. 9

III.    Subsequent Developments ................................................................................13

ARGUMENT .................................................................................................................14

I.      The Protective Order Prohibits the U.S. Shareholders from Using the Chapter 15
        Discovery ..........................................................................................................14

II.     The Bankruptcy Code Provides No Authority for the U.S. Shareholders to Request,
        Use, or Obtain Chapter 15 Discovery, and the U.S. Shareholders Cite None ..................17

III.    The U.S. Shareholders Provide No Justification for This Court to Grant Their
        Motion ...............................................................................................................21

IV.     The U.S. Shareholders Have Violated The Protective Order...........................................27

CONCLUSION...............................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham Zion Corp.* v. *Lebow*,
  761 F.2d 93 (2d Cir. 1985) ............................................................... 15

*Aguas Argentinas, S.A., Suez, et al.* v. *The Argentine Republic*, ICSID Case No.
  ARB/03/19 ........................................................................................ 22

*Bagdan* v. *Beck*,
  140 F.R.D. 650 (D.N.J. 1991) ..................................................... 25, 26

*Hunter Eng'g Co.* v. *Hennessy Indus., Inc.*,
  2010 WL 1186454 (E.D. Mo. 2010) ................................................. 13

*In re Biovail Corp. Sec. Litig.*,
  247 F.R.D. 69 (S.D.N.Y. 2007) ........................................................ 14

*In re China Medical Technologies*,
  No. 12-13736 (Bankr. S.D.N.Y.) ...................................................... 16

*In re Enron Corp.*,
  335 B.R. 22 (S.D.N.Y. 2005) ............................................................ 20

*In re Fairfield Sentry Ltd. Litig.*,
  458 B.R. 665 (S.D.N.Y. 2011) .......................................................... 18

*In re Freedom Solar Ctr., Inc.*,
  776 F.2d 14 (1st Cir. 1985) .............................................................. 17

*In re Lionel Corp.*,
  722 F.2d 1063 (2d Cir. 1983) ........................................................... 20

*In re Med. Software Solutions*,
  286 B.R. 431 (Bankr. D. Utah 2002) ................................................ 20

*In re Wingspread Corp.*,
  92 B.R. 87 (Bankr. S.D.N.Y. 1988) .................................................. 20

*Merrill & Ring Forestry L.P.* v. *Canada*, (NAFTA Arb. 2008) .................. 22

*Methanex Corp.* v. *United States*, 44 I.L.M. 1345 (NAFTA Arb. 2005) ....... 22

*New Hampshire* v. *Maine*,
  532 U.S. 742 (2001) ......................................................................... 16

*S.E.C.* v. *TheStreet.Com,*
  273 F.3d 222 (2d Cir. 2001) ...........................................................21

*United Parcel Service of America, Inc.* v. *Canada*, (NAFTA Arb. 2001) ...................................22

*Wolters Kluwer Fin. Servs. Inc.* v. *Scivantage,*
  2007 WL 1498114 (S.D.N.Y. 2007) ........................................................13

## STATUTES

11 U.S.C. § 363(b) .......................................................................19

11 U.S.C. § 1107(a) ......................................................................19

11 U.S.C. § 1520(a) ......................................................................19

11 U.S.C. § 1521(a) ...................................................................5, 17

## OTHER AUTHORITIES

NAFTA *Statement of the Free Trade Commission on Non-Disputing Party
  Participation* ........................................................................21

Stanimir Alexandrov, *The "Baby Boom" of Treaty-Based Arbitrations and the
  Jurisdiction of ICSID Tribunals: Shareholders as "Investors" and
  Jurisdiction Ratione Temporis* in *The Law and Practice of International
  Courts and Tribunals*, 19, 405-07 (2005) ...............................................25

**OBJECTION OF THE INTERESTED PARTIES TO FREDERICK J. WARREN'S
MOTION FOR AUTHORIZATION TO USE EVIDENCE PRODUCED IN THE
CHAPTER 15 PROCEEDING**

Alterna Capital Partners, LLC, AMA Capital Partners, LLC, and Contrarian
Capital Management, LLC (collectively, the "Interested Parties") file this objection (the
"Objection") to Frederick J. Warren's motion (the "Motion")[1] on behalf of himself and certain
entities and individuals in their capacity as U.S. domiciled shareholders ("U.S. Shareholders") of
Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora") requesting
authorization to use evidence produced in the Chapter 15 proceeding (the "Chapter 15
Discovery") in support of their alleged claims against Mexico under the North American Free
Trade Agreement ("NAFTA Arbitration").

**PRELIMINARY STATEMENT**

1.      The U.S. Shareholders seek authorization from this Court to use Chapter
15 Discovery that belongs to the Debtors to pursue individual claims—not derivative claims—in
the NAFTA Arbitration against Mexico arising from Pemex's termination of drilling contracts
with Oro Negro. The U.S. Shareholders' NAFTA Arbitration claims, if they succeed, will
prejudice the Debtors' ability to pursue damages they seek against Pemex for the same alleged
conduct. Because the Debtors and the U.S. Shareholders share the same counsel, and because
the Foreign Representative's[2] personal financial interests are aligned with those of the U.S.

---

[1]      Capitalized terms used in this Objection and not otherwise defined herein shall have the meanings set forth in the Motion.

[2]      Since the U.S. Shareholders' filed their Motion, the Debtors have been placed in liquidation in Mexico. *See* Letter from A. Rosenberg [ECF No. 211.] As a result, the Debtors' former management is no longer authorized to speak on behalf of the Debtors. Nevertheless, for clarity, Gonzalo Gil is referred to as the "Foreign Representative" instead of the "former Foreign Representative" herein. The Interested Parties file this Objection to comply with Court-imposed deadlines in the Chapter 15 Proceeding and to preserve their rights and interests. The filing of this Objection is not intended to be deemed or construed as (a) a recognition or acknowledgment of the Foreign Representative's or his agents' authority to act on the Debtors' behalf, (b) a consent of the Interested Parties' to the jurisdiction of this Court or any other court with respect to the parties or matters at issue in this or any other dispute, or (c) a waiver of any right by virtue of filing this Objection, including a right to a jury trial in this Court

Shareholders (and against the interests of the bankruptcy estates), the Debtors have taken no

position and have been muted by this conflict. The Court should deny this Motion both because

there is no basis to award it, and because the parties and counsel seeking it are conflicted and

should not be permitted to arrogate estate property to pursue U.S. Shareholders' claims that are

at odds with the interests of the Debtor and its creditors.

2.       If successful, the U.S. Shareholders' NAFTA Arbitration claims will

jeopardize the Debtors' ability to obtain a recovery in ongoing parallel proceedings in Mexico.

