| | |
|---|---|
| Juan P. Morillo (*pro hac vice*) | Scott C. Shelley |
| Gabriel F. Soledad | Samantha Gillespie (*pro hac vice*) |
| Daniel Pulecio-Boek | QUINN EMANUEL URQUHART & |
| QUINN EMANUEL URQUHART & | SULLIVAN, LLP |
| SULLIVAN, LLP | 51 Madison Avenue, 22nd Floor |
| 1300 I Street, NW, Suite 900 | New York, New York 10010 |
| Washington, D.C. 20005 | Telephone: (212) 849-7000 |
| Telephone: (202) 538-8000 | Facsimile: (212) 849-7100 |
| Facsimile: (202) 538-8100 | Email: scottshelley@quinnemanuel.com |
| Email: juanmorillo@quinnemanuel.com | Email: samanthagillespie@quinnemanuel.com |
| Email: gabrielsoledad@quinnemanuel.com | |
| Email: danielpulecioboek@quinnemanuel.com | |
| | |
| Eric Winston (*pro hac vice*) | Sara C. Clark (*pro hac vice*) |
| QUINN EMANUEL URQUHART & | QUINN EMANUEL URQUHART & |
| SULLIVAN, LLP | SULLIVAN, LLP |
| 865 South Figueroa Street, 10th Floor | 711 Rusk Street, Suite 500 |
| Los Angeles, California 90017 | Houston, Texas 77002 |
| Telephone: (213) 443-3000 | Telephone: (713) 221-7000 |
| Facsimile: (213) 443-3100 | Facsimile: (713) 221-7100 |
| Email: ericwinston@quinnemanuel.com | Email: saraclark@quinnemanuel.com |

*Counsel for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PERFORADORA ORO NEGRO, S. DE R.L. DE C.V., *et al.*, | Case No. 18-11094 (SCC) (Jointly Administered) |
| Debtors in a Foreign Proceeding. | |

**REPLY IN SUPPORT OF THE FOREIGN REPRESENTATIVE'S**
**MOTION FOR LEAVE TO FILE UNDER SEAL**

# **TABLE OF CONTENTS**

**Page**

Preliminary Statement ................................................................................................................... 1

Background .................................................................................................................................... 3

Legal Standard ............................................................................................................................... 4

Argument ....................................................................................................................................... 4

    I.    The Content of the Litigation Interest Agreement Is Commercial Information That Must Be Protected from Disclosure ................................................................................... 4

    II.    The Content of the Litigation Interest Agreement Is Also Attorney Work Product That Must Be Protected from Disclosure ........................................................................... 6

    III.    The Adversary Objectors' Cited Case Law Is Inapposite and Does Not Support Disclosure ........................................................................................................................... 8

    IV.    Disclosure of the Information Is Not in the Interest of the Estate ................................... 10

    V.    *Ommen* Does Not Support Disclosure .............................................................................. 11

    VI.    Seadrill, Fintech and the Singapore Rig Owners Have No Legitimate Interest in Accessing the Litigation Interest Agreement's Contents ................................................. 13

Conclusion ................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Alterra Healthcare Corp.*,
  353 B.R. 66 (D. Del. 2006) ................................................................................................ 8

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
  321 B.R. 147 (D.N.J. 2005) .............................................................................................. 9

*In re Borders Grp., Inc.*,
  462 B.R. 42 (Bankr. S.D.N.Y. 2011) .............................................................................. 10

*Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*,
  2015 WL 778846 (Del. Ch. Feb. 24, 2015) .................................................................. 6, 7

*Charge Injection Techs., Inc. v. E.I. DuPont De Nemours & Co.*,
  2015 WL 1540520 (Del. Super. Ct. Mar. 31, 2015) ........................................................ 7

*In re Chase*,
  2008 WL 2945997 (Bankr. S.D.N.Y. July 25, 2008) ...................................................... 9

*In re Dreier LLP*,
  485 B.R. 821 (Bankr. S.D.N.Y. 2013) .......................................................................... 5, 9

*In re Farmland Indus., Inc.*,
  290 B.R. 364 (Bankr. W.D. Mo. 2003) ............................................................................ 5

*In re FiberMark, Inc.*,
  330 B.R. 480 (Bankr. D. Vt. 2005) ................................................................................ 10

*Foltz v. State Farm Mut. Auto. Ins.*,
  331 F.3d 1122 (9th Cir. 2003) .......................................................................................... 6

*In re Food Mgmt. Grp., LLC*,
  359 B.R. 543 (Bankr. S.D.N.Y. 2007) ............................................................................. 9

