| | |
|---|---|
| Juan P. Morillo (*pro hac vice*) | Scott C. Shelley |
| Gabriel F. Soledad | Samantha Gillespie (*pro hac vice*) |
| Daniel Pulecio-Boek | QUINN EMANUEL URQUHART & |
| QUINN EMANUEL URQUHART & | SULLIVAN, LLP |
| SULLIVAN, LLP | 51 Madison Avenue, 22nd Floor |
| 1300 I Street, NW, Suite 900 | New York, New York 10010 |
| Washington, D.C. 20005 | Telephone:  (212) 849-7000 |
| Telephone:  (202) 538-8000 | Facsimile:  (212) 849-7100 |
| Facsimile:  (202) 538-8100 | Email:  scottshelley@quinnemanuel.com |
| Email:  juanmorillo@quinnemanuel.com | Email:  samanthagillespie@quinnemanuel.com |
| Email:  gabrielsoledad@quinnemanuel.com | |
| Email:  danielpulecioboek@quinnemanuel.com | |
| | |
| Eric Winston (*pro hac vice*) | Sara C. Clark (*pro hac vice*) |
| QUINN EMANUEL URQUHART & | QUINN EMANUEL URQUHART & |
| SULLIVAN, LLP | SULLIVAN, LLP |
| 865 South Figueroa Street, 10th Floor | 711 Rusk Street, Suite 500 |
| Los Angeles, California 90017 | Houston, Texas 77002 |
| Telephone:  (213) 443-3000 | Telephone:  (713) 221-7000 |
| Facsimile:  (213) 443-3100 | Facsimile:  (713) 221-7100 |
| Email:  ericwinston@quinnemanuel.com | Email:  saraclark@quinnemanuel.com |

*Counsel for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PERFORADORA ORO NEGRO, S. DE R.L. DE C.V., *et al.*, | Case No. 18-11094 (SCC) (Jointly Administered) |
| Debtors in a Foreign Proceeding. | |

**FOREIGN REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF THE LITIGATION INTEREST AGREEMENT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..........................................................................................................................2

I.      Singapore Rig Owners' Request ..................................................................................2

        A.      The Singapore Rig Owners' Letter ................................................................2

        B.      The Foreign Representative's Response .......................................................3

        C.      Status .................................................................................................................5

II.     Approval of the Litigation Interest Agreement ...........................................................6

ARGUMENT ................................................................................................................................6

I.      The Court Should Approve the Litigation Interest Agreement Because the U.S. Claims are U.S. Property Interests ...............................................................................6

II.     The Court Should Not Abstain on International Comity Grounds ............................9

CONCLUSION ...........................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

### Cases

*Butner v. United States*,
  440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) .................................................................. 7

*In re Ace Track Co., Ltd.*,
  556 B.R. 887 (Bankr. N.D. Ill. 2016) ........................................................................................ 7

*In re BCI Finances Pty Ltd.*,
  583 B.R. 288 (Bankr. S.D.N.Y. 2018) ...................................................................................... 9

*In re Berau Capital Res. Pte Ltd*,
  540 B.R. 80 (Bankr. S.D.N.Y. 2015) ........................................................................................ 8

*In re Fairfield Sentry Ltd.*,
  539 B.R. 658 (Bankr. S.D.N.Y. 2015) .................................................................................... 11

*In re Fairfield Sentry Ltd.*,
  768 F.3d 239 (2d Cir. 2014) ......................................................................................... 2, 7, 9, 10

*Fairfield Sentry Ltd. (in Liquidation) v. Theodoor GGC Amsterdam
  (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343
  (Bankr. S.D.N.Y. Aug. 6, 2018) ................................................................................................ 9

*In re Nicole Energy Servs., Inc.*,
  385 B.R. 201 (Bankr. S.D. Ohio 2008) ..................................................................................... 7

*In re Ocean Rig UDW Inc.*,
  570 B.R. 687 (Bankr. S.D.N.Y. 2017), *appeal dismissed*,
  585 B.R. 31 (S.D.N.Y. 2018) ..................................................................................................... 8

