**Hearing Date: March 18, 2021**
**Hearing Time:  10:00 a.m. ET**
**Objection Deadline: March 5, 2021 4:00 p.m. ET**
**Reply Deadline: March 11, 2021 4:00 p.m. ET**

CALLARI PARTNERS LLC
Carollynn H.G. Callari, Esq.
Russell D. Morris, Esq.
One Rockefeller Plaza - 10th Floor
New York, New York 10020
Tel: (212) 202-3055
Email: ccallari@callaripartners.com
          rmorris@callaripartners.com

*Counsel for Gonzalo Gil-White, Jose Antonio*
*Canedo-White, Carlos Williamson-Nasi, and*
*Miguel Angel Villegas-Vargas*

— — — — — — — — — — — — — — — — — — — — — — — — — — x
In re:                                                    :        Chapter 15
                                                          :
PERFORADORA ORO NEGRO, S. DE R.L.                         :        Case No. 18-11094 (SCC)
DE C.V., *et al.*,                                        :
                                                          :
          Debtors in a Foreign Proceeding.                :
— — — — — — — — — — — — — — — — — — — — — — — — — — x

## OBJECTION TO REQUEST FOR EXTENSION
## OF STAY OF ADVERSARY PROCEEDINGS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 5

    A.    General Background ................................................................. 5

    B.    Insolvency Proceedings in Mexico ......................................... 6

        i.    Overview of a Mexican Concurso Mercantil .............................. 6

        ii.    The Liquidation Stage of a Concurso Mercantil ........................ 6

    C.    Status Of The Debtors' Concurso Mercantil Proceeding ....................... 9

        i.    Overview ............................................................................ 9

        ii.    The Bids Received in Debtors' Liquidation Stage of Concurso Mercantil ................................................................ 10

            a)    Nordic Trustee First Bid ............................................... 10

            b)    Nordic Trustee Second Bid ........................................... 11

            c)    AMA Bid ..................................................................... 12

    D.    The Adversary Proceedings ................................................... 13

    E.    Stay of the Adversary Proceedings ....................................... 15

    F.    Other Events Since the March 2020 Status Conference. ....................... 18

        i.    Interpol Removes Red Notices against Individual Plaintiffs ................... 18

        ii.    Concurso Court Finds Key Bond Agreement Provision Unenforceable and Voids Critical Related Actions ........................... 19

ARGUMENT .......................................................................................................... 21

    I.    The Stay Should Not be Extended Because the Mexico Sale Process in this Case is a Sham for the Benefit of the Defendants ................................. 23

    II.    The Stay Should Not be Extended Because the Stay Orders are Contrary to Mexican Law ....................................................................... 26

    III.    The Prejudice to the Individual Plaintiffs in Continuing to Stay these Proceedings Outweighs Any Genuine Interests in Obtaining the Stay ................ 27

    IV.    The Recent Concurso Court Ruling Impacts the Singapore Entities' Authority to  Enter into the Proposed Fifth Stipulation and Order ...................... 29

CONCLUSION ....................................................................................................... 30

2829224.3

# TABLE OF AUTHORITIES

**Cases**

*In re Fairfield Sentry Ltd.*,
768 F.3d 239 (2d Cir. 2014)........................................................................................ 29

*In re S. Side House, LLC*,
470 B.R. 659 (Bankr. E.D.N.Y. 2012)........................................................................ 23

*Jiminez v. Credit One Bank, N.A.*,
377 F. Supp. 3d 324 (S.D.N.Y. 2019)......................................................................... 22

*John's Insulation, Inc. v. Siska Constr. Co.*,
671 F. Supp. 289 (S.D.N.Y. 1987).............................................................................. 22

*Landis v. N. Am. Co.*,
299 U.S. 248,  57 S. Ct. 163 (1936)................................................................ 21, 22, 23

*Laumann v. Nat'l Hockey League*,
No. 12 CIV. 1817 SAS, 2013 WL 837640, at *2 (S.D.N.Y. Mar. 6, 2013) .............. 22

*Musselman v. Home Ins. Co. of Ind. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
No. 88 B 10377(PBA), 1990 WL 123840, at *2 (S.D.N.Y. Aug. 7, 1990) ............... 21

*Uni–Rty Corp. v. Guangdong Bldg., Inc. (In re Uni–Rty Corp.)*,
No. 96 CIV. 4573 (DAB), 1998 WL 299941, at *7 (S.D.N.Y. June 9, 1998)........... 22

**Statutes**

11 U.S.C. § 105(a) ....................................................................................................... 21

11 U.S.C. § 1520(a)(2).................................................................................................. 28

2829224.3

Gonzalo Gil-White ("Gil-White"), Jose Antonio Canedo-White ("Canedo"), Carlos Williamson-Nasi ("Nasi"), and Miguel Angel Villegas-Vargas ("Villegas", and collectively with Gil, Canedo and Nasi, the "Individual Plaintiffs") hereby file this objection (the "Objection") to the proposed *Fifth Stipulation and Order* (Dkt. No. 292)[1] (the "Proposed Stay Extension") requesting an extension of the stay of the Chapter 15 Proceedings, including the Adversary Proceedings (defined below), submitted to the Court by José Gerardo Badín Cherit, in his capacity as Foreign Representative (the "Foreign Representative" or "Badin") of Integradora de Servicios Petroleros, S.A.P.I. de C.V. ("Integradora") and Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora" and, together with Integradora, the "Debtors"), a plaintiff in the Adversary Proceedings, and the Defendants (defined below)[2] in the Adversary Proceedings.[3]  In support of this Objection, the Individual Plaintiffs rely upon the *Declaration of Javier Palacios Ruano in Support of Objection To Request For Extension Of Stay Of Adversary Proceedings* ("Palacios Decl."), filed substantially contemporaneously herewith, and respectfully state as follows:

## PRELIMINARY STATEMENT[4]

The Adversary Proceedings have been stayed for over a year with no progress in either these proceedings or in the Debtors' Concurso Mercantil liquidation.  The Court initially stayed the Adversary Proceedings (the "Litigation Stay") in November 2019, at the request of Mr. Badin,

---

[1]  "Dkt. No." refers to the docket of Case No. 18-11094 (SCC).

[2]  Based on the suggestion of bankruptcy filed by Seadrill Limited, nothing in this objection intends to take, or takes, any action against such entities to the extent it would violate the automatic stay in their bankruptcy case(s).  The Individual Plaintiffs will not proceed against Seadrill Limited without relief from stay in that proceeding.  Further, while each of the Debtors may not have directly taken the actions described herein, there was collusion among the Defendants in one form or another that caused the events that are the subject of the Adversary Proceedings to occur.

[3]  *See* Adv. Proc. Nos. 19-01294, 19-01301 and 19-01360 in this Chapter 15 Proceeding (collectively, the "Adversary Proceedings").

[4]  Capitalized terms used but not defined in this Preliminary Statement, have the meanings ascribed to such terms below.

as Foreign Representative, to allow him time to study and assess the proceedings when he was appointed to replace the prior Foreign Representative. Subsequently, several stipulation and orders signed by the Foreign Representative and Defendants (but not by the Individual Plaintiffs) have been entered by the Court granting their request to continue the stay while a potential sale of substantially all the Debtors' assets (including the claims asserted by the Foreign Representative in the Adversary Proceedings) unfolds in the Debtors' Concurso Mercantil. No sale or auction or even approval of an initial bid has yet occurred in the Debtors' Concurso Mercantil, and the new AMA Bid, upon which the stay extension request is based, is defective on its face. The Individual Plaintiffs submit that the Litigation Stay benefits only the Defendants and should not be extended. It's time to move these proceedings forward.