In the NAFTA Arbitration, the U.S. Shareholders claim $700 million in damages based on their

allegation that "███████████████████████████████████████"

(Notice of Arbitration, (Declaration of William Clareman ("Clareman Decl.") Ex. A) at 2.) The

Debtors have pursued claims arising out of that same conduct in Mexican courts. ████████████

██████████████████████████████████████████████ The U.S.

Shareholders' Motion does not pretend to deny this, and in fact alleges that Mexico could

"████████████████████████████████████████████████████████

███████████████" *i.e.*, performing obligations and making payments to the Debtors. Mot. at 10.

Of course, the opposite is also true: if the U.S. Shareholders obtain a judgment in the NAFTA

Arbitration and are paid first, Pemex will argue that it is entitled to set-off the U.S. Shareholders'

recovery against any future judgment in favor of the Debtors.

3.       Through the NAFTA Arbitration, the U.S. Shareholders are, in effect,

seeking to circumvent the priority of payments that would otherwise apply to any assets of the

estate. As described below, the Interested Parties and other secured creditors filed a brief in the

---

or any other court in any proceeding as to any matter so triable. The Interested Parties reserve all rights with
respect to the foregoing.

NAFTA Arbitration making this argument and seeking to prevent the U.S. Shareholders from directly obtaining any award that is rightfully property of the estate. Notably, NAFTA has a procedural mechanism for bringing derivative claims, but the U.S. Shareholders are *not* pursuing that avenue of relief. Instead, the out-of-the-money U.S. Shareholders seek to compensate themselves under a provision of NAFTA that permits recovery by individual investors. This directly threatens to appropriate a substantial potential asset from the bankruptcy estate at the expense of the Debtors.

4.     The conflict between the equity holders and the Debtors did not arise by accident. The Foreign Representative, Gonzalo Gil, is an officer of one of the claimants in the NAFTA Arbitration. *See infra* at 8-9. In that capacity, Mr. Gil and his counsel (who represent him in all of his various capacities) are obligated as a matter of fiduciary and professional duties to pursue the interests of the U.S. Shareholders faithfully and zealously, regardless of what is in the best interests of the estate and its other creditors. *See id.* Exacerbating all of this is the fact that, as of June 14, 2019, the Debtors are now in liquidation. As a result of the *concurso* court order, this Foreign Representative now has no authority to act on behalf of the Debtors or even purport to represent their interests with respect to the U.S. Shareholders' Motion.[3] Under these circumstances, the Court should not allow estate property, in the form of Chapter 15 Discovery Materials or otherwise, to be transferred to equity holders for selective and self-serving use in the NAFTA Arbitration without regard for how that proceeding impacts the Debtors and other creditors.

5.     Separate and apart from these numerous conflicts, as the U.S. Shareholders' Motion makes clear, there is no basis to grant the requested relief under applicable

---

[3]     An original copy of the Liquidation Order together with a certified translation are attached to the Interested Parties' June 17, 2019 Letter to the Court. *See* ECF No. 211.

law.  The Bankruptcy Code does not allow it, and the U.S. Shareholders cite no Code provisions in support of their Motion.  The relief is also squarely prohibited by the Interested Parties' Confidentiality Agreement and Stipulated Protective Order (the "Protective Order"), which states that "absent consent or a court order, Discovery Material shall not be used or relied upon in any way in the arbitration proceeding brought by shareholders of the Debtors. . . ." (Protective Order [ECF No. 104], (Clareman Decl. Ex. B) at ¶ 37.)  That provision, which the U.S. Shareholders do not quote in their brief, should be conclusive here, yet the U.S. Shareholders nevertheless argue that the Protective Order "expressly contemplates" that the Court would allow them to use Chapter 15 Discovery in the NAFTA Arbitration.  Mot. at. 8.

6.      This interpretation is simply not credible; it is entirely at odds with an "express assurance" that Quinn Emanuel previously gave the Interested Parties and this Court when the Order was being negotiated that they would "*not* use the discovery produced in the [Chapter 15 Proceeding] in the NAFTA Arbitration. . . ."[4] Consistent with the plain language of Paragraph 37 of the Protective Order and this drafting history, the Protective Order should not be interpreted to somehow allow for that which it expressly prohibits.  The Ad-Hoc Group's amicus brief in the NAFTA Arbitration changes nothing and should have no impact on this analysis. The amicus brief merely observes, ████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████. This legal argument does not supply "good cause" to give the Chapter 15 Discovery to the U.S. Shareholders for use in the NAFTA Arbitration.

---

[4]    *Foreign Representative's Letter to Court Dated September 26, 2018* [ECF No. 98], at 1-2 (hereinafter, "September 26 Letter").

7.      Even if the Protective Order did not require denial of the U.S. Shareholders' Motion (it does), it should be denied for the additional reason that the U.S. Shareholders have no standing to obtain discovery under Chapter 15. When the Foreign Representative opposed discovery requests from the Interested Parties *on behalf of the Debtor*, it argued that the Foreign Representative was the sole party permitted to obtain discovery under Chapter 15.[5] Now, representing the U.S. Shareholders, counsel argues the opposite. As counsel to the U.S. Shareholders, the same attorneys ask this Court to authorize the U.S. Shareholders to obtain Chapter 15 Discovery for use in the NAFTA Arbitration. The Foreign Representative prevailed in its previous argument and the Interested Parties were denied discovery; the Court should not reach a different result for the U.S. Shareholders.

8.      The U.S. Shareholders' request is prohibited by additional provisions under the Bankruptcy Code. Section 1521 authorizes discovery under Chapter 15 only "where necessary . . . to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). The U.S. Shareholders are neither, and are seeking discovery to pursue individual claims that will impair the Debtors' ability to obtain any recovery in its parallel litigations. In addition, the U.S. Shareholders seek this discovery—which is property of the estate—in exchange for no consideration at all, in a transaction between conflicted executives and counsel.

9.      The U.S. Shareholders believe this Court has jurisdiction to authorize a transfer of the Debtors' interest in the Chapter 15 Discovery. If they are correct,[6] Section 1520(a)(2) renders such a transfer subject to Section 363.[7] The Debtors paid substantial sums to obtain the discovery at issue, and a transfer to the U.S. Shareholders for no remuneration to the

---

[5]    *Foreign Representative's Opposition to the Motion by the Interested Parties Pursuant to Section 1522(b) of the Bankruptcy Code* [ECF No. 69], at 38-39 (hereinafter, "June 12, 2018 Opposition Brief").
[6]    As discussed further below, the Interested Parties reserve all rights on that issue.
[7]    11 U.S.C. §§ 363(b), 1520(a)(2).

Debtors' estates is prohibited by Section 363 as there is no good business reason for this transfer—its sole purpose is to facilitate the U.S. Shareholders' pursuit of individual claims that will compete with estate claims subject to ongoing litigation in Mexico.