*United States v. Gangi*,
  1998 WL 226196 (S.D.N.Y. May 4, 1998) ..................................................................... 6

*Geltzer v. Andersen Worldwide, S.C.*,
  2007 WL 273526 (S.D.N.Y. Jan. 30, 2007) .................................................................... 8

*In re Int'l Oil Trading Co.*,
  548 B.R. 825 (Bankr. S.D. Fla. 2016) ............................................................................. 6

*In re Itel Corp.*,
  17 B.R. 942 (9th Cir. BAP 1982) ..................................................................................... 5

*Killian v. Millard*,
  279 Cal. Rptr. 877 (Cal. Ct. App. 1991) ........................................................................ 13

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
  2018 WL 466045 (W.D. Pa. Jan. 18, 2018) ................................................................... 7

*In re Lomas Fin. Corp.*,
  1991 WL 21231 (S.D.N.Y. Feb. 11, 1991) .................................................................... 5

*Miller UK Ltd. v. Caterpillar, Inc.*,
  17 F. Supp. 3d 711 (N.D. Ill. 2014) ............................................................................... 7

*Moda Health Plan, Inc. v. United States*,
  892 F.3d 1311 (Fed. Cir. 2018), *cert. granted*, 2019 WL 465446 (June 24, 2019) ........... 12, 13

*In re Motions for Access of Garlock Sealing Techs. LLC*,
  488 B.R. 281 (D. Del. 2013) ........................................................................................ 9

*In re Nicole Energy Servs., Inc.*,
  385 B.R. 201 (Bankr. S.D. Ohio 2008) ........................................................................ 8

*In re Nw. Airlines Corp.*,
  363 B.R. 704 (Bankr. S.D.N.Y. 2007) ......................................................................... 9

*In re Oldco M Corp.*,
  466 B.R. 234 (Bankr. S.D.N.Y. 2012) ....................................................................... 10

*Ommen v. United States*,
  No. 17-cv-957 (Ct. Fed. Cl. July 17, 2017) ................................................... 11, 12, 13

*In re Orion Pictures Corp.*,
  21 F.3d 24 (2d Cir. 1994) .......................................................................................... 4, 5

*In re Rapid Am. Corp.*,
  2017 WL 6459348 (Bankr. S.D.N.Y. Dec. 15, 2017) ................................................. 9

*In re Superior Nat'l Ins.*,
  2014 WL 51128 (Bankr. C.D. Cal. Jan. 7, 2014) ........................................................ 7

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  2015 WL 13390186 (N.D. Cal. Nov. 10, 2015) .......................................................... 5

*In re Wells Fargo Bank, N.A.*,
  2019 WL 642850 (Bankr. W.D. Pa. Feb. 14, 2019) .................................................... 8

*Wyeth v. Medtronic, Inc.*,
  2008 WL 11381926 (D.N.J. Apr. 28, 2008) ................................................................ 5

**Statutory Authorities**

11 U.S.C. § 107(b)(1) ........................................................................................................ 1, 4

**Rules and Regulations**

Fed. R. Bankr. P. 2019 ......................................................................................................... 9

Fed. R. Bankr. P. 9018 ..................................................................................................... 1, 4

Local Rule 9018-1.................................................................................................................. 1, 4

## Additional Authorities

2 *Collier on Bankruptcy* (15th ed. 1993) ................................................................................ 4
9 *Collier on Bankruptcy* (15th rev. ed. 2004) ........................................................................ 9

Fernando Perez-Correa, in his capacity as Foreign Representative of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. and Perforadora Oro Negro, S. de R.L. de C.V. (together, "Oro Negro"), files this Reply in support of the Motion for Leave to File Under Seal [ECF No. 204] ("Sealing Motion") regarding the Litigation Interest Agreement.[1]

## Preliminary Statement

1.  The Sealing Motion seeks to seal the Litigation Interest Agreement pursuant to the Bankruptcy Code and Bankruptcy Rules, including 11 U.S.C. § 107(b)(1), Federal Rule of Bankruptcy Procedure 9018 and Local Rule 9018-1, which provide for the protection from public disclosure of confidential and sensitive commercial information, such as that contained in the Litigation Interest Agreement [ECF No. 204 ¶¶ 2, 13-15].[2]

2.  The objections to the Sealing Motion from Oro Negro's bondholders (the "Bondholders"), the Singapore Rig Owners,[3] and Seadrill Limited ("Seadrill") and Fintech Advisory, Inc. ("Fintech") [ECF Nos. 218, 228-29]—all targets of the litigation that the Foreign Representative has brought ("Adversary Objectors")—misstate well-established case law regarding the sealing of funding agreements, and conspicuously fail to articulate any legitimate

---

[1] The Pre-Paid Forward Purchase and Sale Agreement dated June 6, 2019 ("Litigation Interest Agreement") among Oro Negro, CM Squared ON LLC and Quinn Emanuel Urquhart & Sullivan, LLP is attached to the Motion of Foreign Representative for Order Pursuant to Bankruptcy Code Sections 105(a), 362, 363, 1520(a)(2), 1520(a)(3) and 1521(a)(7) Authorizing Entry into Litigation Interest Agreement and Granting Related Relief, dated June 7, 2019 [ECF No. 205].