*In re Octaviar Admin. Pty Ltd*,
  511 B.R. 361 (Bankr. S.D.N.Y. 2014) ...................................................................................... 7

*In re Oi Brasil Holdings Cooperatief U.A.*,
  578 B.R. 169 (Bankr. S.D.N.Y. 2017), *reconsideration denied*,
  582 B.R. 358 (Bankr. S.D.N.Y. 2018) .................................................................................... 10

*Oro Negro Decus Pte. Ltd., et al. v. Perforadora Oro Negro, S. de. R.L. de C.V.*,
  No. 18-CV-02301, ECF No. 1 (S.D.N.Y. Mar. 15, 2018) ........................................................ 9

*In re PT Bakrie Telecom Tbk*,
  2019 WL 2122734 (Bankr. S.D.N.Y. May 30, 2019) .............................................................. 8

*In re SunEdison, Inc.*,
  577 B.R. 120 (Bankr. S.D.N.Y. 2017) .................................................................................... 11

*In re Vitro S.A.B. de C.V.*,
  701 F.3d 1031 (5th Cir. 2012) ................................................................................................ 10

*Voigt v. Fabricut, Inc.*,
  No. 10-CV-662-TCK-TLW, 2012 WL 1190660 (N.D. Okla. Apr. 6, 2012) .......................... 11

## **Statutory Authorities**

11 U.S.C. § 363(b)(1) ................................................................................................................. 7
11 U.S.C. § 1520(a) ......................................................................................................... 2, 6, 10
11 U.S.C. § 1502(8) ................................................................................................................... 7

Fernando Perez Correa Camarena, in his capacity as foreign representative (the "Foreign Representative") of both Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora") and Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora," and together with Integradora, the "Debtors"), hereby files this memorandum of law and declaration (the "Perez Declaration") in support of the Motion for Approval of the Litigation Interest Agreement [ECF No. 205] (the "Approval Motion").[1]

## PRELIMINARY STATEMENT

1. The Approval Motion seeks the Court's approval of the Litigation Interest Agreement that will enable the Foreign Representative to pursue claims in the United States against the ring of companies and individuals that orchestrated (from New York) the Debtors' demise in order to take over their assets (the "U.S. Claims"). As the Foreign Representative has made clear, the U.S. Claims are the Debtors' most valuable remaining asset. [ECF No. 221].

2. In early July, in an effort to avoid responsibility for their wrongdoing, the Singapore Rig Owners (targets of the U.S. Claims) submitted a request to the *Concurso* Court requesting that it declare the Litigation Interest Agreement illegal because the Foreign Representative had not requested that the *Concurso* Court approve it. In doing so, the Singapore Rig Owners hope to extinguish the lawsuit against them, and their co-conspirators, before their liability for the Debtors' demise is established by this Court.

3. But, as the *Concurso* Court itself acknowledged in a July 19, 2019 order (entirely unrelated to the Singapore Rig Owners' request), the *Concurso* Court does not have jurisdiction over agreements governed by foreign law. The Litigation Interest Agreement is indisputably governed by New York law and concerns only the U.S. Claims—a U.S. property interest within

---

[1] The Litigation Interest Agreement is attached to the Approval Motion.

1

the territorial jurisdiction of the United States. Accordingly, the *Concurso* Court, by its own acknowledgement, has no authority to declare the Litigation Interest Agreement illegal (or not). On the contrary, Mexican bankruptcy law expressly dictates that foreign bankruptcy courts in ancillary bankruptcy proceedings (such as this Court) have exclusive jurisdiction over such transactions.

4. Consistent with that, U.S. law requires, under any circumstance, that this Court undertake an independent review of the proposed transaction. *See* 11 U.S.C. § 1520(a); *In re Fairfield Sentry Ltd.*, 768 F.3d 239 (2d Cir. 2014). Given the Second Circuit's clear mandate, there is no basis in U.S. law, or Mexican law for that matter, to delay that review until the *Concurso* Court makes its own ruling or declines to do so. Further, international comity considerations are not implicated here, given among other things that U.S. and Mexican law are entirely consistent on this point.