Under Mexican LCM (as defined below) laws, the Foreign Representative is obligated to maximize values for the Debtors' estates and creditors. That obligation is not fulfilled by allowing the Adversary Proceedings to stand idle. The lack of prosecution in the Adversary Proceedings has a potentially chilling effect on any auction of the Debtors' assets, to the detriment of its shareholders and creditors (which include the Individual Plaintiffs) except the Bondholders. Moreover, this Court's adjudication of the claims against the Bondholders would enable potential bidders to properly value the Debtors' assets. And, such adjudication would better enable this Court to ultimately evaluate any sale of the claims under section 363 of the Bankruptcy Code, which is required pursuant to 11 U.S.C. § 1520(a)(2) since the sale would involve property that is within the United States.

Indeed, it has become apparent that the Defendants, in particular the Bondholders, are abusing the system with a sham sale process. By delaying an adjudication of the Debtors' claims against the Bondholders, the Bondholders seek to deter other potential bidders from making a

2829224.3

substantial offer, if any offer at all, to buy the Debtors' assets since the value of the claims would remain undetermined.  Further, the Bondholders are seeking to buy the Debtors' claims against the Bondholders at a cheap value and thereby dispose of any potential liability they have under such claims.  Such intent may be gleaned from the fact that they already caused two bids (through the Nordic Trustee) to be submitted that were rejected by the Concurso Court, and now the current AMA Bid (submitted by defendant AMA Capital Partners, LLC), offers an amount that is *substantially* less than the prior bids and glaringly contains the same defects that caused the Concurso Court to reject prior bids – the offer price fails to allocate the price among the separate Debtors' estates and assets and is insufficient to provide any recovery to unsecured creditors.  Since the claims asserted in these proceedings against the Defendants are the greatest assets of the Debtors' estates, their motive to delay these proceedings so that they can buy those same claims in the Debtors' Concurso Mercantil sale is improper.  These motives do not support a basis to extend the stay.

A ruling by the Court on the Defendants' motions to dismiss the Adversary Proceedings should assist parties to properly value the claims.  Because the Individual Plaintiffs' claims and the Debtors' claims in the Adversary Proceedings are premised on the same factual allegations, it would behoove the parties and the Court to allow the Adversary Proceeding for both the Individual Plaintiffs and Foreign Representative to move forward.  The briefing respecting the Motions to Dismiss are substantially completed.  Regardless, at minimum, the Individual Plaintiffs should be allowed to proceed with their claims against the Defendants.  The Individual Plaintiffs have endured substantial personal and financial losses from the Defendants' actions and are unduly prejudiced by continuing to stay the proceedings.  The carnage to the Individual Plaintiffs' lives caused by the Defendants egregious conduct should not be undervalued. The Individual Plaintiffs'

2829224.3

reputations, and thus ability to conduct business, remain marred from the Debtors' past and continuing conduct. The potential outcome of these proceedings would substantially assist the Individual Plaintiffs with moving forward toward repairing their livelihoods and lives. Continuing to postpone the Individual Plaintiffs' ability to obtain some sort of restitution and a conclusion to this matter, and thereby also enabling the Defendants to further their strategy to manipulate the sale process, would be substantially prejudicial to the Individual Plaintiffs.

Further, due to the recent ruling by the Concurso Court that a key Bond Agreement default provision was unenforceable since it called a default solely based on the Debtors' filing for Concurso Mercantil (*i.e.*, it's an unenforceable ipso facto provision) and therefore the Concurso Court ruled all actions taken in reliance thereon are void, the ownership and control of the Singapore Entities have been returned to their initial and rightful owner – the Debtor, Integradora, and the board members of the Singapore Entities that were in place prior to the Bondholders replacing such directors have been returned to their board position. Accordingly, the requisite authority of the Singapore Entities (or their purported representative) to execute the *Fifth Stipulation and Order* is lacking.

Therefore, despite arguments that the Court should defer ruling in the Adversary Proceeding to allow the sale process to play out in Mexico, to the contrary, the Court should move forward with ruling on the Adversary Proceeding so that the Debtors' assets can be properly valued in any sale process, the Individual Plaintiffs can pursue the relief they seek, and all parties can move toward concluding this matter. Accordingly, the Litigation Stay should not be extended.

2829224.3

# BACKGROUND

### A.    General Background

1.    On September 11 and 29, 2017, respectively, Perforadora and Integradora filed for *concuso mercantil*, an insolvency proceeding in Mexico (the "Concurso Mercantil"). *Palacios Decl*. ¶ 18.

2.    On April 20, 2018, the Debtors filed a voluntary petition for bankruptcy relief under Chapter 15 of Title 11 of the United States Code (the"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").    On May 17, 2018, the Court entered the Order Granting Recognition of Foreign Main Proceeding [Docket No. 54], in which the Court recognized the Concurso Mercantil as the foreign main proceeding under section 1517(b) of the Bankruptcy Code.

3.    On May 17, 2019, the Court recognized Gil-White's appointment as the Foreign Representative of the Debtors.[5]

4.    In June, 2019, the Second District Court for Civil Matters in Mexico City presiding over the Debtors' Concurso Mercantil (the "Concurso Court") placed the Debtors into liquidation, and Mr. Fernando  Perez-Correa Camarena ("Perez-Correa") was appointed to serve as liquidator of the Debtors' estates ("Liquidator"), and Perez-Correa became the Foreign Representative of the Debtors in the Chapter 15 Proceedings.

5.    In November, 2019, at the request of Oro Negro Drilling Pte. Ltd. (while it was under the control of the Bondholders),[6] the Instituto Federal de Especialistas de Concursos Mercantiles ("IFECOM"), which is the insolvency regulatory agency acting as a consulting body

---

[5]    Gil-White replaced the original Foreign Representative, Alonso Del Val-Echeverria.
[6]    The "Bondholders" are certain holders of the Debtors' bonds as identified in the Release Complaint (defined below).

2829224.3

for the Court under the LCM), entered an administrative order appointing José Gerardo Badín Cherit ("Badín") to replace Mr. Perez-Correa as Liquidator, and Badin became, and remains, the Foreign Representative of the Debtors in the Chapter 15 Proceedings.

### B.    Insolvency Proceedings in Mexico

#### i.    Overview of a Mexican Concurso Mercantil

6.    A Mexican concurso mercantil proceeding is comprised of two stages: (a) the preliminary stage, (in Spanish, *visita*), during which the court determines the debtor's eligibility for insolvency proceedings; namely, whether the company is insolvent (*i.e.*, whether its liquid assets are insufficient to pay 80% of its outstanding debts or whether at least 35% of its debt is due for longer than 30 days);[7] and (b) if the court determines that the company is insolvent, the concurso stage, which is also comprised of two stages: (i) the conciliation (in Spanish, *conciliación*) stage, which is for the company to try to reach an agreement with its creditors to repay debts; and then (ii) the liquidation (in Spanish, *quiebra*) stage, in which the company's assets are sold to repay debts. *Palacios Decl.* ¶ 11.

#### ii.    The Liquidation Stage of a Concurso Mercantil

7.    Pursuant to the *Ley de Concursos Mercantiles* (the statute that governs Mexican insolvency proceedings) ("LCM"), in the liquidation stage of a *concurso mercantil* proceeding, the liquidator has the obligation to liquidate and sell all of the debtor's assets to repay all

---

[7]    To determine whether the company is insolvent, the court appoints a financial expert (in Spanish, *visitador*), who reviews the company's finances and provides a non-binding report to the court on whether the company is solvent. *Palacios Decl.* fn. 2.

recognized claims,[8] aiming to maximize the value of the debtor's assets, and to obtain the best conditions for the transaction.[9]  *Palacios Decl.* ¶ 12.

8.      As a general rule, the debtor's assets must be liquidated through a public auction, pursuant to Title Seven, Chapter One, articles 198, 199, 200, 201, 202 and 203 of the LCM. However, under the LCM, there are three exceptions.  *Palacios Decl.* ¶ 13.

9.      The first one, according to article 208 of the LCM,[10] refers to perishable goods, which cannot wait until the public auction is carried out. *Id.*

10.      The second one, according to article 205 of the LCM,[11] occurs when the liquidator considers that a different liquidation procedure will render a higher value.  In this case, the liquidator must obtain prior authorization from the *concurso* court to carry out a different liquidation procedure.  *Palacios Decl.* ¶ 14.