        10.    For all of these reasons, the Motion should be denied.

## BACKGROUND

### I.    CHAPTER 15 PROCEEDING

#### A. Protective Order

11.    At the outset of the Chapter 15 Proceeding, the Interested Parties sought and obtained a Confidentiality Agreement and Stipulated Protective Order ("Protective Order") that precluded the U.S. Shareholders from using or relying on discovery materials in the NAFTA Arbitration. (*See* Clareman Decl. Ex. B, at ¶ 37.) The Interested Parties insisted on that provision because, as they told this Court, "[w]ithout this protection, the Interested Parties are concerned that other clients of Foreign Representative's counsel could use the Chapter 15 Discovery in ways that are a threat to the assets of the Debtors," including by using the Chapter 15 Discovery in the NAFTA Arbitration.[8]   Quinn Emanuel sought to quell that concern, and provided the Interested Parties and the Court an "express assurance" that they "would *not* use the discovery produced in the [Chapter 15 Proceeding] in the NAFTA Arbitration. . . ." (September 26 Letter, at 2.)

12.    As a result, the parties negotiated during a Chambers conference a bespoke provision in the Protective Order prohibiting the Foreign Representative from using discovery materials from the Chapter 15 Proceeding ("Chapter 15 Discovery") in the NAFTA Arbitration. The provision—quoted nowhere in the U.S. Shareholders' brief—provides:

> Notwithstanding anything to the contrary herein, absent consent or a court order, Discovery Material **shall not be used or relied upon in any way** in the arbitration proceeding brought by shareholders of the Debtors ("Shareholders") pursuant to the North American Free Trade Agreement, or any other proceeding brought by Shareholders in which (1) neither Debtor is a party, and (2) any arbitral (or similar) award would go to the Shareholders.

---

[8]    *Interested Parties' Letter to Court Dated September 25, 2018* [ECF No. 96], at 2.

(Clareman Decl. Ex. B ¶ 37 (emphasis added).)  This provision unambiguously prohibits the use of Chapter 15 Discovery in the NAFTA Proceeding, but it expressly overrides any other provision in the Protective Order that may be to the contrary (by stating it applies "[n]otwithstanding anything to the contrary herein").

13.    Other provisions of the Protective Order also prohibit use of Chapter 15 Discovery in the NAFTA Arbitration by the U.S. Shareholders.  For example, Paragraph 9 states that "Discovery Material . . . shall be used by the Receiving Party solely for the purposes of the Disputes and not for any other purpose."  (*Id.* ¶ 9.)  The Protective Order defines Disputes as those that "protect the assets of the Debtors or the interests of creditors, arising out of or relating to the (1) Debtors' assets, affairs, rights, obligations, or liabilities; (2) [*Concurso* Proceedings]; and (3) [the Chapter 15 Proceeding]."  (*Id.* at 1.)  Paragraph 13 states that "Confidential Material . . . shall not be given, shown, made available, disclosed, or communicated in any way, except to those people provided in Paragraph 11" which are the "members, managers, partners, directors, officers, employees, and external and in-house counsel" of the Foreign Representative. (*Id.* ¶¶ 11, 13.)  Despite this unyielding language, the Motion confirms that the Foreign Representative has "given, shown, made available, disclosed, [and/or] communicated" Chapter 15 Discovery to the U.S. Shareholders in violation of a provision of the Protective Order.

14.    The U.S. Shareholders argue that "as a 'Receiving Party,' [Mr. Warren] can freely use non-confidential Chapter 15 Evidence in any proceeding," in contradiction with the plain language of the Protective Order.  Mot. at 9-10.  However, Mr. Warren is ***not*** a Receiving Party.  The Receiving Party is defined as "Alonso Del Val Echeverria, in his capacity as foreign representative" in the recitals clause of the Protective Order.  (*Id.* at 1.)  Mr. Warren is not the Foreign Representative.  Therefore, he may not freely use the Chapter 15 Discovery.  But

even if Mr. Warren were a Receiving Party (and he is not), Paragraph 9 prohibits the Receiving Party from using Chapter 15 Discovery "for any other purpose" besides the Disputes. (*Id.* ¶ 9.)

## II.     NAFTA PROCEEDING

15.     On June 19, 2018, Quinn Emanuel—as counsel to the U.S. Shareholders—filed a Notice of Arbitration under NAFTA against Mexico, which owns and controls Pemex. (*See* Clareman Decl. Ex. A.) While the U.S. Shareholders were commencing the NAFTA Arbitration, the Foreign Representative was also seeking to obtain discovery from the Interested Parties in the Chapter 15 Proceeding, using the same counsel, who did not disclose its dual representation to the Court. The same attorneys have appeared on behalf of both the Foreign Representative (including in his personal capacity) and the U.S. Shareholders in both the Chapter 15 Proceeding and the NAFTA Arbitration, and there are plainly no screens separating the attorneys who represent the U.S. Shareholders in various proceedings from those who represent the Debtor and those who represent Mr. Gil in his personal capacity.

### A. The U.S. Shareholders, Not the Debtor, Are Claimants in the NAFTA Proceeding and Are Pursuing Individual Recoveries, Not Derivative Claims

16.     The U.S. Shareholders, who are the claimants in the NAFTA Arbitration, are minority shareholders who own 43.2% of Integradora. (*See* Clareman Decl. Ex. A at 6.) The U.S. Shareholders include Carlos Williamson-Nasi, a United States citizen, who is making a claim on his own behalf and on behalf of Mexican companies that he owns and controls, including Axis Oil Field Services, S. de R.L. de C.V. ("Axis Oil Field Services"). (*See id.* at 7-8.) According to public filings, Mr. Gil is an officer of Axis Oil Field Services.[9] Mr. Gil is also

---

[9]     *See* Public Registry of Property and Commerce of the Federal District of Mexico, Electronic Commercial Folio 469069 (February 28, 2012), (Clareman Decl. Ex. D-T), at 1. According to SEC Filings, Axis Oil Field Services is "the vehicle that consolidates the majority of the Axis' Group holdings in [Integradora]. . . . In addition to its principal position, funds managed by Axis are major shareholders in Oro Negro." (Clareman Decl. Ex. E at 46.)

founding partner and Managing Director of Axis Capital Management, which owns Axis Oil Field Services. *See id.*

17.    Through Axis Capital Management and Axis Oil Field Services, Mr. Gil has both a financial interest in the outcome of the NAFTA Arbitration that diverges from the Debtor's interest, as well as a fiduciary duty to the U.S. Shareholders. As the Managing Partner of Axis Capital Management, Mr. Gil has an ownership interest in Axis Oil Field Services, which is one of the U.S. Shareholders in the NAFTA Arbitration. However, as the Foreign Representative and CEO of the Debtors, Mr. Gil has the same duty to protect the assets of the Debtors by ensuring the same recovery goes to the estate.