[2] On June 11, 2019, the Bondholders received a copy of the Litigation Interest Agreement with minimal redactions concerning only the payment-related provisions [ECF No. 218 ¶ 8], which the Court also received on July 8, 2019. Exhibit A to this Reply is a chart reflecting only the redacted terms in the copy provided to the Bondholders, and is filed under seal subject to the Court's resolution of the instant Sealing Motion.

[3] The "Singapore Rig Owners" refers collectively to the Singaporean special purposes entities nominally controlled at this time by the Bondholders: Oro Negro Primus, Pte. Ltd.; Oro Negro Fortius, Pte. Ltd.; Oro Negro Laurus, Pte. Ltd.; Oro Negro Decus, Pte. Ltd.; and Oro Negro Impetus, Pte. Ltd.

need for the disclosure of the Litigation Interest Agreement's commercial information and attorney work product.[4]

3. The Litigation Interest Agreement contains payment terms and timelines that would (1) provide third parties with unfair commercial advantages and incentives, undermining the interests of the Estate; and (2) reveal attorney work product. Such information is generally not discoverable in litigation, and the need for third party funding—due to the Adversary Objectors' own misconduct—does not change the analysis.

4. The Bondholders' primary justification for unsealing the Litigation Interest Agreement is that they may wish to purchase the claims—purportedly in furtherance of the Estate's interests [ECF No. 218 ¶¶ 3, 23-25]. But the Bondholders offer no reason why such a purchase would be in the Estate's interests.

5. The Bondholders and Oro Negro recently concluded over two months of mediation [ECF No. 179], during which the threat of litigation was well understood, that did not yield a resolution that, in the business judgment of Oro Negro's Estate, was superior to the option of entering into the Litigation Interest Agreement and pursuing the litigation.

6. Were the Bondholders serious about making an improved offer, they are free to do so at any time—without the need to see the terms of the Litigation Interest Agreement. Indeed, any benefit from seeing the Litigation Interest Agreement would allow them to calibrate their offer to be as low as possible, benefiting the Bondholders, not the Estate.

7. For the foregoing reasons, the Court should deny the Adversary Objectors' self-serving objections, which will serve neither the Estate nor any public interest.[5]

---

[4] The U.S. Trustee also filed a short objection, though has since received a fully unredacted copy of the Litigation Interest Agreement from the Foreign Representative, who reserved rights. In the interest of completeness, the Trustee's objection regarding the application of Bankruptcy Code § 107(b)(1) [ECF No. 220] is still addressed below in Argument Sections I-II in connection with similar objections raised by the Adversary Objectors.

2

**Background**

8.     As set forth more fully in the Sealing Motion, although Oro Negro has lost its core assets and has no available cash, the company still holds valuable claims that may yield a meaningful recovery for the Estate [ECF No. 204 ¶¶ 4-11].

9.     Having been systematically deprived of funds necessary to pursue those claims, Oro Negro entered into a Litigation Interest Agreement with CM Squared ON LLC ("CM Squared") that will enable Oro Negro to pursue its claims for the benefit of its Estate [*id.* ¶ 11]. Oro Negro engaged in substantial efforts, for over a year, to obtain that financing and secure the Litigation Interest Agreement, including meeting with multiple potential funders. *See* ECF No. 206, Declaration of Gonzalo Gil White, ¶ 5.

10.    The Litigation Interest Agreement sets forth the terms and conditions under which CM Squared will pay to preserve the ability of Oro Negro's Estate to investigate and prosecute claims, including in the Adversary Proceeding *Gil-White v. Ercil, et al.*, Adv. Pro. No. 19-01294 (SCC) (Bankr. S.D.N.Y. June 6, 2019). The Litigation Interest Agreement's key terms include the overall funding, payments at certain case milestones, how the funding will be used, and the distribution of funds recovered from the litigation among Oro Negro, counsel and CM Squared.