5. In light of the foregoing, this Court should proceed to consider approval of the Litigation Interest Agreement without delay.

## BACKGROUND[2]

**I.     Singapore Rig Owners' Request**

   **A.     The Singapore Rig Owners' Letter**

6. On July 2, 2019, nearly a month after the prior Foreign Representative filed the U.S. Claims, Nordic Trustee delivered a letter to the Foreign Representative (i) insisting that he fire the Debtors' current U.S. and Mexican counsel; and (ii) demanding that the Debtors demand

---

[2]  The majority of documents attached to this submission are in Spanish. They are not accompanied by translations because the Defendants in the U.S. Claims have deprived the Debtors of the funds necessary to pay for translations. Where relevant, we provide translations of specific portions of the documents.

2

the return of the retainer that they paid to Quinn Emanuel over a year ago for the Chapter 15 proceeding.³

7. Three days later, on July 5, 2019, the Singapore Rig Owners filed a letter with the *Concurso* Court seeking that it declare the Litigation Interest Agreement illegal on the purported grounds that it (i) required the *Concurso* Court's approval; and (ii) violates Mexican creditor priority rules.⁴

8. On July 11, 2019, the *Concurso* Court instructed the Foreign Representative to provide his view on the Singapore Rig Owners' letter.

### B. The Foreign Representative's Response

9. On July 18, 2019, the Foreign Representative filed his response to the Singapore Rig Owners' letter.⁵ The Foreign Representative explained as a preliminary matter that the Singapore Rig Owners had concealed material information from the *Concurso* Court. He then underscored that it is blackletter Mexican law that the *Concurso* Court does not have jurisdiction over the Litigation Interest Agreement.

10. Specifically, the Foreign Representative's response pointed out that the Singapore Rig Owners had concealed from the *Concurso* Court that (i) the Foreign Representative had filed the Approval Motion in these proceedings and that it was pending before this Court; (ii) Nordic Trustee, the Ad-Hoc Group and the Singapore Rig Owners had insisted that the Foreign Representative engage independent U.S. counsel to analyze the U.S. law aspects of the Litigation Interest Agreement (at their expense)—and that they had committed to paying such independent

---

³ Exhibit A of the Perez Declaration is the July 2, 2019 Nordic Trustee letter. *See* Perez Decl. ¶ 2.

⁴ Exhibit B of the Correa Declaration is the July 5, 2019 request by the Singapore Rig Owners. *See* Perez Decl. ¶ 3.

⁵ Exhibit C of the Correa Declaration is the July 18, 2019 response by the Foreign Representative. *See* Perez Decl. ¶ 7.

3

counsel's fees; and (iii) some of the members of the Ad-Hoc Group and the Singapore Rig Owners had already appeared before this Court to challenge the Approval Motion and the Sealing Motion—but none of them, in any of their filings thus far, had contested this Court's jurisdiction over the Litigation Interest Agreement.

11. In addition, the Foreign Representative's response noted that despite requesting that the *Concurso* Court declare the Litigation Interest Agreement invalid, the Singapore Rig Owners had conspicuously failed to supply the *Concurso* Court with a copy of the agreement in question. *See* Perez Decl. ¶ 9.

12. In any event, the Foreign Representative made clear that article 279.I of the Mexican Bankruptcy Code expressly states that foreign ancillary bankruptcy courts, such as this Court, have exclusive jurisdiction over the debtor's rights or interests within the foreign court's jurisdiction. Specifically, article 279.I states that where there is a foreign ancillary bankruptcy proceeding "the assets and businesses of the debtor are subject to the control or the supervision" of the foreign court.[6] As such, because the U.S. Claims are U.S. property interests, they are under the "control or supervision" of this Court under blackletter Mexican bankruptcy law.[7]

13. Finally, the Foreign Representative noted that the *Concurso* Court has on multiple occasions ruled, consistent with that law, that it lacks jurisdiction over contracts governed by