---

[8]    *See id.* Art 3 of the LCM, which translated into English provides:  The purpose of the conciliation is to achieve the preservation of the Debtor's enterprise through the executing of an agreement with its Recognized Creditors.  The purpose of the liquidation is the sale of the Debtor's enterprise, its productive units and the assets that are part of the same with the objective of repaying the Recognized Creditors. *See Palacios Decl.* fn. 3 (providing original text and translation).

[9]    *See id.* First paragraph of Art 197 of the LCM, which translated into English provides:  Once the liquidation is declared, even if the recognition of claims has not been concluded, the liquidator will move to sell the assets and rights that are part of the Estate, seeking to obtain the maximum return possible for its sale.  To that effect, they shall seek the best conditions and the shorter period to recover resources.  *See Palacios Decl.* fn. 4 (providing original text and translation).

[10]   *See id.* Art. 208 of the LCM, which translated into English provides: On his own responsibility, the liquidator may sell the Debtor's assets, without observing the provisions of this Chapter, when the assets require an immediate sale because they would otherwise deteriorate or be corrupted, or if the assets are exposed to a major decrease in their price, or that their conservation is more expensive than its value, or if their price does not exceed the amount indicated by the Institute through general guidelines.  *See Palacios Decl.* fn. 5 (providing original text and translation).

[11]   *See id. Art. 205 of the LCM*, which translated into English provides: The liquidator could ask the judge to authorize the sale of any assets or group of assets through a different mechanism of those provided for in the preceding articles, when he considers it is the manner to obtain a greater value.  *See Palacios Decl.* fn. 6 (providing original text and translation).

11.    The third exception, according to article 207 of the LCM,[12] occurs when, after six (6) months of the liquidation stage have elapsed, any party submits an offer to the *concurso* court to purchase debtor's assets.  In this case, according to the applicable provisions, the offer must comply with the following legal requirements:

(i)    be filed through the specific forms and pursuant to the specific guidelines issued by the Federal Institute of Insolvency Specialists (in Spanish, *Instituto Federal de Especialistas en Concursos Mercantiles")* (the "IFECOM");

(ii)    be filed by a person with sufficient power of attorney to act on behalf of the bidder, according to the forms issued by IFECOM;

(iii)    Provide a description of the assets for which the offer is made. Since pursuant to article 15-bis of the LCM, the estates of jointly administered cases are not consolidated, then the bidder has to submit its offer referring separately to each estate. That is, an offer for assets of separate estates should provide a separate price for each estate and/or asset;

(iv)    According to article 201 of the LCM, the price has to be in cash. Exceptionally, and only in the event that the bidder is also a recognized creditor and it can determine with precision the amount it would receive from a distribution under such offer, as a payment of its recognized claim, then such credit bid would be included as part of the price offered; and

---

[12]    *See id. Art. 207 of the LCM*, which translated into English provides: Should six months have elapsed from the date the liquidation stage begun and the totality of the assets of the Estate have not been sold, any interested person could file with the judge an offer to acquire any asset or group of assets of those remaining.  The offer shall be filed in the formats and according to the guidelines issued by the Institute, determining the assets it comprises and the offered price and being accompanied if the guarantee so determined by the Institute through rules of general application.  The following day of receiving the offer, the judge will put it to the sight of the Merchant, the Recognized Creditors and the interveners for a period of ten days.  Should at the end of that period the persons identified in sections I through VI of article 206 of this law, have not expressed in writing their opposition to the judge, the judge will order the liquidator to call, within the three days following the receipt of the order, to an auction in terms of article 199 of the same, determining the price of the received offer as the minimum price referred to in section II of that article.  The auction shall take place in a period no shorter than 10 calendar days nor longer than 90 calendar days from the date of the auction.  The received offer will be deemed as bid in the auction.  The person who filed it will not be allowed to improve it or further participate in bids. *See Palacios Decl*. fn. 7 (providing original text and translation).

(v)    File a guarantee of 10% of the offered price, pursuant to article 56 of the guidelines issued by the IFECOM.

*Palacios Decl.* ¶ 15.

12.    After the Court receives the offer, it will provide all parties – Debtors, creditors and intervenors – the opportunity to file any objections or oppositions within 10 business days. *Palacios Decl.* ¶ 16.  After the period to object lapses, the Court may render a decision on his/her own or request the IFECOM to review the offer and provide its non-binding opinion regarding the bid's viability.  *Palacios Decl.* ¶ 34.  If after such deadline the parties do not file their opposition or objections to the offer, the Court will order the liquidator to initiate the public auction (the date of commencement of the bidding process is the "Commencement Date" as further defined below)[13] as provided by the LCM, with the difference that the starting price will be the price contained in the offer, and that bidder may not improve its offer nor participate in the auction.  *Palacios Decl.* ¶ 16.  Pursuant to Article 207 of the LCM, the bidding process must be completed no earlier than ten (10) days and no later than ninety (90) days after the Commencement Date.  *Palacios Decl.* fn 7.

## C.    Status Of The Debtors' Concurso Mercantil Proceeding

### i.    Overview

13.    On October 5, 2017, the Concurso Court accepted Perforadora's Concurso Mercantil.  On October 31, 2017, the Concurso Court accepted Integradora's Concurso Mercantil and determined that it would be administered jointly with Perforadora's Concurso Mercantil (but not substantively consolidated).  *Palacios Decl.* ¶ 19.

14.    On September 11, 2018, the Concurso Court formally declared the Debtors in *concurso mercantil* and initiated the conciliation stage of the proceeding, in which, among other

---

[13]    *See* fn. 17, *infra.*

2829224.3

things, the debtor and its creditors attempt to reach a restructuring agreement. *Palacios Decl.* ¶ 20.

15.    On June 13, 2019, the Concurso Court issued a ruling whereby it declared the liquidation (in Spanish, *quiebra*) of the Debtors and ordered, among other things: (i) to liquidate and sell all of the Debtors' assets to repay all recognized claims; and (ii) the appointment by IFECOM of a liquidator of the estates of the Debtors. *Palacios Decl.* ¶ 21.

16.    On June 17, 2019, the Concurso Court acknowledged IFECOM's appointment of Mr. Fernando Pérez Correa Camarena to act as the liquidator of the estates of the Debtors.  But then, on October 28, 2019, the Concurso Court acknowledged the IFECOM's removal of Mr. Fernando Pérez Correa Camarena as liquidator of the estates of the Debtors.[14] *Palacios Decl.* ¶ 22.

17.    On November 7, 2019, the IFECOM appointed Mr. José Gerardo Badín Cherit (the "Foreign Representative") to act as liquidator of the estates of the Debtors.  On November 14, 2019, the Concurso Court accepted the Foreign Representative's appointment as liquidator before the Concurso Court. *Palacios Decl.* ¶ 23.

**ii.    The Bids Received in Debtors' Liquidation Stage of Concurso Mercantil**

*a)    Nordic Trustee First Bid*

18.    In October 2019, Fernando Pérez Correa Camarena, as the then liquidator of the estates of the Debtors, pursuant to the articles 205 and 206 of the LCM, submitted to the Concurso Court an offer signed by Nordic Trustee AS ("Nordic Trustee") and NT Refectio XX AS ("NT Refectio") through which they offered to purchase substantially all the Debtors' assets (including the Debtors' claims asserted against the Defendants in the Adversary Proceedings) for a purchase

---

[14]    Upon information and belief, Mr. Perez' removal was at the behest of Oro Negro Drilling, which was controlled by the bondholders at that time.

10

price of: (i) $15,000,000 and (ii) 100% of Nordic Trustee's recognized claim against the Debtors (the "Nordic Trustee First Bid"). *Palacios Decl*. ¶ 24.