## B. The U.S. Shareholders' NAFTA Claim Is a Derivative Claim That Belongs to the Debtors

18.    The North American Free Trade Agreement allows investors from Member States, which include Mexico, Canada, and the United States, to recover damages from another Member State through two distinct avenues.[10] Article 1116 allows an investor to seek damages personally, *e.g.*, for impairments to its rights as a shareholder. *See id.* art. 1116. In contrast, Article 1117 allows an investor that owns or controls a company to bring a claim and obtain damages on behalf of a company. *See id.* art 1117. Unlike a claim under Article 1116, in which the recovery goes to the investor, NAFTA ensures that recovery for all Article 1117 claims goes to the company rather than the shareholder. *See id.* art. 1135(2). NAFTA does not permit minority shareholders to bring derivative claims or otherwise pursue claimed damages suffered by the company. In the NAFTA Arbitration, ███████████████████████████
████████████████████████████████████████████.

---

[10]    *See* North American Free Trade Agreement, Can.-Mex.-U.S., art. 1116–17, Dec. 17, 1992, 32 I.L.M. 289 (1993) [hereinafter, NAFTA].

Therefore, any recovery from the NAFTA Arbitration will go to the U.S. Shareholders and not the Debtors.

19.    No doubt exists that the U.S. Shareholders are asserting claims that belong to the Debtors. They seek ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████" Mot. at 5. Those alleged damages are based on ██████████████████ ███████████████████████████████████████████. (*See* Ex. A at 33-36.) That is the very cause of action that the Debtors are currently pursuing against Pemex. *See* Decl. of Foreign Representative [ECF No. 3] ¶ 51 ("On October 26, 2017, Perforadora Oro Negro sued Pemex in a Mexican federal court demanding payment of damages for purportedly terminating the Decus, Fortius, Laurus and Primus Contracts").

20.    The U.S. Shareholders acknowledge this, but state that "[t]he NAFTA Proceeding provides a key incentive for Mexico to comply with the Pemex Contracts or make Oro Negro whole ███████████████████████████████████████████████ ███████████." Mot. at 10. It is, of course, unjustifiably wishful thinking to imagine the NAFTA Arbitration will somehow inspire Pemex to suddenly comply with ██████████████, but regardless, the opposite is also true: the U.S. Shareholders have a direct incentive to obtain the exact opposite result and that is precisely what they are doing. As the sole claimants in the NAFTA Arbitration – to which the Debtors are not parties and have no right to recovery – the U.S. Shareholders stand to recover all of the alleged $700 million in damages for themselves without paying a penny to the Debtors! It is difficult to imagine a clearer example of directly opposing interests.



21.     In addition, any award that the NAFTA Tribunal renders in favor of the U.S. Shareholders may cause Pemex to set-off those damages against the Debtors' pending civil claims against Pemex. For example, the NAFTA claims could result in an award of damages against Mexico to compensate the U.S. Shareholders for lost revenues ███████████████ ███████. If the NAFTA Tribunal renders such an award against Mexico, Pemex may assert that they are entitled to a "set-off" in the *Concurso* and Mexican civil court proceedings, which would impair the Debtors' ability to collect the same damages. Once again, the U.S. Shareholders' interests are in direct opposition to those of the Debtors.

### C. Ad-Hoc Group's Application in the NAFTA Arbitration

22.     On April 19, 2019, the Ad-Hoc Group filed an application to submit a non-disputing party submission in the NAFTA Arbitration, akin to filing an amicus brief (the "Application"). It was not, as the U.S. Shareholders claim, a "Motion to Intervene." As non-parties, the Ad-Hoc Group acquires no rights by submitting its Application. The Ad-Hoc Group's Application merely requests ███████████████████████████████████ ████████████████████████████████████████ █████████████████████████████" (Application, (Clareman Decl. Ex. F) at 4.) Contrary to the U.S. Shareholders' Motion, the bondholders did not request to "███████████████ ███████" *Compare* Mot. at 7 *with* Clareman Decl. Ex. H at 4. The Ad-Hoc Group is not a party to the arbitration, █████████████████████████████████████ ███████.

23.     The Ad-Hoc Group's Application made three observations. First, ████████ ████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████

██████████████████████.” (Clareman Decl. Ex. F, at 8.)  Second, ████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████ (*See id*. at 15-19.)

Third, ███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████” (*Id*. at 18.)  The Ad-Hoc Group's

Application  did not include ████████████████████████████

## III.    SUBSEQUENT DEVELOPMENTS

      24.    On June 7, 2019, the Foreign Representative filed a motion seeking

approval of a Litigation  Interest Agreement ("LIA").  ████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████. (Clareman Decl. Ex. C) at 23.)[11] ████████████████

████████████████████████████████████████████████████

██████████.

      25.    Through ████████████ and this Motion for authorization  to use the Chapter

15 Discovery, Mr. Gil and his counsel are seeking to treat the U.S. Shareholders' interests in the

NAFTA Arbitration as being indistinguishable  from the Debtors' interests in pursuing  various

---

[11]    Quinn Emanuel provided the Interested Parties a less redacted copy of the LIA, subject to the Interested Parties'
agreement to treat the LIA in accordance with the Protective Order.  Therefore, the Interested Parties are filing
the LIA under seal.

claims.  As previously explained, that is not the case.  As the U.S. Shareholders concede, they "are not suing Mexico on behalf of Oro Negro."  Mot. at 5.  They seek a recovery for themselves.  The Court should not permit these lines to be blurred when there are clearly conflicting interests between the Debtors (and their creditors) and the equity.

**ARGUMENT**

**I.    The Protective Order Prohibits the U.S. Shareholders from Using the Chapter 15 Discovery**

26.    The text of the Protective Order is clear and unambiguous:  Chapter 15 Discovery "shall not be used or relied upon in any way in the arbitration proceeding. . . ."  (Ex. B ¶ 37.)  That, alone, should compel denial of the Motion.  Courts have uniformly found that provisions like this in a Protective Order precludes a litigant from using discovery materials from one proceeding in another litigation.  *See Wolters Kluwer Fin. Servs. Inc.* v. *Scivantage*, 2007 WL 1498114, at *7 (S.D.N.Y. 2007) (interpreting the provision "Protected Materials . . . shall not be used . . . in any other litigation proceeding" to prohibit plaintiffs from using discovery in subsequent litigation); *Hunter Eng'g Co.* v. *Hennessy Indus., Inc.*, 2010 WL 1186454, at *2 (same involving the provision "shall not be used for any other purpose.").