11.    The Foreign Representative seeks to seal the Litigation Interest Agreement to protect confidential and sensitive commercial information, as well as attorney work product, from public disclosure [ECF No. 204 ¶¶ 2, 13-15]. The Adversary Objectors' arguments against sealing [ECF Nos. 218, 228-29] do not offer a legitimate basis for public disclosure of that

---

[5]    Certain of the Adversary Objectors' other objections, such as the Bondholders' objections that the Litigation Interest Agreement confers "insider benefits" (ECF No. 218 ¶¶ 2, 14-22, 24, 26) or that the Court's decision on the Sealing Motion should be stayed pending the Liquidator's appearance (*id.* ¶ 26), are not addressed here because they go to the merits of the Litigation Interest Agreement itself rather than sealing [ECF No. 205], or are moot because the Liquidator has appeared [ECF No. 231].

18-11094-scc  Doc 232  Filed 07/09/19  Entered 07/09/19 15:46:00  Main Document

information. Indeed, these contentions are contravened by established law and undermined by the Adversary Objectors' failure to articulate a legitimate need for the sealed information.

## Legal Standard

12. The Bankruptcy Code provides that "[o]n request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1); *see also* Fed. R. Bank. P. 9018 (allowing the Court to enter an Order when "justice requires" to protect an entity or the estate with respect to those categories of information); Local Rule 9018-1 (same).

13. The Foreign Representative fully acknowledges that a request to seal documents from the public is a significant matter and he bears the burden of demonstrating that sealing should be granted. Once it is established that the information sought to be protected fits in any of the categories or definitions in § 107(b)(1), however, the Second Circuit has held that "the court is *required* to protect a requesting interested party and has no discretion to deny the application." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original) (citing 2 *Collier on Bankruptcy*, ¶ 107.01, at 107-2 (15th ed. 1993) ("Protection is mandatory when requested by an [interested party]")).

## Argument

**I.  The Content of the Litigation Interest Agreement Is Commercial Information That Must Be Protected from Disclosure**

14. The Bondholders object that the Litigation Interest Agreement does not contain "commercial information" because Oro Negro has "never been in the business of claims trading or litigation finance" [ECF No. 218 ¶¶ 1, 13]; and Seadrill and Fintech contend that the information in the Litigation Interest Agreement is not commercial information because it merely "relates to business affairs" [ECF No. 228 ¶ 15]. Separately, the Singapore Rig Owners muse

4

that Oro Negro "crave[s] privacy or secrecy for its own sake" [ECF No. 229 at 9]. All those objections, however, mischaracterize both the circumstances and relevant law here.

15. It is well-settled in the Second Circuit that "commercial information" protected from disclosure under § 107(b)(1) is **any** information that "could cause [parties] harm," *In re Dreier LLP*, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013), or could give an "unfair advantage to competitors," *In re Orion*, 21 F.3d at 27-28 (quoting *In re Itel Corp.*, 17 B.R. 942, 944 (9th Cir. BAP 1982), or "litigation adversaries," *Wyeth v. Medtronic, Inc.*, 2008 WL 11381926, at *2 (D.N.J. Apr. 28, 2008); *see also United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 2015 WL 13390186, at *4 (N.D. Cal. Nov. 10, 2015). No further analysis is necessary or appropriate. As such, notwithstanding the Adversary Objectors' arguments, the nature of Oro Negro's business or whether the information relates to business affairs is irrelevant.

16. Specific commercial terms that courts have sealed under § 107(b)(1) in analogous circumstances include: (1) proposed distribution allocations to creditors and financial projections, *In re Lomas Fin. Corp.*, 1991 WL 21231, at *1 (S.D.N.Y. Feb. 11, 1991) (sealing such terms under § 107(b)(1) where disclosure would give creditors the "ability to affect the market in which they might sell their claims . . . and have a chilling effect on negotiations"); and (2) "dates by which . . . Lenders are requiring that certain assets be marketed and sold, as a condition of obtaining continued . . . financing," *In re Farmland Indus., Inc.*, 290 B.R. 364, 368-69 (Bankr. W.D. Mo. 2003) (sealing deadlines under § 107(b)(1) where disclosure would give potential buyers "great leverage" and place the debtor at a "distinct disadvantage").

17. Here, release of the redacted commercial information in the Litigation Interest Agreement would undoubtedly harm Oro Negro's Estate and provide an unfair advantage to its litigation adversaries. The redactions are narrowly tailored to avoid that result. *See* Ex. A, Chart

5

of Redacted Terms.  Disclosure of the redacted information would give the Bondholders settlement leverage and an unfair understanding of the resources allocated to this litigation, as well as potential insight into the Oro Negro estate's litigation strategy.

18.    Accordingly, by sealing these payment terms, the Foreign Representative maintains his proper ability to control settlement in the proceedings, maximizing the value of the claims to the Estate.