---

[6] *Ley de Concursos Mercantiles* [LCM] [Business Reorganization Law], Diario Oficial de la Federación [DO], 31 Dec. 1969, última reforma 1 oct. 2014, Art. 279.I. ("Por Procedimiento Extranjero se entenderá el procedimiento colectivo, ya sea judicial o administrativo incluido el de índole provisional, que se siga en un Estado extranjero con arreglo a una ley relativa al concurso mercantil, quiebra o insolvencia del Comerciante y en virtud del cual los bienes y negocios del Comerciante queden sujetos al control o a la supervisión del Tribunal Extranjero, a los efectos de su reorganización o liquidación;" […]

"*Foreign Proceeding shall mean the collective proceeding, whether judicial or administrative including provisional, that is conducted in a foreign State under a statute governing reorganization, liquidation or insolvency of the Debtor, in virtue of which the assets and businesses of the Debtor are subject to the control or the supervision of the Foreign Court, for purposes of its reorganization or liquidation.*" […])

[7] *See* July 16, 2019 Hearing Transcript, Tr. at 23:4-5 (the Court noted that the U.S. Claims are "characterized and indeed probably [are], at least to some extent, a U.S. asset.").

4

foreign law or involving foreign rights or interests. For example, on October 11, 2018, the *Concurso* Court ruled in favor of Nordic Trustee by denying a request to declare a clause in the Bond Agreement unenforceable on the ground that the Bond Agreement is governed by Norwegian law and subject to the jurisdiction of Norwegian courts—a ruling the *Concurso* Court confirmed in February 25, 2019 when deciding a reconsideration motion.

**C.    Status**

14.    The *Concurso* Court has not yet issued any order regarding the Singapore Rig Owners' letter and the Foreign Representative's response. *See* Perez Decl. ¶ 14. The *Concurso* would need a copy of the Litigation Interest Agreement before being a position to consider whether it is illegal, as the Singapore Rig Owners baselessly contend.

15.    Separately, on July 3, 2019 Nordic Trustee filed a letter whereby, among other things, it accused the Foreign Representative of unlawfully "omitting" [i.e., failing] to submit the Litigation Interest Agreement to the *Concurso* Court for approval. On July 9, 2019 the *Concurso* Court instructed the Foreign Representative to respond to Nordic Trustee's allegations. *See* Perez Decl. ¶ 16.

16.    On July 16, 2019, the Foreign Representative filed his response to Nordic Trustee's allegations. The Foreign Representative responded that there was nothing unlawful about the Litigation Interest Agreement not being before the *Concurso* Court because approval of the Litigation Interest Agreement is pending before this Court and because the *Concurso* Court lacks jurisdiction over the Litigation Interest Agreement. *See* Perez Decl. ¶ 17.

17.    As a result of the Foreign Representative's July 16, 2019 response, the *Concurso* Court issued an order, dated July 18, 2019, that included as *dicta* the following two statements: (i) the *Concurso* Court stated that any sale of assets of a debtor has to comply with Mexican

5

bankruptcy law; and (ii) the *Concurso* Court stated that it had no jurisdiction over contracts governed by foreign law.[8] *See* Perez Decl. ¶ 20.

18. On July 23, 2019, the Foreign Representative filed a reconsideration motion before the *Concurso* Court arguing that, while the general premise of its statement was in principle correct (that sales of assets of a debtor should comply with Mexican law), the Court had failed to consider (or even refer to) article 279 of the Mexican Bankruptcy Code, which clearly states that whenever a foreign proceeding has been commenced, the foreign court has jurisdiction over the debtor's rights, interests and assets within the foreign court's territory. *See* Perez Decl. ¶ 21.

## II. Approval of the Litigation Interest Agreement

19. On July 16, 2019, the Court held a status conference, and instructed the parties to brief whether this Court should rule on the Approval Motion, regardless of whether the *Concurso* Court also evaluates the Litigation Interest Agreement. As detailed below, the Court clearly has jurisdiction over the U.S. Claims and the Litigation Interest Agreement, and should approve the proposed transaction.