19.     On October 24, 2019, the Concurso Court issued an order through which it received the Nordic Trustee First Bid and granted the Debtors, the creditors and the intervenors the opportunity to file their oppositions or objections, if any. *Palacios Decl*. ¶ 25. The Debtors and some creditors filed oppositions and objections to the Nordic Trustee First Bid. *Id.*

20.     On November 21, 2019, the Concurso Court issued an order whereby it dismissed the Nordic Trustee First Bid because: (i) none of the unsecured creditors (*acreedor común*) would receive a payment, and (ii) Nordic Trustee's recognized claim (which was offered as part of the price in the offer) was not determined yet, due to the fact that the amount was still subject to a pending appeal. *Palacios Decl*. ¶ 26.  The Nordic Trustee and NT Refectio did not challenge the order, which is now final. *Id.*  The Foreign Representative did not inform the Court of the dismissal of this bid.

### b)    *Nordic Trustee Second Bid*

21.     On February 21, 2020, the Nordic Trustee and NT Refectio submitted to the Concurso Court a second offer, pursuant to article 207 of the LCM, to purchase substantially all of the Debtors' assets (including the claims filed in the Chapter 15 Proceedings) and offered to pay: (i) $19,224,850.00 and (ii) 100% of Nordic Trustee AS's recognized claim against the Debtors (the "Nordic Trustee Second Bid" and together with the Nordic Trustee First Bid, the "Nordic Trustee Bids"). *Palacios Decl*. ¶ 27.

22.     On February 25, 2020, the Concurso Court issued an order through which it received the Nordic Trustee Second Bid and granted the Debtors, the creditors and the intervenors the opportunity to file their oppositions or objections, if any.  The Debtors and some creditors filed oppositions and objections to the Nordic Trustee Second Bid. *Palacios Decl*. ¶ 28

23.     On August 4, 2020, the Concurso Court requested the IFECOM to review the Nordic Trustee Second Bid and provide its opinion regarding the bid's viability.  *Palacios Decl*. ¶ 29.

24.     On or around September 8, 2020, IFECOM provided the Concurso Court with IFECOM's opinion that the Nordic Trustee Second Bid should be dismissed.  IFECOM's opinion was based on the grounds that (i) the Nordic Trustee's claim (which was offered as part of the price in the offer (*i.e*., credit bid)) was not determined yet since the amount was still subject to a pending appeal, which continues to be pending as of today; and (ii) Nordic Trustee and NT Refectio did not separate their offer according to each Debtor's estate, since they offered a single price for a group of assets that belong to both estates of the Debtors.  On September 23, 2020, the Concurso Court issued an order dismissing the Nordic Trustee Second Bid consistent with the IFECOM's opinion.  *Palacios Decl*. ¶ 30.  The Nordic Trustee and NT Refectio did not challenge the order, which is now final.  *Palacios Decl*. ¶ 31.  The Foreign Representative did not inform the Court of the dismissal of this bid for more than sixty (60) days -- until after the AMA Bid was submitted, and he and the Defendants were seeking a further stay of the litigation.  *See Fourth Stipulation and Order* (Dkt. No. 289).

### c)     *AMA Bid*

25.     On November 26, 2020, approximately two months after the Concurso Court dismissed the Nordic Trustee Second Bid as defective, and within days of the expiration of the stay under the *Third Stipulation and Order*, Mr. Alberto Echandi Ordaz, who purported to act on behalf of AMA, a financial adviser to the Bondholders, submitted a bid to the Concurso Court pursuant to article 207 of the LCM, through which AMA offered to purchase substantially all of the Debtors' assets (including the claims of the Debtors which are the subject of the Adversary Proceedings) for $5,000,000 (the "AMA Bid"), which is more than $14 million less than the Nordic

12

Trustee Second Bid.  Apparently in haste to file a bid before the then Litigation Stay Deadline lapsed, Mr. Alberto Echandi Ordaz did not file evidence of his power of attorney to act on behalf of AMA with the AMA Bid, which caused the Concurso Court to request Mr. Alberto Echandi Ordaz to submit the power of attorney before receiving the AMA Bid. *Palacios Decl*. ¶ 32.  Also, similar to the rejected Nordic Trustee Bids, the AMA Bid (a) offered a lump purchase price and does not allocate its purchase price among the different Debtor's estates or assets and (b) is insufficient to provide a recovery for the unsecured creditors.  *Palacios Decl*. ¶¶ 33, 35.

26.     On February 18, 2020,[15] the Concurso Court issued an order through which it received the AMA Bid and granted the Debtors, the creditors and the intervenors the opportunity to file their oppositions or objections, if any, within ten (10) business days (*i.e.*, by March 10, 2021).  *Palacios Decl*. ¶ 34.  Objections are expected from the parties that filed an objection to the prior bid(s), including the Debtors.  *Id.*  Once the objection period expires, the Concurso Court may rule on the bid and the objections or may request an IFECOM opinion.  Once the Concurso Court receives the IFECOM's opinion (if requested), the Concurso Court will likely take approximately 10 business days to rule on the AMA Bid.  *Id.*

D.     **The Adversary Proceedings**

27.     On June 6, 2019, Gil-White, personally and in his capacity as the then-Foreign Representative of the Debtors, filed an adversary proceeding (Adv. Proc. No. 19-01294 (the "First Adversary Proceeding")) against Alp Ercil, Alterna Capital Partners, LLC, AMA Capital Partners, LLC ("AMA"), Andres ConstantinAntonius-Gonzalez, Asia Research And Capital Management Ltd., CQS (UK) LLP, Fintech Advisory, Inc., Deutsche Bank Mexico, S.A., Institución de Banca Multiple, García González y Barradas Abogados, S.C., GHL Investments (Europe) Ltd., John

---

[15]     Due to COVID-19, the Concurso Court was closed for several weeks, attending only to urgent matters, and reopened in February 2021.  *See Palacios Decl*. ¶ 34.

13

Fredriksen, Kristan Bodden, Maritime Finance Company Ltd., Noel Blair Hunter Cochrane, Jr,

Oro Negro Primus Pte., Ltd., Oro Negro Laurus Pte., Ltd., Oro Negro Fortius Pte., Ltd., Oro Negro

Decus Pte., Ltd., Oro NegroImpetus Pte., Ltd., Paul Matison Leand, Jr., Roger Alan Bartlett, Roger

Arnold Hancock, Seadrill Limited, Ship Finance International Ltd., and Does 1-100

(collectively, the "First Adversary Proceeding Defendants").  Generally, the Complaint filed in

the First Adversary Proceeding asserts tortious interference and other tort claims against the First

Adversary Proceeding Defendants.

28.    On June 24, 2019, Gil-White, personally and in his capacity as the then-Foreign

Representative of the Debtors, filed a second adversary proceeding (Adv. Proc. No. 19-01301

(the "Second Adversary Proceeding")) against Contrarian Capital Management, LLC

("Contrarian") and Nordic Trustee, AS ("Nordic Trustee", and together with Contrarian, the

"Second Adversary Proceeding Defendants").    Generally, the Complaint filed in Second

Adversary Proceeding asserts tortious interference and other tort claims against the Second

Adversary Proceeding Defendants.

29.    On September 26, 2019, Perez-Correa, in his capacity as the then-Foreign

Representative of the Debtors, and each of the Individual Plaintiffs filed an adversary proceeding

(Adv. Proc. No. 19-01360 (the "Third Adversary Proceeding")[16] against Asia Research and

Capital Management Ltd., GHL Investments (Europe) Ltd., Oro Negro Primus Pte.,Ltd., Oro

Negro Laurus Pte., Ltd., Oro Negro Fortius Pte., Ltd., Oro Negro Decus Pte., Ltd., Oro Negro

Impetus Pte., Ltd., and Ship Finance International Ltd. (collectively, the "Third Adversary

Proceeding Defendants," and, together with the First Adversary Proceeding Defendants and the

---

[16]    The First Adversary Proceeding, Second Adversary Proceeding, and Third Adversary
Proceeding are collectively referred to herein as the "Adversary Proceedings."