27.    The U.S. Shareholders' only discussion of Paragraph 37's prohibition, which they cite, but do not quote, is that this clause "contemplates that this Court may authorize the use of the Chapter 15 Evidence."  Mot. at 8.  It is difficult to see the U.S. Shareholders' gloss on this provision as anything other than intentional obfuscation.  This strained argument relies on the portion of Paragraph 37 that states that the U.S. Shareholders may not use Chapter 15 Discovery "absent consent or court order," but that was not an invitation for the U.S. Shareholders to violate the prohibition in the remainder of the paragraph, particularly after their

14

counsel provided their express assurance that they would not. And, as further set forth below, the U.S. Shareholders have proffered no basis to support a court order now.[12]

28.     But, there is more. Paragraph 9 states that "Discovery Material . . . shall be used by the Receiving Party solely for the purposes of the Disputes and not for any other purpose." (Clareman Decl. Ex. B at 5.) The NAFTA Arbitration is not included in the definition of "Disputes" in the Protective Order. (*See id.* at 1.) A "common sense, plain reading" of this provision "unequivocally bars *all* uses of confidential materials" except with respect to the litigation in which such materials were produced. *On Command Video Corp.* v. *LodgeNet Entm't Corp.*, 976 F. Supp. 917, 921-22 (N.D. Cal. 1997); *see also In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 70-71 (S.D.N.Y. 2007) (involving nearly identical provision and prohibiting attorneys for using discovery materials from one proceeding in a subsequent litigation). Therefore, Paragraph 9 provides an independent ground to deny the U.S. Shareholders' Motion.

29.     The parties' submissions to this Court, including by the same attorneys currently representing the U.S. Shareholders, also confirm that the Protective Order forecloses the U.S. Shareholders from using or relying upon the Chapter 15 Discovery. The U.S. Shareholder's counsel (then appearing on behalf of the Foreign Representative) provided ***this Court*** with an "express assurance" in bold and italicized language that they "would ***not*** use the discovery produced in this action in the NAFTA Arbitration." (September 26 Letter at 2 (emphasis in original).) The same counsel now argues (albeit on behalf of another of its many clients) that the "Protective Order[] expressly allow[s] for any party to freely use the Chapter 15

---

[12]    In comparing this Protective Order to the one negotiated by Seadrill and Fintech, the U.S. Shareholders state that the "only difference" between the Seadrill/Fintech Protective Order and the Interested Parties' Protected Order is that the Interested Parties' Protective Order "contemplates that this Court may authorize the use of the Chapter 15 Evidence in the [NAFTA Arbitration]." Mot. at 8. Actually, the Interested Parties' Protective Order contains an entire paragraph that expressly prohibits the relief sought by the U.S. Shareholders.

Evidence in any proceeding," including the NAFTA Arbitration. Mot. at 8. These inconsistencies are not explained and notably, the Debtors have not offered a position on the request.

30.    Instead, the U.S. Shareholders point to other provisions of the Protective Order, including Paragraph 27 and the Recitals clauses, to argue that the Protective Order permits them to use Chapter 15 Discovery, but those arguments lack merit. Paragraph 27 of the Protective Order allows a "Receiving Party" to use "Non-Confidential Material . . . in connection with the Disputes, or otherwise." (Clareman Decl. Ex. B ¶ 27.) The U.S. Shareholders assert that the "or otherwise" phrase allows them to use non-confidential documents produced in the Chapter 15 Proceeding because one of the U.S. Shareholders, Mr. Warren, is a "Receiving Party." *See* Mot. at 11-13. They further assert that Mr. Warren can "freely use non-confidential Chapter 15 Evidence in any proceeding" because he is a "Receiving Party." Mot. at 9. Not so. "Receiving Party" is defined in the Protective Order as "Alonso Del Val Echeverria, *in his capacity as foreign representative*." (Clareman Decl. Ex. B at 1 (emphasis added).) Although Mr. Warren is a director of Integradora, he is not a Receiving Party, particularly when he acts in his capacity as a shareholder of Integradora. To be sure, the Receiving Party may show Confidential and Non-Confidential Chapter 15 Discovery to their "members, managers, partners, directors, officers, employees and external and in-house counsel and their agents." (*Id.* ¶ 11.) However, they may only do so "as necessary to assist with or make decisions with respect to the Disputes." (*Id.*) Disputes, again, do not include the NAFTA Arbitration.[13]  Therefore,

---

[13]  The U.S. Shareholders argue that the definition of Disputes contained in the Recitals clause could embrace the NAFTA Arbitration. As a preliminary matter, "[a]lthough a statement in a 'whereas' clause may be useful in interpreting an ambiguous operative clause in a contract, 'it cannot create any right beyond those arising from the operative terms of the document.'" *Abraham Zion Corp.* v. *Lebow*, 761 F.2d 93, 103 (2d Cir. 1985). Paragraph 37 states that Chapter 15 Discovery may not be used in the NAFTA Arbitration "[n]otwithstanding anything to the contrary herein." Clareman Decl. Ex. C ¶ 37. More generally, only the Receiving Party may use the Chapter

Mr. Warren may not access, use, or rely upon Chapter 15 Discovery in a capacity other than as a director of Perforadora. In this Motion, he is acting only in his capacity as a shareholder.

## II.     The Bankruptcy Code Provides No Authority for the U.S. Shareholders to Request, Use, or Obtain Chapter 15 Discovery, and the U.S. Shareholders Cite None

### A.  The Bankruptcy Code Only Authorizes the Foreign Representative to Obtain and/or Use the Chapter 15 Discovery

31.     The Foreign Representative previously argued successfully before this Court that there is no statutory authority for other interested parties, such as the U.S. Shareholders, to obtain discovery in a Chapter 15 Proceeding. The Chapter 15 Discovery was obtained under—and is governed by—section 1521(a)(4) of the Bankruptcy Code. The Foreign Representative previously argued:[14]

> Chapter 15 plainly does not permit any party in interest other than the foreign representative to request discovery under section1521(a)(4). Section 1521(a) unambiguously provides that relief under that section may be granted "at the request of the foreign representative. . . . But what section 1521(a)(4) does not provide is a mechanism for other parties . . . to request discovery under section 1521(a)(4) and/or Rule 2004.

(June 12, 2018 Opposition Brief ¶¶ 96-98.)  The Foreign Representative has not requested permission to use this discovery in the NAFTA Arbitration, nor has he weighed in on whether permission to do so should be granted to the U.S. Shareholders (and, of course, the Debtors are now in liquidation and his authority is at an end). Similarly, in *In re China Medical Technologies*, No. 12-13736 (Bankr. S.D.N.Y.), Judge Gerber denied a shareholder's request for discovery on the same basis, emphasizing that "the authority under 1521 and 1507 gives benefits

---

15 Discovery.  *See id.* ¶ 9.  Since only the Foreign Representative is the Receiving Party, Mr. Warren may not use the Chapter 15 Discovery for any purpose, particularly the NAFTA Arbitration.