## II.    The Content of the Litigation Interest Agreement Is Also Attorney Work Product That Must Be Protected from Disclosure

19.    "[T]he public is traditionally not privy to confidential attorney work product." *United States v. Gangi*, 1998 WL 226196, at *3 (S.D.N.Y. May 4, 1998).  Thus, as a rule, "[n]either the public nor collateral litigants have any apparent right or interest in . . . disclosure" of protected material, including "work product that [is] traditionally protected from disclosure." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1138 (9th Cir. 2003).

20.    Courts have protected commercial terms in litigation funding agreements, including the pricing and timeline terms, financing premiums, or acceptable settlement conditions, because they "reflect an analysis of the merits of the case" necessary to persuade the litigation funder to agree to the commercial terms, such that their disclosure would "reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim" and thus represent work product.  *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015); *In re Int'l Oil Trading Co.*, 548 B.R. 825, 839 (Bankr. S.D. Fla. 2016) (allowing redaction from a funding agreement of "terms of payment and any terms . . . reasonably believe[d to] disclose mental impressions and opinion" in relation to the litigation).

6

21. In short, a party does not lose work product protection simply because it lacks the financial means to pursue its own claims. *Carlyle*, 2015 WL 778846, at *9 ("Allowing work product protection for documents and communications relating to third-party funding places those parties that require outside funding on the same footing as those who do not and maintains a level playing field among adversaries in litigation.").

22. Further, contrary to what Seadrill and Fintech contend [ECF No. 228 ¶ 15], it is irrelevant to the foregoing analysis whether the information in the Litigation Interest Agreement relates to business affairs. *Charge Injection Techs., Inc. v. E.I. DuPont De Nemours & Co.*, 2015 WL 1540520, at *5 (Del. Super. Ct. Mar. 31, 2015) ("[T]he redacted payment terms in the Financing Agreement are entitled to work product protection, and that protection is not precluded merely because the Financing Agreement may also serve a business function."); *see also Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *5 (W.D. Pa. Jan. 18, 2018) (holding that work-product doctrine shields discovery of third-party litigation funding agreements).

23. Specific commercial terms in litigation funding agreements that courts protect from disclosure based on the work product doctrine include (1) the "amount of the proposed financing [and] how that amount is arrived at," *In re Superior Nat'l Ins.*, 2014 WL 51128, at *3-4 (Bankr. C.D. Cal. Jan. 7, 2014); (2) "how the money is to be used," *id.*; and (3) how much a funder will receive if a plaintiff wins a case, *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 742 (N.D. Ill. 2014).

24. The kinds of terms protected in those cases are the precise terms redacted in the Litigation Interest Agreement. *See* Ex. A, Chart of Redacted Terms. Because the redacted terms

7

clearly reflect attorney work product, as well as commercial information, the Court is required to protect them from disclosure, and need not consider any additional objections raised.

### III. The Adversary Objectors' Cited Case Law Is Inapposite and Does Not Support Disclosure

25. The vast majority of the cases cited by the Adversary Objectors [ECF Nos. 218 ¶ 13; 228 ¶ 17; 229 at 5-7] do not implicate 363 sales, much less terms of a private litigation funding agreement. Rather, the cited cases primarily concern legal or factual scenarios not implicated in this or the underlying funding motion, such as (1) settlement approval; (2) Rule 2019 disclosures; (3) requests to seal inflammatory or defamatory material under § 107(b)(2); or (4) efforts to seal information already publicly available. *Id.* Notably, the Adversary Objectors do not cite to a single case involving wholesale rejection of sealing in the context of litigation funding.

26. The cases cited by the Adversary Objectors involving the settlement of litigation claims do not present the potential for harm to a debtor's ability to pursue an estate's litigation claims—indeed, the purpose of a settlement is to end litigation.[6] Further, these cases largely involve requests by *defendants* who wanted to keep settlement terms confidential so as not to encourage other litigants to seek similar relief.[7] Here, the Litigation Interest Agreement concerns interest in a potential recovery for the Debtor-Plaintiff through litigation that has just begun. Settlement at this juncture is both not before the Court and seems a remote possibility for

---

[6] *See In re Wells Fargo Bank, N.A.*, 2019 WL 642850, at *2 (Bankr. W.D. Pa. Feb. 14, 2019) (collecting cases explaining that courts generally conclude that *settlements* are not commercial information subject to protection under § 107); *In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 210 (Bankr. S.D. Ohio 2008) (explaining that, where a proposed sale included a *settlement* or *compromise* of claims, the court must evaluate the sale under the fair and equitable standard applicable to settlements in bankruptcy).