## ARGUMENT

### I. The Court Should Approve the Litigation Interest Agreement Because the U.S. Claims are U.S. Property Interests

20. Pursuant to the Recognition Order, the Debtors' *Concurso Mercantil* is a foreign main proceeding. Under Bankruptcy Code sections 1520(a)(2) and 1520(a)(3), a foreign proceeding recognized as a foreign main proceeding is subject to Bankruptcy Code section 363, which governs the transfer of an interest of the debtor in property that is located within the territorial jurisdiction of the United States and subject to a foreign representative's operation of a

---

[8] Exhibit D to the Perez Declaration is the order of the *Concurso* Court and a translation of the relevant paragraph. *See* Perez Decl. ¶ 18.

6

debtor's business. This Court entered the Recognition Order on May 17, 2018, thus making Section 1520, and thus Section 363, applicable. *See* ECF 54.

21. Section 363(b)(1) empowers a court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). As the Second Circuit made clear in *Fairfield Sentry Ltd.*, a foreign representative ***must*** obtain Chapter 15 court approval for any use, sale, or lease of property located in the United States outside the ordinary course of business. *Fairfield Sentry Ltd.*, 768 F.3d at 245. Indeed, as explained more fully below, the Second Circuit rejected comity as a basis for a Chapter 15 court to refrain from undertaking a section 363 review.

22. Transactions subject to section 363(b) review include the transfer of interests in affirmative claims held by a debtor. *See In re Ace Track Co., Ltd.*, 556 B.R. 887, 917 (Bankr. N.D. Ill. 2016) ("Rule 9019 and section 1520 of the Bankruptcy Code (and applicable thereby sections 362 and 363) do not permit settlement of the VPI Arbitration or assignment of the VPI Receivable treated therein without further order of the court."); *see also In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008)("§ 363(a) contemplates that many forms of intangible personalty are included within the trustee's power to use, sell, or lease property of the estate … [including] a debtor's sale of litigation claims.") (internal quotations and citations omitted).

23. Indeed, "[i]t is well established that claims and causes of action . . . constitute 'property'" of the Debtor under Chapter 15. *In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 369 (Bankr. S.D.N.Y. 2014). Intangible property, like a litigation claim, is located in the United States if it is "deemed under applicable nonbankruptcy law to be located within that territory." 11 U.S.C. §1502(8); *see Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136

7

(1979) (finding that in assessing the quality and situs of property interests, bankruptcy courts are to apply non-bankruptcy law).

24.     Bankruptcy Courts in this District routinely conclude that claims arising from contracts governed by U.S. law or against parties located in the U.S. are property located in the U.S. *See In re Berau Capital Res. Pte Ltd*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015) (concluding in a Chapter 15 proceeding that a foreign debtor's obligation under a debt indenture that contained both a New York choice of law and New York forum selection clause was "property" located in New York); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017), *appeal dismissed*, 585 B.R. 31 (S.D.N.Y. 2018) (concluding in a Chapter 15 proceeding that the debtor's United States "property" included the foreign debtor's contract obligations under several contracts governed by United States law); *In re Octaviar*, 511 B.R. at 370 (Chapter 15 debtor's litigation claims against U.S. parties arising under U.S. law were property located in the United States); *In re PT Bakrie Telecom Tbk*, 2019 WL 2122734 (Bankr. S.D.N.Y. May 30, 2019) ("Examples of property sufficient to satisfy the requirement include . . . causes of action with a situs in New York owned by the foreign debtor.").

25.     In the present case, the U.S. Claims arise from (i) U.S. conduct (the complaints extensively describe conduct in the United States by U.S. parties or through U.S. agents); (ii) against U.S. parties (at least seven of the defendants are U.S.-based parties, more than from any other jurisdiction); (iii) violations of U.S. law, including by operation of Chapter 15 of the Bankruptcy Code, violations of Bankruptcy Code section 1520 and orders of this Court; and (iv) the Debtors' rights under the Bareboat Charters, which are governed by U.S. maritime law and subject to New York courts.