14

Second Adversary Proceeding Defendants, the "Defendants").    Generally, the Complaint (the "Release Complaint") filed in Third Adversary Proceeding relates to claims regarding contractual breaches, including breaches of release provisions, against the Second  Adversary Proceeding Defendants.

30.    Prior to the Litigation Stay, the Defendants in each of the Adversary Proceedings filed motions to dismiss the respective Complaints.  Plaintiffs have already filed responses to the motions to dismiss in the First and Second Adversary Proceedings.[17]  Plaintiffs had not yet responded to the motions to dismiss in the Third Adversary Proceeding before the effect of the Litigation Stay but are prepared to file a response.  Accordingly, the Motions to Dismiss are already substantially briefed.

**E.    Stay of the Adversary Proceedings**

31.    After Badin's appointment as the Foreign Representative, on November 12, 2019, he filed a letter with the Court (1) informing the Court of his appointment as liquidator of the Debtors' estates in Mexico and (ii) requested a stay of all the deadlines in the Chapter 15 Proceedings, including the Adversary Proceedings, for thirty (30) days to allow him time "to study and assess the file of the Chapter 15 Proceedings" (the "First Letter Extension Request").  *See* Letter from Badin to the Court, dated November 12, 2019, Dkt. No. 261.  The Court approved this request on the same date, thereby staying the proceedings (the "Litigation Stay") until December 12, 2019 (the "Litigation Stay Deadline"). (Dkt. No. 262)

32.    In each of the next three months, the Foreign Representative submitted a letter to the Court requesting a thirty (30) day extension of the stay of the Chapter 15 Proceedings,

---

[17]    Except that, due to the timing of Badin's appointment, the Plaintiffs' deadline to file their response to Defendant John Fredriksen's Motion to Dismiss [Adv. Proc. 19-01294 (SCC), Dkt. Nos.  44-45] was extended and remains stayed due to the Litigation Stay.  Accordingly, no response has been filed yet to that Motion to Dismiss.

15

including the Adversary Proceedings, for him and/or his counsel to study and assess the file of the

Chapter 15 Proceedings, including the Adversary Proceedings: (i) Letter from Badin, as Foreign

Representative, to the Court, dated December 11, 2019 (the "Second Letter Extension Request"),

(ii) Letter from Badin, as Foreign Representative, to the Court, dated January 10, 2020 (the "Third

Letter Extension Request") and (iii) Letter from Badin, as Foreign Representative, to the Court,

dated February 20, 2020 (the "Fourth Letter Extension Request", and collectively with the prior

letter extension requests, the "Four Letter Extension Requests").  (Dkt. Nos. 263, 270 and 274)

The Court approved each of those letter requests on or about the same dates.  (Dkt. Nos. 264, 271

and 276)  The Court's granting of the Fourth Letter Extension Request, extended the Litigation

Stay Deadline to March 16, 2020. (Dkt. No. 276)

33.    After staying the proceedings for 120 days based on the Four Letter Extension

Requests, on March 6, 2020, Badin, as Foreign Representative, and the Defendants submitted to

the Court a proposed *Stipulation and Order* further extending the Litigation Stay Deadline for up

to ninety (90) days.  (Dkt. No. 278)  The *Stipulation and Order* was based upon the Nordic Trustee

Bid, which included the claims of the Debtors which are the subject of the Adversary Proceedings.

34.    On March 9, 2020, a status conference ("March 2020 Status Conference") was held

before the Court at which the proposed *Stipulation and Order* was discussed and modified to

clarify that the stay would expire in ninety days if the bidding Commencement Date never occurred

(*e.g.*, if the Nordic Trustee Bid was rejected by the Concurso Court).[18]  *See* Transcript of March

2020 Status Conference (Dkt. No. 281).  That same date, the Court entered the modified *Stipulation

and Order* (Dkt. No.280) providing for the further extension of the stay of all deadlines in the

---

[18]    At the March 2020 Status Conference, Gil-White, through his counsel Mr. Guerra, stated his
intent to object to the Nordic Trustee's Bid and that he thought the bid may be rejected since
the Concurso Court already rejected a substantially similar bid.  *See Transcript* at 18-19.

Chapter 15 Proceedings, including, without limitation, the Adversary Proceedings, from March 9, 2020 to no earlier than ninety (90) days following March 9, 2020 (*i.e.*, June 8, 2020).

35.     On June 1, 2020, Badin and the Defendants submitted to the Court a proposed *Second Stipulation and Order* seeking to further extend the Litigation Stay Deadline.  (Dkt. No. 282)  According to the *Second Stipulation and Order*, the Concurso Mercantil proceedings were suspended in March, 2020 until June 15, 2020 due to COVID-19, which delayed the Nordic Trustee Bid sale process.  On June 4, 2020, the Court entered the *Second Stipulation and Order* (Dkt. No. 283) providing for the further extension of the stay of all deadlines in the Chapter 15 Proceedings, including, without limitation, the Adversary Proceedings, through the date that is the later of (a) ninety (90) days following June 1, 2020 (*i.e.*, August 31, 2020), or (b) if the Commencement Date[19] has occurred prior to such date, ninety (90) days following the Commencement Date.

36.     On August 31, 2020, Badin and the Defendants submitted to the Court a proposed *Third Stipulation and Order* seeking to further extend the Litigation Stay Deadline.  (Dkt. No. 287) According to the *Third Stipulation and Order*, on August 4, 2020, the Mexican Judge requested IFECOM to review the Nordic Trustee Second Bid and provide its opinion regarding the bid's viability, but IFECOM had not yet provided the Mexican Judge with IFECOM's opinion regarding the viability of the Nordic Trustee's Bid.  (Dkt. No. 287)  On August 31, 2020, the Court entered the *Third Stipulation and Order* (Dkt. No. 288) providing for the further extension of the stay of all deadlines in the Chapter 15 Proceedings, including, without limitation, the Adversary Proceedings, to no earlier than ninety (90) days following August 31, 2020 (*i.e.*, November 30,

---

[19]  "Commencement Date" means the date of the call for the commencement of the bidding process after the Mexican Judge orders the Foreign Representative to commence a process for bidding on the Assets based on the Nordic Trustee's bid.

2829224.3

2020).  *See* Fed. R. Bankr. P. 9006(a)(1).  Seven days later, IFECOM issued its opinion that the Nordic Trustee Second Bid should be dismissed. *See Palacios Decl*. ¶ 30.

37.      Two days after the submission of the AMA Bid, on November 28, 2020, Badin and the Defendants entered into and submitted to the Court a proposed *Fourth Stipulation and Order* seeking to further extend the Litigation Stay Deadline based on the new AMA Bid.  (Dkt. No. 289)  On November 30, 2020, the Court entered the *Fourth Stipulation and Order* (Dkt. No. 290) providing for the further extension of the stay of all deadlines in the Chapter 15 Proceedings, including, without limitation, the Adversary Proceedings, to no earlier than ninety (90) days following November 28, 2020 (*i.e.*, February 26, 2020).

38.      On February 24, 2021, Badin and the Defendants submitted to the Court a proposed *Fifth Stipulation and Order* (Dkt. No. 292) seeking to further extend the Litigation Stay, based on the AMA Bid, for ninety (90) days.  Through counsel, on February 25, 2021, the Independent Plaintiffs submitted a letter to the Court noting their objection to the requested extension of the stay.  The Court granted an extension of the stay for thirty (30) days to March 26, 2021  and scheduled a hearing on the Objection for March 18, 2021.