[14]     The Foreign Representative's argument prevailed and this Court denied the Interested Parties' request for discovery in these Chapter 15 Proceedings.  "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire* v. *Maine*, 532 U.S. 742, 749 (2001).

to foreign representatives that, by their terms, don't extend to other parties-in-interest."  March 21, 2013 Hr'g Tr. at 17, [ECF No. 111] (Bankr. S.D.N.Y. June 19, 2013); *see also* Order, [ECF 91.]) Thus, consistent with the arguments previously made by the U.S. Shareholders' counsel and this Court's prior ruling, the U.S. Shareholders lack standing to request the Chapter 15 Discovery.

32.    The Foreign Representative's failure to join the U.S. Shareholders' Motion or to respond to it, to the extent he is authorized to do so, is yet more proof that the interests of the Debtors are not being represented in this matter because its counsel is acting on behalf of its other clients, the U.S. Shareholders.[15]  *See In re Freedom Solar Ctr., Inc.*, 776 F.2d 14, 16 (1st Cir. 1985) (holding that an attorney's dual representations of a debtor and shareholders adversely prejudiced the debtor).  In the same case in which Judge Gerber denied a shareholder's discovery motion under Chapter 15, he expressed his view that a single law firm's representation of both a group of secured creditors and the estate's Foreign Representative in a Chapter 15 proceeding was both "unprecedented" and "objectionable."  January 3, 2013 Hr'g Tr. at 13, 74. [ECF No. 71] (Bankr. S.D.N.Y. Feb. 4, 2013).)  Judge Gerber perceived "prejudice . . . to [the Company's] creditors as a whole," and counsel for the foreign representative subsequently withdrew its appearance on the foreign representative's behalf.  *Id.* at 76.  That the Foreign Representative's counsel is taking contradicting positions on the issue of who is entitled to discovery funded by the estate is clear evidence of this conflict.

---

[15]    The U.S. Shareholders' Motion appears to have been timed so that the deadline for the Debtors to object arrived immediately after the Debtors entered liquidation, but before a liquidator would be able to act.  In effect, the strategic timing allows the U.S. Shareholders to appropriate the estate's property at a time when the Debtors are unable to respond.

18

**B. Section 1521(a)(4)'s Other Express Limitations also Prohibit the U.S. Shareholders from Obtaining and/or Using the Chapter 15 Discovery**

33.    Section 1521(a)(4) authorizes discovery only (i) "to protect the assets of the debtor or the interests of the creditors" and (ii) if "necessary to effectuate the purpose of [Chapter 15]." 11 U.S.C. § 1521(a)(4).  Neither of those requirements is satisfied by the U.S. Shareholders' requested use of the Chapter 15 Discovery in the NAFTA Arbitration.  Rather than "protecting the assets of the [Debtors] or the interests of the creditors," the Motion seeks to use the Chapter 15 Discovery in a proceeding designed to usurp the Debtors' assets.  In doing so, the Motion seeks to avoid orderly distribution of the Debtors' assets in the *Concurso* Proceeding (the foreign main proceeding), thus undermining the central purpose of Chapter 15.  *See, e.g., In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 678-79 (S.D.N.Y. 2011) ("The purpose [of Chapter 15] is to maximize assistance to the foreign court conducting the main proceeding.").  For this reason, too, the Motion should be denied.

**C. The Chapter 15 Discovery is an Asset of the Debtors, which the Shareholders are Wrongfully Attempting to Appropriate**

34.    Cognizant of the express limitations of section 1521(a)(4), the Chapter 15 Discovery was initially sought by the Foreign Representative only.  In seeking this discovery, the Foreign Representative repeatedly represented to this Court that (i) it was seeking discovery related to alleged claims that ***belong to the Debtors***[16] and (ii) a key motivation behind filing the Chapter 15 Petitions was "stay[ing] legal actions against [the Debtors] and [their] assets,

---

[16]    Quinn Emanuel has represented to this Court no less than four times that the causes of action belong to the Debtors. *See, e.g.*, June 27, 2018 Hr'g Tr., at 122 [ECF No. 87] ("If we're totally successful in everything, *bonds get paid in full . . . .*" (emphasis added)); Nov. 7, 2018 Hr'g Tr., at 8-9 [ECF No. 157] ("In this case, our potential claims . . . *are our property*.  They are *assets of the estate* and we are entitled to take discovery into them under Chapter 15's discovery provisions." (emphasis added)); Perforadora's Verified Petition, ¶ 1 [ECF No. 2] ("[T]he Foreign Representative will seek documentary and testimonial discovery from Integradora Oro Negro and its Subsidiaries' only client, and their principal creditors, debtors and competitor, including to investigate potential causes of action *by Perforadora Oro Negro*." (emphasis added)); Integradora's Verified Petition, No. 18-11095, ¶ 1 (similar to Perforadora's Verified Petition).

preserving the *status quo* so that creditors and other parties in interest cannot seize property or litigate outside of the *Concurso Mercantil*."[17]  Based on those representations, this Court authorized the Foreign Representative—solely in his capacity as a representative of the Debtors—to obtain the Chapter 15 Discovery.  *See* Discretionary Relief Order [ECF No. 85], at 4-5.

35.    Now that the Chapter 15 Discovery has been obtained on behalf of the Debtors—and at great cost to the Debtors, including through the incurrence of legal fees— the veil has been lifted.  Rather than seeking to enjoin the U.S. Shareholders' pursuit of competing "legal actions . . . outside of the *Concurso Mercantil*,"[18] the Foreign Representative's counsel is representing the very parties asserting the competing NAFTA claims—both in the NAFTA Proceeding (to which the Debtors are not a party) and now in these Chapter 15 Proceedings.

36.    Tellingly, the Motion does not even allege that the decision to provide the Debtors' Chapter 15 Discovery to the U.S. Shareholders was the result of the Debtors' independent business judgment or any arm's-length negotiations.   Indeed, it seems that the U.S. Shareholders believe they are entitled to receive the Debtors' Chapter 15 Discovery for free. And they ask this Court to grant this relief because the U.S. Shareholders believe this Court has jurisdiction to order a transfer of the Debtors' interest in the Chapter 15 Discovery.[19]  But if the U.S. Shareholders are correct, the proposed transfer is prohibited by the Bankruptcy Code because any transfer of the Debtors' Chapter 15 Discovery is subject to section 363.  *See* 11 U.S.C. § 1520(a) (stating that section 363(b) applies to "a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the

---

[17]    *See, e.g.*, Perforadora's Verified Petition [ECF No. 2] ¶ 1.
[18]    Perforadora's Verified Petition [ECF No. 2] ¶ 1.
[19]    The Interested Parties reserve all rights with respect to whether the Chapter 15 Discovery is located within the territorial jurisdiction of the United States or otherwise subject to this Court's jurisdiction.

sections would apply to property of an estate"); 11 U.S.C. § 363(b) (governing the use, sale, and lease of a debtor's property "other than in the ordinary course of business").