[7] *See, e.g.*, *Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007) (considering a defendant's request to redact the amount of a settlement of a litigation claim, and noting that such agreements require the court to determine whether the settlement is "fair and equitable and in the best interests of the estate"); *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75-77 (D. Del. 2006) (considering non-disclosure of settlement agreements and concluding that a debtor-defendant's interest in preventing other tort claimants from using the information to extract higher settlements was insufficient).

8

the reasons described above. Thus, the rationale of cases concluding that settlement agreements should be public clearly does not apply here.

27. The cases concerning Rule 2019 disclosures are even less relevant.[8] By its own terms Rule 2019 has no applicability in Chapter 15 cases. *See* Fed. R. Bankr. P. 2019 (addressing cases under Chapters 9 and 11). Further, the purpose of Rule 2019 is to "polic[e] creditor groups and those who act on their behalf . . . and [it] is designed to foster the goal of reorganization plans which deal fairly with creditors." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 165 (D.N.J. 2005) (quoting 9 *Collier on Bankruptcy* ¶ 2019.01 (15th rev. ed. 2004)). The Litigation Interest Agreement has nothing to do with either reorganization (as Oro Negro is now in Liquidation) or the identity of Oro Negro's creditors, who are now only litigation targets.

28. Equally inapplicable are those cases premised on § 107(b)(2).[9] Here, the Foreign Representative simply does not argue that the redacted portions of the Litigation Interest Agreement constitute "scandalous or defamatory" information warranting protection under § 107(b)(2) as was done in the Adversary Objectors' cited cases.

---

[8] *See In re Nw. Airlines Corp.*, 363 B.R. 704, 707-09 (Bankr. S.D.N.Y. 2007) (denying motion to seal required disclosures regarding creditors and equity holders under Rule 2019 where "[g]ranting the motion to seal would scuttle the [purpose of Rule 2019]" to the detriment of the debtor's shareholders); *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281, 302 (D. Del. 2013) (party seeking to use information from Rule 2019 disclosures was granted only limited access and use to the documents for the purposes of its own bankruptcy proceedings).

[9] *See e.g. In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 565 (Bankr. S.D.N.Y. 2007) (denying motion to seal adversarial complaint because damage to litigation target's reputation was insufficient to bring the document under the § 107(b)(2) exception for scandalous or defamatory information).

9

29. Finally, the cases involving attempts to seal information already publicly available [10] do not warrant any serious attention where, as here, the proposed redacted information is not publicly available.

30. Notably, even in these disparate circumstances, courts generally allow the parties to redact confidential information under § 107 or the work product doctrine.[11]

## IV. Disclosure of the Information Is Not in the Interest of the Estate

31. Despite the indignant tone of their objections [ECF Nos. 218, 228-29], the Adversary Objectors have failed to articulate any legitimate basis for their supposed need to see the terms of the Litigation Interest Agreement. The Bondholders contend that disclosure will somehow maximize value to Oro Negro's Estate [ECF No. 218 ¶¶ 3, 23-25]. But that assertion is utterly and conspicuously without basis. Indeed, far from benefiting the Estate, there is good reason to believe that disclosure could undermine the claims against the Adversary Objectors.

32. Just a few months ago, Oro Negro and the Bondholders concluded an over two-month-long mediation (in which the Foreign Representative acted as co-mediator) that did not yield a settlement that the prior Foreign Representative deemed in the Estate's best interest. Because the Bondholders continue to claim that the litigation—the Estate's only deployable

---

[10] *See, e.g.*, *In re Dreier LLP*, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013) (denying motions to seal deposition transcript detailing corporate structure where some of that information had already been made public in letter from plaintiff's counsel to court, but permitting sealing of commercial information related to a hedge fund's investment strategy); *In re Chase*, 2008 WL 2945997, at *8 (Bankr. S.D.N.Y. July 25, 2008) (denying motion where documents requested to be sealed under § 107(b)(2) were "either public documents or the statements therein are derived from public documents"); *In re Rapid Am. Corp.*, 2017 WL 6459348, at *1 (Bankr. S.D.N.Y. Dec. 15, 2017) (noting that some exhibits to the agreement the debtor sought to seal had already been filed on the court's docket or were "patently non-confidential").