8

26. Moreover, U.S. courts generally find that a cause of action is located in the United States when a U.S. court has subject matter jurisdiction and personal jurisdiction over the defendants. *See In re BCI Finances Pty Ltd.*, 583 B.R. 288, 303 (Bankr. S.D.N.Y. 2018) (finding Australian law fiduciary duty claims located in New York for purposes of Chapter 15). This Court has, at a minimum, personal jurisdiction over the U.S.-based defendants, and subject matter jurisdiction over the U.S. Claims because they will affect distributions in the Debtors' foreign insolvency proceedings. *See Fairfield Sentry Ltd. (in Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *7 (Bankr. S.D.N.Y. Aug. 6, 2018) (court has subject matter jurisdiction over foreign law claims brought by Chapter 15 foreign representatives because recoveries would go to foreign debtor's creditors in BVI insolvency proceedings).

27. Accordingly, based on the overwhelming precedent from this District, the Debtors' U.S. Claims clearly constitute property in the United States. Tellingly, no party in this Chapter 15 proceeding has thus far asserted that the U.S. Claims are ***not*** property located in the United States.[9]

## II.    The Court Should Not Abstain on International Comity Grounds

28. *Fairfield Sentry Ltd.* establishes that a bankruptcy court cannot decline exercising jurisdiction on comity grounds, and ***must*** make an independent determination of a motion regarding a transaction involving U.S. property interests. Here, the Foreign Representative has properly invoked this Court's jurisdiction, as mandated by *Fairfield Sentry Ltd.*.

---

[9]    When opposing recognition, counsel for the Ad-Hoc Group and the Singapore Rig Owners suggested that it is "debatable" whether Perforadora's Bareboat Charters rights are within the United States. *See* ECF 39, p. 5, n. 5. This suggestion is, however, belied by the fact that the Singapore Rig Owners initiated actions in furtherance of the Bareboat Charters in this District. *See Oro Negro Decus Pte. Ltd., et al. v. Perforadora Oro Negro, S. de. R.L. de C.V.,* No. 18-CV-02301, ECF No. 1 (S.D.N.Y. Mar. 15, 2018).

9

29. While comity plays a central role in most aspects of a Chapter 15 proceeding, Chapter 15 explicitly limits its application in certain cases. *See In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012) (stating that comity is "an important factor in determining whether relief will be granted" under Chapter 15, but is not a per se rule); *In re Oi Brasil Holdings Cooperatief U.A.,* 578 B.R. 169, 213 (Bankr. S.D.N.Y. 2017), *reconsideration denied*, 582 B.R. 358 (Bankr. S.D.N.Y. 2018) ("Where the Bankruptcy Code provides the standard for a court's determination, comity does not enter the equation.").

30. The Second Circuit has explicitly recognized that approving section 363 transactions are one such specific exception. *In re Fairfield Sentry Ltd.,* 768 F.3d at 245–46 ("The express statutory command that, in a Chapter 15 ancillary proceeding, the requirements of section 363 "apply . . . to the same extent" as in Chapter 7 or 11 proceedings, 11 U.S.C. § 1520(a)(2) (emphasis added), is one such limitation [on comity].").

31. *Fairfield Sentry Ltd.* involved the sale of certain claims of the liquidation estate in a British Virgin Islands ("BVI") main proceeding. *Id.* at 240-42. The sale (i) was governed by New York law; and (ii) was conditioned on U.S. and foreign court approval.[10] *Id.* at 242. The BVI court approved the sale, but in doing so recognized that the U.S. court would conduct an independent assessment. *Id.* at 242-43.

32. The Chapter 15 court concluded that (i) the assets were not within the United States; and that, even if they were (ii) comity "dictate[d]" that it defer to the BVI court. *Id*. at 243. On appeal, the district court affirmed.

33. On appeal to the circuit court, the Second Circuit rejected both of the Chapter 15 court's conclusions, and the district court's affirmation thereof for two reasons. First, because

---

[10] Shortly after the transaction documents were executed but before the sale was consummated, the claims at issue increased substantially in value. *Id.*at 242. Thus, the party seeking approval was the purchaser, and the party opposing was the Foreign Representative.