### F.      Other Events Since the March 2020 Status Conference.

#### i.      Interpol Removes Red Notices against Individual Plaintiffs

39.      As described in the Release Complaint, certain of the Defendants wrongfully commenced criminal actions against the Individual Plaintiffs and caused, without notice, Mexico to issue arrest warrants against certain of the Individual Plaintiffs on allegations of conduct purportedly constituting fraudulent management or fraudulent transfers.  *See* Release Complaint ¶¶ 124-137.  Based on the arrest warrants, the México City Prosecutor's Office had requested, and obtained, a red notice (an international arrest warrant) from the International Criminal Police Organization ("INTERPOL") against Messrs. Cañedo, Williamson, Gil, and Villegas.  In

December 2019, the Individual Plaintiffs petitioned INTERPOL to remove the red notices.  After

review, INTERPOL cancelled those red notices as a violation of the Individual Plaintiffs' rights –

as was widely reported in the Mexican press.[20]

### ii.    Concurso Court Finds Key Bond Agreement Provision Unenforceable and Voids Critical Related Actions

40.    A key dispute in the Debtors' Concurso Mercantil is the Debtors' claim that the

Nordic Trustee's declaration of default under the Bond Agreement was based on an unenforceable

ipso facto provision under Mexican insolvency law.  *Palacios Decl.* ¶ 40.  Specifically, in

September 2018, pursuant to article 87 of the LCM, the Debtors requested the Concurso Court to

declare that: (i) clause 15.1(g)(i)[21] of the bond agreement entered into by Oro Negro Drilling Pte.

Ltd. and Nordic Trustee (the "Bond Agreement") was unenforceable since it allows Nordic Trustee

to declare an event of default based solely on Perforadora filing for *concurso mercantil*, which

violates the LCM and Mexican public policy since it impairs a debtor's ability to successfully

reorganize, and (ii) among other acts, the event of default and the enforcement against collateral

(including the substitution of the Singapore Entities' directors and the transfer of Integradora's

---

[20]    *See, e.g.,* Abel Barajas, *Cancela Interpol 'caza' de Gil White*, REFORMA (Nov. 29, 2020, 22:32), https://www.reforma.com/aplicacioneslibre/preacceso/articulo/default.aspx?__rval=1&urlredirect=https://www.reforma.com/cancela-interpol-caza-de-gil-white/ar2080308?referer=--7d616165662f3a3a6262623b727a7a7279703b767a783a--; Abel Barajas, *Cancela Interpol 'caza' de Gil White*, Luces del Siglo (Nov. 30, 2020), https://lucesdelsiglo.com/2020/11/30/cancela-interpol-caza-de-gil-white-nacional/; Sergio Ramirez, *Interpol cancela fichas rojas contra Gonzalo Gil White*, La Razon (Nov. 29, 2020, 23:41), https://www.razon.com.mx/mexico/interpol-cancela-fichas-rojas-gonzalo-gil-white-414458.

[21]    Under the Bond Agreement, it is an event of default if Integradora Oro Negro or any of its Subsidiaries, including Perforadora Oro Negro, initiates restructuring, insolvency or bankruptcy proceedings. *See Palacios Decl.* ¶ 40. In such circumstances, Nordic Trustee may declare an event of default and demand immediate payment of the entire principal and accrued interest.

19

ownership shares in Oro Negro Drilling Pte. Ltd.) are unlawful and invalid (the "87 LCM Petition"). *Palacios Decl.* ¶ 40.

41.    Mexican law provides that declaring an event of default due to the commencement of insolvency proceedings is unenforceable as a violation of Mexican public policy. *Palacios Decl.* ¶ 40. On September 21, 2018, Integradora Oro Negro, Perforadora Oro Negro, Oro Negro Drilling and the Singapore Rig Entities moved the Concurso Court to rule that Nordic Trustee's Declaration of Default was unenforceable as a matter of Mexican law. *Id.* On October 11, 2018, the Concurso Court ruled (the "87 LCM Petition Dismissal Order") that it would abstain from considering that motion on the ground that it lacked jurisdiction to address it, since the Bond Agreement is subject to Norwegian law and courts. *Palacios Decl.* ¶ 41. The Debtors challenged the 87 LCM Petition Dismissal Order through an *amparo indirecto,* which is the appeal process. *Id.*

42.    As result of the Debtor's *amparo indirecto*, on October 1, 2020, the Eighth Collegiate Tribunal for Civil Matters for the First Judicial Circuit, in the case number 108/2020, issued a ruling through which it ordered the reversal of the 87 LCM Petition Dismissal Order, and ruled that the Concurso Court has jurisdiction to set aside clause 15.1(g)(i) of the Bond Agreement and its consequences. *Palacios Decl.* ¶ 42.

43.    On February 22-23, 2021, in accordance with a prior appellate (*amparo indirecto*) ruling, the *Concurso* Judge ruled that section 15.1(g)(i) of the Bond Agreement was not enforceable as it violates Article 87 of the LCM (the "Art. 87 Ruling").[22] *Palacios Decl.* ¶ 43. As a result, the *Concurso* Judge voided, *among other things*, the Nordic Trustee's notice of event of default, the transfer of the Oro Negro Drilling PTE, LTD. ownership shares to OND Pte. Ltd.,

---

[22]    A copy of the Art. 87 Ruling is annexed as Exhibit A to the *Palacios Decl.*

2829224.3

the appointment of new directors of the Singapore Entities,[23] the removal of the original directors of the Singapore Entities, the revocation of the powers of attorney purportedly on behalf of the Singapore Entities, the granting of new powers of attorney purportedly on behalf of the Singapore Entities, and any other act executed as a consequence of, or based on, any of those actions. *Palacios Decl*. Ex. A, (Art. 87 Ruling), at Control No. 60-64. It is telling that the stipulation seeking the fifth extension of the stay fails to disclose such a material fact.

44.     Therefore, among other things, the requisite authority of persons signing the *Fifth Stipulation and Order* on behalf of the Singapore Entities is drawn into question.[24]

## ARGUMENT

45.     The Court has the inherent power to control the disposition of the matters on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936); *see also* 11 U.S.C. § 105(a) (providing bankruptcy court with inherent authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code); *Musselman v. Home Ins. Co. of Ind. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, No. 88 B 10377(PBA), 1990 WL 123840, at *2 (S.D.N.Y. Aug. 7, 1990) (finding the bankruptcy court has authority to enter stay of adversary proceeding). Whether to grant a request to stay a proceeding is within the Court's sound discretion and requires "weigh[ing] competing interests and maintain[ing] an even balance." *Landis,* 299 U.S. at 255, 57 S. Ct. at 166. Factors considered by

---

[23]   The Singapore Entities are comprised of Oro Negro Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd. and Oro Negro Impetus, Pte. Ltd.

[24]   The voiding and unwinding effect of the February 23 Ruling may also impact the validity of the Singapore Entities petition for bankruptcy that was dismissed and has been on appeal until recently when the appellate court upheld dismissal of the petition. However, such dismissal was prior to and appears contrary to the February 23 Ruling. *Palacios Decl., 39.*

courts in determining whether a request for a stay of proceedings is warranted include: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 336 (S.D.N.Y. 2019).  "In balancing these factors, the basic goal is to avoid prejudice."  *Laumann v. Nat'l Hockey League*, No. 12 CIV. 1817 SAS, 2013 WL 837640, at *2 (S.D.N.Y. Mar. 6, 2013) (internal quotations and citations omitted).

46.    "The party seeking a stay bears the burden of 'demonstrating the wisdom and justice of a stay.'" *Uni–Rty Corp. v. Guangdong Bldg., Inc. (In re Uni–Rty Corp.),* No. 96 CIV. 4573 (DAB), 1998 WL 299941, at *7 (S.D.N.Y. June 9, 1998) (*quoting John's Insulation, Inc. v. Siska Constr. Co.,* 671 F. Supp. 289, 297 (S.D.N.Y. 1987)).  Where "there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," the movant "must make out a clear case of hardship or inequity in being required to go forward."  *Landis,* 299 U.S. at 255, 57 S. Ct. at 166.  A stay should not cause "undue hardship or prejudice against the plaintiff." *In re S. Side House, LLC*, 470 B.R. 659, 685 (Bankr. E.D.N.Y. 2012) (internal citation and quotations omitted).