37.     Section 363 contains two express limitations that prohibit this conflict-laden transfer.  First, Section 363 only allows a "trustee" or "debtor in possession" to use, sell, or lease, the Debtors' property.[20]  Accordingly, the U.S. Shareholders lack standing to seek use or transfer of the Chapter 15 Discovery.  The Motion should be denied for that reason alone.

38.     Second, for a court to approve a use or transfer under section 363(b), it must "expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application."  *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).  It is well established that transactions that benefit insiders of a debtor (such as the U.S. Shareholders) are subject to heightened scrutiny.[21]  The U.S. Shareholders have made no allegation, much less submitted evidence, to support that their requested transfer and use of the Chapter 15 Discovery satisfies the requirements of section 363.  The Motion should be denied for these reasons as well.

## III.    The U.S. Shareholders Provide No Justification for This Court to Grant Their Motion

39.     Paragraph 37 of the Protective Order prohibits the U.S. Shareholders from using or relying on Chapter 15 Discovery "absent consent or a court order," but they provide no statutory basis or factual justification for a court order to permit them to do so now.  Instead, they argue that they have "good cause" for the request and that there is "no prejudice" in authorizing

---

[20]     *See* 11 U.S.C. § 1107(a) (giving a debtor in possession most of the rights, powers, duties, and functions of a "trustee").

[21]     *See In re Enron Corp.*, 335 B.R. 22, 28 (S.D.N.Y. 2005) (citing *In re Med. Software Solutions*, 286 B.R. 431, 445 (Bankr. D. Utah 2002) (holding that under section 363(b), where transactions benefit insiders, "the purchaser has a heightened responsibility to show that the sale is proposed in good faith and for fair value"); *In re Wingspread Corp.*, 92 B.R. 87, 93 (Bankr. S.D.N.Y. 1988) (holding that insider transactions under section 363(b) "are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse")).

the U.S. Shareholders to use the Chapter 15 Discovery. "Good cause" and "no prejudice" is not a statutory basis for a non-party to obtain discovery in a Chapter 15 Proceeding in direct contravention of the Protective Order and in a manner prohibited by the Bankruptcy Code. Nevertheless, assuming that the Protective Order does not already prohibit the U.S. Shareholders from using or obtaining Chapter 15 Discovery (it does), and assuming the Bankruptcy Code provides authority to grant their Motion (it does not), the U.S. Shareholders do not provide "good cause" and "no prejudice" to grant their Motion.[22]

### A. The U.S. Shareholders Misrepresent the Ad-Hoc Group's Participation in the NAFTA Arbitration to Manufacture "Good Cause" to Use and Obtain the Chapter 15 Discovery

40.    In order to justify their request, the U.S. Shareholders rely on half-truths and misstatements to attempt to show "good cause." First, the U.S. Shareholders mischaracterize the extent of the Ad-Hoc Group's participation in the NAFTA Arbitration by mislabeling it as a "Motion to Intervene" and stating that "Ad-Hoc Group seeks to effectively litigate against the U.S. Shareholders in the NAFTA Proceeding." Mot. at 12. The FTC Statement does not contemplate or permit non-parties to intervene in an arbitration, other than by submitting a single amicus brief. (*See* Clareman Decl. Ex. G, at 2.) Tribunal practice is in agreement. In *Methanex Corp.* v. *United States*, the NAFTA tribunal explained that the "receipt of written submissions from a person other than the Disputing Parties is not equivalent to adding that person as a party in the arbitration . . . the third person acquires no rights at all." *Methanex Corp.* v. *United States*, 44 I.L.M. 1345 (NAFTA Arb. 2005).[23]

---

[22]    Even if a statutory basis existed for the U.S. Shareholders' request, the U.S. Shareholders must make a "showing of improvidence in the grant of [the Protective Order] or some extraordinary circumstances or compelling need" in order to modify the existing Protective Order to permit the U.S. Shareholders requested use of the Chapter 15 Discovery. *S.E.C.* v. *TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001). The U.S. Shareholders do not even attempt, in their Motion, to meet this high bar.

[23]    *See also United Parcel Service of America, Inc.* v. *Canada*, Decision of the Tribunal On Petitions for Intervention and Participation as Amici Curiae (NAFTA Arb. 2001) ¶ 36 ("None of th[e] provisions [of NAFTA] confer[]

41. ██████████████████████████████████████████████

███████████████████████████████    ██████████████████████

██████████████████████████████████████████████. (Procedural

Order No. 1, (Clareman Decl. Ex. H) at 19.) ████████████████████████

████████████████████████████████████████████████████████

████████████████████████    *Id.* In accordance with the provisions of NAFTA, the

Tribunal's order, and prior tribunal practice, the Ad-Hoc Group's participation in the NAFTA

Arbitration, if it is accepted, is no more than that of an *amicus curiae* in American judicial

proceedings.

42.    Second, the U.S. Shareholders misrepresent the relief that the Bondholders

sought in its Application to the NAFTA Arbitration Tribunal. Incredibly, they assert that the Ad-

Hoc Group seeks to '██████████████████████████████████████████

█████████████' Mot. at 5. The Ad-Hoc Group's submission speaks for itself. Nowhere does it

make such a request. (*See* Clareman Decl. Ex. F.) ████████████████████████████

█████████████████████████████████████████.

43.    In short, the U.S. Shareholders cannot demonstrate any "cause"—much

less "good cause"—to justify their request to use Chapter 15 Discovery in the Arbitration

---

authority to add parties to the arbitration. . . . NAFTA itself does not provide any basis for the addition [of third parties]."); *Merrill & Ring Forestry L.P.* v. *Canada*, Tribunal Letter (NAFTA Arb. 2008) at 1 (finding, in response to a petition by a non-party to be granted the status of a disputing party or analogous status, "the Tribunal lacks the jurisdictional authority to do so either under NAFTA Chapter 11 or the UNCITRAL Arbitration Rules governing these proceedings [as] [s]uch status is expressly restricted to a 'Party and an Investor of Another Party'"); *Aguas Argentinas, S.A., Suez, et. al.* v. *The Argentine Republic*, ICSID Case No. ARB/03/19, Order in Response to a Petition for Transparency and Participation as *Amicus Curiae* (19 May 2005), ¶ 13 ("[T]he Tribunal believes that an amicus curiae in an ICSID proceeding would also be that of a nonparty. The traditional role of an amicus curiae in an adversary proceeding is to help the decision maker arrive at its decision by providing the decision maker with arguments, perspectives, and expertise that the litigating parties may not provide. In short, a request to act as amicus curiae is an offer of assistance – an offer that the decision maker is free to accept or reject. An amicus curiae is a volunteer, a friend of the court, not a party.")