[11] *See, e.g.*, *In re Oldco M Corp.*, 466 B.R. 234, 238 (Bankr. S.D.N.Y. 2012) (denying motion to seal settlement agreement where sole argument was that disclosure would undermine the defendants' settlement leverage with other claimants, but allowing parties to submit prosed redactions to file with court); *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (debtor properly redacted portions of share purchase agreement, including employee identification and "confidential financial information of corporation and purchaser"); *In re FiberMark, Inc.*, 330 B.R. 480, 511 (Bankr. D. Vt. 2005) (granting motion to unseal court-appointed examiner report but allowing for redactions of information conveying work product).

asset—is entirely without merit, any suggestion that they would be interested in settling rings hollow. In any event, the Bondholders are free to make any settlement offer they deem appropriate, without seeing the terms of the Litigation Interest Agreement.

33. Far from making an offer that is in the interest of the Estate, since the Foreign Representative filed the Adversary Proceeding, the Bondholders have, through their agents, repeatedly taken actions that may undermine the litigation. For example, Nordic Trustee AS ("Nordic Trustee")[12] (the assignee of the Singapore Rig Owners' claims and which acts only at the behest of the Bondholders) sent a letter to the Foreign Representative in his capacity as Liquidator, dated July 2, 2019, strongly requesting that Mr. Perez (1) replace Oro Negro's current U.S. and Mexican counsel; and (2) demand the return of a retainer Oro Negro paid to Quinn Emanuel Urquhart & Sullivan, LLP over a year ago for the Chapter 15 proceeding.

34. Disclosure of the terms in the Litigation Interest Agreement will only encourage, if not facilitate, further efforts to improperly undermine the Estate's pursuit of its litigation claims.

## V. *Ommen* Does Not Support Disclosure

35. The remaining objection to sealing—namely, that CM Squared disclosed an entirely unrelated funding agreement in another matter—is without merit.

36. The Bondholders point to *Ommen v. United States*, No. 17-cv-957 (Ct. Fed. Cl. July 17, 2017) in support of their contention that CM Squared does not require the terms of the Litigation Interest Agreement to remain confidential [ECF No. 218 ¶ 13 n.17]. Whether CM Squared requires that the terms remain confidential is irrelevant in light of the fact that the redacted information is protected commercial information and attorney work product. Moreover,

---

[12] Even though Nordic Trustee has never appeared in the Chapter 15 cases, it has repeatedly appeared in the *Concurso* proceeding and is the entity that acts in that proceeding on behalf of the Bondholders.

11

the Bondholders' assertion fails to take into consideration significant differences between the *Ommen* transaction and this one.

37.     ***First,*** CM Squared's funding agreement in *Ommen* involves a single upfront payment to the plaintiff in exchange for a fixed (i.e., not varying in time) allocation between CM Squared and the plaintiff of the recoveries from *Ommen*.  Therefore, knowledge of the transaction terms was unlikely to influence the litigation or settlement strategy of the defendant in *Ommen*.  Here, in contrast, knowledge of (i) the timing with which funds are provided by CM Squared in support of the Estate's legal fees and expenses; and (ii) how the allocation of recoveries is allocated between CM Squared and the Estate varies with time will provide the Bondholders settlement leverage and an unfair understanding of the resources allocated to this litigation.

38.     ***Second***, *Ommen* involved the liquidation of an insurance provider at the request of a state's insurance commissioner under specific provisions of the state code that allow for regulation and rehabilitation of the insurance industry.  *Id.*, ECF No. 18-1 at 3.  A significant portion of the potential recoveries in the case, and CM Squared's initial investment in its entirety, are destined for the statutorily-created insurance guarantee associations of two states.  *Id.* at 7-8.  The involvement of a state in directing the liquidation, entering into a sale agreement, and receiving proceeds generated a distinct public interest in the economics of the sale that favored disclosure, especially in light of that state's open records law.  Indeed, the funding agreement with CM Squared included a provision permitting the plaintiffs to file the agreement on the public docket and provide a full copy to any bona fide creditor.  *Id.* at 31 (Ex. A § 6.4).  Notably, however, the same provision prohibits parties from affirmatively posting the funding agreement

online, clearly indicating a desire to keep its terms as confidential as possible. *Id.* In contrast, the instant case involves purely private litigants, rather than government entities.

39. ***Third,*** the recovery in *Ommen* is likely to turn on legal issues not specific to the *Ommen* litigation, but rather on issues that have been heard on appeal in four other cases, and for which a decision is pending. *Id.* at 49 (Ex. C ¶ 6); *see also Moda Health Plan, Inc. v. United States*, 892 F.3d 1311 (Fed. Cir. 2018), *cert. granted*, 2019 WL 465446 (June 24, 2019). Specifically, the claims against the U.S. Government concern amounts owed to insurers by the United States in connection with the Risk Corridors of the Affordable Care Act, and the Risk Adjustment Methodology implemented by the U.S. Department of Health and Human Services. *Ommen*, No. 17-cv-957, ECF 18-1. Further, the defendant in *Ommen* is the United States Government. Based on the U.S. Government's vigorous defense in multiple related cases, it is highly unlikely that its behavior or posture toward the litigation claims will be altered by any possible funding arrangement. *Id.* at 49 (Ex. C ¶ 5). Here, it is unclear how Defendants will respond to the litigation claims against them, none of which have been addressed in parallel litigation in the United States.