10

the contract had to be performed by a party in New York, the Second Circuit concluded that the claims were located in New York. *See id.* at 244-45. Second, when presented with a transaction involving of a U.S. asset, a bankruptcy court is "required to conduct a section 363 review" and "deference to the [foreign] court [is] not required." *Id.* In short, the Second Circuit rejected the notion that the Chapter 15 court could defer to the BVI court with regard to its application of the section 363 and remanded the case.[11] *Id.*

34. Given the clear direction from the Second Circuit that a Chapter 15 court is required to independently evaluate a section 363 transaction, there is no reason for this Court to defer to a potential assessment of the Litigation Interest Agreement by the *Concurso* Court. Neither comity nor permissive abstention are at play, given the Second Circuit's ruling in *Fairfield Sentry Ltd.*.

35. But even if abstention was a consideration, the Court should not abstain based on international comity. *See In re SunEdison, Inc.*, 577 B.R. 120, 133–34 (Bankr. S.D.N.Y. 2017) ("SMP has not provided support for the remarkable proposition that SMP's Korean Bankruptcy Proceeding sweeps in the entirety of Korean insolvency law under principles of international comity, and trumps U.S. bankruptcy and state law. *Daebo*, which it cites for this proposition, (see SMP Reply at 6), did not so hold; it granted comity to the DRBA to the extent the DRBA authorized the issuance of the stay order. Moreover, the parties selected New York law to govern their contractual rights, and the application of Korean law ignores that choice and their presumed expectations. […] For the reasons stated, I decline in the exercise of discretion to grant comity to the Commencement Order to the extent advocated by SMP."); *see also Voigt v. Fabricut, Inc.*, No. 10-CV-662-TCK-TLW, 2012 WL 1190660, at *6 (N.D. Okla. Apr. 6, 2012)

---

[11] On remand, the Chapter 15 court disapproved of the transaction, accepting the Foreign Representative's business judgment that, because of intervening events, approval was not in the best interest of the estate. *In re Fairfield Sentry Ltd.*, 539 B.R. 658, 669 (Bankr. S.D.N.Y. 2015), *aff'd*, 690 F. App'x 761 (2d Cir. 2017).

11

("The Court declines to abstain from deciding Fabricut's counterclaim on grounds of international comity. First, Voigt instigated this action in U.S. federal district court, thereby subjecting himself to Rule 13 and other equitable principles discussed above that permit the Counterclaim to be asserted in this forum. Voigt should not be permitted to invoke the jurisdiction of this Court to recover assets for Castellano's estate and yet avoid counterclaims directly related to such assets. Second, international comity is concerned in part with fairness and expediency. The funds sought for inclusion in Castellano's estate—$324,033.65 in unpaid debt from Fabricut—is exclusively the subject of litigation before this Court and not before the South Africa Court. There is no indication that Fabricut has appeared in the South Africa Court for any purpose. […] Therefore, the interests intended to be protected by international comity—courtesy, deference, and expediency—will not be served by this Court abstaining from deciding Fabricut's Counterclaim.").

36. Here, there is even less reason to abstain than in the foregoing cases. <u>First</u>, several of the parties that purport to have an interest to oppose the Litigation Interest Agreement have already invoked the jurisdiction of New York courts, including this Court's jurisdiction, against the Debtors. There is no reason why they should now benefit from this Court's abstention:

    a. The Singapore Rig Owners (at the time represented by counsel also representing other litigation defendants) already invoked the jurisdiction of New York courts when they sued Perforadora under the Bareboat Charters seeking to repossess the Rigs. Indeed, it was that case that prompted the commencement of this Chapter 15 proceeding. Therefore, the Singapore Rig Owners have necessarily acknowledged that any issues relating or arising from the Bareboat Charters are

properly litigated in New York and decided by New York courts, and not the *Concurso* Court. The U.S. Claims include claims directly relating to and arising from the Bareboat Charters; and

b. Two of the members of the Ad-Hoc Group invoked this Court's jurisdiction last year when they sought an order compelling the Debtors to post a $600 million bond and to provide documentary discovery into the Debtors' business and the Rigs. [ECF 65, at p. 10].