47.    Here, the theatrical gamesmanship must stop.  The Individual Plaintiffs' right to pursue their claims have taken a back seat to the Defendants' strategic use of the Mexican liquidation process long enough.  For reasons set forth herein, the rationale for a further extension of the stay set forth in the proposed *Fifth Stipulation and Order* submitted to the Court by the Foreign Representative and Defendants does not surmount the prejudice on the Individual Defendants if the stay is extended.  The parties to the *Fifth Stipulation and Order* have not and

22

cannot meet the five (5) factors which the Court must consider in order to issue a stay.  In addition, as noted above, the parties to the *Fifth Stipulation and Order* failed to inform this Court of the Art. 87 Ruling.  The Adversary Proceedings should move forward.

I.    **The Stay Should Not be Extended Because the Mexico Sale Process in this Case is a Sham for the Benefit of the Defendants**

48.    Since June, 2019, when the Debtors' Concurso Mercantil became a liquidation, there have only been three bids considered -- the two Nordic Trustee Bids and, now, the AMA Bid, which offers substantially less value than the prior two bids.  *Palacios Decl.,* ¶¶ 24-36.  Each bid was submitted by a Defendant or someone closely associated with a Defendant.  Each bid sought to acquire substantially all of the Debtors' assets, which are comprised mostly of claims -- including the claims asserted by the Debtors in the Adversary Proceedings against the Defendants. And, significantly, each bid failed to allocate the offered purchase price between the Debtors' separate estates and separate assets -- a defect the Concurso Court already found fatal.  *Id.*

49.    The Nordic Trustee Second Bid, which submitted a much higher offer amount (*i.e.*, more than $19 million), already was rejected by the Concurso Court because that bid failed to allocate its purchase price among the different Debtors' estates and assets.[25]  *Palacios Decl.* ¶¶ 30-31.  The AMA Bid (*i.e.*, $5 million) is for a *substantially* lower amount than the Nordic Trustee Bids (*i.e.*, the AMA Bid is more than $14 million less), it is insufficient to provide any recovery for general unsecured creditors, and it fails to clearly allocate the offered purchase price to the different Debtors' estates.  *Palacios Decl.* ¶ 35.  The fact that the AMA Bid knowingly contains the same fatal defects as the Nordic Trustee Bids, raises questions about the good faith purpose of

---

[25]  The *Concurso* Court also rejected the Nordic Trustee Bid because part of the purchase price was comprised of a credit bid, the value of which had not yet been determined.  However, the portion of the purchase price that was liquidated (*i.e.*, $19,224,850) was greater than the dollar amount being offered in the AMA Bid (*i.e.*, $5,000,000).

such bid.  Why would a serious insider bidder submit a bid that it knows is highly likely to be found legally deficient based on the Concurso Court's prior ruling?  A very plausible reason is that the AMA Bid, which was submitted just four days before the then applicable Litigation Stay Deadline (under the *Third Stipulation and Order*) was scheduled to expire and the AMA Bid provided a basis for the Defendants and Badin to enter into, and submit to the Court, the *Fourth Stipulation and Order* to extend the deadline.  The Bondholders are also aware that a stay of these proceedings may ultimately enable them to extinguish their liability to the Debtors for a low price through the Concurso Mercantil sale process.  Regardless of the motive, the AMA Bid has fatal flaws and will likely be dismissed by the Concurso Court.[26]  The Court should proceed with these proceedings so the value of the debtors' claims can be liquidated.

50.    Delaying these Adversary Proceeding benefits the Defendants in the Debtors' Concurso Mercantil liquidation process, to the detriment of the Individual Plaintiffs and the Debtors' other creditors and shareholders.  Due to the structure of a Concurso Mercantil liquidation process, the Defendants are attempting to delay these proceedings while they cause low ball offers in the Debtors' Concurso Mercantil to acquire all of the Debtors' claims (including the Debtors' claims asserted against the Defendants in the Adversary Proceedings).  That strategy could allow the Defendants to buy themselves out of these Adversary Proceedings for cents on the dollar compared to the claims currently being asserted against them by the Foreign Representative -- to

---

[26]    Another impediment to the AMA Bid would be articles 199 and 207 of the LCM, which should preclude the Concurso Court from approving the AMA Bid because the liquidator has not tried to sell the Debtors' assets nor has it conducted an appraisal process, and, therefore, the liquidator will likely be unable to provide a basis to support the offered price (which also will impair other bidders).  Article 207 of the LCM requires that the auction be carried out pursuant to article 199, which in turn requires that a reasoned explanation for the price of each asset sold has to be included in the bid announcement.  Here, the liquidator would be hard pressed to provide a reasoned explanation for the price of each asset.  *Palacios Decl.* ¶ 36.

the detriment of the Debtors' shareholders and creditors (which include the Individual Plaintiffs)except the Bondholders.[27]  Also, by stalling the progress of these Adversary Proceedings, the value of the Debtors' assets (*i.e.*, the claims against the Defendants) is uncertain and deflated. Such uncertainty chills bidding and provides an opportunity for the Defendants to buy the claims against them at reduced costs.  The Debtors' claims against the Defendants should be decided on the merits before this Court and the Defendants should not be enabled to manipulate the system to maneuver themselves out of these proceedings in light of their bad acts.

51.     Meanwhile, for more than a year, the Individual Plaintiffs have been stuck in limbo unable to proceed towards recovering potentially substantial monetary damages against the Defendants for their conduct that shattered the Debtors' businesses and the lives of the Individual Plaintiffs.  The Individual Plaintiffs consist of certain prior senior officers and directors (and shareholders) of one of the Debtors.   When the Defendants chose to destroy the Debtors' businesses (and all value for its shareholders), they also destroyed the lives of the Individual Plaintiffs.  This is not a mere loss of employment situation.  The Defendants approached their objective with a wrecking ball mentality, including utilizing helicopters to pursue forcefully overtaking the Rigs in violation of orders of the Concurso Court.  The Defendants also filed false criminal reports against the Individual Plaintiffs, ruined their reputations and tore their businesses and livelihood from them.  The Individual Plaintiffs also had businesses that managed alternative investments for institutional and high net-worth clients, provided financial advisory services and sponsored special acquisition companies in public equity markets, which have been abolished by the Defendants wrongful accusations and conduct.  The Individual Plaintiffs' ability to continue

---

[27]   Prior to the Defendants' wrongful conduct, the Debtors were solvent and there was substantial value for shareholders of the Debtors.

their professions are limited without restoration of their reputations – which these proceedings can accomplish.  While the Defendants have caused reputational and financial destruction by causing the Debtors' assets to be frozen, false criminal complaints to be filed and the Plaintiffs' reputations to be marred, the Defendants have benefitted by seizing the Rigs and taking them out of Mexican waters and selling them, all in violation of court orders.  It is beyond time to allow the Individual Plaintiffs to pursue their remedies and move these matters forward to an ultimate conclusion.

## II.    The Stay Should Not be Extended Because the Stay Orders are Contrary to Mexican Law

52.    Badin, as Foreign Representative, is required under Mexican insolvency law to seek to maximize recoveries for the Debtors' creditors.  *See Palacios Decl.* ¶ 12.  The claims against the Defendants are the most valuable assets of the Debtors' estates.  Those claims would become more valuable the further along the litigation process of the claims proceed.  Therefore, it would behoove the Foreign Representative to aggressively move forward with the Adversary Proceedings to try to maximize values for the Debtors' estates and creditors.