Proceeding for two reasons. First, ███████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████, neither of which

requires Chapter 15 Discovery to rebut. ███████████████████████

███████████████████████████. As a result, there could be no use

for Chapter 15 Discovery, except perhaps to seek to bolster the U.S. Shareholders' competing

claim against Mexico, to the detriment of the Debtors.

44.    Second, the limitations imposed by the Tribunal and NAFTA on the Ad-

Hoc Group's participation, were it granted, ensure that the U.S. Shareholders will suffer no

unfair prejudice by their submission of an amicus brief. The NAFTA *Statement of the Free

Trade Commission on Non-Disputing Party Participation* ("FTC Statement") sets forth the basic

rules that limit the extent of a non-disputing party's involvement in proceedings. It states that,

before accepting an amicus brief a Tribunal must ensure that the submission does not "unfairly

prejudice[]" either of the disputing parties. (FTC Statement, (Clareman Decl. Ex. I) at 2.)

Further, "[t]he granting of leave to file a non-disputing party submission does not entitle the non-

disputing party that filed the submission to make further submissions in the arbitration." *Id.* at 2.

**B. Oro Negro and its Creditors Will Be Prejudiced if the Court Allows the U.S.
Shareholders to Use or Obtain the Chapter 15 Discovery**

45.    Both Oro Negro and its creditors will suffer prejudice in two significant

ways if the U.S. Shareholders are permitted to use and obtain Chapter 15 Discovery.

46.    First, granting the U.S. Shareholders' Motion would effectively allow

them to charge the bankruptcy estate for all of the attorney's fees incurred to obtain the

Chapter 15 Discovery, while permitting the U.S. Shareholders to benefit, at no cost to them. It

will also provide an additional incentive for the U.S. Shareholders, which include Mr. Gil in his

multiple capacities as a beneficial owner of material portions of Integradora's shares, as an officer of Axis Oil Field Services, and in his personal capacity to pursue costly discovery in the name of the Debtors, at the estate's expense, so that they can use those materials in the NAFTA Arbitration.

47.



. (*See* LIA, (Clareman Decl. Ex. C) at 23.)

.

48.    Second, granting the U.S. Shareholders' Motion would hinder the Debtors' ability to collect the same damages against Pemex in ongoing litigation in Mexico arising out of the same operative facts as the U.S. Shareholders' NAFTA Arbitration claims. While it is well-established that shareholders cannot seek damages for reflective loss under most national laws,[24] some international arbitration tribunals have allowed the derivative claims of minority shareholders to proceed, while noting the potential that an award to the shareholders

---

[24]    *See* 12B Fletcher, Cyclopedia of Corporations, § 5911 (2012) (if damages to a stockholder result indirectly, as the result of an injury to the corporation, and not directly, he cannot sue as an individual).

could negatively impact a future award to a company. *See, e.g., GAMI* v. *Mexico*, Award (2004) §§ 120-21. In *GAMI*, the tribunal recognized the "*certain* scenario of unsynchronised resolution" and the potential that a company's recovery might be "reduced because of payment to [the shareholders]" in a prior NAFTA arbitration. *Id.* Ultimately, the GAMI shareholder's claims were dismissed on the merits and the tribunal did not have to resolve the thorny issue of a potential competing claim.[25] However, these cases recognize the very real risk that the Debtors will be prejudiced by the U.S. Shareholders' actions because the NAFTA Arbitration award might compete with Oro Negro's potential recovery in Mexican courts.

49.      The U.S. Shareholders seek damages 
." Mot. at 5. The manner in which the U.S. Shareholders are calculating their damages, however, shows that they are seeking derivative losses that, if proved, belong to Oro Negro. In their Notice of Arbitration, the U.S. Shareholders stated that

"  (Clareman Decl. Ex. A at 4.)

A recovery by the U.S. Shareholders could prejudice the Company's rights in the event that Pemex argues that a hypothetical NAFTA Award already compensated the Company

---

[25]    *See also* Stanimir Alexandrov, *The "Baby Boom" of Treaty-Based Arbitrations and the Jurisdiction of ICSID Tribunals: Shareholders as "Investors" and Jurisdiction Ratione Temporis,* in *The Law and Practice of International Courts and Tribunals*, 19, 405-07 (2005) (noting that some international investment arbitration tribunals have permitted minority shareholders to make claims for reflective losses in the "assets of [the] company, including its licenses, contractual rights, rights under law, claims to money or economic performance, etc…").

for its loss.  Under these circumstances, the U.S. Shareholders' counsel "cannot act . . . to

maximize the value of [Oro Negro's] estate and, at the same time, act to diminish the value of

that estate by securing a recovery for the individual investors without creating a potential

conflict." *Bagdan* v. *Beck*, 140 F.R.D. 650, 655 (D.N.J. 1991).  There is no justification for a

court order permitting the U.S. Shareholders to use or obtain Chapter 15 Discovery.

## IV.    THE U.S. SHAREHOLDERS HAVE VIOLATED THE PROTECTIVE ORDER

50.    Notwithstanding the express terms of the Protective Order, this Motion

makes clear that it has already been violated.  The Protective Order clearly states that designated

Chapter 15 Discovery cannot be "given, shown, made available, disclosed, or communicated in

any way" to people other than those identified in Paragraphs 11 and 12 of the Protective Order,

which are limited to the "members, managers, partners, directors, officers, employees and

external and in-house counsel and their agents" of the Foreign Representative.  (Clareman Decl.

Ex. B ¶¶ 11, 12.)  That list does not include the U.S. Shareholders.  The Protective Order further

allows the parties to use designated Chapter 15 Discovery "only as necessary to assist with or

make decisions with respect to the Disputes."  *Id.*

51.    Counsel for the Interested Parties asked opposing counsel whether

designated Chapter 15 Discovery had been shared with the U.S. Shareholders.  We received no

response.  (*See* Clareman Decl. Ex. I, at 2.)  After the Interested Parties repeatedly pressed for an

answer, counsel for the Foreign Representative replied that he has "complied with the protective

order," but that the Interested Parties' "reading of the protective order seems to be that the

shareholders of Integradora . . . cannot review the Chapter 15 discovery."  (*Id.* at 1.)  That is,

indeed, the Interested Parties' position.  And that is explicitly what the Protective Order says

when it excludes shareholders from the list of those authorized to review designated Chapter 15

27

Discovery and when it specifically states that such material "shall not be used or relied upon in any way" by the U.S. Shareholders.

## <u>CONCLUSION</u>

For the reasons set forth above, the Interested Parties respectfully request that the Court deny the Motion in its entirety and grant such other and further relief as is just and proper.

Dated: June 17, 2019
New York, New York

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

*/s/ Andrew N. Rosenberg*
Andrew N. Rosenberg
Aidan Synnott
William A. Clareman

1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
arosenberg@paulweiss.com
asynott@paulweiss.com
wclareman@paulweiss.com

*Counsel for the Interested Parties*