## VI. Seadrill, Fintech and the Singapore Rig Owners Have No Legitimate Interest in Accessing the Litigation Interest Agreement's Contents

40. Although the Court need not resolve this issue now, as previewed at the June 25, 2019 hearing [ECF No. 230, Transcript at 15:21-17:5], if any of the litigation targets object, none has standing to object to the Sealing Motion or the Litigation Interest Agreement, including on the basis of due process [ECF Nos. 228 ¶¶ 3-8; 229 at 1-2, 4-7].[13] They are litigation targets, not direct creditors with authority to act, which courts have found to lack standing in similar contexts.

---

[13] In any event, arguments of due process will be alleviated through public disclosure of the minimally redacted version of the Litigation Interest Agreement that was provided to the Bondholders on June 11, 2019 and to the Court on July 8, 2019.

*See Killian v. Millard*, 279 Cal. Rptr. 877, 879-80 (Cal. Ct. App. 1991) (reversing lower court in holding that defendant had no standing to challenge contract between plaintiffs and investors that provided for syndication of plaintiffs' interests in lawsuit for purposes of funding lawsuit).

41. Similarly, the Singapore Rig Owners, represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, initially objected to recognition of the Mexican *Concurso* proceedings pursuant to the Chapter 15 proceeding. Since then, the Singapore Rig Owners have assigned their creditor rights to Nordic Trustee.[14] Yet now, despite all of those actions, the Singapore Rig Owners now seek to object to the Sealing Motion. But they cannot have it both ways.

42. Similarly, when it suited them as a means to avoid discovery, Seadrill and Fintech attempted to disavow any connection with Oro Negro.[15] Seadrill and Fintech's claim that they are now sufficiently interested to object to the Sealing Motion—fundamentally at odds with their prior position—reveals the self-serving nature of their objection.

43. These entities cannot have any legitimate interest in the sale of Oro Negro's claims other than to prevent litigation against themselves, and thus the Court should view their objections with skepticism.

## Conclusion

For the foregoing reasons, the Foreign Representative respectfully requests that the Court grant the relief requested and such other relief as may be just and proper.

---

[14] The Singapore Rig Owners are no longer creditors of Oro Negro because they have assigned all of their claims and collection rights to Nordic Trustee, as expressed in the *Solicitud de Reconocimiento de Crédito* (similar to a proof of claim) filed by the Singapore Rig Owners in the *Concurso* court on November 16, 2018. Nordic Trustee has conspicuously not appeared in this Chapter 15 Proceeding, though it has been active in the *Concurso* proceeding, clearly is aware of this proceeding, and has even recently sent a letter directly to the Liquidator, Mr. Perez, demanding he take various actions purportedly in the Bondholders' interest.

[15] *See* ECF No. 87, Hearing Tr., June 27, 2018, at 198:4-6 ("[W]e have no idea why we're here. We have nothing to do with Oro Negro. We have no interest in this, and we want to keep it that way.").

14

| | |
|---|---|
| Dated: July 9, 2019<br>New York, New York | QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br><br>*/s/ Gabriel F. Soledad*<br>Gabriel F. Soledad<br>Juan P. Morillo (*pro hac vice*)<br>Daniel Pulecio-Boek<br>1300 I Street, NW, Suite 900<br>Washington, D.C. 20005<br>Telephone: (202) 538-8000<br>Facsimile: (202) 538-8100<br>Email: gabrielsoledad@quinnemanuel.com<br>Email: juanmorillo@quinnemanuel.com<br>Email: danielpulecioboek@quinnemanuel.com<br><br>Scott C. Shelley<br>Samantha Gillespie (*pro hac vice*)<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: scottshelley@quinnemanuel.com<br>Email: samanthagillespie@quinnemanuel.com<br><br>Eric Winston (*pro hac vice*)<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br>Email: ericwinston@quinnemanuel.com<br><br>Sara C. Clark (*pro hac vice*)<br>711 Rusk Street, Suite 500<br>Houston, Texas 77002<br>Telephone: (713) 221-7000<br>Facsimile: (713) 221-7100<br>Email: saraclark@quinnemanuel.com<br><br>*Counsel for the Foreign Representative* |