37. <u>Second</u>, the *Concurso* Court has previously ruled, including last week, that it does not have jurisdiction over, and cannot make any determinations regarding the enforceability of, contracts governed by foreign law. *See supra* at 3. That is entirely consistent with Mexican law, which expressly states that foreign ancillary bankruptcy courts have the "supervision or control" over rights and assets located in their jurisdiction. Therefore, this Court would not offend international comity and would follow blackletter Mexican bankruptcy law in approving the Litigation Interest Agreement, which is governed by New York law. *See supra* at 3.

38. <u>Third</u>, the Litigation Interest Agreement concerns exclusively the U.S. Claims—***not*** any Mexican claims. Therefore, there is no reason why this Court should defer to the *Concurso* Court regarding the Litigation Interest Agreement. Further, some of the U.S. Claims relate to or arise from violations of this Court's orders.

39. <u>Fourth</u>, an express funding condition of the Litigation Interest Agreement is this Court's approval. Without this Court's approval, the Litigation Interest Agreement will thus fail, effectively depriving the Foreign Representative and the Debtors of counsel to pursue the U.S. Claims.

13

40. <u>Fifth</u>, as a practical matter, if the *Concurso* Court decides to evaluate the Litigation Interest Agreement, including its compliance with Mexican bankruptcy law, it likely will take months, if not years, to obtain a final ruling. As a first step, the objecting parties will need to file a formal motion (*incidente*) (which they have not yet done), seeking a declaration that the Litigation Interest Agreement is unlawful or unenforceable under Mexican law. The *Concurso* Court would have to hold a hearing and it would take weeks for it to issue its ruling. Then, that ruling will be subject to a reconsideration motion and the ruling after reconsideration, will be subject to an *amparo*. *See* Perez Decl. ¶ 26. The *amparo* decision is subject to appeal and potentially to review by the Mexican Supreme Court. *See* Perez Decl. ¶ 27. The *amparo* could affirm or reverse, but could also remand for further proceedings before the *Concurso* Court. *See* Perez Decl. ¶ 27. All told, Mexican courts would take months or even years to reach a final ruling on the Litigation Interest Agreement. *See* Perez Decl. ¶ 28. Such a delay would be extremely prejudicial to the Debtors' estate, and to the interests of all legitimate stakeholders. The entire pursuit of the U.S. Claims is to remedy the massive harms to the Debtors—solvent companies whose business was actually destroyed. Remedying the harms will likely provide desperately needed funds to the Debtors to pay all legitimate creditors in full and likely provide a return to shareholders.

## **CONCLUSION**

For the foregoing reasons, Foreign Representative respectfully requests that the Court rule on the Litigation Interest Agreement regardless of any actions taken, or lack of same, by the *Concurso* Court.

14

| | |
|---|---|
| Dated: July 25, 2019<br>New York, New York | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br> /s/ *Gabriel F. Soledad* <br>Gabriel F. Soledad<br>Juan P. Morillo (*pro hac vice*)<br>Daniel Pulecio-Boek<br>1300 I Street, NW, Suite 900<br>Washington, D.C. 20005<br>Telephone: (202) 538-8000<br>Facsimile: (202) 538-8100<br>Email: gabrielsoledad@quinnemanuel.com<br>Email: juanmorillo@quinnemanuel.com<br>Email: danielpulecioboek@quinnemanuel.com<br><br>Scott C. Shelley<br>Samantha Gillespie (*pro hac vice*)<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: 212-849-7000<br>Facsimile: 212-849-7100<br>Email: scottshelley@quinnemanuel.com<br>Email: samanthagillespie@quinnemanuel.com<br><br>Eric Winston (*pro hac vice*)<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br>Email: ericwinston@quinnemanuel.com<br><br>Sara C. Clark (*pro hac vice*)<br>711 Rusk Street, Suite 500<br>Houston, Texas 77002<br>Telephone: (713) 221-7000<br>Facsimile: (713) 221-7100<br>Email: saraclark@quinnemanuel.com<br><br>*Counsel for the Foreign Representative* |