53.    When the stay was initially implemented over a year ago in November, 2019, it may have seemed reasonable to delay the proceedings by 30-90 days to allow Badin to get up to speed on these proceedings upon his appointment and arguably to wait to learn the fate of the Nordic Trustee Bid by the Concurso Court.  In fact, at the March 2020 Status Conference there was meaningful discussion about the stay not automatically continuing past 90-days in the event the Mexican proceeding sale "Commencement Date" never occurred, which Mr. Guerra (the Debtors' Mexican counsel) correctly predicted the Commencement Date would not happen.  *See* Transcript at 15-19.  In hindsight, it was not beneficial to the Debtors or the Individual Plaintiffs to stay the proceedings for the Nordic Trustee Bid that had not even been approved by the Concurso Court to proceed with an auction; rather, the Defendants are the key beneficiaries of

these proceedings being stayed.  Over a year has passed and no progress has been made in either the *Concurso Mercantil* liquidation or these proceedings.  Further delays are of no material value to the Debtors' estates and would be counterproductive to maximizing values for the Debtors' estates and detrimental to the Individual Plaintiffs.  The AMA Bid similarly has not yet been approved by the Concurso Court to proceed with an auction (and is expected to be subject to objections by the Debtors and other creditors), and contains the same "lumped pricing" and "no recovery for general unsecured creditors" ailments that caused the Concurso Court to reject the prior Nordic Trustee Bids.  *Palacios Decl.* ¶ 35.  It is highly likely that the AMA Bid will be rejected by the Concurso Court.[28] *Id.*

54.     The Claims are the main assets of the Debtors' estates and the best way to maximize value is to proceed with the Adversary Proceedings.  The Foreign Representatives failure to prosecute the Claims is wasting value and contrary to his fiduciary obligations under Mexican insolvency law to maximize recoveries for creditors.  The Foreign Representative should be compelled to proceed with the Adversary Proceedings to liquidate the estates' claims against the Defendants and maximize the value of such claims.

### III.     The Prejudice to the Individual Plaintiffs in Continuing to Stay these Proceedings Outweighs Any Genuine Interests in Obtaining the Stay

55.     As set forth above, the delay in the Adversary Proceedings has been, and continues to be, prejudicial to the Individual Plaintiffs.  The Defendants are seeking to circumvent the claims asserted in the Adversary Proceedings through their strategies in the Concurso Mercantil liquidation process, which impedes the Individual Plaintiffs' rights in the Adversary Proceedings.

---

[28]    Arguably article 207 of the LCM only allows offers to move forward to auction when there has not been a timely objection by a Debtor.  Since objections will be filed, the Individual Plaintiffs assert that the AMA Bid should be dismissed. However, the Judge has not followed that interpretation and the Individual Plaintiffs have appealed that interpretation.

27

Moreover, the longer it takes for the Individual Plaintiffs to obtain a judgment against the Defendants, the longer it will take for the Individual Plaintiffs to repair their lives, which were ripped apart by the Defendants' sharp tactics employed to destroy the Debtors' businesses, and the lives of the Individual Plaintiffs.  Also, like many defendants, the Defendants attempt to delay these proceedings in an effort to wear out the Plaintiffs' resolve and pockets.  Moreover, until the Individual Plaintiffs can adjudicate these claims, they will continue to incur substantial legal fees and other costs associated with the various wrongfully filed criminal complaints and other pending litigations with the Defendants, while concurrently being precluded from making a living due to the ongoing reputational stigma that will remain until they can clear their names.  The Court should not countenance these tactics.

56.    Moreover, because the Foreign Representative is seeking to potentially transfer an interest of the Debtors that is within the territorial jurisdiction of the United States (*i.e.*, certain causes of action subject to the potential Concurso Mercantil sale are based on laws within the United States and certain Defendants are located in the United States), the Court ultimately will need to review the sale under section 363 of the Bankruptcy Code, pursuant to section 1520(a)(2) of the Bankruptcy Code.  11 U.S.C. § 1520(a)(2); *see In re Fairfield Sentry Ltd.*, 768 F.3d 239, 245 (2d Cir. 2014).  Therefore, an adjudication of the claims within these Adversary Proceedings would assist the Court in evaluating the proposed sale under section 363.

57.    Lastly, as set forth above, the Individual Plaintiffs, as direct Plaintiffs and as creditors of the Debtors, submit that each of the Adversary Proceedings should fully proceed. However, even if the Foreign Representative chooses to avoid, or intentionally slow-plays prosecuting the Debtors' claims in the Adversary Proceeding, the Individual Plaintiffs should be allowed to move forward with prosecuting their claims in the Adversary Proceedings.  The

28

Debtors' Concurso Mercantil liquidation does not impact the validity of the Individual Plaintiffs' claims against the Defendants and will not insulate the Defendants from such claims.

IV.     **The Recent Concurso Court Ruling Impacts the Singapore Entities' Authority to Enter into the Proposed Fifth Stipulation and Order**

58.     On October 1, 2020, after a series of appeals, an *amparo* court held that the *Concurso* Judge was authorized (had jurisdiction) and should determine whether section 15.1(g)(i) of the Bond Agreement was unenforceable as a violation of article 87 of the LCM.  *See Palacios Decl.* ¶ 42.

59.     After conducting such analysis, on February 22-23, 2021, the *Concurso* Judge revoked his prior ruling and ruled that section 15.1(g)(i) of the Bond Agreement was unenforceable and, as a result, the *Concurso* Judge also declared void the Nordic Trustee's notice of event of default, the transfer of the Oro Negro Drilling PTE, LTD. ownership shares, the appointment of new directors of the Singapore Entities,[29] the removal of the original directors of the Singapore Entities*, and any other act executed as a consequence of, or based on, any of those actions*.  *See Palacios Decl.* ¶ 43 and Ex. A (Art. 87 Ruling), at Control No. 60-64.  Based on this ruling, events that occurred as a result of the Nordic Trustee's improper declaration of an event of default are void and consequences should revert back to how things existed immediately prior to such declaration.  *See Id*.  Under such ruling, the ownership and control of the Singapore Entities have been returned to their initial and rightful owner – the Debtor, Integradora, and the board members of the Singapore Entities that were in place prior to the Bondholders replacing such directors have been returned to their board position.  Accordingly, upon information and belief, neither the authorized board members of the Singapore Entities nor the shareholder Debtor Integradora have

---

[29]   The Singapore Entities are comprised of Oro Negro Drilling, Pte. Ltd., Oro Negro Primus, Pte. Ltd., Oro Negro Laurus, Pte. Ltd., Oro Negro Fortius, Pte. Ltd., Oro Negro Decus, Pte. Ltd. and Oro Negro Impetus, Pte. Ltd.

2829224.3

authorized the Singapore Entities' entry into the *Fifth Stipulation and Order* and have not authorized any counsel to execute same on their behalf.  Therefore, among other things, the requisite authority of the Singapore Entities (or their purported representative) executing the *Fifth Stipulation and Order* is lacking.

60.    Accordingly, the Proposed Stay Extension should be denied and the *Fifth Stipulation and Order* should not be entered by the Court.  These Adversary Proceedings should move forward.

### **CONCLUSION**

WHEREFORE, the Individual Plaintiffs respectfully request that this Court deny extending the stay of these proceedings and grant any other and further relief that is just and proper.

Dated:  March 5, 2021
      New York, New York

Respectfully submitted,

**CALLARI PARTNERS LLC**

 */s/ Carollynn H.G. Callari*
Carollynn H.G. Callari

Carollynn H.G. Callari
Russell D. Morris, Of Counsel
One Rockefeller Plaza - 10th Floor
New York, New York 10020
Tel: (212) 202-3055
Email: ccallari@callaripartners.com
       rmorris@callaripartners.com

*Counsel to Gonzalo Gil-White, Jose Antonio Canedo-White, Carlos Williamson-Nasi, and Miguel Angel Villegas-Vargas*

## CERTIFICATE OF SERVICE

I, Carollynn H.G. Callari, hereby certify that on March 5, 2021, I caused a copy of the annexed **OBJECTION TO REQUEST FOR EXTENSION OF STAY OF ADVERSARY PROCEEDINGS** to be filed and served through ECF notification upon all parties who receive notice in this matter pursuant to the Court's ECF filingsystem.

/s/ Carollynn H.G. Callari

Carollynn H.G. Callari

2829224.3